| | |
|---|---|

1       **UNITED STATES DISTRICT COURT**
        **FOR THE DISTRICT OF COLUMBIA**

2       _____

3       United States of America,      ) Criminal Action
                                        ) No. 1:21-cr-00175-TJK
4                       Plaintiff,      )
                                        ) **Status Conference**
5       vs.                             ) (via Zoom)
                                        )
6       Ethan Nordean, et al.,          ) Washington, D.C.
                                        ) **April 5, 2022**
7                       Defendants.     ) Time:  11:00 a.m.
        _____

8
        **Transcript of Status Conference** (via Zoom)
9                       **Held Before**
        **The Honorable Timothy J. Kelly** (via Zoom)
10              **United States District Judge**

11
                        A P P E A R A N C E S
12
        For the Government:     **Luke M. Jones**
13      (via Zoom)              **Erik M. Kenerson**
                                **Jason B.A. McCullough**
14                              UNITED STATES ATTORNEY'S OFFICE
                                FOR THE DISTRICT OF COLUMBIA
15                              555 Fourth Street, Northwest
                                Washington, D.C. 20001
16
        For the Defendant (1) Ethan Nordean:
17      (via Zoom)              **David B. Smith**
                                DAVID B. SMITH, PLLC
18                              108 North Alfred Street, 1st Floor
                                Alexandria, Virginia 22314
19
                                **Nicholas D. Smith**
20                              DAVID B. SMITH, PLLC
                                7 East 20th Street
21                              New York, New York 10003

22      For the Defendant (2) Joseph R. Biggs:
        (via Zoom)              **John Daniel Hull, IV**
23                              HULL MCGUIRE PC
                                1420 N Street, Northwest
24                              Washington, DNC 20005

25      (continued on next page)

1          A P P E A R A N C E S, continued

2     For the Defendant (3) Zachary Rehl:
      (via Zoom)              **Carmen D. Hernandez**
3                             7166 Mink Hollow Road
                              Highland, Maryland 20777
4

5     For the Defendant (4) Charles Donohoe:
      (via Zoom)              **Ira Knight**
6                             FEDERAL PUBLIC DEFENDERS OFFICE
                              301 North Elm Street, Suite 410
7                             Greensboro, North Carolina 27401

8                             **Lisa S. Costner**
                              FEDERAL PUBLIC DEFENDER FOR THE
9                             MIDDLE DISTRICT OF NORTH CAROLINA
                              251 North Main Street, Suite 849
10                            Winston-Salem, North Carolina 27101

11    For the Defendant (5) Enrique Tarrio:
      (via Zoom)              **Nayib Hassan**
12                            LAW OFFICES OF NAYIB HASSAN, P.A.
                              6175 NW 153 Street, Suite 209
13                            Miami Lakes, Florida 33014

14                            **Sabino Jauregui**
                              JAUREGUI LAW, P.A.
15                            1014 West 49 Street
                              Hialeah, Florida 33012
16

      For the Defendant (6) Dominic J. Pezzola:
17    (via Zoom)              **Steven A. Metcalf, II**
                              METCALF & METCALF, P.C.
18                            99 Park Avenue, 6th Floor
                              New York, New York 10016
19    _____

20    Stenographic Official Court Reporter:
      (via Zoom)              Nancy J. Meyer
21                            Registered Diplomate Reporter
                              Certified Realtime Reporter
22                            333 Constitution Avenue, Northwest
                              Washington, D.C. 20001
23                            202-354-3118

24

25

1                P R O C E E D I N G S

2          (REPORTER'S NOTE:  This hearing was held during the
COVID-19 pandemic restrictions and is subject to the
3  limitations of technology associated with the use of
technology, including but not limited to telephone and video
4  signal interference, static, signal interruptions, and other
restrictions and limitations associated with remote court
5  reporting via telephone, speakerphone, and/or
videoconferencing.)

6

7          THE COURTROOM DEPUTY:  We are on the record in

8  Criminal Matter 21-175, United States of America v. Defendant

9  1, Ethan Nordean; Defendant 2, Joseph Biggs; Defendant 3,

10  Zachary Rehl; Defendant 4, Charles Donohoe; Defendant 5,

11  Enrique Tarrio; and Defendant 6, Dominic Pezzola.

12          Present for the government are Jason McCullough, Luke

13  Jones, and Erik Kenerson.

14          Present for Defendant 1 are David Smith and Nicholas

15  Smith.  Present for Defendant 2 is John Hull.  Present for

16  Defendant 3 is Carmen Hernandez.  Present for Defendant 4 are

17  Ira Knight and Lisa Costner.  Present for Defendant 5 are Nayib

18  Hassan and Sabino Jauregui.  Present for Defendant 6 is Steven

19  Metcalf.

20          Also present are Defendant 2, Mr. Biggs; Defendant 5,

21  Mr. Tarrio; Defendant 6, Mr. Pezzola.  And the appearance has

22  been waived for Defendants Mr. Nordean, Mr. Rehl, and

23  Mr. Donohoe.

24          THE COURT:  All right.  Thank you, Ms. Harris, for

25  setting this up.

1        I think the first order of business is to arraign

2   Mr. Tarrio.  So, Ms. Harris, would you go ahead and accomplish

3   that.

4        And before we do that, I'll just ask counsel for

5   Mr. Tarrio to confirm that even though we are proceeding here

6   via videoconference, that your client has no objection to being

7   arraigned via video.

8        MR. HASSAN:  Judge, that is correct.  Based on a

9   discussion with Mr. Tarrio, there is no objection to proceed by

10  Zoom this morning, Judge.

11       THE COURT:  All right.  Very well.

12       Ms. Harris, would you proceed.

13       THE COURTROOM DEPUTY:  Enrique Tarrio, in Criminal

14  Matter 21-175, you are charged with 18 United States Code

15  1512(k), conspiracy to obstruct official proceeding; 18 United

16  States Code §§ (c)(2) and 2, obstruction of an official

17  proceeding and aiding and abetting; 18 United States Code §§

18  231(a)(3) and 2, obstruction of law enforcement during civil

19  disorder and aiding and abetting; 18 United States Code §§ 1361

20  and 2, destruction of government property and aiding and

21  abetting; and 18 United States Code § 111(a)(1), assaulting,

22  resisting, or impeding certain officers.

23       Mr. Hassan, does your client waive the formal reading of

24  the second superseding indictment, and for the purposes of this

25  arraignment, how does he wish to plead?

1          MR. HASSAN:  That is correct, Ms. Harris.

2          And, Judge, at this point in time, we waive formal

3     reading of the indictment, enter a plea of not guilty, request

4     that the Court enter a standing discovery order, and, Judge,

5     demand a trial by jury.

6          THE COURTROOM DEPUTY:  A plea of not guilty is

7     entered, Your Honor.

8          THE COURT:  All right.  Very well.  Thank you,

9     Ms. Harris.

10         The next order of business is to talk about our trial

11    date, and I did -- I have read all the papers the parties filed

12    on this.

13         I have one question for the government, and I don't know

14    who wants to, sort of, take this, but if somebody for the

15    government can just walk me through -- I think the

16    representation in the government's papers was that the

17    government diligently sought the phone -- the information in

18    Mr. Tarrio's phone and then was able to access it -- someone

19    from the government -- in December for the first time.

20         So can somebody give me a little more detail about what

21    the government was doing, and then what -- to the extent you

22    can represent this at a high level of generality at least, what

23    happened in December that allowed you to get into that phone

24    for the first time?

25         MR. JONES:  Good morning, Your Honor.  Luke Jones for

1    the government.

2           With respect to that phone, it was seized, as Your Honor

3    knows, back in January of 2020 -- or 2021.  The government was

4    not able to get into the phone.  Law enforcement, that is.

5    There was a search warrant, and there was a search warrant in

6    the District Court as well to get into the phone.

7           It was ultimately sent to Quantico where the FBI's

8    experts in that regard were able to examine it and over time --

9    and sometimes these things do take time.  I can't speak to the

10   specific technologies that were used, but there certainly was

11   an interest by the government in accessing the phone, which it

12   was authorized to do pursuant to the warrant, but unable to do

13   due to the technology.  Once that phone was cracked, so to

14   speak, you know, the information was available, filtered, and

15   reviewed as we described.

16           THE COURT:  All right.  Does anyone for the

17   defendants want to just -- since I asked the government for

18   that additional follow-up, does any counsel for the defendants

19   want to just respond to that?

20           Mr. Smith, I see your hand raised.  I'll get to you,

21   Mr. Hull.  I see you too.

22           MR. NICHOLAS SMITH:  Thank you.  Thank you,

23   Your Honor.  And I think Mr. Hull will be able to contribute to

24   this factually as well, but it's -- it is our understanding

25   that a request was not made on counsel for Mr. Tarrio to

1    provide the passcode, the shortcut to cracking that process.

2              THE COURT:  You made that point in your papers, yes.

3              MR. NICHOLAS SMITH:  So -- so I think, Your Honor,

4    fruitful inquiry from the Court would be to see whether that is

5    accurate with the government.  And if the government did not

6    make a request on counsel for the passcode, the question would

7    be how the Court could find the delay reasonable when I think

8    we've cited at least one case showing the protocol here that

9    the government can use to ask counsel for the passcode and

10   explain that the defendant has the choice either to provide the

11   code with the concomitant delays that -- avoiding the delays

12   that might result or the opposite.  And that is a choice that's

13   given to the defendant.  I don't think that was followed here,

14   Judge.

15             THE COURT:  Okay.  Mr. Hull, your -- I'll give you

16   the floor.

17             MR. HULL:  I would add that my information is -- and,

18   as the Court knows -- Dan Hull for Joe Biggs.

19        As the Court knows, I represented Mr. Tarrio in three

20   civil suits and still am, pending being able to gracefully get

21   out of them and making sure that he has counsel, and also any

22   completed -- or 99 percent completed House of Representatives

23   inquiry.

24        And I spent a lot of time with Mr. Tarrio.  I visited

25   him ten times in jail.  For purposes of other issues, I

1  shouldn't be saying that or emphasizing it, but it's true.  And

2  I asked him a couple of times -- I checked my notes after

3  talking with Nick Smith and also his previous counsel

4  Lucas Dansie for the Superior Court proceeding that had him in

5  jail.  And my notes are that Enrique told me -- and I asked

6  him -- or Henry.  I asked him, did, in fact, they ask you for a

7  passcode or any way to get into the phone, and he said no.

8         So -- and that is -- my first conversation with him

9  about that was at the end of September.  I think it was

10  September 30th, or around there, of last year.  And then there

11  was more conversations about it when he received a subpoena

12  from the House Select Committee, and I decided to work on that

13  because they were very interested in trying to depose him in

14  jail.

15         I think my only other comment, aside from what I just

16  added to what Mr. Smith had to say, is that of all the phones

17  in this action that -- that have been seized or that the FBI

18  had access to -- and my understanding, by the way -- I should

19  add one other thing -- is the FBI had this at least as early as

20  August of 2021.  It may have been -- I think it was before

21  that.  But I know from talking to Mr. Courtney (phonetic) -- I

22  think his name is Mr. Courtney -- the AUSA in the

23  Superior Court proceeding, the burning of the flag; that

24  that -- that, in fact, was the case.  So at least August.  My

25  guess is it was probably much earlier than that.

1          But -- but I think the real point here is how believable

2    is this?  Whether or not they had the passcode, certainly the

3    Justice Department has the technology to get into that phone

4    when, one, they know about the phone.  And if, in fact, Enrique

5    Tarrio is the head of some conspiracy to obstruct and certify

6    the Harris-Biden Electoral College certification, I mean, why

7    wouldn't they be very aggressive -- which he was.  Why wouldn't

8    they be very aggressive about that?  I -- I don't understand

9    why they wouldn't have charged in their other federal -- so

10   this doesn't pass the -- you know, the B.S. test for me.

11          MR. NICHOLAS SMITH:  Judge, just one more point,

12   which is a lot of the messages that the government has cited

13   for its Tarrio allegations have been independently discovered

14   by the government through other devices far earlier in the

15   proceedings.  That's an argument we've made that wasn't

16   disputed by the government, so.

17          THE COURT:  No, no, no.  That's right.  That's right.

18          Mr. Jones, do you want to respond to the argument

19   that -- I guess, you know, that the government wasn't diligent

20   for the reasons that Mr. Smith and Mr. Hull laid out?

21          MR. JONES:  Sure, Your Honor.  First, I would just

22   note, we've been running headlong into the conflict --

23   potential conflict issue we raised with the Court.  I know

24   Your Honor appointed counsel, but we now have counsel for

25   Mr. Biggs making representations about conversations with

1    Mr. Tarrio.  And, you know, this -- these are the concerns that

2    the government was -- was noting.  And, you know, hopefully

3    this can be something that's resolved.

4         But as to, you know, whether the government was

5    diligent, the efforts it took to get into the phone, I

6    understand it doesn't pass the B.S. test for Mr. Hull.  But,

7    quite frankly, I don't know how we would have any idea what

8    steps the FBI was taking, attempting to take, what the

9    technological challenges were, what technological advancements

10   were made during the time between the seizure of the phone and

11   the time when the phone was ultimately cracked.

12        There's no basis for this, you know, allegation that the

13   government was somehow dillydallying with this phone when it

14   was, you know, obviously seeking to -- to gather the evidence

15   from it.  I don't know that there's much more we can say.

16        THE COURT:  Well, what about the idea that -- I mean,

17   I suppose you're not contesting that you didn't ask for the --

18   for the passcode from Mr. Tarrio.

19        MR. JONES:  We had no reason to believe that

20   Mr. Tarrio would have been -- would have been providing that

21   type of passcode.  I mean -- and there's no obligation on the

22   government to make that request.  Certainly it's not a request

23   that's made in the normal course.

24        In a case such as this where they were messages

25   indicating that Mr. Tarrio was confident that the government

1    would not be able to get into the phone based on authentication

2    protections, we had every reason to believe that he was

3    antagonistic to the government and not looking to be

4    cooperative in that way.  So -- and, again, obviously, no

5    obligation to do that.

6              THE COURT:  All right.  I'm going to -- Mr. Smith,

7    I've heard enough, and I wanted to give -- I wanted to flesh

8    out that one issue, but I don't -- I don't need to hear from --

9              MS. HERNANDEZ:  Your Honor, I just join -- I just

10   join in the arguments.

11             THE COURT:  Very well, Ms. Hernandez.

12             MR. HULL:  Just 30 seconds' worth.

13             THE COURT:  Yes.  Mr. Hull, what is it?

14             MR. HULL:  What it is is that -- I want to point out

15   that the conflict issue was an issue that I raised, which is

16   the real issue, in the last status conference.

17        Also, I'm not saying, particularly, this is a

18   nondiligence issue.  This is an issue of whether they had it

19   all along and hadn't produced it.  I think that's an important

20   issue.

21        The third issue is that the reason that I was interested

22   in it -- and more interested in it come around November 1st --

23   was that the Select Committee -- it's all they could talk

24   about.  These phones, where are they?  They're all over it

25   because they wanted it before they deposed him, and they never

1   got it because we couldn't get it from the government.  And

2   that's it.

3            THE COURT:  All right.  All right.  I am -- here's

4   what I'm going to do.  I do think -- and I'll -- I'm going to

5   enter -- I'm not going to spend a lot of time now laying out my

6   reasoning.  I'm going to enter an order later today doing so.

7            But I do think there is good cause to vacate the trial

8   date.  I do think that there's good reason for me to grant that

9   motion and to deny the motion to sever, at least without

10  prejudice, at least at this point.  And I'll lay out the

11  reasoning more, as I said, in an order later -- later today.

12           But suffice it to say, I think the two bases here that

13  the government has argued:  one, the joinder of additional

14  defendants; two, the state of discovery warrants a continuance

15  from the current trial date.  Now, how far that continuance,

16  you know, might extend into the future, I don't really think I

17  have to decide to say that -- to conclude that the May 18th

18  date -- that they have, really, to think that there's a basis

19  to vacate that May 18th date.  And so I'm going to do that.

20           And I want to spend the rest of our time here talking

21  about when we might be able to set it.

22           And then also, Mr. Smith, you raised the issue of, for

23  example, the outstanding under-seal motion that you have.  I

24  want to get a date where we can come in and talk about that;

25  obviously much on the quicker side.  Yes, Mr. Smith.

1      MR. NICHOLAS SMITH:  So -- so it appears that the

2  Court ruled, but we -- we would like to just, you know -- might

3  characterize it as an offer of proof or what have you, but we

4  would like to put on the record some arguments with respect to

5  the Court's findings just now.

6      THE COURT:  Have you -- I'm sorry.  Are they not

7  contained in your written submissions?

8      MR. NICHOLAS SMITH:  Your Honor, this is -- the

9  written submissions are, frankly, kind of scattered because

10  there are a few different arguments and legal issues at play,

11  and we'd like to have an opportunity, since this is a hearing,

12  to -- to show the Court how these issues relate to each other

13  in a way that's not really apparent in any one of the

14  individual filings.

15      So there's -- there are issues that connect to each

16  other in ways that are not apparent on the surface of the

17  briefs, and we'd like an opportunity to briefly explain why it

18  would be, frankly, very erroneous to vacate this trial date,

19  Your Honor.  So we would like an opportunity to make an

20  argument on the record.

21      THE COURT:  Mr. Smith, you have three minutes to

22  supplement your written -- written submissions.

23      MR. NICHOLAS SMITH:  So there are three interrelated

24  rights at issue for Mr. Nordean and the other defendants.

25  There's the speedy trial right; there's the right to *Brady*

1    evidence that the government possesses, and right to Rule 16

2    discovery; and then there's their liberty interest because

3    they're all detained.

4         So what the government is attempting to do, over a year

5    into this case after charging most of the defendants, is it's

6    trying to give them what the Supreme Court has called a cruel

7    trilemma in another context.  The government is saying to the

8    defendants, you can have a speedy trial, but you cannot have

9    your *Brady* and Rule 16 evidence by the time of trial and you

10   cannot have your liberty.

11        Or the government is saying, you can have your *Brady* and

12   Rule 16 evidence, but not a speedy trial, even though that's

13   their constitutional right.

14        Or it's saying, even if you consent to a Speedy Trial

15   Act continuance and receive your *Brady* evidence and Rule 16

16   material, you can't have your freedom in the meantime.

17        That's the position the government's taking.  There is

18   no dispute that the government cannot force this choice on a

19   defendant.

20        I think the papers have laid out that in the Barker

21   against Wingo case, the Supreme Court was perfectly clear that

22   the delay as a result of court congestion created by the

23   government's filing decisions weighs against the government,

24   not the defendant.  We're also undisputed that there's a

25   prejudicial delay already -- presumptive prejudice in a delay

1    of trial for over a year, Your Honor.  There isn't one single

2    *Barker* factor that cuts in favor of the government.

3          Now, the government has come back and said that pretrial

4    confinement for what is -- what would be 13 months by the time

5    of the May date is not prejudicial under *Barker* because of some

6    D.C. Circuit decisions.  All of them concern extradition,

7    Your Honor.  The government hasn't come forward with one case

8    showing that it's not prejudiced under *Barker* to have pretrial

9    confinement for over a year.

10          So there is almost no meritorious arguments in the

11   government's briefs that we don't already have a speedy trial

12   constitutional violation.

13          THE COURT:  Mr. Smith, if that's the case, then we --

14   actually, we don't need a May trial date either because you're

15   arguing the case should be dismissed immediately.

16          MR. NICHOLAS SMITH:  Judge --

17          THE COURT:  So either way, we don't need a May trial

18   date.

19          MR. NICHOLAS SMITH:  Judge, a defendant is allowed to

20   take half a loaf.

21          THE COURT:  Absolutely.  But -- but it doesn't --

22   well, go ahead.  Continue.

23          MR. NICHOLAS SMITH:  So, Judge, if -- if -- it seems

24   to be said -- you seem to be saying, well, there might be a

25   Speedy Trial Act violation.  If that's the case --

1          THE COURT:  No.  Mr. Smith, you better be very sure

2     when you quote me -- back to me that you're accurate.  I'm not

3     saying that.  But I am saying that if your position is correct,

4     I don't know why we need a May trial date anyway.  You're

5     arguing that the case needs to be immediately dismissed.

6          MR. NICHOLAS SMITH:  I'm arguing at the very least,

7     if we are already at a Speedy Trial Act -- speedy trial

8     violation, a constitutional one, or approaching that period, it

9     is not sound to vacate the trial date when the parties will not

10     be able to reschedule a trial.

11          Judge, Mr. Tarrio's counsel has informed the Court that

12     it will not be able to try his case until November, Judge.  So

13     we are already -- I think Ms. Hernandez will inform you that

14     her trial schedule this summer will be very congested as well.

15     So we're not talking about 13 months of harsh pretrial

16     confinement waiting for trial.  We're talking about a period

17     much longer than that.  You're talking about possibly two

18     years, Your Honor, and this is extremely troubling.

19          This needs to be emphasized.  There is no American

20     precedent in this circuit or anywhere else supporting that

21     decision.  And, Judge, what makes this even more disturbing is

22     if you look at the cases the government has cited that excuse

23     pretrial delay, these are cases in crimes that are clearly

24     defined.  These are cases involving international drug

25     traffickers and murderers and child pornography; cases where

1     there is no dispute about whether there's a crime.

2           Here, you're talking about extraordinarily harsh

3     pretrial confinement on a crime that a judge, a hundred feet

4     away from this court, has held is not even a crime.

5           THE COURT:  Mr. Smith, I've heard -- I understand

6     your argument.  I've heard this argument before.  I'm going

7     to -- I'm going to say, I've heard you and I'm not going to

8     allow you to make any more of the record.  You've made a record

9     on paper.  Every single one, I think, of these arguments you

10    made before me when we were together last time.  I do

11    understand them.  I just disagree with them, and I'll lay out

12    why later on in -- in writing.

13          So let's talk about when we can -- there may be -- and

14    my ruling in vacating the trial date is because I do think more

15    time after May -- the current trial date is warranted for the

16    reasons I'll lay out.

17          Now, there may be additional delays because of counsel

18    and other reasons.  You know, on some level, that's also, for

19    example, the defendants having the right to counsel of their

20    choice.

21          So let me hear from each -- I did not recall that from

22    Mr. Hassan, but you-all tell me -- well, first of all, I'm

23    going to take up Ms. Hernandez on her suggestion that we have a

24    discovery cutoff.  And so why don't I first ask the government

25    when, if you were -- little bit hazy in the government's

1    representations, I think, on this point.  I think the

2    government said they'd be ready to try it in August, but -- but

3    discovery, presumably, would be completed well before then.

4        So, Mr. Jones, what would you suggest -- a date that I

5    can order discovery to be complete?  At this point, we're a

6    year-plus in the case.  I think that's -- Ms. Hernandez said

7    the last time we were here -- a reasonable question to ask and

8    be able to get a precise answer.

9        MR. JONES:  Yes, Your Honor.  In -- so targeting

10   August as a workable date from where we sit right now, our,

11   sort of -- our thought process was that getting discovery

12   complete two months prior to the trial date would be a

13   reasonable, you know, deadline.  You know, not that the

14   government wouldn't continue to produce anything that became

15   discoverable thereafter or, you know, became available to the

16   government thereafter, but our, sort of, internal clock was

17   looking at a two-month lag between substantial completion of

18   discovery and the trial date.  That's -- that's how we landed

19   on August.

20       You know, there is evidence that the government's

21   gathered that it's still endeavoring to, you know, retrieve

22   from devices and need to examine, and there's some uncertainty

23   as to the length of time those processes would take.  You know,

24   perhaps we can get some passwords.  That will expedite things.

25   But we -- you know, our best estimate -- and we think it's a

1    good one -- is that we can be ready by August and intend to get

2    discovery done two months prior.

3            THE COURT:  Well, I guess we're going to see when

4    counsel are available and when we can -- what trial date we can

5    get.  But I think -- I think the government shouldn't be --

6    let's put it this way.  I think the government -- we need -- I

7    need to set a firm date that discovery should be completed.

8    And if the trial doesn't happen until more than two months

9    after that, well then, so be it.

10           And I realize the government has to prioritize the

11   different cases and is trying to get discovery out to more

12   than -- you know, to quite a few defendants.  But I take what

13   you're saying, then, that -- that the government believes

14   discovery could be complete sometime in June, just based,

15   Mr. Jones, on what you just told me; is that fair?

16           MR. JONES:  That's fair, Your Honor, yes.

17           THE COURT:  Okay.  Well, we'll pick a date -- I mean,

18   again, I don't know how -- we'll get to when the trial -- we'll

19   get to the trial date.  But I think, then, picking a date in

20   the middle of June is reasonable.  You know, say June 17th,

21   right in the middle of the month, to say that that's a day that

22   the government will be -- will have discovery out.

23           And we'll figure out -- I mean, you know, I think it's

24   important for the courts -- for the defense to have it -- a

25   reasonable time in advance of trial, but I think I need to --

1    given all that -- the interest and equities here, I think the

2    government has to make this case a priority, complete discovery

3    by then, and then, you know, we'll get -- if the -- we'll see

4    when counsel are available for the trial.

5         So I think that's -- June 17th, I think, is a

6    presumptive date to -- it's one month, basically, after the

7    trial date vacated -- that I'll be vacating it.  We'll -- I'll

8    expect the government -- I think it's reasonable to expect the

9    government to be -- have discovery completed at that point.

10        Let's talk about --

11        MR. JONES:  Your Honor, I -- just -- just to clarify,

12   I think we explained it in our filing.  You know, the

13   case-specific discovery and cross-discovery and global

14   discovery -- you know, I think, as the Court's aware, that, you

15   know, the office-wide global discovery effort continues.  And,

16   you know, when we represent that we think we could be ready for

17   a trial in August, it's not -- it's not a prerequisite to that,

18   in your view, that global discovery be completed on an

19   office-wide basis, but that we would be -- we will have

20   produced case-specific discovery and cross-discovery, you know,

21   including discovery from defendants outside of this case and

22   other materials that would be sufficient to allow the case to

23   go forward.  I didn't want to speak for the office-wide global

24   effort, in putting any deadline on that.

25        THE COURT:  Right.  Understood.  I mean, what I think

1    I understood your representation to be is that you were jumping

2    ahead of the global discovery effort to give all the discovery

3    the government thinks is appropriate in this case ahead of when

4    global discovery -- the government would be saying your global

5    discovery project is completed.  Is that accurate?

6              MR. JONES:  That's correct, Your Honor.  We've

7    been -- we've been doing that, and we'll continue to do that as

8    part of our effort to make this case a priority and get it into

9    a position where it can go to trial.

10             THE COURT:  All right.  So let's talk about -- let's

11   talk about --

12             MS. HERNANDEZ:  Your Honor.

13             THE COURT:  Yes.

14             MS. HERNANDEZ:  I'm sorry.  Before we move on from

15   discovery, I've been discussing this with Mr. Jones, but you

16   may find some motions on discovery on what I believe the

17   government should produce instead of -- they've produced a lot

18   of discovery.  One could easily describe it as a dump of

19   discovery.  So there are some issues on that.  I don't want the

20   Court to -- I just want to let the Court know I'm trying to

21   discuss it with Mr. Jones, but you may be seeing some motions

22   to compel the government to be more specific in their

23   productions.

24             THE COURT:  Fair enough.  And here's what I would say

25   on that.  If you have a -- rather than filing a motion, why

1    don't you -- and if it's -- if it's something you feel -- let

2    me think about this.  If -- if the parties think that's

3    something you can -- we can get on the phone and talk about and

4    not necessarily bring every defendant in on the -- trying to

5    coordinate with every single schedule, then if it's something

6    that you want to preview for me where we can have a quick call

7    and talk about it, that might get a quicker resolution than an

8    extended, you know, discovery motions practice.

9            MS. HERNANDEZ:  Depends on how the individual

10   defendants feel, but it would probably be a legal issue, not so

11   much a factual issue.  It would be an issue of what the

12   government needs to produce.

13           THE COURT:  Right.

14           MS. HERNANDEZ:  And there's precedent in this

15   district in these huge cases, and none of them compare to this,

16   according to the government, in terms of the extent of

17   discovery.  There's precedent for ordering more specific

18   discovery than ordinarily.

19           THE COURT:  All right.  Well, look.  I'll just --

20   rather than, again, chew up more time here, I'll just say, I'm

21   open -- you know, I haven't -- again, I haven't really thought

22   about it, but I'm open to -- whether it's just you and the

23   government or whether it's you and a representative from all

24   the other defendants -- having -- setting, you know, a quick

25   call where we -- where counsel waives the presence of your

1    client to talk about it before we launch into motions practice

2    just for the purpose of getting at the answer quicker.

3            MS. HERNANDEZ:  Thank you, Your Honor.

4            THE COURT:  And, Ms. Hernandez, while I have you on

5    that, as -- can you just confirm for me -- now that I am

6    thinking about it, your predecessor had filed a number of

7    motions that the government in a filing, as I recall, indicated

8    that you wanted to withdraw.  There was a number of -- I can't

9    quite -- it was a bunch of motions right before you came into

10   the case.

11           MS. HERNANDEZ:  I'm fine with meeting whatever motion

12   schedule the Court sets and follow those motions.  The only

13   motion that I do plan to file is a motion for reconsideration

14   of pretrial detention.  I think there were issues that were not

15   raised.  There are facts that were not presented to the

16   Court -- either were not presented or that -- have been more

17   developed currently, and now with the trial date.  So that I

18   will file, but other than that, I'll wait to -- to the motions

19   practice.

20           THE COURT:  But my point is -- and that's fine,

21   Ms. Hernandez, of course.  But my point is:  The government had

22   represented that you had represented to them that those motions

23   were withdrawn, the ones that are already filed.  I just want

24   to make you -- get you to confirm that.  And I'll just -- I'll

25   just deny them as moot.

1          MS. HERNANDEZ:  Withdrawn without prejudice to

2     refiling --

3          THE COURT:  Yes.  Of course.  Yes.

4          MS. HERNANDEZ:  -- of the issue; right.

5          THE COURT:  Of course.  Of course.  All right.  Very

6     well.  All right.

7          So maybe we should start then with -- while,

8     Ms. Hernandez, I have you, when -- when is your first date

9     where you look available?

10         And I guess, again, part of the question is going to be

11    what the parties think -- I mean, the -- the estimate that we

12    had been going by was six weeks.  I guess I -- as we talk about

13    this, if counsel still think that's a viable estimate, then

14    that's what we go by, but I just wanted to throw that out as

15    the -- as what I had been -- what we had been operating off of,

16    probably, Ms. Hernandez, before you were even in the case.

17         MS. HERNANDEZ:  So, Your Honor, I have two -- I have

18    five cases scheduled from here to March '23.  Two of them, I

19    think, are -- cannot be moved because defendants are detained.

20    I have a short trial in front of Judge McFadden July 5th.  But

21    I have a four-defendant case scheduled for September 19th in

22    front of Judge Boasberg.  Those defendants have been detained

23    since 2018, and their trials have been continued because of

24    COVID.  That is -- that's just not going to get moved.

25    September 19th.  It's probably six weeks, four to six weeks.  I

1    have a case in front of Judge Mehta.  My client is out, but

2    Judge Mehta has been very anxious to set the case to trial --

3    to get the case in trial, but that's in November,

4    November 28th.  So then I have a trial in March of 2023 in

5    front of the Chief Judge.  I have a detained defendant in that

6    case.

7         So I -- I would be available, I guess, in January, would

8    be the earliest -- or I mean, if -- if you can convince

9    Judge Mehta to relieve me of my November 28th date, then I

10   would be free sometime in November.

11        THE COURT:  And that's -- when does that case begin?

12        MS. HERNANDEZ:  That's scheduled November 28th.  It's

13   one of the Oath Keepers.  Those -- that case has been pending

14   since January or February of 2021, but my client is out.

15        THE COURT:  But I was going to say, I think -- just

16   from my notes here, all the defendants in that case, I think,

17   are not detained.

18        MS. HERNANDEZ:  There are -- in my case, that -- in

19   the case that I -- none of the defendants are detained;

20   correct.

21        THE COURT:  Right.  All right.  All right.

22        Counsel, Mr. Hassan, when -- I mean, it may be that what

23   I should do, frankly, is -- we do have this motion that I do

24   want to get to -- not today, but quickly -- that's under seal

25   right now.

1          It may be that the thing to do is for me to --

2     basically, given the number of counsel here and the

3     government -- to have you-all confer about the first -- you

4     know, the first date you-all think you can all make it, and

5     then we can pick up a trial date and a, sort of, briefing

6     schedule and all the dates that flow backward from that when we

7     next get together to talk about this under-seal motion.

8          But, Ms. Hernandez, you're raising your hand.

9          MS. HERNANDEZ:  Your Honor, may I ask a question?

10    These dates that we're talking about and the government's

11    proposition, does this include the potential superseding

12    indictment that may come by May --

13         THE COURT:  Well --

14         MS. HERNANDEZ:  -- or are we going to be

15    revisiting -- or are we going to be doing this again?

16         THE COURT:  Well, I don't know what you mean by doing

17    it again.  I mean, in the sense that -- I don't think it'll --

18    it shouldn't -- well, let me ask at least as to, I think, the

19    subject that you -- at least one subject you're interested in.

20         Mr. -- where is -- this is like *Hollywood Squares* here.

21         Mr. Jones, the representations about discovery,

22    obviously you don't -- can't produce what you don't yet

23    possess, but that caveat aside, that date, as far as discovery

24    goes, shouldn't be affected by any additional defendants that

25    are added to the case; is that fair?

1     Again, if you -- if, in connection with that, all of a

2  sudden there are additional documents that -- additional

3  materials you need to disclose, either materials you have

4  currently, it shouldn't affect those.  And then if you,

5  obviously, at some point come into possession of additional

6  documents -- obviously, discovery is an ongoing -- is an

7  ongoing obligation.

8     But that discovery date should stick regardless of

9  whether additional defendants are added; is that fair?

10          MR. JONES:  Yes.  Yes, Your Honor.  That's fair.

11          THE COURT:  All right.  So I don't know,

12  Ms. Hernandez, if you're asking that.

13     But, I mean, the question of -- the question of then

14  what we would do if additional defendants were added to the

15  case, I think -- look.  There are all sorts of contingencies

16  here -- right? -- as far as whether additional defendants could

17  be added, whether -- for example, what the COVID precautions

18  might require at a given time down the line, you know, and the

19  like.  So I think we just need to do our best and -- and --

20  and -- do our best to schedule something.

21     But I also think, maybe, the thing to do is to just

22  set -- set a hearing date for the under-seal motion that I need

23  to resolve.  I'll hear argument on it, relatively quick

24  turnaround, and what I'll do is give the parties, the

25  government and all defense counsel, a chance to confer about

1   this and see if you-all can come up with, you know -- because

2   as far as my schedule goes, I mean, I will move everything

3   around for this case.  There's -- I have some trials set.  I

4   think if I need to -- we'll see.  We'll see.  But I'm going --

5   my schedule is not going to be the barrier.

6       Let me ask, Mr. Jones, how does that sound to the

7   government?

8       MR. JONES:  That's fine for the government,

9   Your Honor.

10      THE COURT:  I mean, I'm just trying to be respectful

11  of everyone's time here and the sheer volume of counsel we have

12  and the sheer complexity of all your trial schedules.

13      Let me then -- let me go ahead, then, and just ask the

14  parties.

15      MR. NICHOLAS SMITH:  Judge.  Your Honor.

16      THE COURT:  Yes, Mr. Smith.

17      MR. NICHOLAS SMITH:  In light -- in light of the

18  Court's decision just now to have counsel confer with one

19  another about a date and come back, we'd like to, sort of,

20  propose reconsideration in -- in real time here.

21      Now, I think Nordean's position would be that the Court

22  would first decide when a trial could feasibly be held given

23  defense counsel's schedules and the master court schedule, and

24  then determine whether the date right now should be vacated,

25  rather than the opposite.  Because it would seem to be the case

1   that a reasonable factor in deciding whether to vacate a trial

2   would be when the trial could be held.

3          So, for example, I'm going to give just an exaggerated

4   example so I can make my point.

5          THE COURT:  Mr. Smith, you don't have -- I understand

6   your point.  At this point, I have determined that the trial --

7   for the reasons I'm going to articulate, that the trial -- that

8   it should not go forward on May 18th.

9          Now, the question then becomes when to reschedule it.  I

10  don't -- I mean, some of those things are beyond my control.

11  They're within, frankly, attorneys' control.  But I have to let

12  the parties know -- I mean, we're coming -- I think out of

13  respect for the preparation here, I need to make that decision.

14  And we'll talk about when -- when we can reschedule it, given

15  the realities that Ms. Hernandez and -- we're talking about

16  here regarding counsel's schedule.

17         So you can file -- you can ask me to reconsider once I

18  get this order out, but I -- I do think that this is the way

19  I'd like to handle it.  But I understand your point.

20         Let me ask Mr. Smith, particularly because it's your

21  motion, the under-seal motion, I'm looking at -- and, again, I

22  think this is something -- well, let me ask -- let me ask you

23  this, Mr. Smith:  Are you willing to waive your client's

24  presence for -- for argument on that motion under seal?

25         MR. NICHOLAS SMITH:  Yes, Your Honor.

```
 1              THE COURT:  All right.  The date that I'm looking at
 2    here that I'd like to set it for, as long as we don't have
 3    anyone here who's going to insist on their client's presence --
 4    and counsel -- I don't know -- I guess there are only some
 5    counsel at this point that are -- have joined in that motion,
 6    but we can get to that.
 7              Is the 21st -- so just in two weeks, basically.
 8    Thursday, April 21st, at 2:00 in the afternoon.
 9              Mr. Smith, is that available to you?  I'm going to ask
10    this of you because, particularly, it was your motion.
11              MR. NICHOLAS SMITH:  Yes, Your Honor.
12              THE COURT:  All right.  Let me ask the government.
13              MR. HULL:  Your Honor, since we're talking about
14    it -- Dan Hull.
15              THE COURT:  Please.
16              MR. HULL:  I'm in that one as well.  For me, we'll --
17    I'll waive his presence.  He will waive his presence.
18              THE COURT:  Okay.  And it will work for you or won't?
19              MR. HULL:  It will.
20              THE COURT:  Okay.
21              MS. HERNANDEZ:  We're scheduled for trial that week,
22    that day, Your Honor, so we should all be available.
23              THE COURT:  Say again, Ms. Hernandez.
24              MS. HERNANDEZ:  We were scheduled to be in trial
25    before Your Honor on that day.  So we should all be available.
```

1          THE COURT:  No, no, no.  The 21st of April.

2          MS. HERNANDEZ:  Oh, April.

3          THE COURT:  Sorry.  The 21st of April.  Yeah.

4    Correct.  So, basically, two weeks and two days from today.

5          MS. HERNANDEZ:  I'm available.

6          THE COURT:  All right.  Is that a fine time for the

7    government?

8          MR. JONES:  Yes, Your Honor.

9          THE COURT:  All right.  So let's -- and is that -- is

10   there any defense counsel who has joined in that motion -- I

11   think -- I think I've covered you-all.  Is there any defense

12   counsel who's joined in that motion who's not available the

13   21st at 2:00?

14        All right.  So what I'll ask the parties to do is

15   consult with each other between now and the 21st, and we will

16   talk about -- I'll figure out -- we should probably do that in

17   open court.  We'll figure that out.  But we will -- when we get

18   together on the 21st at 2 o'clock, we will walk through when

19   we're going to schedule the trial and all the subsequent dates.

20   And then we'll be under seal, and I'll hear argument on that --

21   that -- the, sort of, aspects of that motion that remain

22   pending.

23        And I will -- I mean, the government also moved in its

24   motion to vacate the trial date to exclude time.  Let me --

25   just for the record -- what I plan to do is, again, between now

1    and the 21st, is exclude dates on the two bases the government

2    has laid out based on discovery and in the interests of

3    justice -- in the interests of justice based on discovery and

4    the issue -- and for the basis of -- on the basis of joinder

5    under 18 United States Code 3161(h)(6).

6             First of all, Mr. Jones, I assume that is the

7    government's request, at least between now and the 21st?

8             MR. JONES:  Yes, Your Honor.

9             THE COURT:  All right.  I will give any defense

10   counsel -- well, let me just -- just do it.

11            Mr. Smith, what's your -- what is your position on that?

12            MR. NICHOLAS SMITH:  Thank you, Your Honor.

13            We -- we are objecting to the continuance.  And in light

14   of the government's reply brief in support of their motion to

15   vacate trial where they characterize our Speedy Trial Act

16   position over the last year, we'd just like to take this

17   opportunity to clarify what it is and what it has been.

18            We have said in the past that we do not -- we have said

19   since April of last year, we do not consent to Speedy Trial Act

20   continuances.  But we've pointed out the possibility of Speedy

21   Trial Act tolling under section 3161(h)(1)(D).  We'd just like

22   to clarify right now that what that means is that there is

23   tolling between the filing of the motion and the conclusion of

24   a hearing on the motion.  Of a hearing.

25            So, Your Honor, I think -- when -- when you look back at

1  the record, Mr. Nordean's motion to dismiss, his motion to

2  reopen bail, and his *Roviaro* motion, we are now far past a

3  period in which the Speedy Trial Act was tolled under

4  Mr. Nordean's position.

5        We understand that the Court has also found an

6  interests-of-justice continuance because of the size of the

7  discovery and on one occasion because of the COVID-19 protocols

8  in the Court.  But we are objecting to the application of those

9  continuance rationales.  And we just want to clarify that we

10  have been since April of last year.

11        Thank you, Your Honor.

12              THE COURT:  All right.  Mr. Hull, your position.

13              MR. HULL:  Your Honor, as the Court's -- on the

14  Speedy Trial Act exclusion?

15              THE COURT:  Between now and when we will be together

16  regarding the under-seal motion.

17              MR. HULL:  I'm going to have to object to it for the

18  same reason that I did at our last status conference, and we'd

19  also -- so, no, and I think everybody gets that.  So.

20              THE COURT:  Very well.

21              DEFENDANT BIGGS:  Can I say something really quick?

22  They need me to leave so they can use this area.  Are we good

23  to go?

24              THE COURT:  Mr. Biggs, you can -- as long as --

25  Mr. Hull, do you have any objection to Mr. Biggs -- continuing

1    on just with this colloquy while Mr. Biggs is not here?

2              MR. HULL:  Absolutely not.  Joe, we'll talk about it

3    later.

4              THE COURT:  All right.  Mr. Biggs, you are excused,

5    sir.

6              DEFENDANT BIGGS:  Thank you.

7              THE COURT:  With -- Ms. Hernandez, let me have you

8    make your position.

9              MS. HERNANDEZ:  Your Honor, I'll adopt the -- I'll

10    stand on the objections in the pleadings, as well as adopting

11    the arguments of co-counsel.

12              THE COURT:  All right.  And, Mr. Knight, do you have

13    any objection?

14              MR. KNIGHT:  I think Ms. Costner may speak for us

15    today.

16              THE COURT:  All right.  I'm sorry.  Ms. Costner.

17              MS. COSTNER:  That's okay, Your Honor.

18        Your Honor, we -- we don't wish to be heard beyond

19    anything that we have filed on this issue.

20              THE COURT:  Say that again.  I'm sorry.

21              MS. COSTNER:  Your Honor, we -- we don't wish to be

22    heard any further on -- on this issue.

23              THE COURT:  Okay.  All right.  Very well.

24        And I take from the positions that you took the last

25    time we were together, Mr. Hassan and Mr. Metcalf, you do not

1    object to tolling the speedy trial from today through the 21st.

2           Is that correct, Mr. Hassan?  There you are.

3           MR. HASSAN:  Judge, on behalf of Mr. Tarrio, Judge,

4    that's correct.  We still stand by the previous position,

5    Judge, that we agreed to an extension, Judge.

6           I just want to bring a couple things to light, Judge, if

7    I may.  We haven't been tendered any discovery at this point in

8    time.  We just were arraigned this morning.  So we haven't

9    received any documentation, whereas our colleagues in this case

10   have had at least some opportunity to review the discovery.

11          Judge, I also have a trial myself, a six-week trial

12   starting October 11th.  So I just wanted the Court to note

13   that.  That's a seven-year-old case, and that's going to take

14   about four to six weeks, starting October 11th.

15          And, Judge, Mr. Kenerson has been extremely helpful, but

16   Mr. Tarrio has been like Where's Waldo of the --

17          THE COURT:  Right.

18          MR. HASSAN:  And I think the government is making

19   available to us -- essentially, working with the U.S. marshals

20   to bring him down to Miami, which would facilitate us in

21   reviewing discovery, that being one key issue; but as far as

22   myself and Mr. Jauregui, as far as being potentially ready and

23   being able to review the discovery in -- in enough time in

24   order to be prepared for trial.  So I just want to bring those

25   issues to the Court's knowledge, Judge.

1          THE COURT:  Thank you.

2          Let me just say this.  It's -- the issue of where the

3     defendants are has been, you know -- let's put it this way.

4     I'm open -- let's talk further at our next hearing about the

5     question of where he's detained.  I -- they're bringing him --

6     where is he?  He is in D.C. right now; correct?

7          MR. HASSAN:  Judge, actually, he went down to south

8     Florida.  He got relocated to Tallahassee.  Now he's currently

9     in Oklahoma.  We want him back in Miami, not in D.C.

10         THE COURT:  We'll -- we'll see.  All right.  Well,

11    understood.  It's an issue on the radar scene.

12         Mr. Metcalf, final question to you.  Again, I assume you

13    do not object to the tolling from today through the 21st for

14    the reasons I articulated.

15         MR. METCALF:  That is correct, Your Honor.  We do not

16    object at this time.

17         THE COURT:  All right.  And to be clear, I guess,

18    since the record -- I don't know whether the record is clear or

19    not.  But since -- I would articulate, since we've had -- since

20    these defendants -- two defendants have been -- were joined in

21    the case -- whatever date that was -- these would be the two

22    bases by which a Speedy Trial Act has been tolled:  No. 1, the

23    joinder issue; No. 2, the ends of justice due to the discovery

24    issues.

25         All right.  So with all that, I will see you-all --

1           MR. JONES:  Your Honor.  One more issue, Your Honor.

2     Sorry to -- sorry to jump in, Your Honor.  I did want to --

3           Now that we have Mr. Tarrio's counsel in the case, we

4     wanted to take this opportunity to have them confirm on the

5     record their agreement to the terms of the protective order

6     that is in place in this case, which I believe they are

7     amenable to.  We can get, you know, signatures to the extent we

8     need them later.  But if we can put it on the record now, we

9     can go ahead and produce discovery.

10          THE COURT:  Mr. Hassan.

11          MR. HASSAN:  Judge, my apologies.  It got blurred out

12    there for a minute.  I didn't hear it.

13          THE COURT:  What Mr. Jones was asking was whether you

14    would confirm on the record that you agree to the terms of the

15    protective order in this case so as -- so that they'd be able

16    to let discovery begin to flow to you while they're awaiting

17    your signature on those documents.

18          MR. HASSAN:  That -- that is not an issue, Judge, and

19    we would agree to the protective order.  I believe I can confer

20    with my client, confer with any investigations in regards to my

21    office.  I believe that's the protective order previously

22    agreed to when he was down here in south Florida.  So we would

23    agree.

24          THE COURT:  All right.  Anything further?

25          I got you, Mr. Smith.

1              Anything further, Mr. Jones?

2              MR. JONES:  No, Your Honor.

3              THE COURT:  All right.  Mr. Smith.

4              MR. NICHOLAS SMITH:  Thank you, Judge.

5          So Mr. Nordean filed a motion to sever with respect to

6   both Defendants Tarrio and Pezzola, and there might be one

7   loophole left to close here.  So the Court, I think, made some

8   findings and asked some questions about the reasonableness of

9   the delay in adding -- in joining Mr. Tarrio to the proceeding.

10  But it did not address earlier in this hearing the delay in

11  adding Mr. Pezzola.  The government's briefs -- the Court's

12  read them, I think -- so the Court knows it is conceded there

13  is no basis for the delay in adding Mr. Pezzola to this case.

14         So we would just ask the Court for a separate finding on

15  the reasonableness of adding -- joining Pezzola to this matter

16  at this point.  He was charged in January of 2021.  He was

17  added on March 7th, 2022.  And so we -- we would request

18  separate findings from the Court on the reasonableness of

19  adding each defendant, because our motion applies to each

20  defendant.

21             THE COURT:  So it does.  And -- okay.  Well, what

22  I'll do is I'm going to -- the basis, again, for my ruling, I'm

23  going to put on paper so you will have a -- you will have those

24  findings on paper.

25             I mean, I guess, Mr. Smith, let me just ask this.  As

```
1    far as the delay issue goes, if we are -- if -- if there is --
2    let me -- if I find that the government -- that there's no --
3    there was no -- I mean, what -- however you want to
4    characterize the legal standard -- it was appropriate or that
5    it is -- it should not count against the government in some way
6    that they've added Mr. Tarrio, if -- doesn't that abdicate --
7            MR. NICHOLAS SMITH:  Your Honor, just for the sake of
8    the record and appeal, we're asking for the Court to make
9    separate findings on Mr. Tarrio and Mr. Pezzola, somewhat like
10   a jury, you know, would need to make findings on each issue so
11   that if this -- you know, we might actually seek interlocutory
12   review on this particular issue or mandamus, Your Honor.  So we
13   would like to -- we would like separate findings on each
14   defendant.
15           THE COURT:  You will have them on paper.
16           MR. NICHOLAS SMITH:  Okay.
17           THE COURT:  Anything further from the government?
18           MR. JONES:  No, Your Honor.  Thank you very much.
19           THE COURT:  All right.  Anything further from any
20   defendant?
21           MR. HULL:  Two quick things, Your Honor.  First is
22   something just to think about, and that is:  We were all
23   anticipating a six-week trial, which I think is a conservative
24   estimate.  Unfortunately -- even with four people -- with two
25   additional people, assuming the constellation stays intact,
```

1    we're going to need at least that time.

2          For example, Joe Biggs's case, as of this point,

3    requires -- requires probably eight trial days.  That's one and

4    a half weeks of trial.  We can all do the math.

5          So is there a -- I mean, we need -- I guess we need to

6    be looking for a time with the big courtroom you have, the

7    ceremonial courtroom, where we can do that in August.  I know

8    that's kind of a moving target and things are fluid, but I

9    think it's something worth thinking about.  This is at least

10   eight weeks.

11         THE COURT:  Mr. Hull, I've been -- I've absolutely

12   been thinking about it.  I want -- again, I think it makes

13   sense if -- if we won't have all counsel ready then, then it

14   doesn't make sense for me to start clearing the decks.  I want

15   to hear -- that's why I think when we come back, I want to hear

16   from all of you when you-all -- the defense, collectively --

17   could do it.  And then we look at the issues with regard to the

18   ceremonial calendar.

19         I'm sort of hoping that by the time -- even if it's just

20   a few months down the road, that maybe we won't even need to

21   use it, but, you know, I don't know whether that will be true

22   or not.  I can't factor that in at this point, but that's sort

23   of my hope.

24         MR. HULL:  And one -- and I understand, Your Honor.

25   Thank you, Judge.

1     The other issue I have -- and I'm just kind of putting

2   this out here.  There -- it is possible at this point to bring

3   motions to dismiss based on the Due Process Protections Act

4   lit- -- excuse me -- legislation that was placed in October of

5   2021.  I might not want to do that.  It's, sort of, a -- it's a

6   little bit experimental, but not completely.  There's a

7   Virgin Island case where just before the act -- that set down a

8   case somewhat similar to this on -- on certain kinds of facts

9   based on *Brady* violations.

10     And I would like to have that included in -- or time to

11   do that in the judge's pretrial schedule.  I don't mean to

12   retract things, but that's an important thing.  So a motion to

13   dismiss under the Due Process Protections Act, and maybe we'll

14   start a new thing, but I think that's important here.

15     THE COURT:  Well, I don't see why we couldn't include

16   that in, you know, the motion schedule that will be -- the

17   motion schedule that I'll enter that will cover -- that will

18   encompass all pretrial motions, you know, outstanding.  Most of

19   those will be motions *in limine*, but I think -- given you're

20   articulating it now, I don't see a reason why we couldn't

21   include that.

22     MR. HULL:  Just want to make sure there's room for

23   it.  That's all.

24     THE COURT:  Understood.

25     Any other counsel for any other defendant?

1          All right.  Very well.  I will see everyone on April --

2     just want to make sure we don't -- on April 21st at 2 o'clock.

3          Until then, the parties are dismissed.

4              (Proceedings were concluded at 12:13 p.m.)

1                    <u>CERTIFICATE OF OFFICIAL COURT REPORTER</u>

2

3              I, Nancy J. Meyer, Registered Diplomate Reporter,

4     Certified Realtime Reporter, do hereby certify that the above

5     and foregoing constitutes a true and accurate transcript of my

6     stenograph notes and is a full, true, and complete transcript

7     of the proceedings to the best of my ability.

8

9                        Dated this 7th day of June, 2022.

10

11                   /s/ Nancy J. Meyer
                     Nancy J. Meyer
12                   Official Court Reporter
                     Registered Diplomate Reporter
13                   Certified Realtime Reporter
                     333 Constitution Avenue Northwest
14                   Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25