## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES** | * | |
| **v.** | | |
| | * | **Case No.  21-CR-175-3 (TJK)** |
| **ZACHARY REHL,** | | |
| **Defendant** | * | |
| | ***** | |

## MOTION TO DISMISS COUNTS ONE, TWO AND FOUR AS DUPLICITOUS AND VIOLATIVE OF HIS CONSTITUTIONAL RIGHTS

Zachary Rehl, by his undersigned counsel, hereby moves to dismiss the conspiracy counts in the Third Superseding Indictment (the "Indictment") (ECF 380) on the ground that each of the counts is duplicitous.  Count One charges a seditious conspiracy (18 U.S.C. § 2384).  Count Two charges a conspiracy to obstruct an official proceeding (18 U.S.C. § 1512(k)).  Count Four charges a conspiracy to prevent an officer from discharging any duties (18  U.S.C. § 372).  While the Indictment alleges a single conspiracy, in fact the allegations involve three or more separate agreements:

(1) a plan involving Tarrio and an unnamed person related to a document titled *1776 Returns* (Indictment, ¶41);

(2) a plan involving Tarrio, Biggs and Nordean (Indictment, ¶¶ 63-65);

(3) a plan involving Pezzola and Donohoe (*Id.* at ¶¶ 86-88).

Mr. Rehl was not aware of nor participated in any of these plans.  He did not use force, destroy property, or commit any violence.  He is not alleged to have entered the Capitol until after the proceedings had been suspended for more than 30 minutes.  He

did not prevent anyone from discharging his or her official duties on January 6.

## I.     Factual Background

All three conspiracy counts rely on "introductory allegations" set out in ¶¶ 1-24 and on factual allegations set out in ¶¶ 29-108 ("Acts in Furtherance of the Conspiracy") of the Indictment.  All three conspiracies charge with Mr. Rehl and the other named defendants, Tarrio, Nordean, Biggs and Pezzola, along with other persons known and unknown to the Grand Jury.  All three conspiracies allege that the offense took place from December 2020 through January 2021, in the District of Columbia and elsewhere.  The first act in furtherance of the conspiracy is alleged to have taken place on December 19, 2020. *Id.* at ¶ 29.

As to Mr. Rehl, none of the acts allege that he destroyed property, pushed aside police barriers, battled law enforcement, assaulted anyone, or forced himself into the Capitol.  The Indictment also does not allege that Mr.  Rehl used force in any fashion; that he intimidated anyone; that he threatened anyone; or that he directed anyone to do any of those things.  The Indictment also does not allege that Mr. Rehl possessed any weapons on January 6.

### A.     Seditious Conspiracy - 18  U.S.C. § 2384

Count One of the Indictment charges that Mr. Rehl and the four named defendants knowingly conspired "to oppose by force the authority of the Government

of the United States and by force to prevent, hinder, and delay the execution of any law of the United States." *Id*. at¶26.

### B.   Conspiracy to Obstruct Proceeding - 18 U.S.C. § 1512(k)

Count Two charges that Mr. Rehl and the four named defendants knowingly conspired "to corruptly obstruct, influence, and impede and official proceeding, that is the Certification of the Electoral College vote." *Id.* at ¶110.

### C.   Conspiracy to Prevent an Officer from Discharging Any Duties – 18 U.S.C. § 372

Count Four charges that Mr. Rehl and the four named defendants knowingly conspired to

> prevent by force, intimidation, and threat, any person, that is, Members of Congress and law enforcement officers, from discharging any duties of any office, trust and place of confidence under the United States and to induce by intimidation, and threat, any officer of the United States, that is, members of the United States Congress and law enforcement officers, to leave the place where their duties as officers were required to be performed.

*Id*. at ¶ 114.

### D.   Multiple Independent Plans

A conspiracy is a criminal agreement, express or implied, to commit one or more illegal acts. *See Braverman v. United States*, 317 U.S. 49, 53 (1942). Here, all three conspiracies incorporate the same factual allegations set out in Count One at ¶¶ 1-24

and 28-108.  However, it is clear from the Indictment, the pleadings and other filings in the case and the discovery produced that the government has failed to allege a single conspiracy that involves a single common plan that involved Mr. Rehl.

The Indictment explicitly alleges the existence of two separate plans.  The first one is the one allegedly set out in the document *1776 Returns*, which "set forth a plan to occupy a few crucial buildings in Washington, D.C."  *Id.*  at ¶ 42.  That plan involved Tarrio and an unnamed individual.  *1776 Returns*, which was produced in discovery, does not propose occupying the Capitol, nor does it even mention the Capitol.[1]  The government has acknowledged that Tarrio did not share *1776 Returns* or discussed it with Mr.  Rehl or the other named defendants.

The second explicit plan involved Biggs, Nordean and Tarrio:

> We just had a meeting woth (sic) a lot of guys. Info should be coming out" and then posted "Just spoke with Enrique" . . .
> At approximately 9:20 p.m., Biggs posted a message on the New MOSD Leaders Group that read, "*We have a plan*. I'm with rufio [Nordean]." Donohoe responded, "What's the plan so I can pass it to the MOSD guys." Bigg responded, "I gave Enrique a plan. The one I told the guys and he said he had one."
>
> At 12:01 a.m. on January 6, 2021, Tarrio posted a message on the New MOSD Leaders Group.  At 12:03 a.m.,

---

[1]  *1776 Returns* was filed as an exhibit by Mr. Rehl (ECF 401-1), filed 6/15/22.

Donohoe posted, "Standby" and then reposted the instructions that had been issued in the Boots on Ground group and the New MOSD Members Group regarding the plan to meet at the Washington Monument at 10 a.m.

Indictment at ¶¶ 63, 65, 67.

Mr. Rehl was not part of the group that met with Biggs that evening. The only information that was communicated to him about this "plan" was to meet at the Washington Monument at 10 am. Indeed, after Biggs posted about the plan, Mr. Rehl responded to Biggs "If we still have plans to break off in teams, we can pick them there on the spot obviously." (Bates #21CR175_00006718). The plan to break off in smaller teams was one discussed in the December 30 MOSD zoom meeting to avoid the chaos that had occurred on December 12.

A third implicit plan appears to involve Pezzola and Donohoe where Pezzola snatched a riot shield, and he and Donohoe paraded around with it and later allegedly used it to break a window. Indictment at ¶¶ 86-88, 93. Mr. Rehl was not involved in that plan and later on January 6, Mr. Rehl expressed surprised that the person who had snatched a shield was a member of the Proud Boys. The discovery reflects that Mr. Rehl did not know or interact with Pezzola, who had only recently become a member of the Proud Boys in New York State.

5

Thus, instead of alleging a single common plan, the government has strung together a series of acts and statements that impermissibly allege multiple, separate independent agreements into a single conspiracy.

## II.    The Law

An indictment is duplicitous if it joins in a single count two or more offenses. *See Kotteakos v. United States,* 328 U.S. 750 (1946) (reversing conviction where indictment charged single conspiracy and proof established several).  As the Supreme Court has explained, the government cannot

> string together, for common trial, [multiple] separate and distinct crimes, conspiracies related in kind though they might be, when the only nexus among them lies in the fact that one man participated in all. . . . The dangers for transference of guilt from one to another across the line separating conspiracies, subconsciously or otherwise, are so great that no one really can say prejudice to substantial right has not taken place.
> . . .
> That right, in each instance, was the right not to be tried en masse for the conglomeration of distinct and separate offenses committed by others as shown by this record.

*Kotteakos v. United States,* 328 U.S. at  773-775; *see also* Fed.R.Crim.P. 8(a).

A duplicitous indictment obscures the specific charges against a defendant and violates various rights, guaranteed under the Fifth and Sixth Amendments to the United States Constitution.

6

> [I]n determining whether fairness requires dismissal of an indictment which includes in one count what could be several independent charges, the Court must measure that indictment against the purposes of the prohibition against duplicity. These purposes include generally: (1) the prevention of double jeopardy, (2) an assurance of adequate notice to the defendant, (3) the provision of a basis for appropriate sentencing, and (4) the danger that a conviction was produced by a verdict that may not have been unanimous as to any one of the crimes charged.

*United States v. Shorter,* 809 F.2d 54, 58 n. 1 (D.C. Cir. 1987); *see also United States v. Sturdivant*, 244 F.3d 71, 75 (2nd Cir. 2001) (count charging two separate drug transactions duplicitous).

Duplicity also raises the risk of prejudicial evidentiary rulings because evidence admissible on one offense could be inadmissible on the other offense. *Kotteakos*, 328 U.S. at 765-67 ("burden of defense to a defendant, connected with one or a few of so many distinct transactions, is vastly different not only in preparation for trial, but also in looking out for and securing safeguard against evidence affecting other defendants, to prevent its transference as 'harmless error' or by psychological effect, in spite of instructions for keeping separate transactions separate"); *United States v. Bowline,* 593 F.2d 94, 947-48 (10th Cir. 1979) (duplicitous indictment fatal because charging several defendants with several different conspiracies in one count created prejudicial effect of evidence not relevant to each separate conspiracy).

7

A duplicitous Indictment prevents the jury from separately deciding guilt or innocence creating uncertainty as to whether the jury verdict resulted from a unanimous jury decision in violation of the Fifth and Sixth Amendments. *See Bins v. United States,* 331 F.2d 390 (5th Cir.), *cert. denied,* 379 U.S. 880 (1964).

## III.   The Conspiracy Counts Should Be Dismissed

The rationale for dismissing a single conspiracy count which, in fact, encompasses multiple conspiracies is based on the concept of impermissible variance of proof at trial. *See Stirone v. United States*, 361 U.S. 212 (1960).  To determine whether a single conspiracy charge is duplicitous, courts consider such factors as the nature of the scheme, the identities of the parties, and the commonality of the time and goals. *United States v. Zemek*, 634 F.2d 1159, 1168 (9th Cir. 1980), *cert. denied*, 450 U.S. 916 (1981). If the count is duplicitous, the court must, at a minimum, order the government to elect between the separate offenses joined in that count to avoid a variance of proof at trial. *United States v. Droms*, 566 F.2d 361, 363 n.1 (2nd Cir. 1977); *Reno v. United States*, 317 F.2d 499, 502 (5th Cir.), *cert. denied*, 375 U.S. 828 (1963).  Failure to order an election of offenses would in effect deny the defendant a right to a unanimous verdict on each offense charged.  *United States v. Warmer*, 428 F.2d 730, 735 (8th Cir. 1970), cert. denied, 400 U.S. 930 (1970).

## IV.   The Duplicitous Indictment Violates Mr. Rehls' Constitutional Rights

While the Indictment charges a single conspiracy, the government has impermissibly expanded the charged conspiracy to include other persons and transactions in a manner that violates Mr. Rehl's rights under the Fifth Amendment's grand jury and due process clause and his Sixth Amendment rights to confront witnesses and to present a defense. *See, e.g.*, *United States v. Anderson,* 39 F.3d 331, 347 (D.C.Cir.1994), *rev'd in part en banc,* 59 F.3d 1323 (D.C.Cir.1995) (core hub conspiracy with various unrelated suppliers "likely ... varied from the indictment's conspiracy count").

Much of the evidence that the government may seek to introduce relating to these other persons is in the form of out-of-court statements either referenced or recorded in various intercepted communications. The *1776 Returns* document is just such an out-of-court statement which the government has included as an act in furtherance of the conspiracy even though the document was not shared with any of the named defendants. Such out-of-court statements are inadmissible hearsay and their introduction would violate Mr. Rehl's rights under the Confrontation Clause unless the Court determines that they are admissible under the co-conspirator exception set out in Rule 801(d)(2)(e), FED. R. EVID. ("A statement is not hearsay if . . .[t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the

9

course and in furtherance of the conspiracy.").  If the evidence related to these other persons is not part of the charged conspiracy, then it does not meet the 801(d)(2)(e) admissibility standard.  Similarly, if such evidence is 404(b) "other crimes" evidence, by definition it is not "in furtherance of the conspiracy" as required for admissibility under § 801(d)(2)(e).  Even if the evidence of these multiple alleged agreements is not inadmissible hearsay, its introduction (given its expansive scope and unduly prejudicial nature), will nonetheless result in spillover prejudice and makes it impossible for Mr. Rehl to defend himself.  *See Kotteakos v. United States,* 328 U.S. 750 (1946) (reversing conviction where indictment charged single conspiracy and proof established several).  This is not a theoretical problem.  It is clear from the fact that Mr. Rehl did not use force, destroy property, battle with law enforcement, or assault anyone that the spillover effect of the acts and words of others will be highly prejudicial to him.

Before allowing the government to introduce evidence of the multiple agreements, the Court should require the government to make a showing that the multiple agreements it claims constitute a single charged conspiracy. If the government is unable to make the necessary showing, the Court should dismiss the Indictment as duplicitous.  Or in the alternative, require the government to elect among the conspiracies. *See, e.g., Franklin v. United States*, 330 F.2d 205, 206-207 (D.C. Cir. 1963).  In *Frankin*, the D.C. Circuit explained the remedy for duplicity:

10

there is no indication from the indictment as to whether the grand jury charged one or several rapes. The defendants, however, did not move for a bill of particulars to require the Government to disclose what it intended to prove under the charge. If the Government had disclosed before trial that the count embraced not one but four rapes, the count may have been subject to dismissal on the ground of duplicity and misjoinder. See Rule 8(a) and (b), F.R.Cr.P.; 4 Wharton, Criminal Law and Procedure § 1860 (1957). At least the Government may have been required to elect the rape on which it intended to rely for conviction.

*Id.*

In addition, the Court should require the government to produce the grand jury minutes to satisfy itself that the proof sought to be introduced by the government is not at variance with the conspiracy charged in the Indictment returned by the Grand Jury. Given the multiple number of agreements and the extent of such evidence (including out of court statements), Mr. Rehl is certain to be prejudiced by its spillover effect. *See, e.g.*, *Kotteakos, supra*; *United States v. Anderson,* 39 F.3d 331, 347 (D.C.Cir.1994), *rev'd in part en banc,* 59 F.3d 1323 (D.C.Cir.1995) (core hub conspiracy with various unrelated suppliers "likely ... varied from the indictment's conspiracy count").

WHEREFORE, Mr. Rehl respectfully moves that this Honorable Court (1) dismiss the Indictment as duplicitous; (2) require the Government to elect from among the various conspiracies it is seeking to prove; (3) require the government to make a

11

showing that the charges involve a single rather than multiple conspiracies and require the Government to produce the Grand Jury minutes so this Honorable Court can determine whether the Government is unconstitutionally amending and varying the Grand Jury charge.

Respectfully submitted,

/s/ Carmen D. Hernandez

**Carmen D. Hernandez**
Bar No. MD 03366
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this Motion was served on all counsel of record via ECF this 19th day of August, 2022.

/s/ Carmen D. Hernandez
**Carmen D. Hernandez**