UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) |
|  | ) Case No. 1:21-cr-175-TJK |
| v. | ) |
|  | ) |
| ETHAN NORDEAN, et al., | ) |
|  | ) |
| Defendants. | ) |

**DEFENDANT NORDEAN'S MOTION TO JOIN AND SUPPLEMENT MOTIONS TO DISMISS FILED BY DEFENDANTS TARRIO AND REHL**

Defendant Nordean, through his counsel, moves the Court to join Defendant Tarrio's Motion to Dismiss (ECF No. 572) and Defendant Rehl's Motion to Dismiss (ECF No. 581). As Rehl argues, these motions show a "pattern of conduct by the government to keep exculpatory witnesses from the defendants—either intentionally or effectively." ECF No. 581, pp. 1-2.

The pattern goes beyond Lieutenant Lamond and the three witnesses identified by Rehl. As Nordean further elaborates below, it extends to Adrienna DiCioccio whose declaration Nordean filed this week. Notice of Government Intimidation of Defense Witness, ECF No. 579-1. The pattern extends further still.

Like DiCioccio, Shannon Rusch is a percipient witness to events on January 5, 2021 involving certain Defendants that are central to the upcoming trial. A former Navy SEAL, Rusch could offer testimony inconsistent with the government's case. Yet he has been placed in fear of testifying at trial. A prosecutor has communicated that Rusch's son may be charged with offenses in connection with January 6. Those potential charges appear to be dangling over Rusch and his son and, to counsel's knowledge, have been dangled for months. As in the case of a witness identified by Rehl, whose sentencing was delayed at the behest of the government such

1

that the witness would be unavailable at the trial here through invocation of his Fifth Amendment privilege (ECF No. 581, pp. 3-5), the prosecutor assigned to the case of Rusch's son is also AUSA Jason McCullough, according to information provided to the defense.

Considered together, the following means appear to be components of a government effort to limit and alter testimony at trial that favors the defense and to restrict the public's pretrial access to information inconsistent with the government's public allegations:

- Warning potential witnesses who could offer exculpatory testimony at trial that they could be charged—or similarly warning the family members of such witnesses—and temporally linking the content of the witness's statements regarding the Defendants to the witness's own potential liability;

- Attempting to elicit inaccurate testimony from witnesses by instructing them about where the government wants to "get to" with their statements regarding the Defendants' "conspiracy";

- Designating as "sensitive" or "highly sensitive" discovery documents inconsistent with the government's allegations such that Defendants cannot publicly file the materials and thus enable the public and press to serve as a fact-correcting and witness-identifying mechanism;

- Delaying the sentencing proceedings of witnesses with potentially exculpatory testimony such that the witnesses would invoke their privilege against self-incrimination at trial here and be made unavailable.

*

DiCioccio's November 4, 2021 interview was also conducted by AUSA McCullough. Decl. of Adrienna DiCioccio, ECF No. 579-1. On December 9, the government filed a defense of her interview. ECF No. 580. Shorn of its adjectives, the government's filing appears to make

four basic claims about her declaration. They are false, misleading, or tu quoque designed to change the subject. DiCioccio's interview was not "a completely appropriate interaction between" the prosecutors on this case and the witness. *Id.*, p. 1.

First, the government appears to contend that it was telling and/or inappropriate for Nordean to file DiCioccio's declaration as a notice without simultaneously moving for specific relief. ECF No. 580, p. 1. As the Court and all parties to this proceeding know, that is disingenuous. Before making that claim, the government had accused Nordean's counsel of falsely representing in court that the government had intimidated a defense witness. According to the government, the proof of falsity lay in counsel's failure to file a sworn declaration to substantiate witness intimidation. So, to the government, if counsel files no evidence supporting his assertions, it is justified in accusing him of making false statements. At the same time, if counsel does file such evidence, it is "perplexing" and the "latest in a series of inflammatory and unsubstantiated allegations of government misconduct. . ." *Id.* As with its conspiracy allegations in this case, the government appears to have no set positions or beliefs here, only continuously shifting accusations that make use of whatever information the government believes it may file without instant contradiction.

Second, to contrive more outrage the government itself makes a statement that appears to be designed to mislead the Court. Its misleading nature is shown by a simple comparison of filings in the public record.

**Nordean's filing**:

"On December 2, counsel added there was evidence that **after** one such witness informed the government that she did not agree with the government's claim that Nordean and others had conspired to attack the Capitol or use violence on January 6, a government prosecutor **only then announced—in the same November 2021 interview**—that the witness would be prosecuted for an offense."

3

ECF No. 579, p. 1 (emboldening added).

### **Government's filing:**

"Moreover, Nordean asserts that **only after** Ms. DiCioccio 'informed the government that she did not agree with the government's claim that Nordean and others had conspired to attack the Capitol or use violence on January 6, a government prosecutor only then announced—in the same November 2021 interview—**that the government decided that she would be prosecuted for an offense** . . ."

ECF No. 580, p. 2 (emboldening added).

The government goes on to contend that the above statement filed by Nordean's counsel was "false" because in an interview prior to the November 2021 interview at issue, DiCioccio herself asked the government, "Should I be really scared?" and an AUSA then involved in the investigation[1] replied that there were unspecified criminal charges "out there" and "the investigation is ongoing." ECF No. 580, p. 3.

The Court will notice several things about AUSA Erik Kenerson's characterization of the statement at issue made by Nordean's counsel.[2]  First, the Court will notice that the AUSA began to quote Nordean's filing midsentence and that where Nordean had written "after one such witness informed the government . . . ," the AUSA wrote, "Nordean asserts that *only* after Ms. DiCioccio 'informed the government . . ." To sustain the misleading claim that Nordean had made a "false statement," the AUSA may have felt compelled to add "only after" to Nordean's filing because where the defendant later states that "a government prosecutor only then announced" that DiCioccio would be charged for an offense, he made explicit that the relevant frame of reference was "in the same November 2021 interview." ECF No. 579, p. 1.

Second, the Court will notice that although the AUSA purports to be quoting Nordean's

---

[1] The AUSA is one among multiple Assistants involved in the Proud Boys investigation who have subsequently withdrawn their appearances.

[2] AUSA Kenerson signed the document filed at ECF No. 580 and appears to be its author.

4

filing at ECF No. 579, he in fact alters the text of what Nordean filed. Where Nordean's filing stated, ". . . a government prosecutor only then announced—in the same November 2021 interview—*that the witness would be prosecuted for an offense*" (ECF No. 579, p. 1) (emphasis added), the AUSA substituted in, ". . . a government prosecutor only then announced—in the same November 2021 interview—*that the government decided that she would be prosecuted for an offense.*" ECF No. 580, p. 2 (emphasis added).

Misleading alterations aside, as further shown below it was the government's temporal linking of the content of the witness's statements about Nordean to her own potential liability in the November 2021 interview that was improper, not the bare fact that the witness's liability had been mentioned by the government in any connection. Nordean's filing plainly conveyed that the relevant frame of reference was the November 2021 interview.

Third, the government states that Nordean's counsel represented that DiCioccio was a "'defense witness' at the time the interviews occurred." ECF No. 580, p. 2. The government does not cite any filing or transcript for that claim. That is because while Nordean's counsel has repeatedly advised that DiCioccio is a defense witness—a demonstrably true fact—he did not state that prior to the November 2021 interview the defense had requested her attendance at trial. Again, however, that distinction is one of deflection. Once the government was informed by the witness that she (a) was a percipient witness to a key episode in the investigation and (b) disagreed with the factual accuracy of core components of the government's case, the witness was at the least a potential and indeed likely defense witness. That is precisely why the government's prosecutors took the unusual step of traveling across the country to personally interview DiCioccio—who was hostile to the government's case—taking control of the investigative function.

5

Fourth and finally, the government's filing briefly addresses the merits of whether DiCioccio's November 2021 interview was appropriate. ECF No. 580, p. 4. It states that when a prosecutor advised DiCioccio that she would likely be charged with obstruction of justice, after hearing the witness contradict the government's factual claims about Nordean, that was "unremarkable" because at one point in the exchange the prosecutor denied the claim of DiCioccio's partner that the government was threatening to charge her if she did not provide information that the government wanted. ECF No. 580, p. 4.

Nordean concedes that the prosecutor did not say to DiCioccio, "If you do not change your statements about the Airbnb on January 5, you will be charged with obstruction of justice." He also concedes that such a statement would present clearer impropriety than the implied intimidation that occurred. But, of course, in every case but that involving the government's own conduct, the government would not agree that initimidation or pressure only occurs in cases of explicit if/then statements. If a defendant announces to a shopowner, "nice business you got there, it would be a shame if something happened to it," the government does not drop its extortion case when defense counsel observes that there was no if/then statement. DiCioccio's statement affirms that her understanding of the conversational mixing of her recollection of Nordean's activities on January 5, 2021 with her own personal liability was that "I would be prosecuted if I didn't give the government what it wanted." ECF No. 579-1, p. 2. That was also the understanding, independently arrived at, by DiCioccio's partner, who was in the room. *Id.*

The government understands the concept of the implicit meeting of minds. Indeed, its plea agreements in this investigation turn on the notion that one party's "understanding" or "belief" regarding an interaction between that party and another is sufficient to demonstrate an objective meeting of the minds. *E.g.*, Charles Donohoe's Statement of the Offense, ECF No.

6

336, p. 8 (Donohoe "understood that Nordean and Biggs were searching for an opportunity to storm the Capitol"). In addition, the government does not appear to contest DiCioccio's statement that an agent called her after the November 2021 interview to suggest that the prosecutor's announcement of an obstruction of justice charge was inflated. ECF No. 579-1, pp. 2-3. The agent did not place his call because the interview was "a completely appropriate interaction between" the prosecutors on this case and the witness. ECF No. 580, p. 1. It appears that the call was placed to clean up the interview which probably should have been conducted by agents alone. Accordingly, the government pressured and intimidated DiCioccio and has provided no factual basis to dispute it.

Dated: December 10, 2022

Respectfully submitted,

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith, D.C. Bar No. 1029802
1123 Broadway, Suite 909
New York, NY 10010
(917) 902-3869
nds@davidbsmithpllc.com
*Counsel to Ethan Nordean*

## Certificate of Service

I hereby certify that on the 10th day of December, 2022, I filed the foregoing filing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

    Jim Nelson

Assistant United States Attorney
555 4th Street, N.W., Room 4408
Washington, D.C. 20530
(202) 252-6986

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com