# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA,**

*v.*

**DOMINIC PEZZOLA,**

*Defendant.*

No. 1:21-cr-175 (TJK)

PEZZOLA'S PROPOSED LIMITING INSTRUCTION RELATING TO WITNESSES GUILTY PLEAS

Defendant Pezzola, by and through his undersigned counsel, offers the following proposed limiting instruction regarding witness guilty pleas.  Defendant's counsel has exchanged drafts and ideas with the prosecution, and reports that the precise language of this instruction is contested by the government.  (Proposals by the United States, with discussion, are provided below Pezzola's proposed instruction. Pezzola's proposal contains some language proposed by the government.

> **You have heard testimony that certain witnesses, namely Matthew Greene and Jeremy Bertino, pled guilty to certain charges relating to January 6.  The evidence regarding their guilty pleas was admitted for limited purposes relating to those witnesses' credibility, or those witnesses' acknowledgment of p**articipation in certain events.  **You may not use the fact that either witness entered a guilty plea, nor the fact that I accepted those pleas, as evidence of the guilt of any defendant on trial in this case.**
>
> **Remember that people have many reasons for pleading guilty to charges, including convenience, risk aversion, family pressures, financial concerns, or influence by attorneys.  And courts sometimes accept guilty pleas for reasons unrelated to the guilt or innocence of parties.**

Below is the government's proposed instruction, with footnotes to Defendant's analysis regarding why the government's language is inappropriate:

## GOVERNMENT'S PROPOSED LANGUAGE

1

**You have heard testimony that certain witnesses, namely Matthew Greene and Jeremy Bertino, pled guilty to certain charges relating to January 6.  The** evidence regarding their guilty pleas **was admitted for limited purposes relating to those witnesses' credibility, or those witnesses' acknowledgment of** their role in the offense.[1]  The government is permitted to enter into this kind of plea agreement, and it is also permitted to present witnesses who testify that they participated in the offenses charged against the defendants.[2] [3] **You may not use the fact that either witness entered a guilty plea,** nor the fact that I accepted those pleas, as evidence of **the guilt of any defendant on trial in this case.**  I will instruct you further at the end of trial regarding your consideration of testimony from a witness with a plea agreement.

### FINAL POINTS

The admission of an alleged co-conspirator's guilty plea to conspiracy charges is extremely

prejudicial.  Some case law, however, allows a witness's guilty plea to be introduced as evidence of

---

[1] The phrase "acknowledgment of their role in the offense" wrongly assumes there was an "offense" involving defendants ("the" offense) and that Greene and Bertino played a 'role' in "the" offense of the defendants.  This violates due process.  *U.S. v. Tarantino*, 846 F.2d 1384, 1405 (DC Cir. 1988) ("A government witness' guilty plea obviously may not be used as substantive evidence of the guilt of defendants . . ."); *United States v. Leach*, 918 F.2d 464, 467 (5th Cir. 1990) ("Our precedents have made it abundantly clear that evidence about the conviction of a coconspirator is not admissible as substantive proof of the guilt of a defendant."); *United States v. Miranda*, 593 F.2d 590 (5th Cir.1979); *United States v. Harrell*, 436 F.2d 606 (5th Cir.1970) (citing, inter alia, *LeRoy v. Government of Canal Zone*, 81 F.2d 914 (5th Cir.1936)), cert. denied, 409 U.S. 846 (1972) ("We consistently have held a prosecutor's reference to such convictions to be plain error"); *United States v. Corona*, 551 F.2d 1386 (5th Cir.1977).  It is fundamental that the guilt of a coconspirator may not be used to establish the guilt of a defendant. *United States v. Baez*, 703 F.2d 453, 455 (10th Cir.1983). "If the [coconspirator] testifies, however, either the government or the defense may elicit evidence of a guilty plea for the jury to consider in assessing the [coconspirator's] credibility as a witness." Id. Instructions that specifically limit the use of a coconspirator's guilty plea to that of assessing credibility should be given, and the failure to do so may rise to the level of plain error. Id.; *United States v. Austin*, 786 F.2d 986, 991 (10th Cir.1986).
[2] First, this language delves unnecessarily into what the government is permitted to do. Irrelevant even if true. Then it again assumes there were offenses that have been proven, and that "the" offenses were the same as "charged" against the defendants.  Plainly invades the province of the jury and wrongly suggests the offenses alleged in the trial have been previously proven.
[3] *United States v. Leach*, 918 F.2d 464, 467 (5th Cir. 1990) ("Our precedents have made it abundantly clear that evidence about the conviction of a coconspirator is not admissible as substantive proof of the guilt of a defendant."); *United States v. Miranda*, 593 F.2d 590 (5th Cir.1979); *United States v. Harrell*, 436 F.2d 606 (5th Cir.1970) (citing, inter alia, *LeRoy v. Government of Canal Zone*, 81 F.2d 914 (5th Cir.1936)), cert. denied, 409 U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86 (1972) ("We consistently have held a prosecutor's reference to such convictions to be plain error"); *United States v. Corona*, 551 F.2d 1386 (5th Cir.1977).  It is fundamental that the guilt of a coconspirator may not be used to establish the guilt of a defendant. *United States v. Baez*, 703 F.2d 453, 455 (10th Cir.1983). "If the [coconspirator] testifies, however, either the government or the defense may elicit evidence of a guilty plea for the jury to consider in assessing the [coconspirator's] credibility as a witness." *Id.* Instructions that specifically limit the use of a coconspirator's guilty plea to that of assessing credibility should be given, and the failure to do so may rise to the level of plain error. *Id.*; *United States v. Austin*, 786 F.2d 986, 991 (10th Cir.1986).

<u>that</u> witnesses' credibility or lack of credibility—so long as a strenuous limiting instruction is given.[4] A guilty plea can never (lawfully) be used as evidence of guilt of a defendant on trial, or as proof of a conspiracy among defendants. In this case, prejudice is even more serious than in any other published case, because the prosecution emphasized that the sitting judge in the trial has already approved the existence of a conspiracy regarding Greene and Bertino.

**Greene and Bertino were wrongly convicted.**

Pezzola submits that Greene and Bertino were wrongly convicted and that the Court should not have accepted their false guilty pleas. The facts show that in each case, these innocent witnesses were tricked or intimidated into signing plea deals in order to get out of wrongful prison terms.

Pezzola submits that the jury should be instructed regarding the fallibility of guilty pleas as a reflection of true guilt even regarding Greene and Bertino.  This is especially true in today's atmosphere of increased sovietization of the criminal courts and near omnipotent control over criminal justice by the United States government.

Thus, Pezzola's proposed last two sentences are vital for the jury's understanding:

**Remember that people have many reasons for pleading guilty to charges,[5] including convenience, risk aversion, family pressures, financial**

---

[4] There is some case law that purports to allow the admission of a witness' guilty plea as evidence of that witness' "acknowledgment of his role in the offense."  Pezzola strenuously objects to such a notion and submits that this cannot be the law.  Could a witness' guilty plea to aiding and abetting a specific defendant's crime be admitted in the trial of the latter defendant as proof of the witness' "acknowledgment of his role in the offense"?  Such a notion would defy the power of any limiting instruction to counteract the prejudicial impact of such evidence.

[5] See, e.g., *United States v. Thomas*, 541 F.Supp.2d 18 (D.D.C. 2008) (counsel's advice that defendant plead guilty was reasonable strategy, reflecting counsel's assessment that defendant's claim of innocence would not be believed); *Rhoades v. State*, 880 N.W.2d 431, 437 (Iowa 2016) ("Increasingly, there is empirical evidence to support the assertion that innocent  people sometimes plead guilty."); *North Carolina v. Alford*, 400 U.S. 25 (1970) (an accused may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, or even if his guilty plea contains a protestation of innocence, when, as here, he intelligently concludes that his interests require a guilty plea and the record strongly evidences guilt). *See also Rhoades v. State*, 880 N.W.2d 431, 449 (Iowa 2016);*Christian v. Ballard*, 792 F.3d 427, 444 (4th Cir.2015) and *Brady v. United States*, 397 U.S. 742, 752 (1970). As noted by the United States Supreme Court in *Brady*, factors favoring pleas include risk avoidance, conservation of prosecution and court resources, efficiency, and timeliness of disposition. 397 U.S. 742, 752 (1970).

**concerns, or influence by attorneys.[6]  And courts sometimes accept guilty pleas for reasons unrelated to the guilt or innocence of parties.[7]**

---

[6] Frank H. Easterbrook, *Plea Bargaining as Compromise*, 101 Yale L.J. 1969, 1975 (1992) ("So plea bargaining helps defendants. Forcing them to use their rights at trial means compelling them to take the risk of conviction or acquittal; risk-averse persons prefer a certain but small punishment to a chancy but large one. Defendants also get the process over sooner, and solvent ones save the expense of trial. Compromise also benefits prosecutors and society at large."); Robert E. Scott & William J. Stuntz, *Plea Bargaining as Contract*, 101 YALE L.J. 1909 (1992) ("risk averse defendants, meaning in part innocent ones, might well avoid the possibility of conviction at trial even at the cost of accepting a deal that treats them as if they were certain to be convicted at trial."). Kevin C. McMunigal, *Guilty Pleas, Brady Disclosure, and Wrongful Convictions*, 57 Case W. Res. L. Rev. 651, 656 (2007) (Many scholars now recognize that at least in some circumstances, an innocent person may rationally decide to plead guilty); see also John H. Blume & Rebecca K. Helm, *The Unexonerated: Factually Innocent Defendants Who Plead Guilty*, 100 Cornell L. Rev. 157, 180 (2014) [hereinafter Blume & Helm];; see also *Why Are People Pleading Guilty to Crimes They Didn't Commit?*, Innocence Project (Nov. 25, 2015), www.innocenceproject.org/news-events-exonerations/2015/why-are-people-pleading-guilty-to-crimes-they-didn2019t-commit/.

[7] Numerous courts have concluded that they should not 'force any defense on a defendant in a criminal case,' particularly when advancement of the defense might 'end in disaster.' *Tremblay v. Overholser*, 199 F.Supp. 569, 570 (DC 1961).  Since 'guilt, or the degree of guilt, is at times uncertain and elusive,' '(a)n accused, though believing in or entertaining doubts respecting his innocence, might reasonably conclude a jury would be convinced of his guilt and that he would fare better in the sentence by pleading guilty. . .' *McCoy v. United States*, 363 F.2d 306, 308 (DC Cir. 1966). As one state court observed nearly a century ago, '(r)easons other than the fact that he is guilty may induce a defendant to so plead, . . . (and) (h)e must be permitted to judge for himself in this respect.' *State v. Kaufman*, 580, 2 N.W. 275, 276 (Iowa 1879) (dictum). See also *Griffin v. United States*, 405 F.2d 1378 (DC Cir. 1968); *Bruce v. United States*, 379 F.2d 113, 119—120 (D.C. Cir. 1967); *City of Burbank v. General Electric Co.*, 329 F.2d 825, 835 (9th Cir. 1964) (dictum); *State v. Martinez*, 403 P.2d 597, 602—603 (Id. 1965); *People v. Hetherington*, 379 Ill. 71, 39 N.E.2d 361 (1942); *State ex rel. Crossley v. Tahash*, 116 N.W.2d 666, 672 (Minn. 1962); *Commonwealth v. Cottrell*, 249 A.2d 294 (Pa. 1969). Cf. United States ex rel. Brown v. LaVallee, 424 F.2d 457 (2nd Cir. 1970).

And it is well documented that judges regularly accept false guilty pleas.  See Hon. Jed S. Rakoff, *Why Innocent People Plead Guilty*, N.Y. Rev. Books (Nov. 20, 2014), www.nybooks. com/articles/2014/11/20/why-innocent-people-plead-guilty/.  In 2015, for example, the National Registry of Exonerations reported that 65 out of 149 exonerations arose from guilty pleas. The National Registry of Exonerations, *Exonerations in 2015* 1 (2016), www.law.umich.edu/special/exoneration/Documents/Exonerations_in_2015. pdf. Thirteen percent of all wrongful convictions listed in the National Registry of Exonerations are the result of guilty pleas. The National Registry of Exonerations, *The First 1,600 Exonerations* 2 (2015), www.law.umich. edu/special/exoneration/Documents/1600_Exonerations.pdf (collecting data from 1600 exonerations occurring between January 1989 and May 2015). According to the Innocence Project, 31 of the 330 postconviction DNA exonorees pled guilty to serious crimes. Alexandra Natapoff, Negotiating Accuracy: DNA in the Age of Plea Bargaining 3 & n. 15 (forthcoming 2016) [hereinafter Natapoff, Negotiating Accuracy ], http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2693218.

Additional evidence that guilty pleas may be inaccurate can be found in the record of mass exonerations arising from the Rampart and Tulia investigations in California and Texas. See Russell Covey, *Police Misconduct as a Cause of Wrongful Convictions*, 90 Wash. U. L. Rev. 1133, 1137–41 (2013) [hereinafter Covey, Police Misconduct ].  In these mass exonerations, defendants pled guilty eighty-one percent of the time. Id. at 1163. These defendants no doubt pled guilty because they feared they would do much worse if they proceeded to trial. Id. at 1166. The Rampart and Tulia experiences suggest that the problem of wrongful conviction is not limited to those who contest their guilt at trial and that in the context of these episodes, at least, the method of conviction made little difference to the reliability of the underlying conviction. Id. at 1163. *Corley v. United States*, 556 U.S. 303, 321 (2009) ("[T]here is mounting empirical evidence that [interrogation tactics] can induce a frighteningly high percentage of people to confess to crimes they never committed....")

Dated: 02/26/2023

Respectfully Submitted,

*/s/ Roger Roots*

Roger Roots, Esq.

John Pierce Law

21550 Oxnard Street

3rd Floor, PMB #172

Woodland Hills, CA 91367

Tel: (213) 400-0725
rroots@johnpiercelaw.com

Attorney for Defendant

CERTIFICATE OF SERVICE

I hereby certify that this document is being filed on this  February 26, 2023, with the Clerk of the Court by using the U.S. District Court for the District of Columbia's CM/ECF system.  All attorneys of record will receive an electronic copy, including:


Erik Michael Kenerson

U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA

555 Fourth Street, NW, Suite 11-449

Washington, DC 20530

Telephone:  (202) 252-7201

Email: erik.kenerson@usdoj.gov


*/s/ Roger I. Roots*