IN THE UNITED STATES DISTRICT
COURT DISTRICT OF
COLUMBIA

**UNITED STATES OF AMERICA,**

*v.*

**DOMINIC PEZZOLA,**

*Defendant.*

No. 1:21-cr-175 (TJK)

**DEFENDANT PEZZOLA'S RENEWED DEMAND FOR DISMISSAL AND EVIDENTIARY HEARING**

**AND MEMORANDUM REGARDING THE GOVERNMENT'S NUMEROUS OFFENSES AND VIOLATIONS OF DUE PROCESS AND THE SIXTH AMENDMENT,**

**AND THE SCOPE OF CROSS-EXAMINATION OF SPECIAL AGENT MILLER**

***REQUEST FOR APPOINTMENT OF A SPECIAL MASTER AND/OR SPECIAL COUNSEL[1]**

COMES NOW Defendant Dominic Pezzola, by and through undersigned counsel, with this renewed motion and submission regarding recent developments. On March 10, 2023 the Court ordered further motions or briefing filed by Sunday, 3/12/2023 at 12:00 noon.

---

[1] Fed. R. Civ. P. 53(3) authorizes the appointment of a special master to "address pre-trial or post-trial matters that cannot be effectively and timely addressed by a judge or magistrate judge." 28 C.F.R.Chapter VI Part 600 provides that "he Attorney General, or in cases in which the Attorney General is recused, the Acting Attorney General, will appoint a Special Counsel when he or she determines that criminal investigation of a person or matter is warranted and - (a) That investigation or prosecution of that person or matter by a United States Attorney's Office or litigating Division of the Department of Justice would present a conflict of interest for the Department or other extraordinary circumstances." We ask the Court to request the United States commence this process.

Pezzola herein submits that (1) Special Agent Nicole Miller's messages[2] from fellow FBI agents[3] contain extremely casual discussions of evidence tampering, witness tampering, destruction of evidence, and fabrication and alteration of documents relating to CHSs among Miller and her FBI colleagues. (2) These acts constitute serious federal crimes including obstruction of official proceedings (18 U.S.C. 1512(c)), wire fraud (18 U.S.C. § 1343), honest services fraud (18 U.S.C. 1346), falsifying records (18 U.S.C. § 1001(a)), evading a taint team (18 U.S.C. 1505) and evidence tampering (18 U.S.C.1519). (3) The unceremonious and uninhibited nature of Miller's discussion of committing these serious crimes suggests an FBI culture of corruption and lawlessness that must be immediately stopped, and fully investigated.

Further, SA Miller's hidden messages reveal casual discussions among the FBI regarding the monitoring of codefendant Rehl's trial strategy, Rehl's defenses and "interesting" points, and ways the government can get around Rehl's defenses.[4] Contrary to assertions by the United States, this monitoring was explicitly intentional, knowing, systematic and willful ("need to find other emails").[5] Additionally, these messages indicate Miller's (and the FBI's) awareness that the government's conspiracy claims in this case are false[6] and that such allegations can only succeed by trickery and overzealousness by the U.S. Attorneys Office ("my AUSA[7] is just a little overzealous").

---

[2] It must be noted that SA Miller's messages were all on a LYNCS network channel specifically relating to Proud Boys cases. Thus, any claim that talk of 'destroying 338 pieces of evidence' or altering records to eliminate specific agents' names might apply to other cases is untrue.

[3] Counsel recalls that SA Miller seemed to have suspiciously deleted her own messages, while retaining the incriminating messages of her FBI colleagues.

[4] "found an email thread with REHL and his attorney MOSELEY. the attorney raised some interesting points and arguments"; "nope. he mentioned how the government did things improperly"

[5] Counsel recalls, but did not note, Miller's understanding that FBI colleagues were tracking Rehl's (and others'), emotional states, family relationships and financial conditions in real time, in order to exploit such pressures into getting false guilty pleas from codefendants.

[6] "The only conspiracy is The Conspiracy team conspiring against the other teams l"

[7] Assistant US Attorney United.

Special Agent Miller, of course, is the very agent who lied to Jeremy Bertino during the government's interrogation of Bertino, in order to trick Bertino into falsely pleading guilty to crimes he didn't commit.  (After Bertino repeatedly said there was never a plan among Proud Boys to enter the Capitol or disrupt Congress on Jan. 6, Miller deceptively misinformed Bertino that Enrique Tarrio had authored *"1776 Returns!"*—causing the shocked Bertino to falsely plead guilty and wrongly agree to cooperate and testify against Proud Boys.)

**The DOJ's false claim of "classified"**

In response to these revelations, the U.S. Attorneys Office merely says Agent Miller's messages are "classified" and demands that this FBI misconduct be concealed, withheld from the public and "clawed back." But if the documents are "classified," Agent Miller and her FBI colleagues <u>are guilty of mishandling classified materials</u>, as they casually discuss emailing the materials into <u>each others' personal accounts</u> ("OK I'll send that to you again. What's your personal email?").

Additionally,

(1)  After last Thursday's court session, counsel for the United States began altering their description of the materials in their emails to defense counsel, calling Agent Miller's messages "classified or other sensitive FBI information."  Defense knows of no designation entitled "sensitive FBI information" which justifies withholding such information from public scrutiny.
(2)  As of the time of this writing, government counsel has produced no logs, entries, or processes or descriptions of any logs, entries, or processes indicating the messages went through any type of "classification" processing, or "Vaughn affidavits" or the like.
(3)  From this, Defendant submits that the States' claims of "classified" are a ruse and a fabrication designed to withhold this evidence of FBI wrongdoing and bad faith from the public.
(4)  Even if these revelations were legitimately "classified," this would mean defendants are being deprived of important evidence in their case and being deprived of their right to put on a defense.  If so, accordingly, this case must be dropped by the United States.

**The path forward.**

Were this trial to go forward it would be a due process violation.  Given that there is evidence the government <u>carefully crafted its prosecution around defense strategy communications unlawfully, intentionally, systematically and deliberately</u> gained from attorney/client privileged communications, no new jury or new trial could cure the violations.

And given that FBI agents in this case have (1) engaged in evidence tampering by destruction of hundreds of pieces of evidence; (2) engaged in fabrication of records and evidence tampering by altering documents relating to a CHS; (3) knowingly monitored codefendants' and witnesses' financial and family situations in order to pressure them into testifying and cooperating, this case is fundamentally tainted beyond repair.

Accordingly, this case must be dismissed *en toto* and with prejudice.

Even if the Court were to overlook this massive trail of FBI corruption and the trial were to proceed, defendants have a **right to cross-examine Agent Miller** regarding all of these crimes, her missing emails, her discussions of violating defendants' 6th amendment rights, her discussions of evidence tampering, and her discussions of altering documents involving CHSs in this case.

Each of these revelations are admissible impeachment and credibility evidence for use on cross-examination. The Confrontation Clause of the Sixth Amendment secures a right to cross-examination in order to test "the believability of a witness and the truth of his testimony." *United States v. Carty*, 993 F.2d 1005, 1009 (1st Cir.1993). The right to cross-examine, however, is not unlimited.  When a witness's credibility is at issue, the trial court may limit cross-examination as long as the court allows "sufficient leeway to establish a reasonably complete picture of the witness' veracity, bias, and motivation." *United States v. Laboy–Delgado*, 84 F.3d 22, 28 (1st Cir.1996).

**All January 6 prosecutions should be paused for evidentiary hearings and investigations by a Special Master and Special Counsel.**

Special Agent Miller's discussion with other FBI agents of evidence- and witness tampering is so casual that it evidences a corrupt culture among the FBI, and cries out for the immediate halt to all January 6 prosecutions.  Not only did FBI agents examine attorney-client communications, but they did so knowingly, intentionally, and with intent to craft their cases in response to defenses evidenced in intercepted attorney/client communications ("I need to find other emails, . . ."). At no time did Agent Miller or any FBI agent rebuke or denounce a colleague during discussion of these crimes and violations by the FBI.

Further there is mention of evading a "taint team" in Miller's messages. Upon recollection and belief, Miller's fellow FBI agents indicate hopes to "avoid taint review"—meaning the FBI is explicitly making a mockery of Fourth, Fifth, and Sixth Amendment restrictions in order to wrongly convict the defendants. (e.g., "I'm hoping to avoid the taint review completely. . . .") Thus, the ad hoc creation of a new taint team would be pointless.

**Reminiscent of FBI's COINTELPRO**

On March 8, 1971, a cab driver, a day care provider, and two professors broke into an FBI office in Media, Pennsylvania, to rummage through FBI file cabinets. As activists in the antiwar movement the activists suspected they would find files on themselves and other dissidents. The group stole more than 1,000 classified documents.

Hunches proved correct.  The FBI had been engaging in massive unconstitutional surveillance aimed at disrupting dissidents of all kinds.  The files revealed an alternate universe among FBI spies and officials, where the constitution meant nothing, and virtually every limit on the Bureau's authority was systematically disregarded.

FBI tried to pressure newspapers to hush the story, but news ultimately broke of the FBI's Counter Intelligence Program — COINTELPRO —a covert program of spying, disruption, entrapment and illegal operations.[8]  Forgery, blackmail letters, illegal payments, threats, and illegal operations became evident throughout the files. FBI agents were even trying to blackmail Martin Luther King into committing suicide.  One purpose of COINTELPRO was to spread fear of the agency's lawlessness, and to "enhance paranoia" among critics of government.

**Fast forward to March 2023 in this case:** after fifty years, the horrors of FBI's cult of omnipotence has resurfaced.

The claim of "classified" has a notorious history in federal court dockets.  It is significant that the very first time the U.S. government used "classification" as an excuse to convince courts to cover up government documents, it was later proven to be a government fraud. The "State Secrets privilege" originated in *United States v. Reynolds*, 345 U.S. 1 (1953).

> In *Reynolds,* the widows of three civilians who died in the crash of a military plane in Georgia filed a wrongful death action against the government.  In response to their request for the accident report, the government insisted that the report could not be disclosed because it contained information about secret military equipment that was being tested aboard the aircraft during the fatal flight.  When the accident report was finally declassified in 2004, it contained no details whatsoever about secret equipment.  *The government's true motivation in asserting the state secrets privilege was to cover up its own negligence.*

---

[8] "Seen in its best light, COINTELPRO was organized to gather information on violent individuals and groups, some of whom intended to overthrow our constitutional government," wrote the Sixth Circuit. Jones v. F.B.I., 41 F.3d 238 (6th Cir. 1994) But "[s]een in worse light, COINTELPRO targeted African–Americans of local and national prominence as part of organized resistance to their struggles to secure civil rights for all Americans." Id.

"In 1976, the Senate Select Committee on Intelligence (the Church Committee) issued a report documenting systematic violations of civil rights by the FBI and other intelligence and security organizations."

ACLU, "Background on the State Secrets Privilege," https://www.aclu.org/other/background-state-secrets-privilege (accessed 3/11/2023) (emphasis added).

**The public interest outweighs any government interest in concealing these documents.**

Finally, the public's interest in the lawlessness and criminality revealed in Special Agent Miller's messages far outweighs any interest in keeping such information concealed. *Roth v. U.S. Dept. of Justice*, 642 F.3d 1161 (D.C.Cir. 2011)

**CONCLUSION**

For all of the above stated reasons, along with those stated in Pezzola's motion to dismiss, Pezzola prays for an order

1. Dismissing this case with prejudice;
2. Appointing or requesting the appointment of a special counsel;
3. Appointing a special master;
4. Scheduling extensive evidentiary hearings; and
5. Releasing defendant Pezzola from custody.

Dated:  March 12, 2023

Respectfully Submitted,
*/s/ Roger Roots*
Roger I. Roots, Esq
John Pierce Law
21550 Oxnard St,
3rd Floor, PMB #172
Woodland Hills, CA 91367
213.279.7648

**CERTIFICATE OF SERVICE**

I hereby certify that this document is being filed on this March 9, 2023, with the Clerk of the Court by using the U.S. District Court for the District of Columbia's CM/ECF system. All attorneys of record will receive an electronic copy, including:

Erik Michael Kenerson U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA 555 Fourth Street, NW, Suite 11-449 Washington, DC 20530
Telephone: (202) 252-7201 Email: erik.kenerson@usdoj.gov

/s/ Roger Roots