UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-CR-175 (TJK) |
| : | |
| ETHAN NORDEAN, et al. : | |
| : | |
| Defendant. : | |

### GOVERNMENT OPPOSITION TO DEFENDANT PEZZOLA'S MOTION FOR DISMISSAL AND/OR MISTRIAL

In his filing, defendant Pezzola moves the Court to dismiss the case against him "due to recent revelations on the *Tucker Carlson* show" that purportedly prove that Congress overreacted when members of a mob that had overrun officers, broken windows and doors, and was roaming freely throughout the Capitol building began pounding on the door of the House of Representatives. From there, defendant Pezzola asserts that the case against him must be dismissed because the "prosecution has been monitoring attorney/client communications of defendants, destroying evidence[,] and doctoring and fabricating evidence involving confidential human sources (CHSs)." ECF 679, at 1.

Once tethered to facts and reality, defendant Pezzola's arguments quickly unravel. First, all the footage of Jacob Chansley that aired on *Tucker Carlson* earlier this week has been produced to these defendants in discovery. Second, there has been overwhelming trial evidence of the dangerous riot at the Capitol, which was brought about through the actions of Dominic Pezzola, his co-defendants, and others. Third, the "attorney/client communications" in question were not privileged, having taken place on an overtly monitored jail email system, and they have been available to the defense since they were produced in discovery in June of 2022. Fourth, Pezzola's other claims of misconduct by the government have no basis in fact.

For the reasons set forth herein, Pezzola's motion should be denied.

### A.  The Government Has Produced the Videos Shown on *Tucker Carlson* to These Defendants in Discovery

According to public reporting, in or around February 2023, the Speaker of the House of Representatives granted television host Tucker Carlson access to a wide range of U.S. Capitol surveillance footage related to the events of January 6, 2021.[1]  Beginning on Monday, March 6, Carlson's show began airing portions of the footage.[2] Based on what was shown on television, Pezzola now asserts that (1) the government withheld certain footage of rioter Jacob Chansley (who pleaded guilty in case 21-cr-3-RCL), and (2) the footage was exculpatory to Pezzola, creating a *Brady* violation.  ECF 679 at 4-6.  Both claims are false.

#### 1.  The videos were produced in discovery.

Pezzola's motion describes "shocking footage" of Chansley "walking calmly through the halls of the Capitol" with two police officers who purportedly "escort[] Chansley (and apparently other protestors) into the Senate chamber."  ECF 679, at 4.  Pezzola quotes Chansley's former attorney for the proposition that the government "withheld" this footage from discovery in Chansley's and Pezzola's cases.  *Id.*  The footage is not shocking, and it was not withheld from Pezzola (or Chansley, in any material respect, for that matter).

---

[1]  *See, e.g.*, CNN, "McCarthy gives Tucker Carlson access to January 6 Capitol security footage, sources say," *available at* https://www.cnn.com/2023/02/20/politics/kevin-mccarthy-tucker-carlson-january-6-footage/index.html.

[2]  *See* NBC News, "Tucker Carlson, with video provided by Speaker McCarthy, falsely depicts Jan. 6 riot as a peaceful gathering," *available at* https://www.nbcnews.com/politics/justice-department/tucker-carlson-new-video-provided-speaker-mccarthy-falsely-depicts-jan-rcna73673.

The footage in question comes from the Capitol's video surveillance system, commonly referred to as "CCTV" (for "closed-circuit television"). The Court will be familiar with the numerous CCTV clips that have been introduced as exhibits during this trial. The CCTV footage is core evidence in nearly every January 6 case, and it was produced *en masse*, labeled by camera number and by time, to all defense counsel in all cases.[3] With the exception of one CCTV camera (where said footage totaled approximately 10 seconds and implicated an evacuation route), all of the footage played on television was disclosed to defendant Pezzola (and defendant Chansley) by September 24, 2021.[4] The final 10 seconds of footage was produced in global discovery to all defense counsel on January 23, 2023. Pezzola's *Brady* claim therefore fails at the threshold, because nothing has been suppressed. *United States v. Blackley*, 986 F. Supp. 600, 603 (D.D.C. 1997) ("For an item to be Brady, it must be something that is being 'suppress[ed] by the prosecution.'") (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).

While discovery in this case is voluminous, the government has provided defense counsel with the necessary tools to readily identify relevant cameras within the CCTV to determine whether footage was produced or not. Accordingly, the volume of discovery does not excuse defense counsel from making reasonable efforts to ascertain whether an item has been produced before making representations about what was and was not produced, let alone before filing inaccurate and inflammatory allegations of discovery failures.

---

[3] The productions excluded a limited set of footage that the Capitol Police designated as security information, such as X-Ray machine feeds and views of evacuation routes and Sensitive Compartmented Information Facility ("SCIF") office lobbies.

[4] The remaining CCTV was disclosed in global discovery on January 23, 2023. It similarly – as with other CCTV – depicts defendant Chansley outside of the Senate Chamber with law enforcement, *after* his initial breach of the Chamber.

## 2. The videos are not exculpatory.

Pezzola's possession of the videos is dispositive of his *Brady* claim. Nonetheless, the record should be clear that the videos in question are not exculpatory of Pezzola or any other participant in the siege of the Capitol on January 6, 2021. In fact, the videos of Chansley's movements throughout his time in the Capitol are highly inculpatory of Pezzola, Chansley, and other rioters captured on them.

Pezzola's argument seems to be that the snippets of Chansley's movements that were televised by Carlson establish that there was no emergency necessitating the suspension of proceedings. The televised footage lacks the context of what occurred before and after the footage. Chansley entered the building as part of a violent crowd that gained access as a result of Pezzola's destruction of a window and he traveled with Pezzola during the initial breach. And just as Defendant Biggs had recounted in a recorded statement after January 6, 2021, by the time Pezzola forcibly breached the Capitol and Chansley rode his coattails, the mob—through the sheer force of its size and the violence of those within it—had wrested control of portions of the Capitol grounds and the Capitol itself from a vastly outnumbered U.S. Capitol Police force.[5] As a result, for a period that afternoon, those defending the Capitol were in triage mode—trying to deal with the most violent element of those unlawfully present, holding those portions of the Capitol that had not yet been seized by rioters, and protecting those Members and staffers who were still trapped in the Capitol.

---

[5] Biggs stated, in part: "When you're holding a position, like a fort, and you're being overrun, if there's three of you or four of you, and you're outnumbered a hundred to one, are you gonna sit there and just go, 'I'm holding the door'? No, you're just gonna get your ass beat. That's already gone. if that many people show up to your house, there's nothing you can do about it." Gov't Ex. 611B. Biggs later continued, "You're gonna stand up to [] tens of thousands of people storming that? No, that's stupid. You step [] aside. That puts less chance of anyone getting hurt or anything like that, and you allow it to happen." *Id.*

Chansley piggybacking on Pezzola's violent breach of the Capitol provides more than enough evidence of his corrupt intent to interfere with Congress that day. But there is much more evidence of his and others' conduct. The televised footage shows Chansley's movements only from approximately 2:56 p.m. to 3:00 p.m. Prior to that time, Chansley had, amongst other acts, breached a police line at 2:09 p.m. with the mob, entered the Capitol less than one minute behind Pezzola during the initial breach of the building, and faced off with members of the U.S. Capitol Police for more than thirty minutes in front of the Senate Chamber doors while elected officials, including the Vice President of the United States, were fleeing from the chamber. Chansley then entered the Senate Gallery, where he proceeded to scream obscenities while other rioters rifled through the desks of U.S. Senators on the floor below. All these actions were captured by Senate floor and/or CCTV cameras. In sum, Chansley was not some passive, chaperoned observer of events for the roughly *hour* that he was unlawfully inside the Capitol. He was part of the initial breach of the building; he confronted law enforcement for roughly 30 minutes just outside the Senate Chamber; he gained access to the gallery of the Senate along with other members of the mob (obviously, precluding any Senate business from occurring); and he gained access to and later left the Senate floor only after law enforcement was able to arrive *en masse* to remove him. It is true that a sole officer, who was trying to de-escalate the situation, was with Chansley as he made his way to the Senate floor after initially breaching the Chamber, as the televised footage reflects.[6] But the televised footage fails to show that Chansley subsequently refused to be escorted out by this lone officer and instead left the Capitol only after additional officers arrived and forcibly escorted him out.

---

[6] Notably, this officer's statement regarding these events was also disclosed in discovery to Chansley's attorney on May 19, 2021.

In any event, Chansley's circumstances do nothing to mitigate Pezzola's criminal exposure. The trial record is replete with video, audio, and testimony proving Pezzola's egregious conduct on January 6, which included viciously assaulting a Capitol Police officer, forcibly taking that officer's riot shield, threatening other officers, using the shield to shatter a window, and then (with Chansley) engaging in a standoff with a Capitol Police Inspector mere steps from the Senate Chamber.

Pezzola's *Brady* argument, accordingly, is baseless.

### B. The Trial Record Overflows with Evidence that Dominic Pezzola Obstructed, Impeded, and Interfered with the Electoral College Proceeding

The evidence in this trial has shown, *inter alia*, that the joint session was convened at 1:05 p.m. on January 6, 2021. Gov't Ex. 910, at 2:50 (timestamp). As required by law, the Senate and House separated to their respective chambers at approximately 1:14 p.m. to resolve an objection to the certification of votes from Arizona. *Id.* at 3:28 (timestamp). As required by law, the debate over the objection shall last no more than two hours and then shall be put to a vote, and once the "two Houses have voted, they shall immediately again meet." 3 U.S.C. §§ 15, 17. No other state's votes may be "acted upon until the objections previously made" have been resolved. *Id.* at § 15.

Counsel for Pezzola assert that the government has "steadfastly refused to identify in what way any of these defendants directly caused the recess of the Joint Session[.]" ECF 679 at *3. It is hard to conceive of a defendant better suited to assess his personal contribution to the obstruction of the joint session than Dominic Pezzola. The uncontroverted evidence in this trial has shown, *inter alia*, that Dominic Pezzola used a riot shield to break open a window adjacent to the Senate Wing Door at 2:12 p.m. and entered the Capitol building through the broken window at 2:13:15 p.m. *See, e.g.*, Gov't Ex. 112x. The Senate was ordered into recess by Senator Grassley at 2:13:42

6

p.m., and immediately after the recess was called, Senator Langford was advised that "protesters [were] in the building." Gov't Ex. 910, at 5:18-5:27 (timestamp).

Members of the mob then continued to stream into and remain inside the building, including hundreds that entered through the Senate Wing Door and adjacent windows that had been violently breached. Their actions and presence obstructed, influenced, and impeded the Joint Session on January 6, 2021. In his testimony, Kevin McCumber provided further evidence as to the effect of rioters' conduct on the Joint Session. Trial Tr., at 11992:2-10. In his briefing, counsel for Pezzola asserts that Mr. McCumber "admitted that there was no need for Congress to recess on January 6, 2021." ECF 679 at 2. Mr. McCumber made no such admission. Indeed, counsel for Pezzola did not even attempt to advance such an absurd position with Mr. McCumber. As the record reflects, Mr. Roger Roots asked only, "[a]rguably, [the Senate] could have continued a *few more minutes*" to which Mr. McCumber replied that the House continued for "several more minutes" before recessing. Trial Tr., at 11981:21-25 (emphasis added). Dominic Pezzola's role in obstructing the Certification of the Electoral College is a mystery to no one.

### C. Communications Monitored Through the Email Systems of the Federal Detention Center are Not Privileged

In his motion, Dominic Pezzola claims that the FBI had been monitoring privileged communications of defendant Rehl and his prior attorney, Jonathan Moseley.[7] ECF 679, at 7-10. The government has not obtained any privileged communications between defendant Rehl and Moseley. As the government explained a separate filing, ECF 687 at 14-17, Rehl and Moseley

---

[7] On April 1, 2022, the Circuit Court of Prince William County revoked Jonathon Moseley's license to practice law in the Commonwealth of Virginia. *See* Virginia State Bar Disciplinary System Actions, *available at* https://www.vsb.org/profguides/actions_jan22-jun22.html.

made a fully informed choice to communicate with one another over a monitored jail email system.[8] In doing so, they waived any privilege.

The government further asserts that the undersigned prosecutors have not reviewed the communications in question and have no knowledge of their contents beyond what Nordean's counsel introduced in open court. Moreover, it is unclear how a purported violation of Rehl's rights would require any remedy with respect to Pezzola, because (as defense counsel have frequently reminded the Court) there is no joint defense agreement. *See, e.g.*, Trial Tr. at 8826. The Court should reject Pezzola's arguments on this point.

Finally, and as noted in the government's separate filing (ECF 687, at 14-17), even if one were to set aside Rehl's explicit acknowledgement that communications over a monitored system are not privileged and assume, *arguendo*, that Rehl's jailhouse email communications could be said to retain some form of attorney-client privilege, defendant Pezzola has not made a showing that he (or Zachary Rehl) suffered any injury as a result of the government's collection. *United States v. Mastroianni*, 749 F.2d 900, 907 (1st Cir. 1984) ("A Sixth Amendment violation cannot be established without a showing that there is a 'realistic possibility of injury' to defendants or 'benefit to the State' as a result of the government's intrusion into the attorney-client relationship.") (quoting *Weatherford v. Bursey*, 429 U.S. 545, 558 (1977). Moreover, the government plainly made no "purposeful intrusion.") *Weatherford*, 429 U.S. at 558. Rather, Zachary Rehl and his counsel chose to engage in communications on a monitored system.

---

[8] According to court filings, Jonathan Moseley served as counsel to Zachary Rehl from in or around September 2021 through December 2021. See ECF 159 (Notice of Appearance) and ECF 246 (Motion to Withdraw). During that entire period Zachary Rehl was incarcerated at the Federal Detention Center in Philadelphia (FDC-Philadelphia).

8

**D.      Dominic Pezzola's Assertions of Government Misconduct are Baseless**

Counsel for Pezzola asserts that he has identified messages that describe "destroying evidence" and "doctoring and fabricating evidence involving confidential human sources (CHSs)." ECF 679, at 1. As the government has explained in a separate filing, ECF 687 at 6-8, the messages show nothing of the sort. For purposes of this filing, the government disputes the nefarious conclusion that counsel for Pezzola seeks to tease out of the messages. Further, the government notes that, contrary to the assertion by counsel for Pezzola (ECF 679, at 7-8), the messages bear no relationship to the alleged intrusion into attorney-client communications.

## CONCLUSION

Dominic Pezzola's motion is unsupported by the facts and evidence in this case and should be denied.

                                                Respectfully submitted,

                                                MATTHEW M. GRAVES
                                                United States Attorney
                                                DC Bar No. 481052

By:      */s/ Jason McCullough*
        JASON B.A. MCCULLOUGH
        NY Bar No. 4544953
        ERIK M. KENERSON, OH Bar No. 82960
        NADIA E. MOORE, NY Bar No. 4826566
          On Detail to the District of Columbia
        Assistant United States Attorneys
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 252-7233
        jason.mccullough2@usdoj.gov

By:      */s/ Conor Mulroe*
        CONOR MULROE, NY Bar No. 5289640
        Trial Attorney
        U.S. Department of Justice, Criminal Division
        1301 New York Ave. NW, Suite 700
        Washington, D.C. 20530

(202) 330-1788  
Conor.Mulroe@usdoj.gov