Jury instruction on necessity

UNITED STATES DISTRICT FOR THE DISTRICT
OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 21-cr-00303-ABJ |
| | ) |
| DOMINIC PEZZOLA | ) |
| | ) |
| Defendant | ) |

DEFENDANT PEZZOLA'S MOTION FOR DIRECTED VERDICT OF ACQUITTAL ON COUNTS 6, 7, 8, AND 10, PURSUANT TO RULE 29

INTRODUCTION

COMES NOW Defendant Dominic Pezzola, by undersigned counsel, with this Motion for acquittal on Counts 6, 7, 8, and 10, pursuant to Rule 29 of the Federal Rules of Criminal Procedure. Pezzola reserves the right to file additional Rule 29 motions regarding other counts.[1]

Although the Court has discretion to reserve decision on this motion under Rule 29(b), Pezzola asks the Court for a prompt ruling, to inform him of what evidence and witnesses Pezzola should

---

[1] Other counts of the indictment are similarly unsupported by any evidence. Pezzola is drafting a Rule 29 motion regarding those counts, but at court time this morning Pezzola's counsel decided to parcel discussion of those counts out, for another day.

call in his defense.  For example Count 7, the window count, was not shown or proven by the United States.  Pezzola is prepared to bring in an expert rebuttal witness with expertise on the valuation of damaged windows in the event the Court determines that the government provided sufficient evidence for a jury to go forward on that count.  (The government presented evidence that even under its own valuation, Pezzola can be held accountable only for one pane of glass, which the government (outrageously) valued at $750.

The same goes with Count 6, the black metal fence count.  The United States presented no evidence that Pezzola touched or was near enough to the black metal fence to damage it.  Even under the most extravagant notions of aiding-and-abetting theory, no reasonable jury could convict Pezzola of Count 6. Under the rule laid down by the Supreme Court in *Rosemond v. United States*, 572 U.S. 65 (2014), an aider and abettor must both know that a cohort is going to commit a crime and perform some act to support the cohort.  The government presented no evidence that Pezzola knew that fellow protestors were going to damage the black metal fence nor any evidence that Pezzola did anything to help them.

A prompt granting of this Rule 29 motion regarding Count 6 will save valuable court time and resources and prevent the need for Pezzola to put on a rebuttal witness in his defense—including rebuttal experts regarding the valuation of the black metal fence.

Similarly, Count 8 (the water bottle toss by Charles Donahoe) must be a directed verdict of acquittal as well. The United States presented no evidence that Pezzola (or any current codefendant) was even in the vicinity of Donahoe at the time Donahoe threw water bottles.  (Donahoe has pled out of the case, and his plea agreement confesses to throwing the water bottles—with no confession whatsoever of being helped, urged, aided, or abetted by anyone else.) Under the ruling of *Rosemond v. United States, supra,* the Court must not allow the jury to consider Count 8.

Finally, the government failed to put on any evidence regarding a required element of robbery; and Count 10 must be dismissed pursuant to Count 10 as well.  To prove robbery, the government must prove 'intent to steal,' which includes the intent to permanently deprive the owner of the property.  Not only did the government fail to provide any evidence of intent to steal on the part of Pezzola, but the evidence showed (on Pezzola's cross-

examination) that Pezzola returned the plastic riot shield to police within about an hour of obtaining it.  And Pezzola never even left Capitol grounds with the shield.

The Court must grant a motion for judgment of acquittal if "there is no evidence upon which a reasonable mind might fairly conclude guilt beyond reasonable doubt." *Curley v. United States*, 160 F.2d 229, 232-33 (D.C. Cir. 1947).  Now that the government's case has rested, Pezzola submits that the government failed to provide evidence sufficient to warrant further trial on Counts 6, 7, 8, 9 and 10.

"The court may not permit a jury to render a guilty verdict based on 'ambiguous evidence' from the government, which encourages the jury to 'engage in speculation.' Bailey v. United States, 416 F.2d 1110, 1116 (D.C. Cir. 1969); see also United States v. Preston, 331 F. Supp. 457, 459 (D.D.C. 1971) ("[S]uspicion is not enough to permit the case to go the jury."). At the Rule 29 stage, the Court does not analyze whether there is a "visceral or moral" doubt about guilt, but whether there is "a doubt upon the record," whereby "the lack of essential proof creates the doubt as a legal matter." Hiet v. United States, 365 F.2d 504, 506 (D.C. Cir. 1966).

This Court must make a reasonable assessment and give the government the benefit of only "*legitimate inferences*." *United States v. Singleton*, 702 F.2d 1159, 1163 (D.C. Cir. 1983). In other words, this court should not speculate or rescue the government by reconstructing the indictment or bending statutes to lend credence to the government's invented narrative where or where some acts of others and irrelevant evidence are given any weight.

Moreover, Rule 29 does not require the Court to view the evidence through dirty windowpanes and assume that evidence which otherwise can be explained as equally innocent must be evidence of guilt. *See Curley*, 160 F.2d at 233 (if "a reasonable mind must be in balance as between guilt and innocence, a verdict of guilt cannot be sustained"). Rather, in order to find a legitimate and nonspeculative inference of guilt the government must articulate a rational basis in the evidence upon which that inference can arise. *United States v. Recognition Equip., Inc.*, 725 F. Supp. 587, 588 (D.D.C. 1989).

### NO REASONABLE JURY COULD CONVICT PEZZOLA OF COUNT 6 (DAMAGING THE BLACK METAL FENCE)

The United States failed to present evidence that Pezzola

damaged a black metal fence as alleged in Count 6.

Throughout this long trial, with transcripts now numbered in the thousands of pages, the United States has presented no evidence whatsoever that defendant Pezzola even touched—let alone damaged—a black metal fence. The evidence presented showed that Pezzola was more than 10 and possibly more than 30 feet away from the black metal fence described in the trial, at the time the fence was damaged.

The government presented no evidence that Pezzola knew others might damage the fence. Nor did the government present any evidence that Pezzola acted in any to aid or abet any damage to the fence.

No reasonable jury could convict Pezzola of Count 6.

### THE GOVERNMENT'S EVIDENCE SHOWED PEZZOLA CAN BE CONVICTED—IF AT ALL—ONLY OF DAMAGING A SINGLE PANE OF GLASS, VALUED AT $750; AND THUS NO REASONABLE JURY COULD CONVICT PEZZOLA OF COUNT 7

With regard to Count 7 (the allegation of causing damage to federal property over $1,000 by breaking a window), the evidence presented by the government is clear. Pezzola cannot be convicted.

Government's exhibit 425, the video showing the window-breaking scene, shows that <u>another man</u> dressed in a red sweatshirt and a red cap, actually destroyed the first pane of glass which Pezzola is accused of breaking.  The government presented no evidence regarding the identity of the man in red, no evidence that Pezzola knew him, and no evidence that Pezzola aided or abetted him.[2]

The government's valuation of the window panes—which was extravagantly padded—stated that the window panes were damaged to the tune of around $750 each.  Thus, only by factoring both panes of glass can the government get to over a thousand dollars value.

Even if the jury determined that Pezzola damaged one pane of the glass window (and thus is accountable for $750 damage in the calculation presented by the government), Pezzola cannot be

---

[2] In an email exchange with federal prosecutors, prosecutors claimed to have not identified the man in red.  Counsel doubts this.  The man in red is clearly depicted throughout January 6 unmasked.  Facial recognition technology could likely identify the man. (And this same man—who broke the first window pane of the Capitol on Jan. 6—later is seen directly behind Ashley Babbitt at the time of her death.  (In fact, the man in red would have been the second person, after Ashley Babbitt, into the House hallway.  And, oddly, the man in red is seen appearing to cover his ears prior to Ashley Babbitt's killing.)

convicted of Count 7.

## COUNT 8 CANNOT GO TO THE JURY

For reasons explained in the introduction, Charles Donahoe's tossing of water bottles cannot be blamed on Pezzola by any stretch of the law. Under no theory of aiding and abetting can Pezzola be convicted of Count 8.

## THE UNITED STATES PRESENTED NO EVIDENCE OF ANY INTENT TO STEAL ON THE PART OF PEZZOLA, AND COUNT 10 (ROBBERY OF A PLASTIC SHIELD) MUST BE DISMISSED UNDER RULE 29.

The government's case for robbery consisted only of scenes of crowd chaos on January 6 where Pezzola—plainly struggling for his safety and that of others—grasped onto a police officer's riot shield. After the officer appeared to fall or was pulled by the crowd to the ground, Pezzola came away with possession of the shied. (Imagery showed that Pezzola was himself in a seated position on the ground at the moment of the alleged 'robbery,' so it is difficult to perceive how Pezzola could use force in that moment to take the shield.)

In any case, robbery requires proof of *intent to steal*—which the government failed to introduce. The Ninth Circuit's ruling in *United States v. Ornelas,* 906 F.3d 1138 (9th Cir. 2018) is directly on point.

*Ornelas* involved a violent skirmish near the Mexican border between a Forest Service officer and an immigrant. The immigrant briefly wrested the officer's pistol away and fired shots into the air to empty the gun's ammunition. Then—significantly relevant to the question of guilt —the immigrant threw the gun into the desert and briefly attempted to commandeer the officer's truck (before surrendering). The trial judge instructed the jury that just two elements were needed to convict for robbery or attempted robbery under 18 U.S.C. § 2112: that the defendant (1) "did take or attempt to take from the person or presence of another any kind or description of personal property belonging to the United States," and that he (2) "did so by force and violence, or by intimidation."

On appeal the Ninth Circuit reversed Ornelas's conviction on plain error review because the trial court failed to instruct "that Moreno must have possessed the *specific intent to steal*." Id. at 1143.

> Although the statute does not further define "robs or attempts to rob," see id., those terms had "established meanings at common law," *Carter v. United States*, 530 U.S. 255, 266 (2000). And when "Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice," we presume that Congress "knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken." *Id.* at 264 (emphasis omitted)

(quoting *Morissette v. United States*, 342 U.S. 246, 263 (1952) ). Thus, when Congress has "simply punished" a common law crime, Congress has "thereby le[ft] the definition of [the offense] to the common law." *Id.* at 267 n.5. In fact, the Supreme Court has pointed to this very robbery statute as an example of this legislative method.2 See id. (citing 18 U.S.C. § 2112). We accordingly "turn to the common law for guidance" in interpreting the statutory phrase "robs or attempts to rob." Id. at 266, 120 S.Ct. 2159.

At common law, robbery was "the felonious and forcible taking, from the person of another, of goods or money [of] any value by violence or putting him in fear." 4 W. Blackstone, *Commentaries on the Laws of England* 241 (1769). In addition to requiring a defendant to assault another person and take his things, this definition required the defendant to take them with "felonious intent." Id. And "felonious" is just "a common-law term of art signifying an intent to steal." *Carter*, 530 U.S. at 278 (Ginsburg, J., dissenting); accord *United States v. Lilly*, 512 F.2d 1259, 1261 (9th Cir. 1975) (observing that "feloniously" was "recognized as signifying the element of specific intent to steal in robbery at common law").

Common law robbery was therefore a specific intent crime. *See, e.g., Lilly*, 512 F.2d at 1261; *United States v. Klare*, 545 F.2d 93, 94 (9th Cir. 1976); 3 Wayne R. LaFave, *Substantive Criminal Law* § 20.3(b) (3d ed. 2017). That meant, for example, that a defendant accused of "snatching [a] pistol" was not guilty of robbery at common law if he had "not ... intended at the time to steal it" and intended instead to "prevent its being used against [hi]m." *Jordan v. Commonwealth*, 66 Va. (25 Gratt.) 943, 948 (1874).

*Ornellas* at 1143-44. *See also United States v. Kemble*, 3 Cir., 1952, 197 F.2d 316, 321 (we reversed because, the trial judge had failed to adequately charge the jury with respect to animus furandi 'of a

specific intent to steal.').

As with Ornellas and Kemble, the government presented no evidence of the intent to steal on the part of Pezzola. In fact, the evidence that Pezzola <u>returned the shield</u> to the police within an hour and a half of first possessing it—and that Pezzola <u>never left the Capitol grounds</u> with the shield—negates any inference that Pezzola stole the shield.

Pezzola's case—in which Pezzola returned the shield to the police after Pezzola no longer needed it to protect himself from flying pepper balls—is squarely on point with *Ornellas*—where the defendant threw the officer's pistol away into the desert. In both cases, there was no intent to permanently deprive the owner of property.

Respectfully Submitted,

/s/ Roger I Roots, esq.
 Roger I. Roots
 Partner-John Pierce Law
21550 Oxnard Street
3rd Floor PMB #172
Woodland Hills, CA 91367


CERTIFICATE OF SERVICE
 I hereby certify that, on March 20, 2023, this document was filed via the Court's electronic filing system, which constitutes service upon

all counsel of record.
/s/ Roger I. Roots
Roger I. Roots