UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | No. 1:21-cr-175 (TJK) |
| v. | : | |
| | : | |
| DOMINIC PEZZOLA, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S RESPONSE TO DEFENDANT PEZZOLA'S DEMAND FOR DISMISSAL, AN EVIDENTIARY HEARING, AND OTHER RELIEF

In a filing signed by Roger I. Roots, defendant Pezzola continues his pattern of alleging serious misconduct based on "unfounded speculation that has no place in a courtroom." Trial Tr. 12919:8-14.[1] Mr. Roots asserts that he has uncovered a "massive trail of FBI corruption" within communications among FBI agents. Mr. Roots claims that the communications contain "extremely casual discussions of evidence tampering, witness tampering, destruction of evidence, and fabrication and alteration of documents relating to CHSs." ECF 686, at 2.

The government denies the scurrilous accusations advanced in the Roots filing. For the reasons set forth below, the relief sought in the motion should be denied. No further hearing or briefing is necessary.

### Background

Since trial began on January 13, 2023, the government has presented evidence of a conspiracy between and among defendant Pezzola, his co-defendants, and other co-conspirators. Such evidence has included electronic messages sent among the co-conspirators, video evidence that depicts the co-conspirators, and testimony from admitted co-conspirators of the defendants.

---

[1] This Court denied a similar motion by Mr. Roots after finding that the filing was supported only by conjecture. *See* Memorandum Opinion, ECF 675, at 3 ("Pezzola supports his conclusions with conjecture.").

1

The government's conspiracy claims are firmly supported by evidence—there is no "trickery or overzealousness" by the government in Courtroom 24. A jury will deliberate and render its decision on the facts and the law as instructed by this Court.

On March 8, 2023, counsel for Nordean revealed that he had identified a significant over-production in the government's discovery. Specifically, Nordean identified thousands of rows of Lync Messages between and among FBI Special Agent Nicole Miller and other FBI Agents.[2] Nordean and other defendants then attempted to use these messages to impeach Special Agent Miller, and the Court ruled on those motions.

Now comes Mr. Roots, who relies on snippets of the overproduction to allege the commission of "serious crimes" by the FBI that suggest a "culture of corruption." ECF 686, at 2. Specifically, Roots claims that FBI agents in this case have "(1) engaged in evidence tampering by destruction of hundreds of pieces of evidence; (2) engaged in fabrication of records and evidence tampering by altering documents relating to a CHS; (3) knowingly monitored codefendants' and witnesses' financial and family situations in order to pressure them into testifying and cooperating[.]" These accusations are false.

Mr. Roots then doubles down and claims that the government has attempted to "conceal" the alleged violations by "claw[ing] back" the evidence of its misconduct by advancing a "false claim" that certain of the materials are classified. ECF 686, at 3. This claim is also false.

## ARGUMENT

To begin, no evidence has been concealed from Mr. Roots. In fact, the opposite is true. The government overproduced thousands of rows of statements by FBI agents who had no involvement

---

[2] As explained by Special Agent Nicole Miller, Lync is a messaging system that exists on the FBI's classified systems. Trial Tr. 12847-48. The Lync message system is used by agents across all cases; it is not a "network channel specifically relating to Proud Boys cases." *See* ECF 686, at n.2.

in this case. Moreover, at the time that Mr. Roots submitted his filing on March 12, Mr. Roots understood (or willfully ignored) that the government had reproduced on March 10 at 1:44 p.m. the *entire spreadsheet* to the defense less only 80 lines of text that contained classified information or other sensitive FBI information. Those 80 lines have been submitted to the Court for its review—those are the only lines that have been "clawed back" from the defendants. Finally, and to be perfectly clear as to the record in this case, all of the quoted text messages from which Mr. Roots launches his baseless accusations are contained within the government's reproduction on March 10. The government is not hiding anything because there is nothing to hide.

Undeterred, and citing no facts in support of his claims, Roots claims that FBI agents in this case have "(1) engaged in evidence tampering by destruction of hundreds of pieces of evidence; (2) engaged in fabrication of records and evidence tampering by altering documents relating to a CHS; (3) knowingly monitored codefendants' and witnesses' financial and family situations in order to pressure them into testifying and cooperating[.]" These accusations are false.

First, the government denies any violation of the defendants' Sixth Amendment rights. As set forth in the companion briefing at ECF 709, Zachary Rehl's communications over the TRULINCS system were not privileged because, *inter alia*, inmates are advised and acknowledge that electronic messages sent over TRULINCS, including those sent to attorneys, are subject to monitoring and retention. *Id.* Rehl waived any privilege by knowingly using FDC-Philadelphia's monitored email system to communicate with his attorney. *See*, *e.g.*, *In re Sealed Case*, 676 F.2d 793, 809 (D.C. Cir. 1982) ("Any voluntary disclosure by the client to a third party breaches the confidentiality of the attorney-client relationship and therefore waives the privilege"). Moreover, as this Court has explained to Mr. Roots, defendant Pezzola lacks standing to challenge any alleged violation of defendant Rehl's Sixth Amendment rights. Trial Tr. 12912:3 – 5.

3

Second, the government did not engage in "fabrication of records" by "altering documents related to a CHS." Mr. Roots appears to be referencing correspondence between Special Agent Miller and a supervisor in which the supervisor wrote "[y]ou need to go into that CHS report you just put and edit out that I was present." *See* ECF 679, at 8. During trial, counsel for defendants attempted to use that message to establish that Special Agent Miller had been "asked to create a CHS report related to this case that was intentionally incorrect or incomplete or misleading." Trial Tr. 12909:11 – 12910:12. This is not true. In fact, Special Agent Miller so thoroughly debunked this claim under cross examination by defendant Nordean (Trial Tr. 12945:13, *et seq.*) that Mr. Root's co-counsel did not touch the subject during defendant Pezzola's cross-examination of Special Agent Miller (*See* Trial Tr. 13667:13, *et. seq.*). As Special Agent Miller explained, the supervisor asked to be removed from the report because he had not realized he had been copied on the correspondence from the CHS. Trial Tr. 12945:13, *et seq.* Once the supervisor was advised that he was copied on the correspondence, the report was finalized to reflect that both Special Agent Miller and her supervisor were "present" for the contact, and the report was formally approved by someone else. *Id.* Far from evidencing a "massive trail of FBI corruption" (ECF 686, at 4), the exchange reflects a routine clerical matter in which Special Agent Miller sought to accurately record the facts.

Finally, the government did not engage in any improper destruction of evidence. Here, Mr. Roots appears to be referencing a message from an agent with no connection to this case who wrote, "my boss assigned me 338 items of evidence i (sic) have to destroy." ECF 679, at 8. From this message that had been sent by a different agent, Mr. Roots falsely asserted that Special Agent Miller had "confessed to a crime" and "needed to be Mirandized." *See* Trial Tr. 12919:8-14. Neither Special Agent Miller nor the other agent engaged in any impropriety. As this Court knows,

disposal of evidence is a routine part of the lifecycle of every criminal case. The process through which this occurs is formalized in the policies of the Department of Justice. See Justice Manual § 9-14.000 *et. seq.* ("Procedure for Disposal of Seized Evidence in Closed Criminal Cases"). The "destruction" of evidence referenced in the message related to the disposition of 338 items of evidence from a nearly 20-year-old multi codefendant trial. Pursuant to policy, the FBI waited to dispose of the evidence until all defendants' appellate rights were extinguished. The special agent disposed of this evidence by returning it to defendants' family members or otherwise destroying it pursuant to FBI policy. The case was not related to this prosecution, and the agent was not involved in this investigation.

Under these circumstances—where the defendant has put forth no factual allegations that would support his claim—no hearing is required to deny the defendant's motion. *See United States v. Mahdi*, 999 F. Supp. 2d 236, 245-46 (D.D.C. 2013), citing *Lynn v. United States*, 365 F.3d 1225, 1238-39 (11th Cir. 2004); *Haouari v. United States*, 510 F.3d 350, 354 (2d Cir. 2007).

## **CONCLUSION**

For the foregoing reasons, the defendant's motion should be denied without a hearing.

                                      Respectfully Submitted,
                                      MATTHEW M. GRAVES
                                      United States Attorney
                                        D.C. Bar No. 481052

By:     */s/ Jason McCullough*
          JASON B.A. MCCULLOUGH
              NY Bar No. 4544953
          ERIK M. KENERSON // Ohio Bar No. 82960
          NADIA E. MOORE // N.Y. Bar No. 4826566
          On Detail to the District of Columbia
          Assistant United States Attorneys
          601 D Street NW
          Washington, D.C. 20530
          (202) 252-7233
          jason.mccullough2@usdoj.gov

      */s/ Conor Mulroe*
Conor Mulroe // N.Y. Bar No. 5289640
Trial Attorney // U.S. Department of Justice,
Criminal Division
1301 New York Avenue, Suite 700
(202) 330-1788
conor.mulroe@usdoj.gov