IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

DOMINIC PEZZOLA,

*Defendant*.

No. 1:21-cr-175 (TJK)

**PEZZOLA'S MOTION FOR MISTRIAL
AND NEW TRIAL FOR MULTIPLE *BRADY* VIOLATIONS**

**WITH INCLUDED MEMORANDUM OF LAW**

**Defendants are now aware of at least some fifty (50) undercover informants among protestors on January 6, but the government is withholding information regarding this exculpatory evidence.**

Defendant Dominic Pezzola, by and through undersigned counsel, hereby respectfully moves the Court to order a mistrial and a new trial due to numerous, repeated, and yet-unfolding *Brady* violations involving confidential human sources (CHSs).

The Court is already aware that the prosecution has been slow to disclose and turn over exculpatory evidence regarding the scale, scope, and nature of CHSs within and around the Proud Boy organization leading up to and through the events of January 6. The FBI had CHSs positioned at the very highest levels of the Proud Boys, including several who were the actual presidents of Proud Boy chapters. There were also FBI CHSs within the "Ministry of Self Defense" Proud Boy group— the very group that the government claims was the vehicle, the means, and the

1

mechanism for the mythical Proud Boy plot to overthrow the U.S. government on January 6, 2021.  If there had been any actual conspiracy within the Ministry of Self Defense to violently thwart the transfer of the presidency on Jan. 6, these informants would have been in position to alert and inform authorities of the plot.

But now, with trial almost over and opportunities to examine most government witnesses all but nonexistent, the defense has learned that FBI informants and CHSs were *vastly outnumbered* by informants, CHSs and plain-clothes operators representing *other law enforcement agencies*.  An agency called Homeland Security Investigations (HSI) seems to have played a major role in handling and running CHSs among the Proud Boys on Jan. 6, 2021.

This new information is plainly exculpatory.  Bodycam videos worn on Jan. 6 by undercover Metropolitan Police officers show the undercover officers cheering on the demonstrators, with chants of "Go! Go! Go!," "Stop the Steal!," and "Whose House? Our House!"[1]  Undercover operatives were planted among the protestors as instigators; not just observers.

And just this past weekend, the defense learned that there were at least 10 to 12 additional, previously unknown plain-clothes MPD officers among the Proud Boys on January 6.  This brings the total number of informants among defendants on or around Jan. 6 <u>to 50 or more</u>.  And there are reasons to suspect the true number is higher.

---

[1] Defendants have a *pro se* J6 defendant in another case, William Pope, to thank for these revelations.  It was Pope who apparently found the bodycam videos buried amidst the mass of discovery dumps and filed a motion alerting the world.

The government's response to these late disclosures is to present *three* MPD officers to defense lawyers for interviews. Federal prosecutors selected the three. On Friday, April 7, MPD officer Tomasula was presented to defense lawyers for interview (with lawyer by Tomasula's side). When undersigned Counsel asked why Tomasula's name was not found on the list of twelve undercover MPD "Electronic Surveillance Unit" officers on Jan. 6 provided to defendants in discovery, Tomasula replied that he was "not assigned in the same way" and was "not a member of the Electronic Surveillance Unit."

(Note that the MPD document that was previously provided to defendants in discovery indicated the twelve MPD undercover officers listed were the **"Total Manpower." See attached exhibit.**)

Officer Tomasula indicated he had gone undercover among the protestors on Jan. 6 as a member of the "Narcotics Special Investigation Division," in response to a "1033" code announced by Officer Glover asking for "everyone to come" on Jan. 6. Tomasula had been told to go to the Trump speech on Jan. 6 and "blend into the crowd." And there were "10 to 12" others from Tomasula's (previously not-disclosed) unit there.[2]

Most significantly of all, Tomasula said his assignment was simply to record evidence on his bodycam. Nothing else. Yet he said he didn't know if the other "10

---

[2] Note that the Friday April 7 revelations are in conflict with a 4/3/2023 4:13 PM email by AUSA Ballantyne to all defense lawyers stating,
> Mr. Hull, et al.,
> I am attaching a summary of MPD's ESU deployments, which I provided you in discovery on Friday. That sets forth the members/officers who were conducting plainclothes surveillance. I am also aware that Inv. Nicholas Tomasula, Detective Michael Callahan, and TFO Scott Brown volunteered to do at least some ESU shifts during that timeframe. . . .

3

to 12" "Narcotics" undercovers were recording at all. (Defendants have not been provided with this bodycam footage in any case.) Tomasula said he had destroyed his I-phone and that all his text messages (including, apparently, messages about Proud Boy structure and recruitment) relating to Jan. 5 and 6, 2021 had been autodeleted. Tomasula said there were meetings before being deployed, but defense counsel has no reports whatsoever of these meetings. And he admitted he himself had been heard on video chanting "Whose House? Our House!" and "Stop the Steal!"

Again, this content would have been absolutely exculpatory if timely provided to defendants. Tomasula indicated he *would have* immediately written reports of any violence, violent talk, or violent or insurrectionist plans among the Proud Boys or patriots, *but reported none*. Such information would have been nice to have weeks ago when defendants were cross-examining government witnesses and developing their defense. The trial is likely in its final week.

And not only were these undercover MPD officers watching the activities of the crowd on Jan. 6; but they *incited the crowds* into acts of violence and open conflict as the crowd approached the U.S. Capitol building. We still do not know the extent to which the crowd's First Amendment demonstrations were transformed into violence by undercover law enforcement officers. The Tomasula bodycam videos may be the tip of a much larger iceberg.

Pezzola is entitled to a new trial in which he will be able to subpoena these witnesses, have these witnesses identify each other in videos of crowds at the Capitol on Jan. 6, and identify whether the other undercover Metro officers were

wearing GoPro or bodycams that day. And if the other "10 to 12" "Narcotics Special Investigative Division" undercovers, or any of the other 40-plus CHSs belonging to FBI, Metro, and/or "Homeland Security Investigations" were filming, reporting, and recording on Jan. 6, Pezzola is entitled to this evidence. Pezzola reserves the right to demand dismissal with prejudice for Brady violations and outrageous government conduct upon being provided with this undisclosed evidence.

**PROSECUTORS HAVE UNLAWFULLY WITHHELD EXCULPATORY EVIDENCE STEMMING FROM ALL AGENCIES OTHER THAN FBI.**

This past week, as outlined in ECF #734, undersigned counsel consulted with the ranking Assistant U.S. Attorney in this case and was informed by her that the Government is considering for its *Brady* obligations only material of the Federal Bureau of Investigation (FBI).

This means that across the board on all topics for all January 6 Defendants, the Government has been <u>systematically violating</u> the requirements of *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.

This is not a question of Defendants' suspicions, inferences, or conclusions; but the U.S. Attorneys' Office's flat out statements.[3]

---

[3] On April 4, Assistant U.S. Attorney Ballentine responded to undersigned counsel's email by stating
Mr. Roots,

I don't know whether [name redacted by Roots] or Oath Keeper Jeremy Brown are sources for another agency. But even if they were, I don't see how that fact would be relevant here. Homeland Security — and I'm not even sure specifically what that would be — is not the investigative agency in this case…. What is the relevance of [name redacted by Roots]'s purported status as a source to another agency?

5

This is not the law.

This is also not true.

And this cannot be salvaged.

If the U.S. Attorneys' Office for the District of Columbia has been operating under the rule that only the documents held by the Federal Bureau of Investigation need to be screened or considered for disclosure under *Brady v. Maryland*, the Constitutional due process rights of Pezzola, his codefendants, and other January 6 Defendants have been violated and the criminal prosecution must be dismissed. At bare minimum, Pezzola is entitled to a new trial.

While *Brady* obligations do not extend to the entirety of the government, they do include any and all investigative agencies who worked on the case or agencies related who knew or should have known that information would be material to a prosecution arising from their direct involvement.

Here the U.S. Capitol Police are directly related and fully aware of the events of January 6, 2021. The USCP is an agency of Congress. The USCP and Congress are the two primary alleged victims and the USCP is the primary investigative agency in terms of the immediacy to events and geographic proximity.

This is not the first warning that the Government is systematically under-disclosing information under *Brady* by artificially limiting disclosures to only those documents, video recordings, or other records and information generated or possessed by the FBI.

Most of the witnesses and investigators from the Federal Bureau of Investigation have no first-hand knowledge of the events of January 6, 2021, but are merely reviewing the reports of others, primarily USCP officers. Most FBI agents are not investigating January 6 reports, but only sitting at desks reading reports from those who l did investigate

> The Supreme Court in *Brady* held that the Due Process Clause imposes on the prosecution an affirmative duty to disclose exculpatory information to the defense. Under Brady, suppression of evidence material to either guilt or punishment, whether or not there is bad faith on the part of the government, constitutes a due process violation. See 373 U.S. at 87, 83 S.Ct. 1194.
>
> **We have defined "Brady material" as "exculpatory information, material to a defendant's guilt or punishment, which the government knew about but failed to disclose to the defendant in time for trial." *Coleman v. United States*, 515 A.2d 439, 446 (D.C.1986). (quoting *Lewis v. United States*, 393 A.2d 109, 114 (D.C.1978), aff'd after rehearing, 408 A.2d 303 (D.C.1979)).**

Federal prosecutors have an obligation to fully understand the case, not merely the evidence arguing for conviction, but also the evidence arguing for acquittal. A prosecutor is obligated not to start a criminal prosecution or to terminate one already started if there is sufficient exculpatory evidence to raise a reasonable doubt.

> The government asserts that the duty to disclose information under Brady does not include a duty to investigate the records of the Department of Corrections. See *Lewis v. United States*, 393 A.2d 109, 115 (D.C.1978) ("The Brady principle does not imply a prosecutor's duty to investigate— and come to know—

information which the defendant would like to have but the government does not possess."); *Levin v. Katzenbach*, 124 U.S.App. D.C. 158, 162, 363 F.2d 287, 291 (1966) ("[W]e do not suggest that the government is required to search for evidence favorable to the accused.").

**However, the Brady doctrine requiring disclosure of exculpatory information has been extended to situations where a division of the police department not involved in a case has information that could easily be found by the prosecutors if they sought it out, see *Brooks*, 296 U.S.App. D.C. at 221, 966 F.2d at 1502, and there is a duty to search branches of government "closely aligned with the prosecution," id. at 222, 966 F.2d at 1503 (citation omitted). . . .**

*Robinson v. United States of America*, 825 A.2d 318 (D.C. 2003).

"[T]he duty of disclosure affects not only the prosecutor, ***but `the government as a whole, including its investigative agencies,'*** because the Jencks Act refers to evidence gathered by `the government,' and not simply that held by the prosecution." *Wilson v. United States*, 568 A.2d 817, 820 (D.C.1990) (quoting *United States v. Bryant*, 142 U.S.App. D.C. 132, 140, 439 F.2d 642, 650 (1971) ("Bryant I"), on remand, 331 F.Supp. 927, aff'd, 145 U.S.App. D.C. 259, 448 F.2d 1182 (1971) ("Bryant II")).

In *Wilson* we applied *Brady* and *Jencks* requirements to the Washington Metropolitan Area Transit Authority (WMATA), where WMATA police were involved in the investigation and the case arose out of an attempt to enforce WMATA regulations⁴. 568 A.2d at 819-21; see also *Morris v. Washington Metro. Area Transit Auth.*, 251 U.S.App. D.C. 42, 44, 781 F.2d 218, 220(1986) (when the Metro Transit Police are involved, WMATA is considered a governmental entity); *Bryant I*, 142 U.S.App. D.C. at 140, 439 F.2d at 650 (tape recordings in the possession of the Bureau of Narcotics and Dangerous Drugs are in the possession of the government).

---

⁴   This understated reference doesn't fully explain that the prosecution arose directly out of "WMATA regulations" concerning a threatening showdown on the WMATA bus between a passenger and a bus driver.  WMATA security responded to the threatening situation but then turned the investigation over to the Metropolitan Police Department.

8

> **[A]n "inaccurate conviction based on government failure to turn over an easily turned rock is essentially as offensive as one based on government non-disclosure."** See *Brooks*, 296 U.S.App. D.C. at 222, 966 F.2d at 1503 (citing as an example *Calley v. Callaway*, 519 F.2d 184, 223 (5th Cir.1975) (*en banc*) (reflecting concern for "inherent fairness")).

*Robinson v. United States*, 825 A.2d 318 326-329, (D.C. 2003).

Pezzola suspects that there is much more evidence of collusion between law enforcement agencies regarding informants, CHSs and plain-clothes agents among protestors on January 6 which the prosecution has not been disclosed.

1. For example, there is a "Joint Terrorism Task Force" involving multiple agencies which almost certainly facilitated integration between agencies on Jan. 6.

2. Further, U.S. Parks Counterterrorism Unit had to be present per its own protocols. Upon information and belief, the Park Police are required to have a uniformed presence and patrols on the Mall every 15 minutes.

3. The Fort Meyer Counter Terrorism unit operates out of Fort Meyer in Virginia near Arlington.

4. Another Counter Terrorism unit operates out of Ft. Belvoir near Alexandria primarily used for air defense driving patriot battery into streets of D.C.

5. Further there are other federal agencies which are notorious for implanting and embedding undercover informants among dissident groups.  These agencies include the BATFE and the DEA. Defendants have been provided with no information regarding CHS from such agencies on Jan. 6, 2021.

FOR ALL OF THE ABOVE REASONS, Pezzola demands a declaration of mistrial; and a new trial.  The United States has not complied with its obligations under Brady v. Maryland and its progeny.

Dated:  April 10, 2023                                                             Respectfully Submitted,

                                                                                         */s/ Roger Roots*
                                                                                           Roger Roots, Esq
                                                                                          John Pierce Law
                                                                                  21550 Oxnard Street
                                                                             3rd Floor, PMB #172
                                                          Woodland Hills, CA 91367
                                                                 Tel: (213) 400-0725
                                             rroots@johnpiercelaw.com
                                             jpierce@johnpiercelaw.com
                                                       Attorney for Defendant

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document is being filed on this April 10, 2023, with the Clerk of the Court by using the U.S. District Court for the District of Columbia's CM/ECF system. All attorneys of record will receive an electronic copy, including:

> Erik Michael Kenerson
> U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
> 555 Fourth Street, NW, Suite 11-449
> Washington, DC 20530
> Telephone: (202) 252-7201
> Email: erik.kenerson@usdoj.gov