**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

───────────────────────────────────────

**UNITED STATES OF AMERICA,**

    v.

**ETHAN NORDEAN,** *et. al.***,**

           *Defendant*.

───────────────────────────────────────

**No. 21-cr-00175 (TJK)**

### DEFENDANT PEZZOLA'S MOTION FOR NEW TRIAL AND JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICTS

Defendant Dominic Pezzola, by and through undersigned counsel, pursuant to the Federal Rules of Criminal Procedure Rule 29 submits this Motion with Memorandum of Law for a Judgment of Acquittal now after the jury verdict. Mr. Pezzola through his attorneys submitted an oral motion at the conclusion of the evidence and renewed it as the jury was to be charged. Additionally, Mr. Pezzola supplements his Rule 29 motion filed on March 20, 2023. (*See* ECF# 708).

Mr. Pezzola requests a judgement of acquittal for Counts Three, Six, Seven, Nine and Ten in the Third Superseding Indictment because, *inter alai*, the government did not provide proof of every element for these specific Counts charged in the indictment; that the government misrepresented during closing arguments that aiding and abetting is the same as "attempting" to hold Pezzola accountable for Count Six (property damage over $1,000.00) was insufficient; that the government provided only legal conclusions not founded in evidence to the jury; and is based on a complete and total failure of the prosecution to prove its case as a matter of law; and/or (in

the alternative in certain instances) for New Trial pursuant to Rule 33 due to fundamental errors in Pezzola's trial.

I. **BACKGROUND**

Mr. Pezzola was wrongly convicted of Count 3 because, among other factors, there was not a single link to Pezzola committing "conspiracy" with any other individual to obstruct of an official proceeding. Further, Pezzola was wrongly convicted of Count 6 (destruction of a black metal fence over a thousand dollar value) because, again among other factors, there was zero link to him having anything to do with the fences. Pezzola never touched the fence, did not see the fence damaged, and did not do anything to harm the fence. Nor was any evidence introduced at trial that Pezzola desired the fence to be damaged.

No reasonable jury could have convicted Pezzola of Count 6. Under the rule laid down by the Supreme Court in *Rosemond v. United States*, 572 U.S. 65 (2014), an aider and abettor must both know that a cohort is going to commit a crime and perform some act to support the cohort. The government presented no evidence that Pezzola knew that fellow protestors were going to damage the black metal fence nor any evidence that Pezzola did anything to help them.

II. **LAW AND ARGUMENT**

Rule 29 of the Federal Rules of Criminal Procedure allows a Judgment of Acquittal upon a motion, where such statute states the following:

> (a) Before Submission to the Jury. This part of the rule allows the motion after the government closes its case in chief or after the close of all evidence. The court must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.
>
> (b) Reservation of Decision on Motion. The court may reserve decision on a motion for judgment of acquittal, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either

>before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict
>. . . .
>
>(c) Motion After Jury Verdict or Discharge. (1) Time for a Motion. A defendant may move for a judgment of acquittal , or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later. (2) Ruling on the Motion. If the jury has returned a guilty verdict, the court may set aside the verdict and return an acquittal. . . .

"The court may not permit a jury to render a guilty verdict based on 'ambiguous evidence' from the government, which encourages the jury to 'engage in speculation.' *Bailey v. United States*, 416 F.2d 1110, 1116 (D.C. Cir. 1969) Evidence is insufficient to sustain a conviction when it goes no further than to "raise a question [of guilt] in a reasonable man's mind" or "create suspicion." *Cooper v. United States*, 218 F.2d 39, 42 (D.C. Cir. 1954). Even when evidence raises a "grave suspicion" in the reasonable juror's mind as to guilt, it is insufficient to support a verdict, unless proof of guilt beyond "a reasonable doubt" is possible on the evidence. *Scott v. United States*, 232 F.2d 362, 364 (D.C. Cir. 1956). In other words, "some evidence of guilt" is not enough. *United States v. Valle*, 807 F.3d 508, 515 (2d Cir. 2015).

### POINT ONE:

**PEZZOLA WAS WRONGLY CONVICTED OF DAMAGING CAPITOL WINDOWS OVER $1,000.00 AND FOR THE ROBBERY OFFENSE WHICH LEGALLY WAS ESTABLISHED TO BE THE LESSER INCLUDED THEFT OFFENSE**

Count 7, the window count, was not shown or proven by the United States. Pezzola sought to bring in an expert rebuttal witness with expertise on the valuation of damaged windows in the event the Court determines that the government provided sufficient evidence for a jury to go forward on that count. (The government presented evidence that even under its own valuation,

Pezzola could be held accountable only for one pane of glass, which the government (outrageously) valued at approximately $750.00. Simply stated one pane of glass, which Pezzola could be held responsible for was shown to be less than the statutory requirement of $1,000.00.

The same goes for Count 10, the robbery count. Under well-settled principles of theft, a person cannot be convicted unless the United States proves that the person intended to permanently deprive the owner of the property. The evidence at Pezzola's trial was clear and uncontested that Pezzola possessed the police plastic riot shield only for around one hour. Pezzola never left the Capitol or its grounds with the shield; and in fact Pezzola voluntarily handed the shield to police officers prior to leaving the Capitol on January 6.

In the government's third superseding indictment, under count 10, the government alleges that Dominick Pezzolla by force, violence and intimidation did take and attempt to take from the persons and presence of a capitol police officer, personal property belonging to the united states, that is a riot shield.

In paragraph 86 of the Third Superseding Indictment, the government alleged that Pezzola moved to the front of the police line and ripped away a police officer's riot shield, while the officer was physically engaging with individuals who had gathered unlawfully into the west plaza of the capitol. The evidence submitted at trial established that Officer Ode did not even know who obtained his shield; and further that Mr. Pezzola picked the shield off of the floor after another demonstrator had possession of the shield. In *Stokeling v. United States*, 202 L. Ed. 2d 512, 139 S. Ct. 544, 550 (2019) Court stated :

> At common law, an unlawful taking was merely larceny unless the crime involved "violence." 2 J. Bishop, Criminal Law § 1156, p. 860 (J. Zane & C. Zollman eds., 9th ed. 1923). And "violence" was "committed if sufficient force [was] exerted to overcome the resistance encountered." *Id.,* at 861.

The *Strokeling* Court went on to provide a few examples, such as under the common law, it was robbery "to seize another's watch or purse, and use sufficient force to break a chain or guard by which it is attached to his person, or to run against another, or rudely push him about, for the purpose of diverting his attention and robbing him." Id. (quoting W. CLARK & W. MARSHALL, *Law of Crimes* 554 (H. Lazell ed., 2d ed. 1905)). Similarly, it was robbery to pull a diamond pin out of a woman's hair when doing so tore away hair attached to the pin. *Id.* (*citing* 2 W. Russell, Crimes and Indictable Misdemeanors 68 (2d ed. 1828). But the crime was larceny, not robbery, if the thief did not have to overcome such resistance.).

Simply stated here, the evidence in no way shape, or form established that Pezzola committed a "forceful" taking of government property. Under Rule 29, Pezzola is entitled to acquittal on these Counts. Additionally, because Pezzola proffered an expert witness in window damage valuation—which the Court denied—Pezzola is entitled to a new trial on Count 7 even if the Court denies Pezzola's Rule 29 motion regarding the window.

### POINT TWO:

**PEZZOLA IS ENTITLED TO A NEW TRIAL DUE TO NEWLY DISCOVERED EVIDENCE THAT 100 ANTIFA AGITATORS WERE RESPONSIBLE FOR THE BREACHING OF THE CAPITOL WHICH THE PROUD BOYS WERE CONVICTED OF CAUSING.**

It has recently come to defendant's attention that the government withheld evidence from the defense that would have likely changed the outcome of the trial. The recently-discovered presence of 100 Antifa agitators on January 6 debunks the government's prosecution narrative, which was that the Proud Boys organized all major breaches into the Capitol on January 6. (The United States was holding undisclosed evidence that antifa agitators caused, instigated, or caused some of the very violent episodes which defendants were convicted of causing.)

An Antifa activist named Landon Copeland was one of the principal instigators of anti-police violence on the west side on J6. Pezzola was standing about two or three people behind Copeland when Pezzola first encountered excessive force on Jan. 6. Copeland was a noteworthy agitator on videos shown over and over during Pezzola's trial; but Copeland's identity was a mystery to Pezzola's counsel.

On January 6, Pezzola started pushing cops almost immediately after the second breach on the west side of the Capitol. This led to cops firing rubber bullets into peoples' faces, which triggered Pezzola and other defendants to do what they did. Copeland finally came forward with a revealing interview on June 2. See Jim Hoft, "Gateway Pundit Interviews Jan 6 Antifa Whistleblower Landon Copeland from Prison – Claims 100+ Fellow Antifa Members Involved, Large Organized Planning Session of Hundreds on Jan. 5," The Gateway Pundit, Jun. 2, 2023. https://www.thegatewaypundit.com/2023/06/jan-6-antifa-whistleblower-writes-letter-prison-admits/ (accessed 6/21/2023).

So these new revelations shatter the narrative presented at Pezzola's trial by the prosecution. This means the government withheld exculpatory evidence from the Proud Boy attorneys. At the Proud Boy trial, the DOJ made the jury believe the Proud Boys (and their "tools") instigated the pushing and shoving on the west plaza. In fact, all along, DOJ knew it was an antifa agitator all along.

Significantly, Landon Copeland has been a member of Antifa since 2006. Copeland has now been sentenced and recently gave an interview in which he confessed to attending Antifa meetings prior to Jan. 6. "There was Facebook messages. There was all kinds of stuff." "There was a lot of talk, phone calls, different things between members that I knew that were going

6

there. At the pre-meeting, **there was approximately 250 of us that were at the Pre-meeting."**

It is obvious that the DOJ knows who Copeland is and that Antifa played a major role in the breaches which the Proud Boy defendants were prosecuted for. The United States withheld this Brady information from defendants. Pezzola is entitled to acquittal, an evidentiary hearing, and/or a new trial.

### III. CONCLUSION

Because the government did not present evidence to prove every element for counts 3, 6, 7, 9 and 10, where a rational, fair, and impartial jury could find guilt beyond a reasonable doubt, the Court should acquit on all counts. No intent to commit any crime was shown by any evidence.

𝔚𝔥𝔢𝔯𝔢𝔣𝔬𝔯𝔢, Mr. Pezzola respectfully requests that this Court issue a judgment of acquittal on all counts for good reason shown, or to acquit any count individually as the Court sees fit.

Dated: June 22, 2023

Respectfully Submitted,

*/s/ Roger Roots*
_____
Roger Roots, Esq.
*Partner*
John Pierce Law
P: (775) 764-9347
21550 Oxnard Street
3rd Floor PMB #172
Woodland Hills, CA 91367

*/s/ Steven Alan Metcalf II*
_____
STEVEN A. METCALF II, ESQ.
Metcalf & Metcalf, P.C.
99 Park Avenue, 6th Flr.
New York, NY 10016
(*Office*) 646.253.0514
(*Fax*) 646.219.2012