```
               IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
- - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA           CR Nos. 1:21-cr-00175-TJK-1
                                           1:21-cr-00175-TJK-2
v.                                         1:21-cr-00175-TJK-3
                                           1:21-cr-00175-TJK-5
1-ETHAN NORDEAN                            1:21-cr-00175-TJK-6
2-JOSEPH R. BIGGS
3-ZACHARY REHL                     Washington, D.C.
5-ENRIQUE TARRIO                   Tuesday, April 11, 2023
6-DOMINIC J. PEZZOLA,              9:30 a.m.
                        Defendants.
- - - - - - - - - - - - - - - - x
```

---

### TRANSCRIPT OF JURY TRIAL - DAY 62
### *** MORNING SESSION ***
#### HELD BEFORE THE HONORABLE TIMOTHY J. KELLY
#### UNITED STATES DISTRICT JUDGE

---

APPEARANCES:

```
For the United States:    Jason B.A. McCullough, Esq.
                          Erik M. Kenerson, Esq.
                          Nadia Moore, Esq.
                          Conor Mulroe, Esq.
                          U.S. ATTORNEY'S OFFICE
                          555 4th Street, NW
                          Washington, DC 20530
                          (202) 252-7233

For the Defendants:       Nicholas D. Smith, Esq.
                          DAVID B. SMITH, PLLC
                          7 East 20th Street
                          Suite 4r
                          New York, NY 10003
                          (917) 902-3869

                          Norman A. Pattis, Esq.
                          PATTIS & SMITH, LLC
                          383 Orange Street
                          1st Floor
                          New Haven, CT 06511
                          (203) 393-3017

                          John D. Hull, IV, Esq.
                          HULL MCGUIRE PC
                          1420 N Street, NW
                          Washington, DC 20005
                          (202) 429-6520
```

APPEARANCES CONTINUED:

For the Defendants:        Carmen D. Hernandez, Esq.
                           7166 Mink Hollow Road
                           Highland, MD 20777
                           (240) 472-3391

                           Nayib Hassan, Esq.
                           LAW OFFICES OF NAYIB HASSAN, P.A.
                           6175 NW 153 Street
                           Suite 209
                           Miami Lakes, FL 33014
                           (305) 403-7323

                           Sabino Jauregui, Esq.
                           JAUREGUI LAW, P.A.
                           1014 West 49 Street
                           Hialeah, FL 33012
                           (305) 822-2901

                           Steven A. Metcalf, II, Esq.
                           METCALF & METCALF, P.C.
                           99 Park Avenue
                           6th Floor
                           New York, NY 10016
                           (646) 253-0514

                           Roger I. Roots, Esq.
                           ROGER ROOTS, ATTORNEY AT LAW
                           113 Lake Drive East
                           Livingston, MT 59047
                           (775) 764-9347

Court Reporter:            Timothy R. Miller, RPR, CRR, NJ-CCR
                           Official Court Reporter
                           U.S. Courthouse, Room 6722
                           333 Constitution Avenue, NW
                           Washington, DC 20001
                           (202) 354-3111

Proceedings recorded by machine shorthand; transcript
produced by computer-aided transcription.

17615

# C O N T E N T S

**WITNESS:**                                                      **PAGE:**

DAVID JONES:
Direct Examination by Ms. Hernandez..............17672
Cross-Examination by Mr. McCullough.............17703
Redirect Examination by Ms. Hernandez...........17722

1    <u>**P R O C E E D I N G S**</u>

2        THE DEPUTY CLERK:  This is Criminal Matter 21-175,

3    United States of America v. Defendant 1, Ethan Nordean;

4    Defendant 2, Joseph R. Biggs; Defendant 3, Zachary Rehl;

5    Defendant 5, Enrique Tarrio; and Defendant 6, Dominic J.

6    Pezzola.

7        Present for the Government are Jason McCullough,

8    Erik Kenerson, Conor Mulroe, and Nadia Moore; present for

9    Defendant 1 is Nicholas Smith; present for Defendant 2 are

10   John Hull and Norman Pattis; present for Defendant 3 is

11   Carmen Hernandez; present for Defendant 5 are Nayib Hassan

12   and Sabino Jauregui; present for Defendant 6 are Steven

13   Metcalf and Roger Roots.  Also present are Defendant 1,

14   Mr. Nordean; Defendant 2, Mr. Biggs; Defendant 3, Mr. Rehl;

15   Defendant 5, Mr. Tarrio; and Defendant 6, Mr. Pezzola.

16       THE COURT:  All right.  Good morning to everyone.

17   So we've got a lot on our plate here, so let me try to tick

18   through as many things as we can get through in the time we

19   have before we bring in the jury.

20       I -- the obvious first place to start is the

21   question of what we do with Thursday and Friday.  I've heard

22   and seen both the arguments that have been -- that the --

23   both parties laid out, and I understand the positions.  I am

24   not going to dismiss the juror because -- largely because --

25   for a couple of different reasons.  One is I have uniform --

1    I think, uniform objection to doing that.  And just -- I

2    should make clear -- to be clear for the record, this is a

3    juror who has a work-related obligation on Thursday and

4    Friday that cannot be adjusted.  And -- again, to be clear

5    for the record, the question was whether we, at this point,

6    dismiss that juror for cause or continue -- or pause at

7    least our proceedings for the -- before the jury on Thursday

8    and Friday.  All the defendants, I believe, objected to

9    dismissing the juror for cause.  The Government would have

10   preferred we dismiss him and continue on hearing testimony

11   Thursday and Friday.  Look, to some degree, this is a

12   risk-benefit calculation that we've had to make as we've

13   gone through this case.  It -- my reason for doing -- for

14   not dismissing him is, in part, due to those risks and for

15   all the reasons we've impaneled four -- we originally

16   impaneled four alternates.  I think the other flip side of

17   it, too, is that the -- we do have a bunch of things that we

18   do need to take care of before the case goes to the jury

19   outside the jury's presence.  And so I thought that the

20   argument for cause is a little bit weaker, given that we can

21   use that time -- at least one day of that time --

22   productively, I think, going through other matters.  So

23   that's how we will proceed the rest of the week and, thus,

24   the emphasis has to be today and tomorrow to doing as much

25   as we can in front of the jury as possible.  That's number

```
 1    one.
 2              There are two preliminary -- before we get to,
 3    sort of -- I -- before I turn it over to the parties to talk
 4    about, kind of, okay, given that, what are the witnesses
 5    that are lined up for today and tomorrow, there are two
 6    other motions, I think, that are teed up that, in theory,
 7    affect -- could affect the evidence, particularly the
 8    evidence before we get to turn to the defendants.  And,
 9    Ms. Hernandez, thank you so much for pointing out that, yes,
10    I have to inquire as to the defendants as to whether they
11    would like to testify, which I will do at the close of the
12    evidence as we've all discussed ad nauseam.
13              So those two issues -- I think the two motions
14    that bear on evidence that will or will not be elicited
15    before the defendants decide whether or not to testify are
16    the expert and the Government's motion to exclude
17    Mr. Pezzola's expert and the motion to compel that was filed
18    by Mr. Pezzola last week, I think, at some point.  So I
19    don't know -- I've read the Government's expert -- motion to
20    exclude in terms of the expert.  Mr. Roots or Mr. Metcalf,
21    do either of you want to be heard on that point -- I think
22    I -- we may have discussed this a little bit at the end of
23    last week.  But do either of you want to be heard in
24    opposition to the Government's motion?
25              MR. ROOTS:  Thank you, Your Honor.  Roger Roots
```

1    for Mr. Pezzola.

2         I think we can just submit what we've submitted on

3    file, which is a pretty good rough summary and assessment of

4    the situation.  I think the jury would be informed, and it

5    would actually benefit, from having this expert testify.

6    And I do believe that at the moment, they were given a --

7    sort of a misleading impression by the direct examination

8    and the -- in the Government's case in chief.

9         THE COURT:  Okay.  And you're relying on -- just

10   so I'm clear, I think what you've filed was a -- the

11   description of the testimony that you had given the

12   Government; correct?  I just want to make sure I didn't -- I

13   am understanding, kind of, what you are relying on and what

14   I need to -- what -- I want to make sure I haven't missed

15   something, I guess.

16        MR. ROOTS:  Well, I know we did not reply to what

17   the Government just recently filed.  We filed a -- I guess,

18   a proffer of Mr. Duffy Hoffman, who is a -- actually, a guy

19   who has supervised window replacements in some of the --

20   either the Rayburn or the Russell building.  He's done an

21   awful lot.  He has a stellar résumé of -- he is a true

22   expert on replacing windows and he knows what it costs.

23   Ironically, his costs, if he were to do it, would be higher

24   than the average in the industry, and he would testify to

25   that, but even his costs would be below $1,000.

1          THE COURT:  Okay.  So I'll just -- let's -- at the

2     first -- I want to make sure I'm not missing -- I think I

3     looked at what you filed and I would just want to make sure

4     I do that and I'll rule on that.  Fair enough.

5          The other issue that, I think, we could -- I

6     think, again, affects the witnesses is this motion to compel

7     that, Mr. Roots, you filed on behalf of Mr. Pezzola and that

8     the Government responded to yesterday.  Does either -- do --

9     Mr. Roots, do you want to be heard beyond what you've put

10     down on paper?  And I'm going to ask the same for the

11     Government.  So this is my -- I think these are two things I

12     just need to hear whatever the parties want to hear [sic] on

13     them.  I'll rule.  But -- and -- quickly, and then we'll

14     turn to, sort of, what we're going to fill today and

15     tomorrow with.

16          Mr. Roots?

17          MR. ROOTS:  Yeah.  The Government has responded to

18     us with a -- after our questions, with just a -- almost a

19     brush-off, saying that they don't need -- that the Brady

20     obligations that they are under do not require them to

21     reveal informants or CHSes or undercover agents from any

22     agency other than the FBI.  And that is just flat out not

23     the law.  There's abundant case law that says that the

24     Government must provide this kind of exculpatory information

25     if it arises from the correctional -- the BOP, the Bureau of

1    Alcohol, Tobacco, and Firearms, from any agency that might

2    have -- within their umbrella of investigation, might have

3    had an investigative role in these cases.  And it's very

4    clear from what has come out in that Jeremy Brown case in

5    Florida -- it has come out that Jeremy Brown was recruited

6    to be a CHS in the Oath Keepers on January 6th by an agency

7    called Homeland Security Investigations.  And the Government

8    is just flat out saying they don't need to provide us with

9    that.  By the way, the FBI is just one agency in these, you

10   know, Joint Terrorism Task Forces.  So I submit that it's

11   not even -- it's not -- it's absolutely an insult to our

12   intelligence that only the FBI might have this kind of

13   information and that no other agency would have.  We have

14   reason to believe the State Department, we have reason to

15   believe Secret Service, we have reason to believe the

16   National Park Service -- National Park Police probably had

17   undercovers.  And that -- and it's very clear, from what we

18   know, that these undercovers did more than just monitor.  By

19   the way, if all they did was monitor, that would be

20   exculpatory evidence because, if they monitored the Proud

21   Boys, if they monitored these defendants up to and leading

22   up to January 6th and on January 6th, even merely monitoring

23   is exculpatory if all their awareness and information and

24   understanding found no evidence that supports the

25   Government's accusations in this case.  But we have evidence

1    from the Metropolitan Police Department undercover units,

2    the electronic surveillance squad, that, in fact, at least

3    one of them -- maybe, a couple of them -- were going

4    around -- by the way, they were armed, and we have video of

5    them being confronted by police with, "Hey, you're armed.

6    What's up?"  And they say, "I'm an informant."  "Okay."

7         We also have evidence that they were going around

8    on January 6th saying, "Go, go, go," saying, "Whose house?

9    Our house," saying, "Stop the steal."  They were chanting,

10   which is inciting.  They were inciting the crowd along with

11   these Proud Boys, and that is directly exculpatory.  We have

12   a right to this and the Government has not provided it.  And

13   I will go so far as to say that this trial -- this case is

14   fundamentally tarnished and poisoned by the lack of this

15   information.  We would have used this information in

16   cross-examining Government witnesses weeks ago, and we would

17   have used it to prepare our cases in chief right now, and

18   it's too late.  Frankly, this requires a mistrial.  This

19   requires a brand-new trial with all the evidence that we are

20   entitled to.

21        THE COURT:  All right.  Let me hear in response

22   from the Government.  I -- Mr. -- I was surprised,

23   Mr. Roots, to hear you say that just chanting something is

24   incitement, but if that's your position, that's your

25   position.

1          MR. ROOTS:  That's what the Government says.

2          THE COURT:  But let me hear from you in response,

3     Ms. Ballantine.

4          MS. BALLANTINE:  I'm troubled to hear Mr. Roots

5     refer to the Government as intellectually insulting in light

6     of the characterizations that he, as an officer of the

7     court, presents Your Honor with respect to evidence he

8     learns of and information he learns of.  I believe, Your

9     Honor, that we have been scrupulously accurate in citing

10    controlling case law with respect to the standard that

11    governs Brady here.  The Government, of course, must

12    discover and disclose information that is material or

13    exculpatory to defense from the prosecution team and any law

14    enforcement agency that is closely aligned with the

15    prosecution team.  That does not extend to all 18,000 law

16    enforcement agencies in the United States.  It does not

17    extend to intelligence community agencies.  So I'm, you

18    know -- I'm troubled by Mr. Roots's representations to Your

19    Honor.

20         With respect to the Metropolitan Police

21    Department's electronic surveillance unit, in January of

22    2022, the Government disclosed 65 videos that those MPD

23    officers, who were essentially acting as roving pole cams on

24    the grounds of the Capitol, took.  So he's been in

25    possession of those for a year and three months now.  His

1    allegation that somehow this comes too little too late for

2    him to use in his case in chief, candidly, simply -- may

3    simply be a reflection of the fact that Mr. Roots joined

4    this trial team after trial had commenced and clearly has

5    not had an opportunity to fully review the discovery

6    materials, but it's not true of his very able co-counsel,

7    Mr. Metcalf.

8           With respect to Jeremy Brown, Jeremy Brown is an

9    Oath Keeper who was convicted in Florida and who stands

10   charged before Judge Mehta with a trial date yet to be set.

11   I think he was just severed from the July -- or was not

12   joined to the July trial.  Whether he was recruited to be a

13   CHS of another agency is completely immaterial to the

14   actions of the Proud Boys.  The consistent theory that Your

15   Honor has applied with respect to confidential human sources

16   is that where those sources were in a position to know and

17   hear potential information about the Proud Boys' plans in

18   advance of January 6th or were percipient witnesses to the

19   Proud Boys' activities on January 6th, that information is

20   potentially material to the preparation of the defense and

21   we have -- we've worked diligently to try to identify that

22   information and to disclose it to defense.  But with respect

23   to, you know -- I am surprised because I think the heart of

24   Mr. Roots's motion is actually that there is another

25   individual who is a charged member of the Proud Boys that he

1     believes is a CHS for a Department of Homeland Security or a

2     Homeland Security -- homeland investigations unit that he

3     has not been able to identify to us.  We have done a

4     diligent search of the FBI's holdings and of those agencies

5     that are closely aligned with the prosecution team and find

6     no evidence that this individual is a confidential human

7     source, one.  And, two, you know, I have to say the very

8     fact that someone has a source relationship with the FBI

9     doesn't necessarily mean that that fact is exculpatory, nor

10    does the fact that the Metropolitan Police Department had

11    undercover officers or -- let's really call them what they

12    were -- plainclothes officers who were monitoring the

13    movements of the Proud Boys on December 14th -- or on

14    December 12th or November 14th -- none of that is

15    exculpatory per se, particularly when, as the Government has

16    done, we made diligent efforts to make Metropolitan Police

17    Department officers available -- the ones defense requested,

18    not the ones the Government provided -- and those officers

19    uniformly told defendants that they were there because the

20    Metropolitan Police Department was doing everything they

21    could to keep the Proud Boys away from Antifa because of the

22    violence that they were worried would result from

23    interactions between those two groups.  So Your Honor, we --

24    I believe we've fully complied with our obligations here.

25              THE COURT:  All right.  I do think -- look, the

1   motion -- we've spent a lot of time in this case talking

2   about ways in which CHSes -- CHS information might be

3   relevant and might be exculpatory.  And in various ways,

4   it's been -- CHS-related information has been produced to

5   the defense; in various ways, it has been admitted as

6   evidence in the case.  I think -- with regard to this motion

7   to compel, which is ECF 734, I don't think, Mr. Roots,

8   you've made a showing that the materials -- to the extent

9   you've even really been able to articulate that specific

10  materials exist, that the materials are relevant and -- are

11  relevant, let alone exculpatory.  I don't think the

12  prosecutor -- I don't think there's been a showing made that

13  the -- and then apart from that, I think the point the

14  Government makes, at least in the absence of any case law to

15  the contrary, is fair that -- there is case law limiting --

16  obviously, the Government doesn't have to -- it -- the Brady

17  obligation to search for exculpatory evidence is not

18  simply -- does not simply automatically extend to the entire

19  Federal Government, nor to various state governments, and

20  there are limits -- it's broad, but there are limits to

21  that.  The Government's laid out why they think they've met

22  their obligations, and I don't have any -- I mean, because

23  the motion is so broad, talking about just, sort of, any

24  agency called Homeland -- or I think it's -- Homeland

25  Security Investigations or something like that, there's no

1    way for me even to be able to really grant the motion

2    because we don't even really know the law enforcement

3    component we're talking about.

4           To the extent that the motion is talking about

5    specifically the law enforcement component within DHS that's

6    called, I think, Homeland Security -- the Homeland Security

7    Investigations Bureau, again, there's no particular showing

8    here -- there's no showing to counteract what the Government

9    has argued and has laid out case law supporting; that that

10   federal investigative bureau is beyond what they

11   legitimately -- within what the law has said, what they have

12   to -- what they would have to search.  And, again, I

13   emphasize, even beyond that, even assuming there was -- we

14   don't even really know exactly what materials are out there,

15   but -- and I think it's a good point that it's not even

16   clear even if a -- some particular person somewhere was a

17   CHS for some other federal agency, that given how that

18   person was positioned on January 6th or positioned vis-à-vis

19   the defendants in this case, that that would even be

20   relevant and admissible.

21          And then with regard to -- part of the motion

22   references MPD and, you know, again, I think there's no

23   specific allegation in the motion about exactly what the

24   defendant wants, why he's entitled -- and why he thinks

25   he's -- well, exactly what he wants; exactly why he thinks

1    what he wants exists; and why he feels he's entitled to it.

2    And I say that in -- particularly in light of the fact that

3    the Government has made some disclosures over the past week

4    that may result in either testimony or a stipulation.  I

5    don't know.  We'll see what the parties tell me.

6            So in light of all of those -- the -- those

7    productions made to the defense over the last week, again,

8    I'm left with not really knowing exactly, again -- what

9    exactly Mr. Pezzola thinks is there, why he thinks it's

10   relevant/admissible, and why he feels he's entitled to it.

11   Obviously, MPD is in a different category than these other

12   law enforcement agencies.  It clearly is aligned with the

13   government in -- within the meaning of that case law.  So I

14   don't, you know -- I suppose, to the extent we're talking

15   about MPD, if some -- I, you know -- I think you get over --

16   the defendant gets over the hump as far as whether the

17   Government has an obligation to search.  I just don't see

18   anything in the motion that is specific about what the

19   defendant thinks exists; why he thinks it exists; and why he

20   would be entitled to it, certainly, in term- -- why it would

21   be exculpatory.  So I'm going to deny the motion to compel

22   which is Document 734.

23           All right.  What do we have --

24           MS. BALLANTINE:  (Indicating.)

25           THE COURT:  Yes, Ms. Ballantine?

```
 1              MS. BALLANTINE:  If I could just briefly, Your
 2     Honor.  Mr. Roots filed yesterday another overlapping motion
 3     to compel -- motion for a mistrial, which is 748.  I can
 4     provide a quick response to that overnight, if the Court
 5     would like, unless the Court has taken that into
 6     consideration in its ruling here.
 7              THE COURT:  Here's what I would say.  Again, in
 8     the -- in the spirit of trying to preserve our time before
 9     the jury -- is that we just table -- it's a request for a
10     mistrial.  Obviously, I've -- I haven't granted a motion to
11     compel, so you can take that for what it's worth about how
12     you think that motion will come out.  But I think I would
13     like to table the discussion of that motion and other
14     similar things that are on the docket at this point until
15     Thursday when we don't have the jury's time to worry about.
16              MS. BALLANTINE:  Of course.  Would the Court
17     also -- the Government --
18              THE COURT:  I think --
19              MS. BALLANTINE:  -- can also respond to
20     Ms. Hernandez's motion, then, before Thursday.
21              THE COURT:  And if you think it's helpful --
22     again, I know you all have a lot to do.  I think, to the
23     extent you think it is helpful to respond today or tomorrow
24     on paper, that would be welcome.  But if you think
25     responding -- you can get your points across just responding
```

 1          orally on Thursday, that would be fine, as well.

 2                    MS. BALLANTINE:  Thank you, Your Honor.

 3                    THE COURT:  All right.  So what do we have now as

 4          far as -- before we get to the defendants, what other

 5          witnesses or stipulations should I be thinking about or are

 6          you -- are the parties prepared to present so we can at

 7          least get those portions out of the way?  I mean, with, I

 8          guess, the little caveat that, at the first break, I just

 9          want to go back and look at what Mr. Roots filed on his

10          expert before ruling on that, but putting a pin -- putting

11          that aside for the moment, what do we -- what else is teed

12          up from either side or -- not from either side, from the

13          defense?

14                    MR. MCCULLOUGH:  Your Honor, it's the Government's

15          understanding that the only other witness that's teed up

16          right now is Ms. Hernandez's investigator.  That's -- we've

17          received notice of that and understand that that -- from the

18          Government's understanding, as communicated by

19          Ms. Hernandez, that's a relatively limited scope.  So it

20          does not sound like that will be a lengthy testimony or

21          cross-examination.  The only other one would be the expert,

22          as Your Honor has referenced, which -- I believe that the

23          notice of expert on the docket is ECF 746.

24                    THE COURT:  746?  And what about the witnesses --

25          the MPD-related witnesses?  Is that --

```
 1                 MR. PATTIS:  (Indicating.)

 2                 THE COURT:  Mr. Pattis?

 3                 MR. PATTIS:  Well, at least from Mr. Biggs's

 4      perspective, we've been given an opportunity to interview

 5      all of the witnesses.  We've had a series of discussions

 6      about what to do with them, potential stipulations, and so

 7      forth.  Mr. Biggs has no intention to enter into any

 8      stipulations or offer any of them as witnesses.  I know -- I

 9      can't speak for the other defendants.

10                 THE COURT:  Okay.  Why don't I hear from the other

11      defendants, because that's going to -- this is -- this is,

12      it sounds like, going to be pivotal in figuring out how far

13      we get to -- this week.

14                 MR. ROOTS:  Well -- Roger Roots for Pezzola.

15                 I'll just say, from the three MPD officers that

16      we've interviewed, there's enough information to, you

17      know -- there is material information there, but, frankly,

18      it comes so late we have -- we're at a point where it's very

19      difficult to process this.  And, you know, again, this trial

20      would have been fundamentally different if we had, I guess,

21      had this before us weeks ago.  We -- so we are probably not

22      going to call any of the three Metro Police Department

23      officers we've interviewed.  And I would say those three

24      have been provided to us -- were chosen and selected by the

25      prosecutors.  We haven't -- we don't know what the others
```

1    would say, but even what these officers would say,

2    certainly -- there's some exculpatory aspects to what they

3    say with regard to our -- Mr. Pezzola.  But there are other

4    things that -- we -- would require much bigger

5    investigation.  We would need to go through videos with

6    them, we -- and we just don't have the time.  And so at this

7    time, again, we believe we've been prejudiced and, for that

8    reason, we will not be calling them.

9            THE COURT:  Okay.  That's -- I'm glad we got to

10   the definitive answer yes or no, because the witnesses are

11   apparently available.  Today is a day of trial.  And

12   either -- we're going to get to the point -- it sounds like

13   pretty quickly -- where I'm going to ask with -- putting

14   aside the decision to testify, whether each defendant rests.

15   And so if the witnesses are available, you can call them.

16   You decided, for your reasons, you're not going to.  That's

17   fine.  But that's what I need to know.

18            Let's just -- before we get off this, the MPD

19   witnesses, any other defendant want to make a representation

20   on those?

21            MS. HERNANDEZ:  (Indicating.)

22            THE COURT:  Well, let me put it this way.  Does

23   any other defendant -- Ms. Hernandez, on this point?

24            MS. HERNANDEZ:  Yes, sir.

25            THE COURT:  Please.

 1          MS. HERNANDEZ:  So I agree -- one, I'm not going

 2    to put any MPD witnesses on, to get to what the Court wanted

 3    to hear.  But I do agree with Mr. Roots that we were -- a

 4    lot of information was produced at the end of the case when

 5    we're doing a lot of other things.  And, as the Court can

 6    imagine with a law enforcement officer, there's a lot of

 7    prep and investigation that has to be done before a

 8    defendant would put someone like that on the stand.  There's

 9    just a lot -- a very risky situation.  So I do believe that

10    the fact that we didn't get this information until this past

11    week prejudices our ability to fully investigate, use those

12    witnesses, affect, you know -- use them in our initial trial

13    strategy, opening, and everything like that.

14          Having said all that, I don't feel that we can

15    adequately put these witnesses on the stand.  They -- the

16    Government did produce -- I forget whether it was three or

17    four separate witnesses to be interviewed, police officers,

18    MPD police officers.  And I think most of us participated in

19    those interviews, but it's just very difficult to do it at

20    the end of a trial like this.

21          THE COURT:  All right.

22          MR. SMITH:  Nordean joins.

23          MR. HASSAN:  Judge, on behalf of Mr. Tarrio, Nayib

24    Hassan.

25          We join as well, Judge, and adopt those by --

1    statements by Ms. Hernandez, and also, by Mr. Roots.

2            THE COURT:  Okay.  So --

3            MS. BALLANTINE:  If I could just briefly, Your

4    Honor, because this may be important, I do want to make the

5    record clear that we asked -- we offered to make any of

6    these officers available.  Defense chose the officers they

7    wanted to speak to, and we promptly made them available.  So

8    Mr. Roots's representation that somehow the Government has

9    limited their access to these witnesses or directed their

10   access to these witnesses is not correct.

11           THE COURT:  All right.  So in summary, then, are

12   we all in agreement that the only witness that -- again,

13   putting aside the expert for the moment, that the only

14   witness outstanding is the investigator and then we will

15   come to the issue of whether the defendants themselves

16   testify?  Is -- does any defendant dispute that?  Let me --

17           MR. PATTIS:  Can we go to the phones, Judge?

18           THE COURT:  Yes.

19           (Bench conference:)

20           MR. PATTIS:  Judge --

21           MS. HERNANDEZ:  Your Honor, we don't have enough

22   phones.

23           THE COURT:  Well, we -- from the beginning, we've

24   had one for a lawyer; one for a defendant.  I -- we don't

25   have more.  So we should have everyone -- one for one

1      defendant and one for -- one for each defendant and one for

2      each counsel.

3              Mr. Pattis?

4              MR. PATTIS:  Five minutes before the proceedings

5      began today, I was alerted to an issue that may arise in

6      cross-examination of one of the defendants, should the

7      defendant testify.  That information may or may not have an

8      impact on my client.  I had a brief discussion with

9      Mr. Kenerson about it, and it may require the calling of an

10     additional witness, but I'd like to discuss that with

11     Mr. Kenerson and counsel for the defendant in question.  And

12     I'm sorry to be coy about it, but literally I was sitting

13     here waiting for you to come out and then -- Mr. Kenerson

14     knows what I'm talking about.  I don't want to put it on the

15     record yet.  So there is one issue that might yield a motion

16     for you to decide and it may require an additional brief

17     witness.  So that's all I'll -- I'm prepared to say at this

18     point.

19             THE COURT:  And a brief witness that you would

20     seek to put on before the defendants testify or would it be

21     something you could put on afterward?

22             MR. PATTIS:  I think what I -- I'd need to make a

23     motion and get your ruling on it, and then I'd seek to put

24     it on before the defendant testifies.

25             THE COURT:  Before --

1          MR. PATTIS:  And that witness is present in the

2     room, but I don't want to create alarms.  I just want to

3     move the case along.  And I think there -- with some

4     discussions, we might be able to resolve the issue, but I

5     don't know that.

6          THE COURT:  All right.  You just don't want to --

7     me to be blindsided if this comes up, which I appreciate.

8     It sounds like -- would it -- all right.  You know, it

9     sounds like -- let me put it this way.  Is there a reason to

10    believe that we would be able to put on a particular

11    defendant that this doesn't involve first?

12         MR. PATTIS:  Not from -- from my perspective -- I

13    can't speak to the other defendants, but I -- they -- if --

14    assuming that more than one defendant's going to testify --

15         THE COURT:  Right.

16         MR. PATTIS:  -- I think that would be the case.

17         THE COURT:  All right.  Well, we can -- all right.

18    So let's -- all right.  We can --

19         Mr. Kenerson, do you want to respond?

20         MR. KENERSON:  Sure.  I just want to make sure

21    that the record is clear.  I understand -- I did --

22    Mr. Pattis is correct.  I -- he did approach me about this

23    just before the Court took the bench.  But in terms of the

24    information that he's speaking about, that was provided to

25    all counsel well in advance of trial.  So I just want to

 1    make sure the record's clear.  It's not a discovery issue

 2    here.

 3            MR. PATTIS:  No, it's not.  And it's something

 4    that, I think, has actually been dealt with in the case

 5    previously and it may come up by way of impeachment and --

 6    but I'm not claiming a discovery violation here.  It's

 7    simply a bump in the road --

 8            THE COURT:  Understood.

 9            MR. PATTIS:  -- a 403 bump in the road.

10            THE COURT:  So what I think -- it sounds like,

11    maybe, how we can handle this is you all -- we're going to

12    take a break before 11:00 and -- with the idea that I would

13    take the bench back at 11:00 with the jury.  So maybe, it's

14    for further discussion at that time.  We have to get through

15    the investigator which won't take long, but, you know,

16    you'll have a little bit of time to discuss it and see where

17    it goes.

18            MR. PATTIS:  Thank you, sir.

19            THE COURT:  All right.  Very well.

20            (Return from bench conference.)

21            THE COURT:  All right.  So --

22            MR. ROOTS:  (Indicating.)

23            THE COURT:  Yes, Mr. Roots?

24            MR. ROOTS:  Yeah, a couple of matters that don't

25    need to be sealed.  We would like a ruling with regard to

1    the window expert as soon as possible for logistic reasons.

2    If you could rule right now, we could make a determination

3    with regard to getting him here and that kind of thing.

4           THE COURT:  We're going to have a break before

5    11:00 and I will -- I just want to check one thing before I

6    rule, and so you're going to have it within an hour.

7           MR. ROOTS:  One other point.  Ms. Ballantine said

8    that the -- with regard to the choice of the three MPD

9    detectives that we interviewed, that it was our choice.  And

10   I -- there was an assertion there that I was lying.  I

11   believe -- I don't recall ever having that choice.  I'd have

12   to look through the email chains which are quite extensive.

13   I don't believe we had that choice, but I could be wrong.

14          THE COURT:  All right.  Ms. Hernandez?

15          MS. HERNANDEZ:  Your Honor, on the investigator, I

16   don't need to argue this, but I did file something this

17   morning.  I believe -- the Court excluded the statement --

18   the out-of-court statement by Mr. Johnson, a defendant in a

19   separate case.  It -- I argued that it was a statement

20   against penal interest.  I just cited some authority for the

21   Court.  I believe Holmes versus South Carolina, a Supreme

22   Court case, is on point.  I don't need to argue.  I just

23   wanted the Court to know that that -- I wanted the Court to

24   know that I think that authority requires the Court to admit

25   that.  So -- I don't know if the Court saw my motion from

1    this morning.

2         THE COURT:  I, you know -- there -- you all filed

3    a lot of things and I did not --

4         MS. HERNANDEZ:  I understand.

5         THE COURT:  And I don't fault you for that, but I

6    did not see this particular thing.  Is it -- but the point

7    is, it's nothing to do with the investigator; right?

8         MS. HERNANDEZ:  Well, it would be his testim- --

9    the investigator would be introducing that particular video,

10   which the Court excluded because you've -- you decided it

11   didn't meet the 804(b)(3) requirements.  Holmes, I believe,

12   is directly relevant, on point, or however you want to --

13        THE COURT:  Okay.

14        MS. HERNANDEZ:  I would say it controls, but --

15        THE COURT:  Okay.  Can I give -- let me just --

16   I'll look at it at the break.  And in the meantime, I don't

17   know if anyone from the Government team has seen this or

18   wants to at least respond to that case one way or the other.

19        MR. MCCULLOUGH:  Your Honor, I did see the

20   briefing.  I read it very quickly.  It -- Ms. Hernandez is

21   basically revisiting the issue in terms of the hearsay rule

22   surrounding the statement against penal interest.  I think

23   Your Honor has ruled on that.  Holmes v. South Carolina has

24   really nothing to say on that particular issue.  It is a --

25   fundamentally a Sixth Amendment case around the ability to

1    present a complete defense.  That does not alter the rules

2    of hearsay or the Rules of Evidence.  And so, Your Honor, I

3    respectfully disagree with Ms. Hernandez's position, and I

4    think Your Honor has ruled in terms of what should come in

5    under this witness.

6            THE COURT:  All right.  I'll look at it at the

7    break.

8            Mr. Roots?

9            MR. ROOTS:  I have just been informed by

10   Mr. Pattis that it was he who made the call regarding the

11   three MPD officers.  So I've just been informed of that.

12           THE COURT:  All right.  I mean, that doesn't mean

13   that any other defendant wouldn't have had the right to say

14   to the Government, you know, "Here's a particular -- we want

15   something beyond that," but fair enough.

16           Let me, then, ask, what is the state of play once

17   we get to the defendants?  How -- what defendants does the

18   Government -- has the Government been informed will not be

19   testifying?

20           MR. MCCULLOUGH:  Your Honor, it was the

21   Government's understanding as of Sunday evening that the

22   only two defendants that intended to testify were Mr. Rehl

23   and Mr. Pezzola, and I think that's what we understand the

24   state of play at this point.

25           THE COURT:  Okay.  So my thought would be, then --

1    well, let me put it this way.  For purpose -- for just

2    efficiency purposes, do counsel for the remaining three

3    defendants object if, before -- if we only have the

4    potential for the expert and the investigator, that I

5    inquire of their clients before the jury comes back in at

6    11:00 o'clock and ask them if they've had a chance to

7    discuss it with you and engage in the normal colloquy so

8    that we don't -- we can save time until later?  Mr. Pattis?

9    You look like you don't want me to do that.

10              MR. PATTIS:  I don't customarily let the Court

11   canvas my client on any critical issue because of the

12   client's right to remain silent, but I don't want to convey

13   disrespect to you as an individual.  I can tell you that

14   there have been communications and it's in -- his intention

15   not to testify, but I'll leave it to you to determine

16   whether you think it's necessary to canvas.  We would

17   request that you not do so.  I won't instruct him to

18   not answer and invoke his right to remain silent, although

19   I've done that in other cases.  But as a courtesy to you and

20   a sign of respect for all that you've put up with in us --

21   with us these four months, if you want to question him,

22   we'll make him available.

23              THE COURT:  All right.  Well, I do think it's my

24   duty to do that regardless of whether you would allow it or

25   not, number one.  And to be clear, it's going to be, you

1    know, three questions or so; right?  I'm not going to be

2    asking him, of course, about the offense or anything to do

3    with that but just simply whether he's had a chance to

4    consult with you and to confirm -- and to make sure he

5    understands that if he does decide not to testify, that, of

6    course, I'm going to instruct the jury that they cannot use

7    that against him.

8             So I will -- is -- does -- other than Mr. Pattis's

9    remark --

10            MR. SMITH:  (Indicating.)

11            THE COURT:  Mr. Smith?

12            MR. SMITH:  Your Honor, we have no objection to

13   that procedure, but we would request a ruling first on the

14   elements of the law that will apply because we think that,

15   to make an informed decision about whether to testify, the

16   defendants would need to know what crime it is they would be

17   testifying about.  So we would request a ruling on the jury

18   instructions, and then the colloquy about testimony.  But if

19   the Court is not inclined to go in that direction, we have

20   nothing to object about on the -- just the question to the

21   defendant himself --

22            THE COURT:  Okay.

23            MR. SMITH:  -- if that makes sense.

24            THE COURT:  I'm not going to rule on that,

25   although, you know, we have a little bit of time here and

 1    we're not going to spend any -- I'm not going to rule on it

 2    and we're not going to discuss it; however, let me just lay

 3    down a few things -- thoughts so that you all have this so

 4    that we can be more productive on Thursday really quickly.

 5           I'm not terribly -- I'm -- well, I'm not convinced

 6    that a concurrence -- that Judge Walker's concurrence binds

 7    me as some -- as either some -- as the Marks Rule, if it

 8    were applied to the Circuit and if it were even to operate

 9    here in the way some people think it might, I'm not

10    convinced of that, number one.

11           Number two, I'm not convinced, although I'm more

12    open to the contrary view than on the question of whether

13    it's binding on me -- I'm not convinced at this point that

14    we should pivot and redefine "corruptly" either.  Again, I'm

15    going to hear you on that.  I don't want to close the door,

16    but I'm just saying my inclination is to not pivot wholly to

17    that other instruction; however, I would ask both sides to

18    think about what they think about adding something that

19    says -- that defines "corruptly" -- put a pin in exactly

20    what the typical instruction has been, because I've been

21    looking -- Mr. Kenerson gave me what some of the other

22    courts have done.  There's some variation in that language.

23    We'll talk about that on Thursday, but -- okay.  That --

24    I'm -- I will solicit opinions from the parties about what

25    you think about defining it in some version of what the

1    courts have -- in this District have already done, and then

2    say something like, "That often involves a benefit for --

3    procuring" -- the language that everyone -- "procuring a

4    benefit for them- -- for the person or someone else."  That

5    just occurred to me as I was reading the cases, re-looking

6    at what we -- at how -- at the motion to dismiss briefing,

7    looking at the way -- look at what -- Judge Walker's opinion

8    in which he, sort of -- he comes out saying it has to be

9    defined a particular way, no question, in his view, but he

10   also -- a lot of the opinion says, "Well, look, in many

11   occasions or almost all," and so he, I think, acknowledges

12   even that in various ways that word has been used, it might

13   not involve a procurement -- the, sort of, procurement of an

14   unlawful benefit.

15            So it's just food for all your thought about

16   whether to add something along those lines that says,

17   "Often, it does," or something like that to further describe

18   the contours of what the word means.  So I'm not going to

19   decide this today or even hear from you on it, but I just

20   wanted you all to have those thoughts as you think about

21   Thursday.

22            MR. SMITH:  (Indicating.)

23            THE COURT:  Yes, Mr. Smith?

24            MR. SMITH:  So Your Honor, we just want to make

25   clear that the, you know -- we do -- we filed some briefing

1    that this -- Judge Walker's concurrence is binding, but even

2    if it's not binding, it's well-reasoned and it's persuasive,

3    and we think that Judge Walker is clearly saying that the

4    unlawful benefit element is a required element of the crime,

5    not merely an example, illustrative.  So Your Honor, we also

6    think that that makes a dramatic difference, as the Court

7    pointed out, in the law of the case, what principle will be

8    applied and what evidence would apply.  The judge appears to

9    be saying that the defendant has to know that the benefit

10   they're obtaining in committing the obstructive act is

11   unlawful.  They have to know it's unlawful.  So if you apply

12   that in the context of these cases, it appears that the rule

13   of law that we think is binding on the Court is that the

14   defendants must know whatever benefit that is being obtained

15   for their -- for Donald Trump, or whoever it is, is

16   unlawful.  In that context, that would mean Congress's vote

17   to, you know -- to discount electoral vote counts for Joe

18   Biden would be an unlawful procedure and, i.e., the

19   defendants would know the election was not stolen according

20   to them.  That makes a dramatic difference in the

21   evidence -- in the testimony in the case.  So we're

22   objecting on the grounds that the defendants have to make a

23   decision about whether to testify when they don't know what

24   the principle is that is applying to their case.

25              Judge, just very briefly, on the binding point --

1          THE COURT:  Yeah.

2          MR. SMITH:  -- Judge, two judges in the Court of

3   Appeals said that the standard that is now in the jury

4   instructions --

5          THE COURT:  Mr. Smith --

6          MR. SMITH:  -- is unconstitutionally vague --

7          THE COURT:  -- I'm sorry to cut you off, but I

8   just -- literally just said we're not going to -- I'm not

9   going to hear argument on it now.  So I understand your

10  objection.  From the beginning of the case, we made clear --

11  I made clear that you would not have the jury instructions

12  while you were -- while the Government was putting on its

13  case, while the defense was putting on its case.  These are

14  about the contours of "corruptly," I offered you my thoughts

15  on the matter, and you all can respond as you wish.  Your

16  case is still open.  If you think there's evidence you need

17  to put on or, frankly -- I mean, the Government is in the

18  same position about not knowing precisely the contours of

19  the word "corruptly."  As I said, I've indicated where I am

20  right now, but, again, your case is open.  If you feel you

21  need to do something to hedge against the fact that the --

22  we -- it might be defined slightly differently, you may do

23  so, but I'm not going to decide it ahead of time.

24          MR. SMITH:  Thank you, Your Honor.

25          So our point is -- that's precisely our point,

1    that we need to decide whether we need to hedge against

2    that.  The testimony would come from the defendants

3    themselves.  The objection is to Sixth Amendment right to,

4    you know -- the defendant's right to testify, advice of

5    counsel.  And our objections are under the Due Process

6    Clause and the Sixth Amendment.  We can't -- I can't give my

7    client advice about whether to testify if he doesn't know

8    what the rule of law is that he would testify about.  We are

9    representing right now that Mr. Nordean may have testified,

10   depending on what the rule of law would be, and we can't

11   advise him either way.

12          THE COURT:  On -- well, I would say this:  You

13   know, you all have always taken the position that the right

14   rule of law is reflected in -- as far as "corruptly" goes,

15   is reflected more or less in Judge Walker's opinion.  So

16   it's not -- it seems to me the legal argument that that's

17   what the law is is not a new one, although Judge Walker has

18   given you additional -- an additional -- additional support

19   for it.

20          What's the Government's view on whether I need to

21   decide this question before the defendants testify?

22          MR. MCCULLOUGH:  Your Honor, you do not need to

23   decide this before the defendants testify, and we're willing

24   to take up the rest of this on Thursday, as we understand

25   Your Honor to not want to engage on this at this moment, but

1    with -- response to your question, no.

2            THE COURT:  Okay.

3            MR. PATTIS:  And just so the record's clear,

4    Judge, Biggs joins the Nordean observation.

5            THE COURT:  All right.  What -- so what I will do

6    is take -- let's do this.  Let's take a short 10-minute

7    break now.  I will come back and I'll have checked the

8    docket on what you've filed, Mr. Roots, on the expert issue

9    and be prepared to rule one way or the other on that.  Then

10   we will talk about -- then I will go through -- again, all

11   I'm going to do is, you know, ask each defendant whether

12   they -- of the three defendants who are not planning on

13   testifying, you know -- make sure they understand that they

14   do have the right to testify; second, that the decision is

15   theirs alone; and if they do decide not to testify, of

16   course, I'm going to tell the jury that they can't hold that

17   against the defendant, and whether they understand all of

18   that and what is their decision about whether they will

19   testify?

20           MS. HERNANDEZ:  (Indicating.)

21           THE COURT:  Yes, Ms. Hernandez?

22           MS. HERNANDEZ:  Your Honor, on the testimony,

23   again, my client is leaning towards testifying, but I agree

24   with Mr. --

25           THE COURT:  Well, I'm going to -- I'm not --

17649

1    right.  It -- as to the two who are still -- that's open, I

2    won't -- I'm not going to do this now.  I just think it

3    makes sense to get it on the books for the three who are

4    not.  And then, after your -- after we're sure that all the

5    evidence is in, I'll turn back.

6                MS. HERNANDEZ:  Thank you.

7                THE COURT:  All right.  So let's take 10 minutes.

8    We'll come back and we'll go from there.

9                THE DEPUTY CLERK:  All rise.  This Honorable Court

10   stands in recess for 10 minutes.

11               (Brief recess taken.)

12               THE DEPUTY CLERK:  We're back on the record in

13   Criminal Matter 21-175, United States of America v. Ethan

14   Nordean, et al.

15               THE COURT:  All right.  I had a chance to just go

16   back and look at the docket on the expert.  And I am going

17   to grant the motion to exclude the expert and I will lay out

18   my reasoning on paper as soon as I can, but I don't want to

19   delay things further by trying to explain it, but I'm going

20   to grant the motion for a variety of reasons.  That's number

21   one.

22               Number two, Ms. Hernandez, I did take a look at

23   the South -- the case you mentioned.  I do agree with the

24   Government that it doesn't change my prior ruling.  So that

25   is what it is.

1           And so --

2           MS. HERNANDEZ:  Your Honor, just for

3   clarification, I -- and I believe this was the Court's

4   ruling -- my investigator will nonetheless point to that

5   gentleman's conduct, in fact, in some of the exhibits that

6   the Government has introduced.  So we're not going to

7   introduce his statement, which is what the Court barred, but

8   I'm going to ask the investigator to point to the gentleman

9   in some of the videos that the Government has introduced and

10  his conduct on that day.

11          THE COURT:  We've had plenty of testimony about

12  conduct of people who were in and around the defendants on

13  that day.  So if it is consistent with the kinds of rulings

14  we've already -- I've already made, I don't know why this

15  witness would be any different.

16          MS. HERNANDEZ:  Right.  I just -- I understood the

17  Court to not exclude that evidence.  So I just didn't want

18  to run afoul of what the Court had ruled.

19          THE COURT:  No, I -- that sounds like the kind of

20  evidence that various -- the -- various defendants, and even

21  the Government, has tried to make use of in various ways.

22  So I think that's fine.

23          All right.  So with that, I think what I will do,

24  then, is inquire of Mr. -- of the defendants who are -- have

25  decided not to testify and we'll go from there.

1          So I'm going to start with Mr. Nordean.  First of

2     all, does Mr. Nordean have a microphone in front of him or

3     can he have a microphone in front of him -- can someone

4     provide him one of the microphones.

5          (Brief pause.)

6          Or see if --

7          DEFENDANT NORDEAN:  Okay.  Subject to what my

8     lawyer just said, I'm not testifying.

9          THE COURT:  All right.  Let me just -- sir, your

10    attorney has -- other than Ms. Hernandez's -- the -- other

11    than this last witness, an investigator being called by

12    Mr. Rehl, your counsel has said that he intends to rest your

13    case.  And I wanted to let you know, as I'm sure he's

14    informed you, that you do have the right to testify on your

15    own behalf here.  Now, whether or not you should -- whether

16    or not to do so is something you should discuss with your

17    lawyer and get their advice, but ultimately the decision is

18    yours and yours alone, and you should know that if you

19    decide not to testify, I will tell the jury that they can't

20    hold that against you in your [sic] deliberations.  Do you

21    understand all of that, sir?

22         DEFENDANT NORDEAN:  Yes, Your Honor.

23         THE COURT:  All right.  And what is your decision,

24    sir?

25         DEFENDANT NORDEAN:  Subject to what my lawyer has

1     already stated, I'm not testifying.

2          THE COURT:  All right.  Very well.

3          Next, let me turn to Mr. Biggs.

4          Mr. Biggs, sir, you heard what I already said to

5     Mr. Nordean.  Your counsel has said that he intends to rest

6     your case.  So I need to let you know, as I'm sure he has

7     informed you, that you do have the right to testify in your

8     own behalf -- on your own behalf here.  Whether or not you

9     do so is, of course, something you should discuss with

10    Mr. Pattis and get his advice, but ultimately, the decision

11    about whether to do so is yours and yours alone.  And if you

12    decide not to testify, I will tell the jury that they can't

13    hold that against you in their deliberations.  Do you

14    understand all that, sir?

15         DEFENDANT BIGGS:  Yes, Your Honor.

16         THE COURT:  Okay.  And what is your decision, sir?

17         DEFENDANT BIGGS:  I intend not to.

18         THE COURT:  All right.  Very well.  Thank you.

19    You may be seated.

20         All right.  Mr. Tarrio -- all right.  Sir,

21    Mr. Tarrio, your counsel has told me, again, with this one

22    exception of Mr. Rehl's investigator, that he intends to

23    rest your case.  I wanted to let you know, as I'm sure he

24    has informed you -- they have informed you, that you have

25    the right to testify on your own behalf here.  Again,

1    whether or not you do so is something that you should

2    discuss with your lawyers and get their advice, but the

3    decision is ultimately yours and yours alone.  And, as I --

4    you heard me tell your two co-defendants, if you decide not

5    to testify, I will tell the jury that they cannot hold that

6    against you in their deliberations.  Anything about that you

7    don't understand?

8              DEFENDANT TARRIO:  No, Your Honor.

9              THE COURT:  Okay.  And what is your decision, sir?

10             DEFENDANT TARRIO:  Based on my conversations with

11    my attorney, Your Honor, I am -- and based on the objections

12    that were filed in my case, I am not going to be

13    testifying --

14             THE COURT:  All right.

15             DEFENDANT TARRIO:  -- on my behalf.

16             THE COURT:  All right.  Very well.

17             DEFENDANT TARRIO:  Thank you.

18             THE COURT:  All right.  You all -- you may be

19    seated, sir, as well.

20             Okay.  So it's now 10:50.  Unless another party --

21    unless either side wants to raise with me something we could

22    do in the next 10 or 15 minutes, what I would propose we do

23    is break just until we can -- the jury arrives and we can --

24    well, actually, there is one thing -- let me have counsel

25    pick up the phone for a sidebar.

1       (Bench conference:)

2       (Following proceedings under seal:)



17655



17656





17658



17659



1    ███████████████████████████████████████████

2    ████████████████████████████████

3                (Following proceedings in open court:)

4                THE COURT:  All right.  So Ms. Hernandez, on the

5    point you raised, what they have told me is that they need

6    to be, sort of, essentially, adjacent to him when he

7    testifies.  And it's, you know -- given the layout of this

8    courtroom, what we -- what -- they advised me of this the

9    other day, not regarding your client, and anybody who

10   intended to testify, obviously -- any defendant -- and what

11   we thought was we would have your client in the -- we could

12   come back from a recess and have your client in the witness

13   chair when the jury comes in and then that they would just,

14   kind of, fill in that -- they would have to come in through

15   that door and then the marshal would just, sort of, stand or

16   sit, basically, where that door is where they come in.  It's

17   not ideal.  That's their, you know -- that's their process.

18   So --

19               MS. HERNANDEZ:  So Your Honor, I would object.  I

20   understand it's their process.  As you know, my client has

21   no history of violence.  There's no assertion or allegation

22   or evidence in this case that he personally used any

23   violence in the case.  I -- it -- we're in such a -- the

24   courtroom is already so jammed because of the number of

25   counsel and defendants and jurors sitting on the --

1    alternates or whatever -- the extra seats on the bottom.  It

2    is going to be absolutely clear.  No other witness who has

3    testified, including Bertino and Greene who had pleaded

4    guilty to serious offenses, has had a marshal sit behind

5    him.  And both those gentlemen had pending gun cases.

6    Mr. Bertino's a felon with a felon in possession charge.

7    Mr. Rehl has no felony priors, no violence in the evidence.

8    So it's going to be painfully obvious that -- of what is

9    happening.  And I think in that line of cases, that the

10   jury's not supposed to be informed of that -- again, I don't

11   think Mr. Rehl presents a risk of danger to anybody.  And I

12   would ask -- I would ask that the Court not -- that the

13   Court waive that standard operating procedure, or however

14   it -- whatever it is.  And -- that's my request.  And if the

15   Court doesn't grant it, I object to the procedure.

16              THE COURT:  Okay.  I mean, I've looked at -- I've

17   heard what they've told me about their standard operating

18   procedure and I've looked at that area of the courtroom in

19   light of all of that, and I think the best way -- I'm -- let

20   me put it this way.  I'm not going to countermand the

21   procedures they use in every single case in the United

22   States.  On the other hand, I think we can -- it certainly

23   would be more dramatic if we had a situation where your

24   client rose out of his seat, came over to the witness stand,

25   and while that was going on, he had a marshal following him

17662

 1    all the way to the stand.  So my thought as to how to best

 2    minimize it -- perhaps not in a way that you find

 3    satisfactory, I understand -- is to just have them -- have

 4    him pre-positioned here.  The marshal can be, sort of,

 5    somewhere nearby, but not right there.  Have the jury come

 6    in, sit down.  And then just have the marshal simply --

 7    even -- I think even if you -- if the marshal were sitting,

 8    it would be better.  And just have the marshal take a seat

 9    over there.  For many of the jurors, it won't be in their

10    line of sight, but you're right, there -- it is what it is.

11    I don't -- I'm -- think I can -- all I can do is work around

12    their procedures to minimize the impact.

13              MS. HERNANDEZ:  So I think you have more power

14    than that.  I understand what the Court is saying.  I'm -- I

15    would like to consider whether, maybe, I want the Court to

16    give an explanation of some sort to the jury --

17              THE COURT:  Okay.

18              MS. HERNANDEZ:  -- just think about, you know --

19    about how, you know -- maybe, when defendants testify, this

20    is the procedure, or something, so as to --

21              MR. HULL:  Your Honor, Biggs joins in all of

22    those.

23              THE COURT:  Yeah.  I mean, whether that's -- we

24    can't say anything that is false.  So I would -- I'm happy

25    to consider something.  I'm happy to consider another

1    physical solution if you think there is one.  I -- when they

2    told me this, I came back and looked at it, and I don't know

3    that there is one that complies with their procedures.  I

4    take your point, Ms. Hernandez, that, in theory, I probably

5    have -- I'm not saying I have no authority to countermand

6    those procedures, but I don't see -- in -- given what we can

7    do to minimize it, I don't think there's a reason for me to

8    do it.

9              MS. HERNANDEZ:  Is the Court -- well, I -- again,

10   I do believe you do.  There is a reason to do it,

11   particularly because we're so tight.  Is the -- did the

12   Court say that the marshal's going to have -- be seated or

13   how --

14             THE COURT:  I thought -- I think that would be --

15   first of all, it's probably easier on them, number one.  But

16   putting that aside, I think it makes it less -- yeah, I

17   think that's better.  Right?

18             MS. HERNANDEZ:  But then you have -- I don't --

19   again, I can't see exactly the area.  I -- it seems pretty

20   jammed, but if the chair would be in front of the door,

21   that's another issue.  So I think, maybe, we can -- maybe,

22   if -- maybe, if we could take a break after the last witness

23   and then, kind of, figure out how this works, or do it now

24   or somehow, how it would -- it physically would work.

25   Because I guess the Court would have to take a recess anyway

17664

1    to have this -- to have it happen as the Court is

2    describing; right?

3            THE COURT:  Correct.  Correct.  So I mean, that's

4    fine.  And your client wants to make a -- I mean, to the

5    extent he hasn't made a final decision --

6            MS. HERNANDEZ:  Right.

7            THE COURT:  -- I'm going to have to -- I mean, I

8    am going to have to colloquy him outside the presence of the

9    jury to just confirm and -- yes, his decision is to testify.

10   So I mean, we're going to have to have a little bit of a

11   break, or at least a little bit of outside the jury's --

12   activity outside the jury anyway.  So we'll get your

13   investigator done.  Maybe -- we'll get your investigator

14   done, we'll recess, we'll send them to an early break, or

15   lunch.  We can talk about how this is going to -- and,

16   maybe -- I should leave the bench now.  I don't know if we

17   have the jury yet.

18           THE DEPUTY CLERK:  (Indicates affirmatively.)

19           THE COURT:  Oh, we do have them?  All right.  So

20   we could, you know -- we can take that break.  It seems to

21   me -- we're going to have to because I'm going to have to

22   ask each of them whether they intend to --

23           MS. HERNANDEZ:  Your Honor, there's also the issue

24   that's been teed up to the Court.  The Government has

25   indicated that it will provide a flash drive of materials.

1    The other defense counsel -- they can speak for themselves,

2    but they have indicated they also want a -- the flash drive

3    of materials because, as the Court knows, when these

4    exhibit -- when the cross-examination happens, sometimes it

5    impacts -- or it has impacted other defendants.  Your Honor,

6    I object to that procedure.

7              THE COURT:  We've already -- I mean, I can tell

8    you that I'm not going to -- just like I haven't required

9    any party during this case to present cross-examination

10   materials before the witness is done testifying, I'm not

11   going to do it.

12             MS. HERNANDEZ:  Your Honor, you -- the Court has

13   required without -- on the Court's authority -- supervisory

14   authority over the -- has required the defense, over our

15   objection and over, we believe, a Sixth Amendment right, to

16   identify witnesses, produce exhibits, do a proffer 36 hours

17   before defense witnesses take the stand.  So the

18   Government -- and that's for the convenience of the

19   defense -- of the Government and for the convenience of the

20   Court in case there are issues that have to be raised.

21             THE COURT:  I -- we have the -- Ms. Hernandez, we

22   have the jury now --

23             MS. HERNANDEZ:  I understand, Your Honor, but this

24   is -- this is a Sixth Amendment right that I need to put on

25   the record at some point.

```
 1            THE COURT:  All right.  Go ahead.
 2            MS. HERNANDEZ:  So the defendant has a right under
 3    the Fifth Amendment not to take the stand, and that has to
 4    be a knowing and intelligent waiver.  The Government hasn't
 5    even identified what the scope of this cross-examination is
 6    in this sense.  Is it 10 documents?  Is it a terabyte of
 7    materials?  Is it -- what's the nature of the
 8    cross-examination material?  I think it violates my client's
 9    Fifth and Sixth Amendment rights to produce a flash drive of
10    materials.  How am I supposed to -- my client would be --
11    the procedure I understand the Government is proposing is my
12    client will be testifying; the Government will be
13    cross-examined [sic] while I am provided a flash drive of
14    materials which I either pay attention to the questions and
15    answers from my client or review the materials.  I -- that
16    does not amount to adequate representation.  I cannot pay
17    attention to the questions, object to any questions that are
18    improper, and also, review the materials that are going to
19    be used.  The Court knows that, in this case, every piece of
20    evidence that has been introduced by either side has been
21    the subject of substantial challenges.  With respect to the
22    Government's cross-examination, they have -- in practice,
23    they have used materials that were not even seen by a
24    witness to cross-examine; that is, they have not -- the
25    Court has not required them, and they have taken the
```

1    position that whether a witness has seen a document or not,

2    they can still be cross-examined.  I don't believe that's

3    a -- I've never -- I mean, how -- do we know what the

4    quantity of materials is?  The Court gave a recess the other

5    day -- when Ms. Miller was being cross-examined, we took a

6    day off.  I know that that had security issues involved, but

7    we took a day off so that the parties could look at the

8    materials that were provided --

9            THE COURT:  To be clear, I have to interject here

10   because that was because, of course, that -- there were

11   multiple issues that the law is clear have to be decided

12   outside the presence of the jury.  So that's why we did

13   that.

14           MS. HERNANDEZ:  Well, I -- there were -- not all

15   the issues involved that, but nonetheless, the Court took an

16   early recess because the Government tried to produce

17   materials through USAfx and it wasn't just because they were

18   coming in through USAfx.  It stands to reason that if

19   they're producing something, as counsel, I am required to

20   review it.  How else can I make use of it if I can't review

21   it?  When -- and -- aren't they -- what if some of the

22   materials are -- I mean, in that instance last week, Your

23   Honor, the Government tried to introduce materials that had

24   been excluded by the Court in previous rulings, and they

25   still produced it and never identified it as -- previously.

17668

 1   They tried to introduce materials where supposedly there was

 2   some Nazi stuff on it.

 3           THE COURT:  Okay.  Again --

 4           MS. HERNANDEZ:  Do we know if any of this is in

 5   these materials?

 6           THE COURT:  I'm letting you make the record, but I

 7   need you to make the record because the jury is waiting.

 8           MS. HERNANDEZ:  Well, I just don't understand how

 9   the Court believes it is fair and that the -- and it is an

10   even-handed situation when we -- the Government gets 36

11   hours' notice of our witnesses' exhibits, but we're not

12   going to get any notice while my client -- and my client has

13   a Fifth and Sixth Amendment right --

14           THE COURT:  Okay.

15           MS. HERNANDEZ:  -- he's going to be waiving in

16   order to take the stand.

17           THE COURT:  Just --

18           MS. HERNANDEZ:  It makes no sense.

19           THE COURT:  Okay.  To be clear, I've -- in no

20   situation in this case have I required any party -- either

21   party -- to provide cross-examination materials in advance

22   of a witness taking the stand.  And I'm not going to do so

23   here.  However, I think it is -- look, I haven't, in

24   general -- I've taken each issue as it's come up and

25   attempted to resolve the disputes in a way that moves the

1    trial along.  Ms. Hernandez, you've made good points.  I

2    think it would -- I think you've made -- let me put it this

3    way.  I'm not going to let the Government hand you a flash

4    drive and then begin the cross-examination.  Okay?  The

5    question of what you can talk to your client about and how

6    long that break is, we can take up.  But I'm not -- I mean,

7    I think -- I -- I think in terms of just practical fairness,

8    that is a fair point.  And so, as I said, I'm not going to

9    let the Government just hand you the flash drive and begin.

10   That having been said, you're not going to get the materials

11   ahead of time.  That -- I have never ordered that and I've

12   never even heard of that being ordered.  So that's the way

13   we're going to proceed.

14          So -- all right.  Let's bring in the jury and get

15   the investigator's testimony underway.

16          MS. HERNANDEZ:  I need to go get him.

17          THE COURT:  All right.  Very well.  We can -- but,

18   Ms. Harris, you can bring in the jury.

19          (Brief pause.)

20          Do the parties -- let me -- can I canvas the

21   parties about one question.  Is there any objection if I

22   tell the jury -- I'm going to tell them there's a schedule

23   the rest of the week, obviously, that they're not going to

24   be needed Thursday or Friday.  Does any party object to me

25   telling them we expect them to get the case next week?

```
 1                  MR. PATTIS:  No objection.

 2                  MR. METCALF:  No, Judge.

 3                  MR. HULL:  No.

 4                  THE COURT:  I want to give them a sense of where

 5      we are.  Okay.

 6                  (Brief pause.)

 7                  And for that reason, if you would have -- when

 8      Ms. Hernandez comes back, if you would tell her to let the

 9      witness wait while I give that -- while I tell the jury the

10      schedule and let them know we expect the jury to get the

11      case next week.  I just -- I don't think we need the witness

12      to hear that.

13                  (Brief pause.)

14                  THE DEPUTY CLERK:  Jury panel.

15                  (Jury returned to jury box.)

16                  THE COURT:  All right.  Everyone may be seated.

17                  MR. PATTIS:  May I be excused momentarily?

18                  THE COURT:  Yes, sir.  Yes.

19                  Welcome back, ladies and gentlemen.

20                  Let me advise you of the schedule for this week

21      and, kind of, a little bit -- set your expectations about

22      where we are.

23                  We're going to hear evidence -- you're going to

24      hear evidence today and tomorrow.  We will not sit -- or at

25      least you will not sit to hear evidence on Thursday and
```

17671

 1    Friday of this week.  We do expect that you will receive the
 2    case for deliberation at some point next week.  After the --
 3    you may remember from the beginning of the case how I, sort
 4    of, explained the phases of the trial.  I'll -- after the
 5    evidence is complete, after the defense rests, after we see
 6    if there's any rebuttal case from the Government, the next
 7    thing would be for me to instruct you on the law.  And so
 8    I'll be reading a bunch of instructions to you, and you'll
 9    get a copy of those instructions, and then there will be
10    closing arguments, and then you will receive the case.  So
11    expect that process to wrap up next week.  But this week,
12    you will sit today, tomorrow, and then Thursday and Friday
13    we'll take care of other matters outside your presence.
14              With that, let me turn to counsel for Mr. Rehl to
15    call her next witness.
16              (Brief pause.)
17      **DAVID JONES, WITNESS FOR DEFENDANT REHL, SWORN**
18              THE COURT:  All right.  Sir, I'll just -- before
19    we begin, it's been a running theme here in this trial.  If
20    you can make sure you keep your mouth close enough to the
21    microphone so it projects out and everyone can hear you,
22    number one.  And then, of course, if you can wait until
23    Ms. Hernandez is done asking the question before you answer
24    it, and then hopefully she'll wait until you're done with
25    your answer before she asks the next question.

```
 1              THE WITNESS:  Absolutely.
 2                         DIRECT EXAMINATION
 3    BY MS. HERNANDEZ:
 4    Q.  Good morning.
 5              MS. HERNANDEZ:  Good morning, ladies and gentlemen
 6    of the jury.
 7    BY MS. HERNANDEZ:
 8    Q.  Mr. Jones, could you please state your first and last
 9    name and spell it for the court reporter.
10    A.  David Jones, D-A-V-I-D, J-O-N-E-S.
11    Q.  Can you -- are you employed?
12    A.  Yes.
13    Q.  And how are you employed?
14    A.  I'm a licensed private investigator in the District.
15    Q.  And just a little background.  How long have you been an
16    investigator?
17    A.  Since 1997.
18    Q.  And before then, what was your profession?
19    A.  I was in the U.S. Navy, and a four-year degree at the
20    University of Maryland.
21    Q.  Okay.  And what was your position while in the Navy?
22    A.  Intelligence --
23              MR. MCCULLOUGH:  Object to relevance.
24              THE COURT:  Overruled.
25              THE WITNESS:  Intelligence collecting,
```

1    cryptography.

2    BY MS. HERNANDEZ:

3    Q.  Okay.  So did that have something to do with -- does

4    that have something to do with your current work?

5    A.  I don't think so.

6    Q.  Okay.  So you're employed as an investigator.  You have

7    been working with me in this case; is this correct?

8    A.  Yes.

9    Q.  On behalf of Mr. Rehl?

10   A.  Correct.

11   Q.  But you work on a whole lot of other cases; is that

12   correct?

13   A.  Correct.

14   Q.  And how are you paid in this case?

15   A.  This case, I'm appointed through the court.

16   Q.  Okay.  In your work as an investigator, do you have the

17   occasion to review discovery?

18   A.  Yes.

19   Q.  And what -- and does that -- what does that entail?

20   What kind of materials do you review?

21   A.  Anything -- every case is different, but it includes

22   police reports, sometimes computer data.

23   Q.  How about videos?

24   A.  Videos, wiretaps, undercover wire.

25   Q.  And wiretaps involve recordings; is that correct?

```
 1    A.  From cell phones, yes.

 2    Q.  Okay.  All right.  So I'd like to show you --

 3              MS. HERNANDEZ:  I believe this is Government

 4    Exhibit-400D, as in "David," please.  And, I believe, Your

 5    Honor, this has been introduced already.  So I'd ask --

 6              THE DEPUTY CLERK:  Yes.

 7              MS. HERNANDEZ:  Do I need to press something here?

 8              THE DEPUTY CLERK:  Is it on yours or --

 9              MS. HERNANDEZ:  No, it's on Ms. Rohde's.

10              THE DEPUTY CLERK:  There you go.

11              MS. HERNANDEZ:  And for the record, this is

12    Government Exhibit-400D, as in "David."

13    BY MS. HERNANDEZ:

14    Q.  Have you looked at this video before?  Do you know?  Do

15    you want to play it a little bit?

16    A.  Probably.  Yes, if we could, please.

17              (Video played.)

18              MS. HERNANDEZ:  Okay.  Thank you.

19    BY MS. HERNANDEZ:

20    Q.  Have you -- do you recognize this video?

21    A.  Yes.

22    Q.  Have you looked at it before today?

23    A.  Yes.

24    Q.  How many times?

25    A.  Several.
```

17675

1    Q.   Okay.  And did you look at it at my request?

2    A.   Yes.

3    Q.   Is that correct?

4              There is -- at about --

5              MS. HERNANDEZ:  Can you start from zero to -- from

6    the beginning to about the 20-second mark, please.

7              (Video played.)

8    BY MS. HERNANDEZ:

9    Q.   Do you know who took this video or where you first saw

10   it?

11   A.   My understanding, Mr. Rehl took this video.

12   Q.   On his cell phone?

13   A.   Correct.

14   Q.   Okay.  And do you recall the -- from the metadata on

15   this video, what time it was taken?

16   A.   I believe this one is --

17   Q.   Do you need --

18   A.   -- 12:54:09.

19   Q.   Okay.  So from zero to 20, did you hear on this video

20   somebody say, "Fuck it, let them storm the Capitol," or

21   words to that effect?

22             MR. MCCULLOUGH:  Objection.  Misstates.

23   BY MS. HERNANDEZ:

24   Q.   Did you or did you not hear on this -- okay.  What did

25   you hear?

1    A.  I hear chanting, "USA," obviously, and I hear noises

2    that sound like a crowd.

3    Q.  Okay.  Did you hear any particular statements like --

4    did you hear somebody say, "Fuck it" and "Storming the

5    Capitol" in the same phrase?

6              MR. MCCULLOUGH:  Objection.  Misstates.

7              THE COURT:  The witness can answer the question if

8    he recalls.

9              THE WITNESS:  Yes, something similar to that.

10   BY MS. HERNANDEZ:

11   Q.  Do you want to listen to it again?

12   A.  If I could, please.

13             MS. HERNANDEZ:  Please.

14             (Video played.)

15             MS. HERNANDEZ:  Stop, please.

16   BY MS. HERNANDEZ:

17   Q.  Did you hear anything about the Capitol?

18   A.  I -- it's very -- I can't hear this copy as well as I

19   could hear the copy that I reviewed previously.

20   Q.  And when you say that, is that because you were using

21   headphones or --

22   A.  No, just a better system.

23   Q.  Okay.  On the copy -- but you're sure that the copy you

24   listened to before was the same exact video --

25   A.  Yes, yes.

1    Q.   Okay.  And is that because of the metadata, do you know?

2    A.   No, I just -- I recognize the video from where it was

3    filmed and --

4    Q.   And on the --

5    A.   -- what's happening.

6    Q.   When you listened to it before, were you able to

7    identify the voice that said that -- those words about

8    the -- storming the Capitol?

9            MR. MCCULLOUGH:  Object to foundation.  If we

10    could be heard on the phones, Your Honor.

11            THE COURT:  Yes.

12            MS. HERNANDEZ:  I can establish foundation, Your

13    Honor.

14            THE COURT:  All right.  Let's --

15    BY MS. HERNANDEZ:

16    Q.   How long have you been working in this case, Mr. Jones?

17    A.   Around a year.

18    Q.   And how many times do you think you've spoken to

19    Mr. Rehl in -- during that time?

20    A.   I've met him over a dozen times.

21    Q.   Okay.  And so when you say you've met him, you've talked

22    to him in person -- when you say you've met him, you've

23    talked to him person to person?

24    A.   So -- yes, each meeting is in person for over two hours.

25    Q.   Okay.  And have you also listened to -- have you also

1    reviewed discovery in this case?

2    A.   Yes.

3    Q.   And -- discovery meaning videos; is that correct?

4    A.   Right.

5    Q.   Have you listened to any telephone conversations or

6    anything involving Mr. Rehl?

7    A.   Not that I recall, no.

8    Q.   Have you listened to videos where his voice is heard?

9    A.   Maybe one or two come to mind.

10    Q.   Okay.  So would that -- when you listened to this video

11    on your system, which had a better system, were you able to

12    identify a voice that said something about storming the

13    Capitol?

14    A.   No voice in here sounds familiar to me.

15    Q.   So it didn't -- no voice in there sounds familiar to

16    you, including Mr. Rehl's voice?

17    A.   Correct.

18              MS. HERNANDEZ:   Okay.  Can you please keep on

19    playing to the end.

20              (Video played.)

21    BY MS. HERNANDEZ:

22    Q.   Did you hear anything else at the end of that -- towards

23    the end of that video that -- any other voice that you

24    recognized?

25    A.   I think I hear Mr. Rehl clear his throat and say the

```
 1    word "yeah."

 2    Q.  And where is that?

 3    A.  It's, I want to say, like, four or five seconds from the

 4    end.

 5           MS. HERNANDEZ:  Okay.  Can we play from four or

 6    five seconds -- maybe, six seconds from the end, please.

 7           (Video played.)

 8           THE WITNESS:  Before that.  Sorry.

 9           (Video played.)

10    BY MS. HERNANDEZ:

11    Q.  Did you hear it then?

12    A.  Yes, I did.

13    Q.  And could you tell -- were you able to tell where you

14    heard it?  I mean, in terms of the counter at the bottom.

15    A.  You know, I can look --

16    Q.  Do you see the counter when -- from where you're

17    sitting, can you see the counter at the bottom of the --

18    A.  Yeah.  It's very small.  There's two counters.  There's

19    one on the left, and I'm looking at the one on the right

20    which shows the end duration.  I could --

21    Q.  Okay.

22    A.  -- try to look at the one on the left.

23           MS. HERNANDEZ:  So can we play it again, please,

24    from that end area.

25           (Video played.)
```

1    BY MS. HERNANDEZ:

2    Q.  Okay.  Were you able to determine there where it was?

3    A.  At the 59 point.

4    Q.  And why do you think -- other than just the voice, is

5    there another reason why you believed that that was

6    Mr. Rehl -- any other reason?

7    A.  That voice sounds -- or that sound sounds like it's in

8    close proximity to the source of the recording or close to

9    the phone.

10   Q.  So from that, what did you -- what did you infer from

11   that?

12   A.  I believe that's Mr. Rehl.

13   Q.  Okay.  And that's both because you recognized the voice

14   and because of the closeness of the voice to the source of

15   the video?

16   A.  Correct.

17   Q.  But earlier, before the 20-second mark, you didn't get

18   that same condition of the statement being close to the

19   person who was taking the video; is that correct?

20   A.  That is correct.

21   Q.  Okay.  Let me move on.

22               MS. HERNANDEZ:  Can you please play Government

23   Exhibit-1001, Ms. Rohde, and start at the 12:46 --

24               (Video played.)

25               MS. HERNANDEZ:  Can you go to -- I'm sorry.  Can

```
 1    you go -- can you start again and go to the 0029 counter.

 2              (Video played.)

 3              MS. HERNANDEZ:  Can you go to 5:43 on the counter.

 4              (Video played.)

 5              MS. HERNANDEZ:  Stop.

 6    BY MS. HERNANDEZ:

 7    Q.  Do you see this gentleman in the center here?

 8    (Indicating.)

 9    A.  Yes.

10    Q.  Have you been able to identify who that person is?

11    A.  Paul Russell Johnson.

12    Q.  Okay.  And do you -- can you describe what he's wearing

13    and what he's holding in his hand.

14    A.  He's wearing a megaphone -- I mean, using a megaphone.

15    He's wearing a black ball cap with a diamond emblem and a

16    black hoodie and a backpack at this point.

17    Q.  Okay.  And that -- there's the hat with the diamond

18    shape, and there's the megaphone; is that correct?

19    (Indicating.)

20    A.  Yes.

21    Q.  And were you able to see him at other places in this

22    particular video?

23    A.  Yes.

24              MS. HERNANDEZ:  Can you move the counter to 6:37,

25    please, Ms. Rohde.
```

```
 1                    (Video played.)

 2    BY MS. HERNANDEZ:

 3    Q.  So were you able to see him with the megaphone again?

 4    A.  Yes.

 5    Q.  And have you --

 6              MS. HERNANDEZ:  Can you please move the counter to

 7    10:19.

 8                    (Video played.)

 9              MS. HERNANDEZ:  Can -- stop, please.  Thank you.

10    I'm sorry.  Can you move back and start from, like, 10:17.

11                    (Video played.)

12              MS. HERNANDEZ:  Stop.

13    BY MS. HERNANDEZ:

14    Q.  Did you see that gentleman again there?

15    A.  Yes.

16    Q.  And what did you see him doing?

17    A.  He's engaged with the barrier and fence, appears to be

18    pushing it.

19    Q.  Okay.  Did you review other videos of this gentleman at

20    the Capitol -- I mean, in this scene -- in these scenes?

21              MS. HERNANDEZ:  Can you take that down, please.

22              THE WITNESS:  The initial scene that you had up

23    there, you didn't stop on him, but I saw him in the

24    beginning.

25    BY MS. HERNANDEZ:
```

```
 1   Q.  Okay.  And --

 2   A.  Around the 20 mark or 29 mark.

 3   Q.  Let me --

 4            (Brief pause.)

 5            Let me show you this video.

 6            MS. HERNANDEZ:  Please show this only for the

 7   witness.

 8            (Brief pause.)

 9            (Video played.)

10            MS. HERNANDEZ:  Okay.  Stop.

11   BY MS. HERNANDEZ:

12   Q.  Are you able to identify, from what you've seen --

13            MS. HERNANDEZ:  I'm sorry.  I'm the one who has to

14   stop, huh?

15   BY MS. HERNANDEZ:

16   Q.  Were you able to identify anybody you recognize in that

17   video?

18   A.  Yes.

19   Q.  And does that look like an accurate representation of

20   what -- of the other videos that you've been looking at,

21   that same gentleman?

22   A.  Yes.

23            MS. HERNANDEZ:  Your Honor, I'd move to introduce

24   that video as Defense Exhibit-63, I believe -- Rehl

25   Exhibit-63.
```

```
 1                    THE CLERK:  You have a 63.

 2                    MS. HERNANDEZ:  64?

 3                    THE DEPUTY CLERK:  You have a 64.

 4                    MS. HERNANDEZ:  65?

 5                    THE DEPUTY CLERK:  Yes.

 6                    MS. HERNANDEZ:  Thank you.

 7                    MR. MCCULLOUGH:  No objection.

 8                    THE COURT:  All right.  It will be admitted.  And

 9       permission to publish it.

10                    MS. HERNANDEZ:  Thank you, Your Honor.

11                    (Video played.)

12       BY MS. HERNANDEZ:

13       Q.  Do you see the gentleman we've been talking about,

14       Mr. Johnson, in this scene?

15       A.  I do.

16       Q.  And how can you identify him?

17       A.  He's wearing the black hoodie with the Harley-Davidson

18       logo and the Woodland camo pants.

19       Q.  Okay.  So this logo there?  (Indicating.)

20       A.  Yes.

21       Q.  Let me play that again a little bit farther back.  And

22       this is at the 24-second counter.

23                    (Video played.)

24       BY MS. HERNANDEZ:

25       Q.  Again, were you able to see that -- Mr. Johnson again
```

1    pushing that barrier?

2    A.  Yes.

3    Q.  Okay.

4              (Video played.)

5    BY MS. HERNANDEZ:

6    Q.  And did you -- in this video, do you see Mr. Rehl?

7    A.  No.

8    Q.  Okay.  Let me show --

9              MS. HERNANDEZ:  I'm sorry.  This is only for the

10   witness.

11             (Video played.)

12             MR. MCCULLOUGH:  Your Honor, may we be heard

13   briefly?

14             (Bench conference:)

15             MR. MCCULLOUGH:  Your Honor, so this is -- so just

16   to begin, we did not get any notice of these videos, which

17   is fine.  Ms. Hernandez is free to do whatever she wants.

18   But I just want to make it clear that we intend to

19   cross-examine on the full scope of these videos that she's

20   putting in, and I believe that by playing, kind of, the

21   whole First Street breach, as she seems to be doing here,

22   that we would intend to cross on this whole First Street

23   breach, including identifying all the Proud Boys that are

24   involved in this.  I just want it to be clear, because this

25   is the kind of thing that we would hash out in advance.  If

1    Ms. Hernandez is going to say, "I'm going to, you know,

2    introduce a nine-minute video into evidence showing the

3    First Street breach," I just want to be clear that this goes

4    on to the black fence and otherwise, and I would assert that

5    we have the right to go into those subjects.

6              MS. HERNANDEZ:  So Your Honor, I haven't played

7    the whole nine minutes yet.  I'm waiting -- this is being

8    played for the witness, and I'm waiting to get to the

9    particular point so that I can identify.  So I do not plan

10   to play the whole nine minutes for the jury or move to

11   introduce the whole nine minutes.  And I thought this was --

12   that these are materials that were produced by the

13   Government in advance.  And I apologize if I didn't identify

14   these.

15             THE COURT:  Okay.  Look, I think it behooves you,

16   Ms. Hernandez, to make clear exactly what you are admitting,

17   then, and -- but anything that's -- either you ask the

18   witness about or that you admit, it seems to me, temporally,

19   that's going to open up whatever the Government wants to do

20   in response.  But I agree with you.  If this video goes on

21   to events that you really don't intend to elicit anything

22   from him about or talk to him about, then we just need to

23   know, "Okay.  The whole thing is not admitted and it's only

24   admitted to Time X or Y or Z," and then the Government will

25   have to tailor its cross accordingly.

```
 1                   MS. HERNANDEZ:  Correct, Your Honor.

 2                   THE COURT:  All right.

 3                   MS. HERNANDEZ:  Thank you.

 4                   (Return from bench conference.)

 5                   (Video played.)

 6                   MS. HERNANDEZ:  I'm sorry, Your Honor.  I'm

 7      looking for the --

 8                   (Video played.)

 9                   MS. HERNANDEZ:  I'm not going to move any other

10      videos, just the one that I already moved which was 65, Your

11      Honor.  And just let me check one other thing.

12                   THE COURT:  All right.  Very well.

13                   (Brief pause.)

14                   MS. HERNANDEZ:  So let me move on to a different

15      topic.

16                   (Brief pause.)

17                   Your Honor, and I believe the Government has

18      previously introduced this particular video -- the

19      picture -- or let me -- let the --

20      BY MS. HERNANDEZ:

21      Q.  Mr. Jones, do you -- if you can see this picture on your

22      screen, do you know what Government exhibit number this is

23      from your notes?

24      A.  From my notes?

25      Q.  Yeah.
```

```
 1    A.   Yeah, I could look.

 2    Q.   Would that refresh your recollection?

 3    A.   Yes.

 4    Q.   Thank you.

 5    A.   It's 401G, as in "golf."

 6    Q.   Okay.  I'm sorry.

 7              MS. HERNANDEZ:  So Your Honor, the Government

 8    previously introduced this as 401G, as in "golf," this

 9    picture.  So I would move to publish to the jury.

10              MR. MCCULLOUGH:  No objection.  We move for the

11    production of Jencks materials which should have been

12    previously disclosed.

13              MS. HERNANDEZ:  Excuse me?

14              THE COURT:  All right.  We'll -- let me hear you.

15              (Bench conference:)

16              THE COURT:  Ms. Hernandez?

17              MS. HERNANDEZ:  I didn't quite hear what he said,

18    but I gave him these pictures on Fri- -- whatever -- when we

19    were last here when my investigator was about to testify,

20    but -- we were here all day, so he never got on the stand.

21              THE COURT:  What Mr. McCullough moved for is

22    Jencks material which would include --

23              MS. HERNANDEZ:  And I gave him Jencks.

24              THE COURT:  I see.  So then the notes he referred

25    to here are not Jencks?
```

1          MS. HERNANDEZ:  Those notes were from an email

2     that I sent to Mr. McCullough this morning -- the notes for

3     the metadata were just from an email that I sent

4     Mr. McCullough this morning and to agree that Mr. -- that

5     the investigator could just look at the note for the

6     metadata.

7          THE COURT:  No, no, we're not talking about

8     metadata, I don't believe.  You just asked the witness to

9     refresh his recollection with investigative notes that he

10    took.  And I guess the question is, have those notes been

11    produced?

12         MS. HERNANDEZ:  Yes, the notes were produced.  And

13    the only thing he looked at was an email that I sent and --

14    to Mr. McCullough and the investigator this morning just on

15    the particular two photographs.  And I, again, sent

16    Mr. McCullough the two photographs.  The only other Jencks

17    are the notes that -- I made a copy of the investigator's

18    notes.

19         MR. MCCULLOUGH:  Okay.  So I understand that by

20    "investigator's notes," he's just referring to the email

21    that Ms. Hernandez sent him this morning?

22         MS. HERNANDEZ:  Correct, and then the other notes

23    were what I -- I made a copy of the notes with the

24    timestamps and stuff that I gave to Mr. McCullough on

25    Friday --

```
 1            THE COURT:  All right.

 2            MS. HERNANDEZ:  -- or Thursday, whatever day we

 3   were here last.

 4            THE COURT:  All right.  Very well.  And this

 5   exhibit, Mr. McCullough, is already in as Government's

 6   Exhibit -- whatever Ms. Hernandez has identified it as?

 7            MR. MCCULLOUGH:  I think she's just identified it

 8   as 401 "golf."

 9            THE COURT:  Right.  Is that correct to the best of

10   what we know?  I mean, I -- the question -- the only reason

11   I'm asking is whether -- again, what -- if it is the same

12   document, then I suppose, fine, his testimony would be the

13   same as if -- it would be if the Government's exhibit was

14   up, but we haven't -- I don't believe Ms. Hernandez has --

15   well, it's not published yet, you know?  Again, if it's

16   precisely the same thing, we don't have to get hung up on

17   it, but if it's not, then -- we just need a clear record

18   here of what's going on.

19            MS. HERNANDEZ:  So what's going on, Your Honor, is

20   the Government introduced this photograph.  Mr. Pezzola is

21   in the corner.  And there's a photograph taken seconds later

22   where Mr. Pezzola's not in the corner --

23            THE COURT:  No, no --

24            MS. HERNANDEZ:  -- and they're both from

25   Mr. Rehl's phone.
```

1            THE COURT:  I'm -- you should be able to get all

2     this and do it.  The question is just whether it's just

3     easier to bring up an exhibit that's already been admitted

4     that has a sticker on it.  If you want to admit it as your

5     own exhibit, then we just need, like, something with a

6     sticker on it and we need to -- you to identify what the

7     number's going to be and all the rest.  This is just a

8     housekeeping thing so that we don't get lost.  And, maybe,

9     if it's easier, you could just have the Government bring up

10    their exhibits.  Maybe you want -- I understand you might

11    have a reason to want it to be Defense Exhibit whatever, but

12    when you just say, "Well, this is the same thing," I --

13    maybe, that's right, but they need to be able to confirm

14    that, and then you need at least to be able to say, "Okay.

15    We're now going to admit it as Rehl Exhibit X or Y or Z," if

16    you don't want to just rely on Government Exhibit X or Y or

17    Z or whatever it is.

18            MS. HERNANDEZ:  Okay.  Okay.

19            THE COURT:  Oh, I just -- that's all, and

20    there's --

21            MS. HERNANDEZ:  Okay.

22            THE COURT:  -- nothing substantive about it;

23    just --

24            MS. HERNANDEZ:  Okay.

25            THE COURT:  -- to make sure we -- okay.

17692

```
 1              (Return from bench conference.)
 2              MS. HERNANDEZ:  So Your Honor, this is -- well,
 3       I'm sorry.
 4              Ms. Rohde, can you bring up Government
 5       Exhibit-401G, as in "golf."
 6              Your Honor, this has already been -- I guess --
 7       it's up.  And this was Government Exhibit-401G, as in
 8       "golf," which was admitted earlier.  And this person down
 9       here --
10       BY MS. HERNANDEZ:
11       Q.  Mr. Jones, do you know who that person is down here?
12       (Indicating.)
13       A.  I don't know him, but it appears to be somebody that I
14       know.
15       Q.  And --
16       A.  Dominic Pezzola.
17       Q.  Okay.  And this -- from the metadata, this particular
18       photograph was taken at -- it's on Mr. Rehl's phone and it's
19       at 11:30 -- I'm sorry -- 1:13 and 7 seconds; is that
20       correct?
21       A.  Right.
22       Q.  Okay.  Now, I'm going to show you another photo -- and
23       from looking at this picture and from your experience as an
24       investigator, can you tell -- what can you tell us about the
25       focus of the picture, if anything?
```

1    A.  It appears the person taking this picture is facing --

2                MR. MCCULLOUGH:  Objection to foundation.

3                MS. HERNANDEZ:  I think he gave us an indication

4    of the foundation, Your Honor, but I can add more.

5                THE COURT:  Please.  Go ahead.

6    BY MS. HERNANDEZ:

7    Q.  Okay.  Mr. Jones, you've been working as an investigator

8    how many years, you said?

9    A.  25, 26.

10   Q.  In that -- in the course of your work, do you take

11   photographs?

12   A.  All the time.

13   Q.  How many photographs have you taken, do you think?

14   A.  I couldn't guess.

15   Q.  Thousands?  Hundreds?

16   A.  Since digital cameras, yes.  Thousands.

17   Q.  And the purpose of taking photographs -- what is the

18   purpose when you take photographs?

19   A.  Memorialize, to show what a scene may look like at a

20   particular time of day from a particular angle.

21   Q.  Okay.  And sometimes you take those pictures at the

22   request of an attorney; correct?

23   A.  Correct.

24   Q.  And do you sometimes do it just on your own when you go

25   to an investigative scene?

1    A.   Usually on my own, yes.

2    Q.   Okay.   So with that experience in mind, when you look at

3    this picture, what would you say the person taking the

4    picture is trying to do, if you can tell?

5              MR. MCCULLOUGH:   Renewed objection.   Foundation.

6              THE COURT:   Sustained.

7    BY MS. HERNANDEZ:

8    Q.   Okay.   Let me show you --

9              MS. HERNANDEZ:   I will mark this as Defense

10   Exhibit-66, Your Honor.   And this is only for the witness.

11   BY MS. HERNANDEZ:

12   Q.   And from your review of this picture, can you tell

13   whether this is an adequate -- an accurate representation of

14   the scene?

15   A.   Yes.

16             MR. MCCULLOUGH:   Object to foundation.

17   BY MS. HERNANDEZ:

18   Q.   Do you know where this picture came from?

19   A.   From Mr. Rehl's phone.

20   Q.   And do you know what the metadata for this picture is?

21   A.   This is 1:13 and 11 seconds.   So four seconds past

22   the --

23   Q.   So that -- this photo is four seconds past the picture,

24   401G, that the Government introduced; is that correct?

25   A.   Yes.

1    Q.  Does this appear to be an accurate representation of the

2    same scene or -- in the other picture?

3    A.  Yes.

4            MS. HERNANDEZ:  Okay.  Your Honor, I would move

5    this photograph, which is at metadata 1:13 and 11 seconds,

6    into evidence as Mr. Rehl Exhibit-67.

7            MR. MCCULLOUGH:  No objection.

8            MS. HERNANDEZ:  And ask to publish.

9            THE DEPUTY CLERK:  You said 66 before.

10           MS. HERNANDEZ:  Okay.  So -- because 66 is the

11   Government exhibit; right?

12           THE DEPUTY CLERK:  No, the Government's exhibit

13   was the Government's exhibit.  You identified this as 66.

14           MS. HERNANDEZ:  No, this is a -- this is 1:13 and

15   11.  This is the photograph at 1:13 -- one hour, 13 minutes,

16   and 11 seconds.  I'll do it as 66.

17           THE COURT:  It -- Ms. Harris, is there another

18   document you think is -- or another piece of evidence you

19   think is already admitted as 66?

20           THE DEPUTY CLERK:  No, she just said 66.  When she

21   pulled this up, she said -- she was -- identified it as

22   Rehl-66.

23           THE COURT:  Okay.

24           THE DEPUTY CLERK:  So now she's asking to admit

25   it.  It's still 66.

1        MS. HERNANDEZ:  Right.  I'll do it as 66.  It was

2   because we introduced the Government -- the other --

3        THE DEPUTY CLERK:  The Government used their

4   exhibit for the other --

5        THE COURT:  Okay.  So it will be admitted as

6   Rehl-66.  And --

7        MS. HERNANDEZ:  Publish.

8        THE COURT:  -- Ms. Hernandez, you have permission

9   to publish.

10        MS. HERNANDEZ:  Thank you.

11   BY MS. HERNANDEZ:

12   Q.  So Mr. Jones, this photograph is almost -- is taken how

13   many seconds after the earlier one?

14   A.  Four seconds.

15   Q.  Okay.  And is it in the same area as the other one?

16   A.  Yes.

17   Q.  Does this include the picture of Mr. Pezzola?

18   A.  No.

19   Q.  From your expertise, what, if anything, can you tell

20   about the focus of this photograph?

21        MR. MCCULLOUGH:  Object to foundation.

22        THE COURT:  I guess I'll overrule the objection to

23   the extent the witness can talk about what the -- from his

24   observations of the photo, it appears to be focused on.

25   BY MS. HERNANDEZ:

1    Q.  Go ahead, Mr. Jones.  From your observation and your

2    experience, what does this photograph appear to be focused

3    on?

4    A.  From being a local resident, I can see in the center of

5    the photograph the Washington Monument.

6    Q.  And --

7    A.  In the distance.

8    Q.  Is that what you're pointing to?  (Indicating) --

9    A.  Yes.

10   Q.  -- what you're suggesting?

11              And does the focus appear to be the crowd or does

12   it not, also?

13   A.  All I can say is the Washington Monument is in the very

14   center of the photograph.

15   Q.  Okay.  And bringing --

16              MS. HERNANDEZ:  Can you bring up Government

17   Exhibit-401 golf, please, Ms. Rohde.

18   BY MS. HERNANDEZ:

19   Q.  Can you see the Washington Monument in this photograph?

20   A.  No.

21   Q.  But it's -- so it's not here?  (Indicating.)  If it's

22   not, it's not.

23   A.  I can't see it.

24   Q.  Okay.  But it's in the -- that tower is in the same

25   area, is that correct?

17698

1    A.  Yes.

2    Q.  And one last --

3            MS. HERNANDEZ:  Thank you.  You can take it down.

4    BY MS. HERNANDEZ:

5    Q.  Well, one last question about those two photographs.

6    From your experience, was the focus of that -- of those two

7    photographs any particular person in the -- in the crowd?

8            MR. MCCULLOUGH:  Object to foundation.

9            THE COURT:  Sustained.

10           MS. HERNANDEZ:  I'm going to play a segment of

11   Government Exhibit-436, but I just want to get to the point,

12   Your Honor.  The Government introduced this exhibit, I

13   believe, as Exhibit-436.

14           (Brief pause.)

15           I'm sorry.  Ms. Rohde, maybe, you can pull up 436,

16   please -- Government Exhibit-436 -- since it's already --

17           (Brief pause.)

18           And can you bring it up at the 3-minute --

19   3-hour-43-second -- 3-hour-43-minute-and-40-second mark.

20           And I believe, Your Honor, this is Government

21   Exhibit-436 which has already been introduced.  So I would

22   ask to publish to the jury.

23           (Brief pause.)

24           THE COURT:  Is this the same video that has

25   already been admitted?

```
 1              MS. HERNANDEZ:  The Government -- yes, it's being

 2       played from Ms. Rohde's --

 3              THE COURT:  I'm asking the Government --

 4              MS. HERNANDEZ:  I'm sorry.

 5              THE COURT:  -- to confirm that because they -- I'm

 6       just asking the Government to confirm that.

 7              MR. MCCULLOUGH:  I'm just confirming whether the

 8       full six-hour video is being put into evidence and is

 9       previously in evidence at 436.

10              MS. HERNANDEZ:  I asked that it be taken to

11       counter at 3 hours, 43 minutes, and 40 seconds, Your Honor.

12              THE COURT:  But are you admitting the full video

13       or are you admitting only what the Government has already

14       admitted which, from what they've said, sounds like it's

15       a -- only a subset of the video?  So if you -- I mean,

16       Ms. --

17              MS. HERNANDEZ:  So I'm trying to admit starting at

18       the 3:43, Your Honor.

19              THE COURT:  All right.  Can I have counsel at

20       sidebar.

21              (Bench conference:)

22              THE COURT:  Ms. Hernandez, I just think we're

23       running up against the same problem.  You can start

24       something at one time and play it to another, but the

25       question is what you are moving to admit -- what the
```

1    Government is saying is, I think, implicitly, you're moving

2    to admit hours of video here and they have chopped this up

3    into something that's already been admitted in full.  Why

4    not just do it through theirs so we don't have to go

5    through -- why not just have the Government bring up their

6    exhibit so we don't have to go through this?

7              MS. HERNANDEZ:  So Your Honor, we are playing

8    their exhibit.

9              THE COURT:  Oh, okay.

10             MS. HERNANDEZ:  And my understanding is

11   Mr. Nordean also played this video at this point at the 3:43

12   mark.  We're all playing from Mr. -- for -- the Government

13   is the one controlling the exhibit.  I'm not playing it from

14   my --

15             THE COURT:  All right.  Understood on that part.

16             What did the -- so the Government did not admit

17   the entire thing; is that correct?

18             MR. MCCULLOUGH:  That's correct, Your Honor.

19             THE COURT:  All right.

20             MR. MCCULLOUGH:  And I think Mr. Smith, on behalf

21   of Nordean, admitted some portion of this around the Peace

22   Monument.  I mean, this -- I think this is relatively

23   straightforward.  We just need to understand what's

24   coming -- what she's attempting to do right now which I'm

25   not sure that we know --

1          THE COURT:  Or what portions of it -- maybe,

2    that's what you mean -- what portions of it --

3          MS. HERNANDEZ:  Right.  I'm starting it at the

4    3-hour-and-43-minute and, I believe, 30 seconds and that's

5    around the time you will see Mr. Johnson on the screen.  And

6    my understanding is this clip was introduced by -- part of

7    this clip -- or this clip that I'm trying to play was -- is

8    within the exhibit that was introduced by Mr. Smith.

9          (Brief pause.)

10          MR. MCCULLOUGH:  Your Honor --

11          MS. HERNANDEZ:  The -- so they -- Mr. Smith just

12    played that using the Government's -- Government

13    Exhibit-436.

14          THE COURT:  Mr. McCullough?

15          MR. MCCULLOUGH:  Again, Ms. Hernandez is welcome

16    to do -- use this however she would like.  I just would like

17    to know if she can just put timestamps on the record as to

18    what she's actually putting in and subject to my previous

19    comment that, you know, we're going to cross-examine on the

20    scope.

21          MS. HERNANDEZ:  I have -- I've started -- I've

22    said it several times.  Four --

23          THE COURT:  All right.

24          MS. HERNANDEZ:  Three hours --

25          THE COURT:  Right.

```
 1                MS. HERNANDEZ:  -- 43 seconds [sic] --

 2                THE COURT:  Okay.

 3                MS. HERNANDEZ:  -- and 30 seconds.

 4                THE COURT:  So that's fine.  Just move to admit --

 5      Ms. Hernandez, when you -- just say, "To the extent it

 6      hasn't been admitted already, we ask to admit Time X to Time

 7      Y," and then I'll, I'm sure, admit it, and then we'll have a

 8      record of what we're doing here.

 9                MS. HERNANDEZ:  Correct.

10                THE COURT:  All right.

11                MS. HERNANDEZ:  That's what I'm trying to do.

12                THE COURT:  All right.

13                (Return from bench conference.)

14                MS. HERNANDEZ:  So Ms. Rohde, can you please --

15      it's Government Exhibit-436 starting at the 3-minute -- I'm

16      sorry, 3-hour-43-minute-and-40-second point.

17                (Video played.)

18                MS. HERNANDEZ:  Can you stop it, please.

19      BY MS. HERNANDEZ:

20      Q.  Can you identify who this person is, Mr. Jones?

21      (Indicating.)

22      A.  Yes.  Paul Russell Johnson.

23                MS. HERNANDEZ:  Okay.  Keep on going.

24                (Video played.)

25                MS. HERNANDEZ:  Okay.  Stop.
```

```
 1              So that would be from 3 minutes -- 3 hours, 43
 2     minutes, and 40 seconds to 3 hours, 44 minutes, and 30
 3     seconds, Your Honor, and I would introduce that as Rehl
 4     Exhibit-67.
 5              THE COURT:  All right.  Without objection, it will
 6     be admitted.
 7              MS. HERNANDEZ:  And, again, that's that segment
 8     from Government-436.
 9              I have no other questions, Your Honor.  Thank you.
10              Thank you, Mr. Jones.
11              THE COURT:  All right.  Very well.
12              (Brief pause.)
13                          CROSS-EXAMINATION
14     BY MR. MCCULLOUGH:
15     Q.  Good morning, Mr. Jones.
16              Just quickly, you were shown a video of -- a
17     couple of videos of Paul Johnson; correct?
18     A.  Right.
19     Q.  One of those videos was at -- him near the Peace
20     Monument; is that correct?
21     A.  Right.
22     Q.  And it showed him basically pushing down a fence;
23     correct?
24     A.  Pushing a fence, yes.
25     Q.  Pushing a fence; correct?
```

1    A.   Right.

2    Q.   And that fence was not bolted to the ground; correct?

3    A.   Didn't appear to be.

4    Q.   And he pushed that fence down in order to progress

5    towards the Capitol; is that right?

6    A.   Looks like it.

7    Q.   And that's a physical action against the fence; correct?

8    A.   Correct.

9    Q.   That's a violent action against the fence; correct?

10   A.   It looks like it.

11          MR. PATTIS:  Objection, Judge.  Legal

12   characterization.

13          MR. MCCULLOUGH:  Violent?

14          MR. PATTIS:  Objection.  Characterizing an action

15   that everybody can see.  It speaks for itself.

16          THE COURT:  I understand.  Sustained.

17   BY MR. MCCULLOUGH:

18   Q.   He's taking physical action against the fence; correct?

19   A.   He appears to be.

20   Q.   In order to proceed forward; correct?

21   A.   That's what it looks like.

22   Q.   And based on your extensive experience as an

23   investigator, is it harder to push down a fence that's

24   bolted to the ground or one that's not bolted to the ground?

25          MR. PATTIS:  Objection.  403, Judge.

```
 1              THE COURT:  Well, sustained.
 2   BY MR. MCCULLOUGH:
 3   Q.  Now, you were shown a number of videos of Paul Johnson
 4   at the Peace Monument; right?
 5   A.  Right.
 6   Q.  And you were -- he was shown with a bullhorn; correct?
 7   A.  Right.
 8              MR. MCCULLOUGH:  And, Ms. Rohde, if I can have you
 9   pull up Exhibit-1000.  Let's go to the four-minute mark,
10   Ms. Rohde.
11   BY MR. MCCULLOUGH:
12   Q.  Now, at the Peace Monument, Paul Johnson was there with
13   a megaphone; correct?
14   A.  Right.
15   Q.  And Mr. Nordean, Mr. Biggs, Mr. Rehl were also at the
16   Peace Monument; correct?
17   A.  They were in that area.
18   Q.  They also had a megaphone; correct?
19   A.  One did, yes.
20   Q.  Now --
21              MR. MCCULLOUGH:  Sorry, Ms. Rohde.  1000.  My
22   apologies.  At the four-minute mark, Ms. Rohde.
23   BY MR. MCCULLOUGH:
24   Q.  Mr. Jones, Paul Johnson was not with Mr. Biggs,
25   Mr. Nordean, and Mr. Rehl on the National Mall earlier that
```

1    day, was he?

2    A.  Not that I know of.

3    Q.  Paul Johnson did not address the Proud Boys on the Mall

4    using a megaphone earlier that day, did he?

5    A.  Not that I'm aware of.

6         MR. MCCULLOUGH:  Go ahead, Ms. Rohde.  Play just

7    for a few seconds.

8         (Video played.)

9         MS. HERNANDEZ:  Objection, Your Honor.  This --

10   it's beyond the scope in terms of the time.  If the Court

11   can look at the time on the top, that's two hours earlier --

12   or one-and-a-half hours --

13        (Bench conference:)

14        THE COURT:  Mr. McCullough?

15        MR. MCCULLOUGH:  Your Honor, the implication --

16        (Brief pause.)

17        THE COURT:  Mm-hmm?

18        MR. MCCULLOUGH:  I'm just going to go through a

19   couple of incident- -- instances where Paul Johnson was not

20   there with his megaphone.  The implication of the testimony

21   was that Paul Johnson was at the Peace Monument using a

22   megaphone and, therefore, all this happened.  I'm just very

23   quickly rebutting that all with things that are in evidence,

24   basically, indicating that these defendants traveled with a

25   large group, and I've got five instances which are going to

1    get them to the Peace Monument, and they're going to be very

2    quick.  We're not going to dwell on this.  I was just going

3    to have --

4              MS. HERNANDEZ:  I'm sorry.

5              MR. MCCULLOUGH:  -- Ms. Rohde play a few --

6              MS. HERNANDEZ:  He has to walk away from the

7    microphone if he's going to be speaking.

8              THE COURT:  All right.  I'm sorry.  He's done

9    speaking.  So I wasn't able to pop out and hear him.  Go

10   ahead, Ms. Hernandez.

11             MS. HERNANDEZ:  So Your Honor --

12             THE COURT:  I understand -- listen, I

13   understand -- I was -- look, if there were other incidents

14   of breaches and other things, that's one thing.  But why

15   doesn't this rebut the, kind of, point you were trying to

16   make here that, "Oh, this is the person responsible"?

17             MS. HERNANDEZ:  Your Honor, the videos that I

18   showed were from 1:00 -- from nearly 1:00 p.m. in the

19   afternoon.  So that's an hour-and-a-half --

20             THE COURT:  Right.

21             MS. HERNANDEZ:  -- after this.

22             THE COURT:  Okay.  Answer my question.

23             MS. HERNANDEZ:  So I'm trying to answer it.  To

24   the -- to suggest that whatever happened at 10:43 has a

25   relationship to what happened at 1:00 p.m. when another

17708

```
 1    person is yelling into a megaphone makes no -- it just makes

 2    no temporal or relevant -- temporal relevance to what was

 3    shown.

 4              THE COURT:  I'm going to overrule the objection

 5    and just let the Government point out that he was not

 6    present at these other parts leading up to it.

 7              (Return from bench conference.)

 8              MR. MCCULLOUGH:  Ms. Rohde, if you'll just play a

 9    few seconds, please.

10              (Video played.)

11              MR. MCCULLOUGH:  Pause there.

12    BY MR. MCCULLOUGH:

13    Q.  It was Mr. Nordean who was addressing the group of Proud

14    Boys here on the Mall; correct?

15    A.  Correct.

16              MR. MCCULLOUGH:  And, Ms. Rohde, if you'll just

17    take us to the 4:55 mark.

18              MS. HERNANDEZ:  Again, Your Honor, relevance --

19              THE COURT:  I've already ruled.

20              MS. HERNANDEZ:  And scope.

21              MR. MCCULLOUGH:  Ms. Rohde, if you'll just play a

22    few seconds.

23              (Video played.)

24              MR. MCCULLOUGH:  Just pause there.  Just played

25    from the 4:55 to 5:01 mark for the record.
```

1    BY MR. MCCULLOUGH:

2    Q.  Mr. Jones, and Mr. Biggs, then, addressed the Proud Boys

3    here; correct?

4    A.  Right here, yes.

5              MR. MCCULLOUGH:  And, Ms. Rohde, if you'll take us

6    to the 13:21 mark.

7              (Brief pause.)

8              Just play this.

9              (Video played.)

10             MR. MCCULLOUGH:  Just pause there.

11   BY MR. MCCULLOUGH:

12   Q.  And this is Mr. Nordean addressing the group of Proud

13   Boys; correct?

14   A.  Right.

15   Q.  That's not Mr. Johnson; correct?

16   A.  No.

17   Q.  It's Mr. Nordean, Mr. Biggs, Mr. Rehl who are leading

18   this group of Proud Boys to the Capitol; correct?

19   A.  I can't say who was leading.

20             MR. MCCULLOUGH:  And, Ms. Rohde, if you can take

21   us to the 19-minute -- 19:03 mark, please.

22   BY MR. MCCULLOUGH:

23   Q.  Now, you're aware that the Proud Boys had paused at the

24   food trucks for about a half an hour; correct?

25   A.  I'm not aware, but --

1    Q.  Oh.  You're not familiar with the full --

2              MS. HERNANDEZ:  Scope, Your Honor.

3              THE COURT:  Overruled.

4    BY MR. MCCULLOUGH:

5    Q.  Mr. Jones, you're not familiar with the path that these

6    defendants took to get to the Capitol?

7    A.  This is about where I started reviewing, right here.

8    Q.  Okay.  So you had not actually reviewed the rest of

9    the -- these defendants' actions that day; correct?

10   A.  Not the ones you previously showed me.

11   Q.  Okay.  So, I guess, not knowing, then -- just focusing

12   here on the 12:45 mark, you recognize this to be around the

13   food trucks; correct?

14   A.  Right.  Yeah.

15   Q.  And it's Mr. Nordean that tells the group of Proud Boys

16   to go to the Peace Monument --

17             MR. SMITH:  Objection.  Foundation.

18             MS. HERNANDEZ:  And scope.

19             THE COURT:  Sustained as to foundation and scope.

20   The witness hasn't reviewed this video.

21             MR. MCCULLOUGH:  Your Honor, the witness was

22   testifying from this video.

23             MR. PATTIS:  Can we have a sidebar, Judge?

24             THE COURT:  Yes.

25             (Bench conference:)

17711

```
 1              THE COURT:  Yes, Mr. Pattis?
 2              MR. PATTIS:  Judge, Mr. Biggs objects.  I mean, I
 3    understand the Government's desire to give its closing
 4    argument as many times as it can and as often as it can, but
 5    this is beyond the scope; it's irrelevant; it's
 6    argumentative; and it's a 403 waste of time.  I mean, I
 7    understand --
 8              THE COURT:  Okay.
 9              MR. PATTIS:  -- the Government wants to end on a
10    high note, but it should do so fairly within the scope of
11    the evidence presented.  Mr. --
12              THE COURT:  I understand your argument.
13              MR. PATTIS:  -- McCullough is using an unrelated
14    witness to try to give his closing argument --
15              THE COURT:  Mr. Pattis -- all right.  I understand
16    your argument.
17              Mr. McCullough, I gave you a little leeway to
18    point out Johnson wasn't present at these other places.  I
19    mean, this -- I don't think -- he just said, I thought -- I
20    didn't -- I -- he hasn't -- he's not familiar with this part
21    of the video.  Am I wrong?  I mean, if he's not familiar
22    with a temporal part of this, it seems to me, at a minimum,
23    on 403, it has to be out -- I mean, or -- on foundation, all
24    the rest of it.
25              MR. MCCULLOUGH:  I'll move to Exhibit-1001.  We'll
```

1    go to the Peace Monument.

2              THE COURT:  All right.  Very well.

3              (Return from bench conference.)

4              MR. MCCULLOUGH:  Ms. Rohde, if you can pull up

5    Exhibit-1001, please.  And if you'll take us to the 2:38

6    mark.  Ms. Rohde, the 2:38 mark.  My apologies.

7    BY MR. MCCULLOUGH:

8    Q.  Mr. Jones, just up on the screen for you, are you

9    familiar with this image?

10   A.  Yes.

11   Q.  And this is the group of Proud Boys that are being led

12   by Mr. Nordean, Mr. Biggs, and Mr. Rehl?

13             MS. HERNANDEZ:  Scope, Your Honor.

14             THE COURT:  Overruled.

15             THE WITNESS:  Appears to be.

16             MR. MCCULLOUGH:  Go ahead and play that,

17   Ms. Rohde.

18             (Video played.)

19             MR. MCCULLOUGH:  Pause there.

20   BY MR. MCCULLOUGH:

21   Q.  You hear them chanting, "Whose streets?  Our streets";

22   correct?

23   A.  Yes.

24   Q.  And did you see Mr. Johnson in any of those images

25   there?

17713

```
 1    A.  No.
 2                MR. MCCULLOUGH:  Now, Ms. Rohde, if you'll take us
 3    to the 6:29 mark.
 4    BY MR. MCCULLOUGH
 5    Q.  Do you recognize this image?
 6    A.  Yes.
 7    Q.  This is Mr. Biggs at the Peace Monument; correct?
 8    A.  Right.
 9    Q.  12:52 p.m.; correct?
10    A.  Right.
11    Q.  After he has led the group of Proud Boys to just outside
12    the --
13                MS. HERNANDEZ:  Objection.  Scope, Your Honor.
14                THE COURT:  Overruled.
15                THE WITNESS:  Yes.
16    BY MR. MCCULLOUGH:
17    Q.  And do you remember what Mr. Biggs chants here?
18    A.  I don't.
19    Q.  I'll play it for you.
20                MR. MCCULLOUGH:  Ms. Rohde.
21                (Video played.)
22    BY MR. MCCULLOUGH:
23    Q.  Do we hear, "Whose Capitol?  Our Capitol"?
24    A.  Yes.
25    Q.  That's at 12:52 right in front of the Capitol; correct?
```

17714

1    A.  Right.

2    Q.  "Whose House?  Our House"; correct?

3    A.  Yes.

4    Q.  And that's Mr. Biggs leading that chant; correct?

5    A.  It appears to be, yeah.

6    Q.  It's not Mr. Johnson, is it?

7    A.  Mr. Johnson's also using his megaphone.  I can't really

8    tell what he's saying there.

9    Q.  You can't tell what he's saying; correct?

10   A.  No, because his screen says video only.  They don't --

11   they didn't include the audio on this.

12   Q.  You can hear Mr. Biggs saying, "Whose Capitol?  Our

13   Capitol"; right?

14              MR. PATTIS:  Objection.  Asked and answered.  403.

15              THE COURT:  Sustained.  Asked and answered.

16   BY MR. MCCULLOUGH:

17   Q.  And you were asked a couple of questions about

18   Exhibit-400D, "delta."

19              MR. MCCULLOUGH:  I'll ask Ms. Rohde to bring that

20   up.

21   BY MR. MCCULLOUGH:

22   Q.  And I think you testified that this is a video that was

23   taken by Mr. Rehl; correct?

24   A.  Right.

25   Q.  So this is Mr. Rehl that's holding the camera here?

1    A.  My understanding, yes.

2              MR. MCCULLOUGH:  Ms. Rohde, why don't you go ahead

3    and play this without sound just for a moment.

4              (Video played.)

5    BY MR. MCCULLOUGH:

6    Q.  So the person holding this camera is going towards the

7    breach; correct?

8    A.  To some degree, yes.  Mm-hmm.

9    Q.  And they're going to continue moving towards the fence;

10   correct?

11             Mr. Jones, you have seen this video before;

12   correct?

13   A.  Yes.  Mm-hmm.

14   Q.  And they continue to go towards the breach; correct?

15   A.  Right.  Mm-hmm.

16   Q.  And right here, he's right up on the fence; correct?

17   A.  A couple of bodies back, yes.

18   Q.  A couple of bodies back.  And then there is Mr. Johnson

19   right there, just came into frame?

20   A.  Right.  On the right.

21   Q.  The person taking this is right behind him; correct?

22   A.  Behind to the left.

23   Q.  And he rushes -- the person taking this rushes across

24   that barrier; correct?

25   A.  He crosses the barrier, yes.

1    Q.  One of the first couple of people across that barrier;

2    correct?

3    A.  Couple dozen, yeah.

4            MR. MCCULLOUGH:  Now, Ms. Rohde, if you could play

5    this with sound, please.  And, actually, if you could just

6    leave us right there at the end, it would be great.  If you

7    can leave us at the 59-second mark with some sound.  That's

8    fine, Ms. Rohde.  We can play it from there, 52-second mark.

9    We'll play that with sound.

10           (Video played.)

11   BY MR. MCCULLOUGH

12   Q.  I hear an "ahhh-ah" sound, huh?

13   A.  Right.

14   Q.  Do you recognize that one as Mr. Rehl?

15   A.  It sounds that way --

16   Q.  Spot on; right?

17           MS. HERNANDEZ:  Objection, Your Honor.  Let him

18   finish the answer.

19           THE COURT:  Yeah.  Well, it's just -- you may

20   finish your answer, sir.

21           THE WITNESS:  I take into consideration the

22   "ahhh-ah" grunting sound is close to the camera that's

23   filming this.

24   BY MR. MCCULLOUGH:

25   Q.  Yeah.  So that one -- that's Mr. Rehl -- that grunt is

1      Mr. Rehl?

2      A.  It sounds like it --

3      Q.  Yeah.

4      A.  -- could be.  Yeah.

5              MR. MCCULLOUGH:  And then if we could take it back

6      to about that nine-second mark, Ms. Rohde.  Go ahead and

7      play it from there.  That's great.

8              (Video played.)

9      BY MR. MCCULLOUGH:

10     Q.  That "Fuck them, storm the Capitol" --

11     A.  I can't say who that is.

12     Q.  -- you agree that that voice is closest to the camera;

13     right?

14             MR. PATTIS:  Objection.

15             THE COURT:  Overruled.

16             THE WITNESS:  I don't agree, no.

17     BY MR. MCCULLOUGH:

18     Q.  You agree that that voice sounds closer to the camera

19     than any other --

20             MS. HERNANDEZ:  Objection.  Asked and answered.

21             THE COURT:  Sustained.  It's asked and answered.

22     BY MR. MCCULLOUGH:

23     Q.  But that's a voice that you don't recognize as

24     Mr. Rehl's?

25             MR. PATTIS:  Asked and answered.

```
 1                    MR. MCCULLOUGH:  No.

 2                    THE COURT:  Overruled as to --

 3                    MR. PATTIS:  Argumentative.

 4                    THE COURT:  -- that question.

 5      BY MR. MCCULLOUGH:

 6      Q.  That's a voice you don't recognize as Mr. Rehl's?

 7      A.  I do not.  No.

 8                    MR. MCCULLOUGH:  Okay.  And, Ms. Rhode, if you can

 9      take us to 404K, please.  And, Ms. Rohde, if we can

10      disconnect the video, please.  Just leave the audio.

11                    THE COURT:  Can I have counsel at sidebar just for

12      a moment to try to head off something.

13                    (Bench conference:)

14                    THE COURT:  I assume this is a sound comparison,

15      Mr. McCullough.  What are we doing here?  Because this is

16      much further in -- further ahead in time.

17                    MR. MCCULLOUGH:  Your Honor, it's actually not.

18      This is -- we're at about the -- I believe, about the 1:01,

19      1:02 mark here.  So this is just after -- Ms. Hernandez's

20      testimony covered up until 1:13.

21                    THE COURT:  But it didn't cover while they were

22      all at this second breach point, did it?

23                    MR. MCCULLOUGH:  It did, actually.

24                    MS. HERNANDEZ:  No --

25                    THE COURT:  No.
```

```
 1              MS. HERNANDEZ:  -- it didn't.  I don't believe so.
 2              MR. MCCULLOUGH:  It -- her -- the testimony
 3   covered the period in time after Mr. Pezzola had stolen the
 4   shield.
 5              MS. HERNANDEZ:  It did not.
 6              MR. MCCULLOUGH:  But that was the two pictures she
 7   showed.
 8              THE COURT:  What were the --
 9              MS. HERNANDEZ:  The pictures were just still
10   pictures of something -- one picture that the Government had
11   previously introduced.
12              THE COURT:  All right.  What are you going to do
13   here, Mr. McCullough?
14              MR. MCCULLOUGH:  I'm just going to play it and ask
15   him if he recognizes Rehl's voice.
16              MS. HERNANDEZ:  Your Honor, I would ask -- the
17   exhibit that's been -- the Government is modifying the
18   exhibit that's been introduced.  The whole exhibit should be
19   introduced.
20              MR. PATTIS:  Judge, the horse was dead 15 minutes
21   ago.  Can we just declare it dead and --
22              THE COURT:  I'm going to allow -- the issue of the
23   voice is something that's gone through his testimony.  So
24   Mr. McCullough, if you want to ask him that -- I wouldn't
25   have allowed this other -- temporally, but if you want to
```

17720

1   just ask him questions about the voice, I think that's fair.

2   You may proceed.

3            (Return from bench conference.)

4            MR. MCCULLOUGH:  Ms. Rohde, if you can go ahead

5   and play that.

6            (Audio played.)

7            THE COURT:  Hold -- is this an admitted exhibit --

8            MR. MCCULLOUGH:  It is, Your Honor.

9            THE COURT:  Yeah.  So it should be -- it's not --

10  it hasn't been shown to the witness; is that what you --

11           MR. MCCULLOUGH:  That's correct.

12           THE COURT:  All right.  Very well.  You may

13  proceed.

14  BY MR. MCCULLOUGH:

15  Q.  Do you hear Mr. Rehl speak in that?

16  A.  I can't tell.

17           MR. MCCULLOUGH:  Let's go ahead and play the

18  video.  Play it again.

19           (Video played.)

20  BY MR. MCCULLOUGH:

21  Q.  That's Mr. Rehl right there; correct?

22  A.  Yes.

23  Q.  Mr. Rehl's the one who says, "Too late for that, but,

24  fuck it"?

25  A.  That's what it looks like, yes.

1           MR. MCCULLOUGH:  No further questions.

2           THE COURT:  All right.  Ms. Hernandez?

3           MS. HERNANDEZ:  Your Honor, (indicating.)

4           (Bench conference:)

5           MS. HERNANDEZ:  I believe the Government opened

6 the door to playing the video from Mr. Johnson taking credit

7 for doing that unrelated to the Proud Boys.  I think the

8 Government is trying to suggest that it was the Proud Boys

9 who brought them -- who brought everybody along when, in

10 fact, Mr. Johnson takes complete credit for doing what he

11 did in a video which the Government is using -- is filing in

12 another court -- in another courtroom in this courthouse in

13 another case.  So I think they've opened the door to that

14 video.

15           THE COURT:  I disagree, and even if I agreed, it

16 doesn't mean the Rules of Evidence are otherwise suspended

17 in terms of hearsay.

18           MS. HERNANDEZ:  Of course, I think the 804(b)(3)

19 is satisfied, but I -- so I object --

20           THE COURT:  All right.

21           MS. HERNANDEZ:  -- on that --

22           THE COURT:  Do you have any --

23           MS. HERNANDEZ:  -- basis.  Yes, Your Honor.  I

24 have other questions.

25           THE COURT:  All right.  Should I -- is it going to

1    be more than --

2                    MS. HERNANDEZ:  No --

3                    THE COURT:  -- five minutes?

4                    MS. HERNANDEZ:  -- it won't.

5                    THE COURT:  All right.  Very well.

6                    (Return from bench conference.)

7                    REDIRECT EXAMINATION

8    BY MS. HERNANDEZ:

9    Q.  The prosecutor showed you a bunch of videos of Proud

10   Boys marching through the Capitol; correct?

11   A.  Not through the Capitol, but --

12   Q.  On the Mall?

13   A.  Right.

14   Q.  You didn't see Mr. Johnson with the Proud Boys in any of

15   those videos; is that correct?

16   A.  Correct.

17   Q.  You didn't see him following the Proud Boys or being led

18   by the Proud Boys; correct?

19   A.  Correct.

20   Q.  He seemed -- and in the videos that you did see of him

21   breaking down or pushing the fence, he was do- -- he

22   appeared -- what -- did he appear to you to be doing that on

23   his own?

24   A.  He did.

25   Q.  Okay.  Mr. Jones, how long -- you -- how -- you said

17723

1    you've been an investigator for how many years?

2    A.  Since '97.

3    Q.  And you work for a lot of attorneys, is that correct?

4    A.  Yes.

5    Q.  Not just for me in this case?

6    A.  No.  Law firms, attorneys, private citizens.  I'm a

7    licensed private detective in D.C.

8    Q.  And your testimony today is accurate; is that correct?

9    A.  Yes.

10            MS. HERNANDEZ:  Thank you.  I have no other

11   questions.

12            THE COURT:  All right.  Sir, you may step down.

13   Thank you for your testimony.

14            (Witness steps down.)

15            THE COURT:  All right.  Ladies and gentlemen, it's

16   time for lunch.  We'll excuse you for lunch and see you on

17   the other side of that.

18            (Jury returned to jury room.)

19            THE COURT:  All right.  Everyone may be seated.

20            Let's -- so I think the way we'll proceed from

21   here -- why don't I give you until 12 -- I'm sorry, 1:45 to

22   come back.

23            And, Ms. Hernandez, if you want to take that

24   opportunity to speak -- to talk about -- with the

25   marshals -- when you come back, either before you go or

1    after you go, how they would have to position themselves and

2    whatnot. And, again, I'm open to any suggestions of how to

3    accomplish best what you would like within the parameters we

4    have. And, when we come back, I will, then, inquire of your

5    client, have him tell me he -- if he does decide to testify,

6    confirm that, and then we'll talk about how to, sort of,

7    present him as far as when we begin the testimony.

8              MS. HERNANDEZ: Thank you, Your Honor.

9              THE COURT: All right. Anything further before we

10   go to lunch?

11             All right. I'll see you all at 1:45.

12             THE DEPUTY CLERK: All rise. This Honorable Court

13   stands in recess until the return of Court at 1:45.

14             (Luncheon recess taken at 12:34 p.m.)

15                     * * * * * * * * * * * *

16             **CERTIFICATE OF OFFICIAL COURT REPORTER**

17   **I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby certify**

18   **that the above and foregoing constitutes a true and accurate**

19   **transcript of my stenographic notes and is a full, true and**

20   **complete transcript of the proceedings to the best of my**

21   **ability, dated this 11th day of April 2023.**

22                          **/s/Timothy R. Miller, RPR, CRR, NJ-CCR**
                            **Official Court Reporter**
23                          **United States Courthouse**
                            **Room 6722**
24                          **333 Constitution Avenue, NW**
                            **Washington, DC 20001**

25

## $

**$1,000** [1] - 17619:25

## '

**'97** [1] - 17723:2

## /

**/s/Timothy** [1] - 17724:22

## 0

**0029** [1] - 17681:1
**06511** [1] - 17613:22

## 1

**1** [3] - 17616:3,
17616:9, 17616:13
**1-ETHAN** [1] - 17613:4
**10** [4] - 17649:7,
17649:10, 17653:22,
17666:6
**10-minute** [1] -
17648:6
**1000** [1] - 17705:21
**10003** [1] - 17613:18
**10016** [1] - 17614:13
**1014** [1] - 17614:9
**10:17** [1] - 17682:10
**10:19** [1] - 17682:7
**10:43** [1] - 17707:24
**10:50** [1] - 17653:20
**11** [5] - 17613:6,
17694:21, 17695:5,
17695:15, 17695:16
**113** [1] - 17614:15
**11:00** [4] - 17637:12,
17637:13, 17638:5,
17641:6
**11:30** [1] - 17692:19
**11th** [1] - 17724:21
**12** [1] - 17723:21
**12:34** [1] - 17724:14
**12:45** [1] - 17710:12
**12:46** [1] - 17680:23
**12:52** [2] - 17713:9,
17713:25
**12:54:09** [1] -
17675:18
**12th** [1] - 17625:14
**13** [1] - 17695:15
**13:21** [1] - 17709:6
**1420** [1] - 17613:24
**14th** [2] - 17625:13,
17625:14
**15** [2] - 17653:22,

**17719**:20
**153** [1] - 17614:5
**18,000** [1] - 17623:15
**19-minute** [1] -
17709:21
**1997** [1] - 17672:17
**19:03** [1] - 17709:21
**1:00** [3] - 17707:18,
17707:25
**1:01** [1] - 17718:18
**1:02** [1] - 17718:19
**1:13** [6] - 17692:19,
17694:21, 17695:5,
17695:14, 17695:15,
17718:20
**1:21-cr-00175-TJK-1**
[1] - 17613:2
**1:21-cr-00175-TJK-2**
[1] - 17613:3
**1:21-cr-00175-TJK-3**
[1] - 17613:3
**1:21-cr-00175-TJK-5**
[1] - 17613:3
**1:21-cr-00175-TJK-6**
[1] - 17613:4
**1:45** [3] - 17723:21,
17724:11, 17724:13
**1st** [1] - 17613:21

## 2

**2** [3] - 17616:4,
17616:9, 17616:14
**2-JOSEPH** [1] -
17613:5
**20** [2] - 17675:19,
17683:2
**20-second** [2] -
17675:6, 17680:17
**20001** [2] - 17614:19,
17724:24
**20005** [1] - 17613:25
**202** [3] - 17613:15,
17613:25, 17614:20
**2022** [1] - 17623:22
**2023** [2] - 17613:6,
17724:21
**203** [1] - 17613:22
**20530** [1] - 17613:15
**20777** [1] - 17614:3
**209** [1] - 17614:6
**20th** [1] - 17613:17
**21-175** [2] - 17616:2,
17649:13
**24-second** [1] -
17684:22
**240** [1] - 17614:3
**25** [1] - 17693:9
**252-7233** [1] -
17613:15

**253-0514** [1] -
17614:13
**26** [1] - 17693:9
**29** [1] - 17683:2
**2:38** [2] - 17712:5,
17712:6

## 3

**3** [7] - 17616:4,
17616:10, 17616:14,
17699:11, 17703:1,
17703:2
**3-hour-43-minute-
and-40-second** [2] -
17698:19, 17702:16
**3-hour-43-second** [1]
- 17698:19
**3-hour-and-43-
minute** [1] - 17701:4
**3-minute** [2] -
17698:18, 17702:15
**3-ZACHARY** [1] -
17613:5
**30** [3] - 17701:4,
17702:3, 17703:2
**305** [2] - 17614:7,
17614:10
**33012** [1] - 17614:9
**33014** [1] - 17614:6
**333** [2] - 17614:19,
17724:24
**354-3111** [1] -
17614:20
**36** [2] - 17665:16,
17668:10
**383** [1] - 17613:21
**393-3017** [1] -
17613:22
**3:43** [2] - 17699:18,
17700:11

## 4

**40** [2] - 17699:11,
17703:2
**401** [1] - 17690:8
**401G** [3] - 17688:5,
17688:8, 17694:24
**403** [5] - 17637:9,
17704:25, 17711:6,
17711:23, 17714:14
**403-7323** [1] - 17714:7
**404K** [1] - 17718:9
**429-6520** [1] -
17613:25
**43** [3] - 17699:11,
17702:1, 17703:1
**436** [2] - 17698:15,
17699:9

**44** [1] - 17703:2
**472-3391** [1] - 17614:3
**49** [1] - 17614:9
**4:55** [2] - 17708:17,
17708:25
**4r** [1] - 17613:18
**4th** [1] - 17613:14

## 5

**5** [3] - 17616:5,
17616:11, 17616:15
**5-ENRIQUE** [1] -
17613:6
**52-second** [1] -
17716:8
**555** [1] - 17613:14
**59** [1] - 17680:3
**59-second** [1] -
17716:7
**59047** [1] - 17614:16
**5:01** [1] - 17708:25
**5:43** [1] - 17681:3

## 6

**6** [3] - 17616:5,
17616:12, 17616:15
**6-DOMINIC** [1] -
17613:6
**6175** [1] - 17614:5
**62** [1] - 17613:8
**63** [1] - 17684:1
**64** [2] - 17684:2,
17684:3
**646** [1] - 17614:13
**65** [3] - 17623:22,
17684:4, 17687:10
**66** [8] - 17695:9,
17695:10, 17695:13,
17695:16, 17695:19,
17695:20, 17695:25,
17696:1
**6722** [2] - 17614:18,
17724:23
**6:29** [1] - 17713:3
**6:37** [1] - 17681:24
**6th** [8] - 17614:12,
17621:6, 17621:22,
17622:8, 17624:18,
17624:19, 17627:18

## 7

**7** [2] - 17613:17,
17692:19
**7166** [1] - 17614:2
**734** [2] - 17626:7,
17628:22
**746** [2] - 17630:23,

**17630**:24
**748** [1] - 17629:3
**764-9347** [1] -
17614:16
**775** [1] - 17614:16

## 8

**804(b)(3** [2] -
17639:11, 17721:18
**822-2901** [1] -
17614:10

## 9

**902-3869** [1] -
17613:19
**917** [1] - 17613:19
**99** [1] - 17614:12
**9:30** [1] - 17613:6

## A

**a.m** [1] - 17613:6
**ability** [3] - 17633:11,
17639:25, 17724:21
**able** [20] - 17624:6,
17625:3, 17626:9,
17627:1, 17636:4,
17636:10, 17677:6,
17678:11, 17679:13,
17680:2, 17681:10,
17681:21, 17682:3,
17683:12, 17683:16,
17684:25, 17691:1,
17691:13, 17691:14,
17707:9
**absence** [1] -
17626:14
**absolutely** [3] -
17621:11, 17661:2,
17672:1
**abundant** [1] -
17620:23
**access** [2] - 17634:9,
17634:10
**accomplish** [1] -
17724:3
**according** [1] -
17645:19
**accordingly** [1] -
17686:25
**accurate** [6] -
17623:9, 17683:19,
17694:13, 17695:1,
17723:8, 17724:18
**accusations** [1] -
17621:25
**acknowledges** [1] -
17644:11

17726

**act** [1] - 17645:10
**acting** [1] - 17623:23
**action** [4] - 17704:7, 17704:9, 17704:14, 17704:18
**actions** [2] - 17624:14, 17710:9
**activities** [1] - 17624:19
**activity** [1] - 17664:12
**ad** [1] - 17618:12
**add** [2] - 17644:16, 17693:4
**adding** [1] - 17643:18
**additional** [5] - 17635:10, 17635:16, 17647:18
**address** [1] - 17706:3
**addressed** [1] - 17709:2
**addressing** [2] - 17708:13, 17709:12
**adequate** [2] - 17666:16, 17694:13
**adequately** [1] - 17633:15
**adjacent** [1] - 17660:6
**adjusted** [1] - 17617:4
**admissible** [1] - 17627:20
**admit** [12] - 17638:24, 17686:18, 17691:4, 17691:15, 17695:24, 17699:17, 17699:25, 17700:2, 17700:16, 17702:4, 17702:6, 17702:7
**admitted** [15] - 17626:5, 17684:8, 17686:23, 17686:24, 17691:3, 17692:8, 17695:19, 17696:5, 17698:25, 17699:14, 17700:3, 17700:21, 17702:6, 17703:6, 17720:7
**admitting** [3] - 17686:16, 17699:12, 17699:13
**adopt** [1] - 17633:25
**advance** [5] - 17624:18, 17636:25, 17668:21, 17685:25, 17686:13
**advice** [5] - 17647:4, 17647:7, 17651:17, 17652:10, 17653:2
**advise** [2] - 17647:11, 17670:20
**advised** [1] - 17660:8

**affect** [3] - 17618:7, 17633:12
**affects** [1] - 17620:6
**affirmatively** [1] - 17664:18
**afoul** [1] - 17650:18
**afternoon** [1] - 17707:19
**agencies** [4] - 17623:16, 17623:17, 17625:4, 17628:12
**agency** [9] - 17620:22, 17621:1, 17621:6, 17621:9, 17621:13, 17623:14, 17624:13, 17626:24, 17627:17
**agents** [1] - 17620:21
**ago** [3] - 17622:16, 17631:21, 17719:21
**agree** [9] - 17633:1, 17633:3, 17648:23, 17649:23, 17686:20, 17689:4, 17717:12, 17717:16, 17717:18
**agreed** [1] - 17721:15
**agreement** [1] - 17634:12
**ahead** [13] - 17646:23, 17666:1, 17669:11, 17693:5, 17697:1, 17706:6, 17707:10, 17712:16, 17715:2, 17717:6, 17718:16, 17720:4, 17720:17
**ahh** [2] - 17716:12, 17716:22
**ahhh-ah** [2] - 17716:12, 17716:22
**aided** [1] - 17614:21
**al** [1] - 17649:14
**alarms** [1] - 17636:2
**Alcohol** [1] - 17621:1
**alerted** [1] - 17635:5
**aligned** [3] - 17623:14, 17625:5, 17628:12
**allegation** [3] - 17624:1, 17627:23, 17660:21
**allow** [2] - 17641:24, 17719:22
**allowed** [1] - 17719:25
**almost** [3] - 17618:10, 17644:11, 17696:12
**alone** [5] - 17626:11, 17648:15, 17651:18, 17652:11, 17653:3
**alter** [1] - 17640:1
**alternates** [2] - 17617:16, 17661:1

**Amendment** [8] - 17639:25, 17647:3, 17647:6, 17665:15, 17665:24, 17666:3, 17666:9, 17668:13
**America** [2] - 17616:3, 17649:13
**AMERICA** [1] - 17613:2
**amount** [1] - 17666:16
**angle** [1] - 17693:20
**answer** [9] - 17632:10, 17641:18, 17671:23, 17671:25, 17676:7, 17707:22, 17707:23, 17716:18, 17716:20
**answered** [5] - 17714:14, 17714:15, 17717:20, 17717:21, 17717:25
**answers** [1] - 17666:15
**Antifa** [1] - 17625:21
**anyway** [2] - 17663:25, 17664:12
**apart** [1] - 17626:13
**apologies** [2] - 17705:22, 17712:6
**apologize** [1] - 17686:13
**Appeals** [1] - 17646:3
**appear** [5] - 17695:1, 17697:2, 17697:11, 17704:3, 17722:22
**APPEARANCES** [2] - 17613:11, 17614:1
**appeared** [1] - 17722:22
**applied** [3] - 17624:15, 17643:8, 17645:8
**apply** [3] - 17642:14, 17645:8, 17645:11
**applying** [1] - 17645:24
**appointed** [1] - 17673:15
**appreciate** [1] - 17636:7
**approach** [1] - 17636:22
**April** [2] - 17613:6, 17724:21
**area** [6] - 17661:18, 17663:19, 17679:24, 17696:15, 17697:25, 17705:17
**argue** [2] - 17638:16, 17638:22
**argued** [2] - 17627:9,

17638:19
**argument** [7] - 17617:20, 17646:9, 17647:16, 17711:4, 17711:12, 17711:14, 17711:16
**argumentative** [2] - 17711:6, 17718:3
**arguments** [2] - 17616:22, 17671:10
**arise** [1] - 17635:5
**arises** [1] - 17620:25
**armed** [2] - 17622:4, 17622:5
**arrives** [1] - 17653:23
**articulate** [1] - 17626:9
**aside** [4] - 17630:11, 17632:14, 17634:13, 17663:16
**aspects** [1] - 17632:2
**assert** [1] - 17686:4
**assertion** [2] - 17638:10, 17660:21
**assessment** [1] - 17619:3
**assume** [1] - 17718:14
**assuming** [2] - 17627:13, 17636:14
**AT** [1] - 17614:15
**attempted** [1] - 17668:25
**attempting** [1] - 17700:24
**attention** [2] - 17666:14, 17666:17
**attorney** [3] - 17651:10, 17653:11, 17693:22
**ATTORNEY** [1] - 17614:15
**ATTORNEY'S** [1] - 17613:14
**attorneys** [2] - 17723:3, 17723:6
**audio** [3] - 17714:11, 17718:10, 17720:6
**authority** [5] - 17638:20, 17638:24, 17663:5, 17665:13, 17665:14
**automatically** [1] - 17626:18
**available** [6] - 17625:17, 17632:11, 17632:15, 17634:6, 17634:7, 17641:22
**Avenue** [3] - 17614:12, 17614:19, 17724:24

**average** [1] - 17619:24
**aware** [3] - 17706:5, 17709:23, 17709:25
**awareness** [1] - 17621:23
**awful** [1] - 17619:21

## B

**B.A** [1] - 17613:12
**background** [1] - 17672:15
**backpack** [1] - 17681:16
**ball** [1] - 17681:15
**Ballantine** [3] - 17623:3, 17628:25, 17638:7
**BALLANTINE** [7] - 17623:4, 17628:24, 17629:1, 17629:16, 17629:19, 17630:2, 17634:3
**barred** [1] - 17650:7
**barrier** [5] - 17682:17, 17685:1, 17715:24, 17715:25, 17716:1
**based** [3] - 17653:10, 17653:11, 17704:22
**basis** [1] - 17721:23
**bear** [1] - 17618:14
**BEFORE** [1] - 17613:9
**began** [1] - 17635:5
**begin** [5] - 17669:4, 17669:9, 17671:19, 17685:16, 17724:7
**beginning** [5] - 17634:23, 17646:10, 17671:3, 17675:6, 17682:24
**behalf** [9] - 17620:7, 17633:23, 17651:15, 17652:8, 17652:25, 17653:15, 17673:9, 17700:20
**behind** [3] - 17661:4, 17715:21, 17715:22
**behooves** [1] - 17686:15
**believes** [2] - 17625:1, 17668:9
**below** [1] - 17619:25
**Bench** [9] - 17634:19, 17654:1, 17685:14, 17688:15, 17699:21, 17706:13, 17710:25, 17718:13, 17721:4
**bench** [11] - 17636:23, 17637:13, 17637:20, 17664:16, 17687:4,

17692:1, 17702:13, 17708:7, 17712:3, 17720:3, 17722:6
**benefit** [8] - 17617:12, 17619:5, 17644:2, 17644:4, 17644:14, 17645:4, 17645:9, 17645:14
**Bertino** [1] - 17661:3
**Bertino's** [1] - 17661:6
**best** [5] - 17661:19, 17662:1, 17690:9, 17724:3, 17724:20
**better** [4] - 17662:8, 17663:17, 17676:22, 17678:11
**between** [1] - 17625:23
**beyond** [6] - 17620:9, 17627:10, 17627:13, 17640:15, 17706:10, 17711:5
**Biden** [1] - 17645:18
**bigger** [1] - 17632:4
**Biggs** [17] - 17616:4, 17616:14, 17631:7, 17648:4, 17652:3, 17652:4, 17662:21, 17705:15, 17705:24, 17709:2, 17709:17, 17711:2, 17712:12, 17713:7, 17713:17, 17714:4, 17714:12
**BIGGS** [3] - 17613:5, 17652:15, 17652:17
**Biggs's** [1] - 17631:3
**binding** [5] - 17643:13, 17645:1, 17645:2, 17645:13, 17645:25
**binds** [1] - 17643:6
**bit** [9] - 17617:20, 17618:22, 17637:16, 17642:25, 17664:10, 17664:11, 17670:21, 17674:15, 17684:21
**black** [4] - 17681:15, 17681:16, 17684:17, 17686:4
**blindsided** [1] - 17636:7
**bodies** [2] - 17715:17, 17715:18
**bolted** [3] - 17704:2, 17704:24
**books** [1] - 17649:3
**BOP** [1] - 17620:25
**bottom** [3] - 17661:1, 17679:14, 17679:17
**box** [1] - 17670:15

**Boys** [22] - 17621:21, 17622:11, 17624:14, 17624:25, 17625:13, 17625:21, 17685:23, 17706:3, 17708:14, 17709:2, 17709:13, 17709:18, 17709:23, 17710:15, 17712:11, 17713:11, 17721:7, 17721:8, 17722:10, 17722:14, 17722:17, 17722:18
**Boys'** [2] - 17624:17, 17624:19
**Brady** [3] - 17620:19, 17623:11, 17626:16
**brand** [1] - 17622:19
**brand-new** [1] - 17622:19
**breach** [6] - 17685:21, 17685:23, 17686:3, 17715:7, 17715:14, 17718:22
**breaches** [1] - 17707:14
**break** [7] - 17630:8, 17637:12, 17638:4, 17639:16, 17640:7, 17648:7, 17653:23, 17663:22, 17664:11, 17664:14, 17664:20, 17669:6
**breaking** [1] - 17722:21
**brief** [8] - 17635:8, 17635:16, 17635:19, 17651:5, 17698:17, 17698:23, 17706:16, 17709:7
**Brief** [12] - 17649:11, 17669:19, 17670:6, 17670:13, 17671:16, 17683:4, 17683:8, 17687:13, 17687:16, 17698:14, 17701:9, 17703:12
**briefing** [3] - 17639:20, 17644:6, 17644:25
**briefly** [4] - 17629:1, 17634:3, 17645:25, 17685:13
**bring** [10] - 17616:19, 17669:14, 17669:18, 17691:3, 17691:9, 17692:4, 17697:16, 17698:18, 17700:5, 17714:19
**bringing** [1] - 17697:15

**broad** [2] - 17626:20, 17626:23
**brought** [1] - 17721:9
**Brown** [4] - 17621:4, 17621:5, 17624:8
**brush** [1] - 17620:19
**brush-off** [1] - 17620:19
**building** [1] - 17619:20
**bullhorn** [1] - 17705:6
**bump** [2] - 17637:7, 17637:9
**bunch** [3] - 17617:17, 17671:8, 17722:9
**Bureau** [2] - 17620:25, 17627:7
**bureau** [1] - 17627:10
**BY** [60] - 17672:3, 17672:7, 17673:2, 17674:13, 17674:19, 17675:8, 17675:23, 17676:10, 17676:16, 17677:15, 17678:21, 17679:10, 17680:1, 17681:6, 17682:2, 17682:13, 17682:25, 17683:11, 17683:15, 17684:12, 17684:24, 17685:5, 17687:20, 17692:10, 17693:6, 17694:7, 17694:11, 17694:17, 17696:11, 17696:25, 17697:18, 17698:4, 17702:19, 17703:14, 17704:17, 17705:2, 17705:11, 17705:23, 17708:12, 17709:1, 17709:11, 17709:22, 17710:4, 17712:7, 17712:20, 17713:4, 17713:16, 17713:22, 17714:14, 17714:21, 17715:5, 17716:11, 17716:24, 17717:9, 17717:17, 17717:22, 17718:5, 17720:14, 17720:20, 17722:8

## C

**calculation** [1] - 17617:12
**camera** [5] - 17714:25, 17715:6, 17716:22, 17717:12, 17717:18
**cameras** [1] - 17693:16
**camo** [1] - 17684:18

**cams** [1] - 17623:23
**candidly** [1] - 17624:2
**cannot** [4] - 17617:4, 17642:6, 17653:5, 17666:16
**canvas** [3] - 17641:11, 17641:16, 17669:20
**cap** [1] - 17681:15
**Capitol** [18] - 17623:24, 17675:20, 17676:5, 17676:17, 17677:8, 17678:13, 17682:20, 17704:5, 17709:18, 17710:6, 17713:23, 17713:25, 17714:12, 17714:13, 17717:10, 17722:10, 17722:11
**care** [2] - 17617:18, 17671:13
**Carmen** [2] - 17614:2, 17616:11
**Carolina** [2] - 17638:21, 17639:23
**case** [58] - 17617:13, 17617:18, 17619:8, 17620:23, 17621:4, 17621:25, 17622:13, 17623:10, 17624:2, 17626:1, 17626:6, 17626:14, 17626:15, 17627:9, 17627:19, 17628:13, 17633:4, 17636:3, 17636:16, 17637:4, 17638:19, 17638:22, 17639:18, 17639:25, 17645:7, 17645:21, 17645:24, 17646:10, 17646:13, 17646:16, 17646:20, 17649:23, 17651:13, 17652:6, 17652:23, 17653:12, 17660:22, 17660:23, 17661:21, 17665:9, 17665:20, 17666:19, 17668:20, 17669:25, 17670:11, 17671:2, 17671:3, 17671:6, 17671:10, 17673:7, 17673:14, 17673:15, 17673:21, 17677:16, 17678:1, 17721:13, 17723:5
**cases** [8] - 17621:3, 17622:17, 17641:19, 17644:5, 17645:12, 17661:5, 17661:9, 17673:11
**category** [1] - 17628:11

**caveat** [1] - 17630:8
**CCR** [3] - 17614:17, 17724:17, 17724:22
**cell** [2] - 17674:1, 17675:12
**center** [3] - 17681:7, 17697:4, 17697:14
**certainly** [3] - 17628:20, 17632:2, 17661:22
**CERTIFICATE** [1] - 17724:16
**certify** [1] - 17724:17
**chains** [1] - 17638:12
**chair** [2] - 17660:13, 17663:20
**challenges** [1] - 17666:21
**chance** [3] - 17641:6, 17642:3, 17649:15
**change** [1] - 17649:24
**chant** [1] - 17714:4
**chanting** [4] - 17622:9, 17622:23, 17676:1, 17712:21
**chants** [1] - 17713:17
**characterization** [1] - 17704:12
**characterizations** [1] - 17623:6
**characterizing** [1] - 17704:14
**charge** [1] - 17661:6
**charged** [2] - 17624:10, 17624:25
**check** [2] - 17638:5, 17687:11
**checked** [1] - 17648:7
**chief** [3] - 17619:8, 17622:17, 17624:2
**choice** [4] - 17638:8, 17638:9, 17638:11, 17638:13
**chopped** [1] - 17700:2
**chose** [1] - 17634:6
**chosen** [1] - 17631:24
**CHS** [6] - 17621:6, 17624:13, 17625:1, 17626:2, 17626:4, 17627:17
**CHS-related** [1] - 17626:4
**CHSes** [2] - 17620:21, 17626:2
**Circuit** [1] - 17643:8
**cited** [1] - 17638:20
**citing** [1] - 17623:9
**citizens** [1] - 17723:6
**claiming** [1] - 17637:6
**clarification** [1] -

17650:3
**Clause** [1] - 17647:6
**clear** [25] - 17617:2,
17617:4, 17619:10,
17621:4, 17621:17,
17627:16, 17634:5,
17636:21, 17637:1,
17641:25, 17644:25,
17646:10, 17646:11,
17648:3, 17661:2,
17667:9, 17667:11,
17668:19, 17678:25,
17685:18, 17685:24,
17686:3, 17686:16,
17690:17
**clearly** [3] - 17624:4,
17628:12, 17645:3
**CLERK** [17] - 17616:2,
17649:9, 17649:12,
17664:18, 17670:14,
17674:6, 17674:8,
17674:10, 17684:1,
17684:3, 17684:5,
17695:9, 17695:12,
17695:20, 17695:24,
17696:3, 17724:12
**client** [17] - 17635:8,
17641:11, 17647:7,
17648:23, 17660:9,
17660:11, 17660:12,
17660:20, 17661:24,
17664:4, 17666:10,
17666:12, 17666:15,
17668:12, 17669:5,
17724:5
**client's** [2] - 17641:12,
17666:8
**clients** [1] - 17641:5
**clip** [3] - 17701:6,
17701:7
**close** [7] - 17618:11,
17643:15, 17671:20,
17680:8, 17680:18,
17716:22
**closely** [2] - 17623:14,
17625:5
**closeness** [1] -
17680:14
**closer** [1] - 17717:18
**closest** [1] - 17717:12
**closing** [3] -
17671:10, 17711:3,
17711:14
**co** [2] - 17624:6,
17653:4
**co-counsel** [1] -
17624:6
**co-defendants** [1] -
17653:4
**collecting** [1] -

17672:25
**colloquy** [3] -
17641:7, 17642:18,
17664:8
**COLUMBIA** [1] -
17613:1
**coming** [2] -
17667:18, 17700:24
**commenced** [1] -
17624:4
**comment** [1] -
17701:19
**committing** [1] -
17645:10
**communicated** [1] -
17630:18
**communications** [1] -
17641:14
**community** [1] -
17623:17
**comparison** [1] -
17718:14
**compel** [6] -
17618:17, 17620:6,
17626:7, 17628:21,
17629:3, 17629:11
**complete** [4] -
17640:1, 17671:5,
17721:10, 17724:20
**completely** [1] -
17624:13
**complied** [1] -
17625:24
**complies** [1] -
17663:3
**component** [2] -
17627:3, 17627:5
**computer** [2] -
17614:21, 17673:22
**computer-aided** [1] -
17614:21
**concurrence** [3] -
17643:6, 17645:1
**condition** [1] -
17680:18
**conduct** [3] - 17650:5,
17650:10, 17650:12
**conference** [17] -
17634:19, 17637:20,
17654:1, 17685:14,
17687:4, 17688:15,
17692:1, 17699:21,
17702:13, 17706:13,
17708:7, 17710:25,
17712:3, 17718:13,
17720:3, 17721:4,
17722:6
**confidential** [2] -
17624:15, 17625:6
**confirm** [6] - 17642:4,

17664:9, 17691:13,
17699:5, 17699:6,
17724:6
**confirming** [1] -
17699:7
**confronted** [1] -
17622:5
**Congress's** [1] -
17645:16
**Conor** [2] - 17613:13,
17616:8
**consider** [3] -
17662:15, 17662:25
**consideration** [2] -
17629:6, 17716:21
**consistent** [2] -
17624:14, 17650:13
**constitutes** [1] -
17724:18
**Constitution** [2] -
17614:19, 17724:24
**consult** [1] - 17642:4
**context** [2] -
17645:12, 17645:16
**continue** [4] -
17617:6, 17617:10,
17715:9, 17715:14
**CONTINUED** [1] -
17614:1
**contours** [3] -
17644:18, 17646:14,
17646:18
**contrary** [2] -
17626:15, 17643:12
**controlling** [2] -
17623:10, 17700:13
**controls** [1] -
17639:14
**convenience** [2] -
17665:18, 17665:19
**conversations** [2] -
17653:10, 17678:5
**convey** [1] - 17641:12
**convicted** [1] -
17624:9
**convinced** [4] -
17643:5, 17643:10,
17643:11, 17643:13
**copy** [7] - 17671:9,
17676:18, 17676:19,
17676:23, 17689:17,
17689:23
**corner** [2] - 17690:21,
17690:22
**correct** [77] -
17619:12, 17634:10,
17636:22, 17664:3,
17673:7, 17673:10,
17673:12, 17673:13,
17673:25, 17675:3,

17675:13, 17678:3,
17678:17, 17680:16,
17680:19, 17680:20,
17681:18, 17687:1,
17689:22, 17690:9,
17692:20, 17693:22,
17693:23, 17694:24,
17697:25, 17700:17,
17700:18, 17702:9,
17703:17, 17703:20,
17703:23, 17703:25,
17704:2, 17704:7,
17704:8, 17704:9,
17704:18, 17704:20,
17705:6, 17705:13,
17705:16, 17705:18,
17708:14, 17708:15,
17709:3, 17709:13,
17709:15, 17709:18,
17709:24, 17710:9,
17710:13, 17712:22,
17713:7, 17713:9,
17713:25, 17714:2,
17714:4, 17714:9,
17714:23, 17715:7,
17715:10, 17715:12,
17715:14, 17715:16,
17715:21, 17715:24,
17716:2, 17720:11,
17720:21, 17722:10,
17722:15, 17722:16,
17722:18, 17722:19,
17723:3, 17723:8
**correctional** [1] -
17620:25
**corruptly** [5] -
17643:14, 17643:19,
17646:14, 17646:19,
17647:14
**costs** [3] - 17619:22,
17619:23, 17619:25
**counsel** [16] -
17624:6, 17635:2,
17635:11, 17636:25,
17641:2, 17647:5,
17651:12, 17652:5,
17652:21, 17653:24,
17660:25, 17665:1,
17667:19, 17671:14,
17699:19, 17718:11
**counter** [9] -
17679:14, 17679:16,
17679:17, 17681:1,
17681:3, 17681:24,
17682:6, 17684:22,
17699:11
**counteract** [1] -
17627:8
**countermand** [2] -
17661:20, 17663:5

**counters** [1] -
17679:18
**counts** [1] - 17645:17
**couple** [10] -
17616:25, 17622:3,
17637:24, 17703:17,
17706:19, 17714:17,
17715:17, 17715:18,
17716:1, 17716:3
**course** [10] -
17623:11, 17629:16,
17642:2, 17642:6,
17648:16, 17652:9,
17667:10, 17671:22,
17693:10, 17721:18
**Court** [10] - 17614:17,
17614:18, 17638:22,
17645:6, 17646:2,
17649:9, 17663:25,
17724:12, 17724:13,
17724:22
**court** [44] - 17623:7,
17629:4, 17629:5,
17629:16, 17633:2,
17633:5, 17636:23,
17638:17, 17638:18,
17638:21, 17638:23,
17638:24, 17638:25,
17639:10, 17641:10,
17642:19, 17645:13,
17650:7, 17650:17,
17650:18, 17660:3,
17661:12, 17661:13,
17661:15, 17662:14,
17662:15, 17663:9,
17663:12, 17664:1,
17664:24, 17665:3,
17665:12, 17665:20,
17666:19, 17666:25,
17667:4, 17667:15,
17667:24, 17668:9,
17672:9, 17673:15,
17706:10, 17721:12
**COURT** [186] -
17613:1, 17616:16,
17619:9, 17620:1,
17622:21, 17623:2,
17625:25, 17628:25,
17629:7, 17629:18,
17629:21, 17630:3,
17630:24, 17631:2,
17631:10, 17632:9,
17632:22, 17632:25,
17633:21, 17634:2,
17634:11, 17634:18,
17634:23, 17635:19,
17635:25, 17636:6,
17636:15, 17636:17,
17637:8, 17637:10,
17637:19, 17637:21,

17637:23, 17638:4, 17638:14, 17639:2, 17639:5, 17639:13, 17639:15, 17640:6, 17640:12, 17640:25, 17641:23, 17642:11, 17642:22, 17642:24, 17644:23, 17646:1, 17646:5, 17646:7, 17647:12, 17648:2, 17648:5, 17648:21, 17648:25, 17649:7, 17649:15, 17650:11, 17650:19, 17651:9, 17651:23, 17652:2, 17652:16, 17652:18, 17653:9, 17653:14, 17653:16, 17653:18, 17660:4, 17661:16, 17662:17, 17662:23, 17663:14, 17664:3, 17664:7, 17664:19, 17665:7, 17665:21, 17666:1, 17667:9, 17668:3, 17668:6, 17668:14, 17668:17, 17668:19, 17669:17, 17670:4, 17670:16, 17670:18, 17671:18, 17672:24, 17676:7, 17677:11, 17677:14, 17684:8, 17686:15, 17687:2, 17687:12, 17688:14, 17688:16, 17688:21, 17688:24, 17689:7, 17690:1, 17690:4, 17690:9, 17690:23, 17691:1, 17691:19, 17691:22, 17691:25, 17693:5, 17694:6, 17695:17, 17695:23, 17696:5, 17696:8, 17696:22, 17698:9, 17698:24, 17699:3, 17699:5, 17699:12, 17699:19, 17699:22, 17700:9, 17700:15, 17700:19, 17701:1, 17701:14, 17701:23, 17701:25, 17702:2, 17702:4, 17702:10, 17702:12, 17703:5, 17703:11, 17704:16, 17705:1, 17706:14, 17706:17, 17707:8, 17707:12, 17707:20, 17707:22, 17708:4, 17708:19, 17710:3, 17710:19, 17710:24, 17711:1, 17711:8, 17711:12,

17711:15, 17712:2, 17712:14, 17713:14, 17714:15, 17716:19, 17717:15, 17717:21, 17718:2, 17718:4, 17718:11, 17718:14, 17718:21, 17718:25, 17719:8, 17719:12, 17719:22, 17720:7, 17720:9, 17720:12, 17721:2, 17721:15, 17721:20, 17721:22, 17721:25, 17722:3, 17722:5, 17723:12, 17723:15, 17723:19, 17724:9, 17724:16
**court's** [1] - 17665:13
**Court's** [1] - 17650:3
**courtesy** [1] - 17641:19
**Courthouse** [2] - 17614:18, 17724:23
**courthouse** [1] - 17721:12
**courtroom** [4] - 17660:8, 17660:24, 17661:18, 17721:12
**courts** [2] - 17643:22, 17644:1
**cover** [1] - 17718:21
**covered** [2] - 17718:20, 17719:3
**coy** [1] - 17635:12
**CR** [1] - 17613:2
**create** [1] - 17636:2
**credit** [2] - 17721:6, 17721:10
**crime** [2] - 17642:16, 17645:4
**Criminal** [2] - 17616:2, 17649:13
**critical** [1] - 17641:11
**CROSS** [1] - 17703:13
**Cross** [1] - 17615:4
**cross** [18] - 17622:16, 17630:21, 17635:6, 17665:4, 17665:9, 17666:5, 17666:8, 17666:13, 17666:22, 17666:24, 17667:2, 17667:5, 17668:21, 17669:4, 17685:19, 17685:22, 17686:25, 17701:19
**CROSS-EXAMINATION** [1] - 17703:13
**cross-examination** [9] - 17630:21, 17635:6, 17665:4, 17665:9,

17666:5, 17666:8, 17666:22, 17668:21, 17669:4
**Cross-Examination** [1] - 17615:4
**cross-examine** [3] - 17666:24, 17685:19, 17701:19
**cross-examined** [3] - 17666:13, 17667:2, 17667:5
**cross-examining** [1] - 17622:16
**crosses** [1] - 17715:25
**crowd** [4] - 17622:10, 17676:2, 17697:11, 17698:7
**CRR** [3] - 17614:17, 17724:17, 17724:22
**cryptography** [1] - 17673:1
**CT** [1] - 17613:22
**current** [1] - 17673:4
**customarily** [1] - 17641:10
**cut** [1] - 17646:7

# D

**D.C** [2] - 17613:5, 17723:7
**danger** [1] - 17661:11
**data** [1] - 17673:22
**date** [1] - 17624:10
**dated** [1] - 17724:21
**David** [3] - 17672:10, 17674:4, 17674:12
**DAVID** [4] - 17613:17, 17615:3, 17671:17, 17672:10
**Davidson** [1] - 17684:17
**DAY** [1] - 17613:8
**DC** [4] - 17613:15, 17613:25, 17614:19, 17724:24
**dead** [2] - 17719:20, 17719:21
**dealt** [1] - 17637:4
**December** [2] - 17625:13, 17625:14
**decide** [13] - 17618:15, 17635:16, 17642:5, 17644:19, 17646:23, 17647:1, 17647:21, 17647:23, 17648:15, 17651:19, 17652:12, 17653:4, 17724:5
**decided** [4] -

17632:16, 17639:10, 17650:25, 17667:11
**decision** [13] - 17632:14, 17642:15, 17645:23, 17648:14, 17648:18, 17651:17, 17651:23, 17652:10, 17652:16, 17653:3, 17653:9, 17664:5, 17664:9
**declare** [1] - 17719:21
**defendant** [23] - 17627:24, 17628:16, 17628:19, 17632:14, 17632:19, 17632:23, 17633:8, 17634:16, 17634:24, 17635:1, 17635:7, 17635:11, 17635:24, 17636:11, 17638:18, 17640:13, 17642:21, 17645:9, 17648:11, 17648:17, 17660:10, 17666:2
**Defendant** [15] - 17616:3, 17616:4, 17616:5, 17616:9, 17616:10, 17616:11, 17616:12, 17616:13, 17616:14, 17616:15
**DEFENDANT** [10] - 17651:7, 17651:22, 17651:25, 17652:15, 17652:17, 17653:8, 17653:10, 17653:15, 17653:17, 17671:17
**defendant's** [2] - 17636:14, 17647:4
**defendants** [35] - 17617:8, 17618:8, 17618:10, 17618:15, 17621:21, 17625:19, 17627:19, 17630:4, 17631:9, 17631:11, 17634:15, 17635:6, 17635:20, 17636:13, 17640:17, 17640:22, 17641:3, 17642:16, 17645:14, 17645:19, 17645:22, 17647:2, 17647:21, 17647:23, 17648:12, 17650:12, 17650:20, 17650:24, 17653:4, 17660:25, 17662:19, 17665:5, 17706:24, 17710:6
**Defendants** [3] - 17613:7, 17613:16, 17614:2
**defendants'** [1] - 17710:9

**defense** [15] - 17623:13, 17624:20, 17624:22, 17625:17, 17626:5, 17628:7, 17630:13, 17634:6, 17640:1, 17646:13, 17665:1, 17665:14, 17665:17, 17665:19, 17671:5
**Defense** [3] - 17683:24, 17691:11, 17694:9
**defined** [2] - 17644:9, 17646:22
**defines** [1] - 17643:19
**defining** [1] - 17643:25
**definitive** [1] - 17632:10
**degree** [3] - 17617:11, 17672:19, 17715:8
**delay** [1] - 17649:19
**deliberation** [1] - 17671:2
**deliberations** [3] - 17651:20, 17652:13, 17653:6
**delta** [1] - 17714:18
**deny** [1] - 17628:21
**Department** [7] - 17621:14, 17622:1, 17625:1, 17625:10, 17625:17, 17625:20, 17631:22
**Department's** [1] - 17623:21
**DEPUTY** [16] - 17616:2, 17649:9, 17649:12, 17664:18, 17670:14, 17674:6, 17674:8, 17674:10, 17684:3, 17684:5, 17695:9, 17695:12, 17695:20, 17695:24, 17696:3, 17724:12
**describe** [2] - 17644:17, 17681:12
**describing** [1] - 17664:2
**description** [1] - 17619:11
**desire** [1] - 17711:3
**detective** [1] - 17723:7
**detectives** [1] - 17638:9
**determination** [1] - 17638:2
**determine** [2] - 17641:15, 17680:2
**DHS** [1] - 17627:5

**diamond** [2] - 17681:15, 17681:17
**difference** [2] - 17645:6, 17645:20
**different** [6] - 17616:25, 17628:11, 17631:20, 17650:15, 17673:21, 17687:14
**differently** [1] - 17646:22
**difficult** [2] - 17631:19, 17633:19
**digital** [1] - 17693:16
**diligent** [2] - 17625:4, 17625:16
**diligently** [1] - 17624:21
**direct** [1] - 17619:7
**DIRECT** [1] - 17672:2
**Direct** [1] - 17615:3
**directed** [1] - 17634:9
**direction** [1] - 17642:19
**directly** [2] - 17622:11, 17639:12
**disagree** [2] - 17640:3, 17721:15
**disclose** [2] - 17623:12, 17624:22
**disclosed** [2] - 17623:22, 17688:12
**disclosures** [1] - 17628:3
**disconnect** [1] - 17718:10
**discount** [1] - 17645:17
**discover** [1] - 17623:12
**discovery** [6] - 17624:5, 17637:1, 17637:6, 17673:17, 17678:1, 17678:3
**discuss** [7] - 17635:10, 17637:16, 17641:7, 17643:2, 17651:16, 17652:9, 17653:2
**discussed** [2] - 17618:12, 17618:22
**discussion** [3] - 17629:13, 17635:8, 17637:14
**discussions** [2] - 17631:5, 17636:4
**dismiss** [4] - 17616:24, 17617:6, 17617:10, 17644:6
**dismissing** [2] - 17617:9, 17617:14

**dispute** [1] - 17634:16
**disputes** [1] - 17668:25
**disrespect** [1] - 17641:13
**distance** [1] - 17697:7
**District** [1] - 17644:1
**DISTRICT** [3] - 17613:1, 17613:1, 17613:10
**district** [1] - 17672:14
**docket** [4] - 17629:14, 17630:23, 17648:8, 17649:16
**document** [3] - 17667:1, 17690:12, 17695:18
**Document** [1] - 17628:22
**documents** [1] - 17666:6
**Dominic** [2] - 17616:5, 17692:16
**Donald** [1] - 17645:15
**done** [13] - 17619:20, 17625:3, 17625:16, 17633:7, 17641:19, 17643:22, 17644:1, 17664:13, 17664:14, 17665:10, 17671:23, 17671:24, 17707:8
**door** [6] - 17643:15, 17660:15, 17660:16, 17663:20, 17721:6, 17721:13
**down** [13] - 17620:10, 17643:3, 17662:6, 17682:21, 17692:8, 17692:11, 17698:3, 17703:22, 17704:4, 17704:23, 17722:21, 17723:12, 17723:14
**dozen** [2] - 17677:20, 17716:3
**dramatic** [3] - 17645:6, 17645:20, 17661:23
**drive** [6] - 17664:25, 17665:2, 17666:9, 17666:13, 17669:4, 17669:9
**Drive** [1] - 17614:15
**Due** [1] - 17647:5
**due** [1] - 17617:14
**Duffy** [1] - 17619:18
**duration** [1] - 17679:20
**during** [2] - 17665:9, 17677:19
**duty** [1] - 17641:24

**dwell** [1] - 17707:2

# E

**early** [2] - 17664:14, 17667:16
**easier** [3] - 17663:15, 17691:3, 17691:9
**East** [2] - 17613:17, 17614:15
**ECF** [2] - 17626:7, 17630:23
**effect** [1] - 17675:21
**efficiency** [1] - 17641:2
**efforts** [1] - 17625:16
**either** [17] - 17618:21, 17618:23, 17619:20, 17620:8, 17628:4, 17630:12, 17632:12, 17643:7, 17643:14, 17647:11, 17653:21, 17666:14, 17666:20, 17668:20, 17686:17, 17723:25
**election** [1] - 17645:19
**electoral** [1] - 17645:17
**electronic** [2] - 17622:2, 17623:21
**element** [2] - 17645:4
**elements** [1] - 17642:14
**elicit** [1] - 17686:21
**elicited** [1] - 17618:14
**email** [5] - 17638:12, 17689:1, 17689:3, 17689:13, 17689:20
**emblem** [1] - 17681:15
**emphasis** [1] - 17617:24
**emphasize** [1] - 17627:13
**employed** [3] - 17672:11, 17672:13, 17673:6
**end** [12] - 17618:22, 17633:4, 17633:20, 17678:19, 17678:22, 17678:23, 17679:4, 17679:6, 17679:20, 17679:24, 17711:9, 17716:6
**enforcement** [6] - 17623:14, 17623:16, 17627:2, 17627:5, 17628:12, 17633:6
**engage** [2] - 17641:7, 17647:25

**engaged** [1] - 17682:17
**Enrique** [1] - 17616:5
**entail** [1] - 17673:19
**enter** [1] - 17631:7
**entire** [2] - 17626:18, 17700:17
**entitled** [5] - 17622:20, 17627:24, 17628:1, 17628:10, 17628:20
**Erik** [2] - 17613:12, 17616:8
**Esq** [12] - 17613:12, 17613:12, 17613:13, 17613:13, 17613:16, 17613:20, 17613:23, 17614:2, 17614:4, 17614:8, 17614:11, 17614:14
**essentially** [2] - 17623:23, 17660:6
**establish** [1] - 17677:12
**et** [1] - 17649:14
**Ethan** [2] - 17616:3, 17649:13
**even-handed** [1] - 17668:10
**evening** [1] - 17640:21
**events** [1] - 17686:21
**evidence** [33] - 17618:7, 17618:8, 17618:12, 17618:14, 17621:20, 17621:24, 17621:25, 17622:7, 17622:19, 17623:7, 17625:6, 17626:6, 17626:17, 17645:8, 17645:21, 17646:16, 17649:5, 17650:17, 17650:20, 17660:22, 17661:7, 17666:20, 17670:23, 17670:24, 17670:25, 17671:5, 17686:2, 17695:6, 17695:18, 17699:8, 17699:9, 17706:23, 17711:11
**Evidence** [2] - 17640:2, 17721:16
**exact** [1] - 17676:24
**exactly** [9] - 17627:14, 17627:23, 17627:25, 17628:8, 17628:9, 17643:19, 17663:19, 17686:16
**EXAMINATION** [3] - 17672:2, 17703:13, 17722:7

**examination** [10] - 17619:7, 17630:21, 17635:6, 17665:4, 17665:9, 17666:5, 17666:8, 17666:22, 17668:21, 17669:4
**Examination** [3] - 17615:3, 17615:4, 17615:4
**examine** [3] - 17666:24, 17685:19, 17701:19
**examined** [3] - 17666:13, 17667:2, 17667:5
**examining** [1] - 17622:16
**example** [1] - 17645:5
**exception** [1] - 17652:22
**exclude** [4] - 17618:16, 17618:20, 17649:17, 17650:17
**excluded** [3] - 17638:17, 17639:10, 17667:24
**exculpatory** [12] - 17620:24, 17621:20, 17621:23, 17622:11, 17623:13, 17625:9, 17625:15, 17626:3, 17626:11, 17626:17, 17628:21, 17632:2
**excuse** [2] - 17688:13, 17723:16
**excused** [1] - 17670:17
**Exhibit** [4] - 17690:6, 17691:11, 17691:15, 17691:16
**exhibit** [19] - 17665:4, 17687:22, 17690:5, 17690:13, 17691:3, 17691:5, 17695:11, 17695:12, 17695:13, 17696:4, 17698:12, 17700:6, 17700:8, 17700:13, 17701:8, 17719:17, 17719:18, 17720:7
**Exhibit-1000** [1] - 17705:9
**Exhibit-1001** [3] - 17680:23, 17711:25, 17712:5
**Exhibit-400D** [3] - 17674:4, 17674:12, 17714:18
**Exhibit-401** [1] - 17697:17

**Exhibit-401G** [2] - 17692:5, 17692:7
**Exhibit-436** [6] - 17698:11, 17698:13, 17698:16, 17698:21, 17701:13, 17702:15
**Exhibit-63** [2] - 17683:24, 17683:25
**Exhibit-66** [1] - 17694:10
**Exhibit-67** [2] - 17695:6, 17703:4
**exhibits** [4] - 17650:5, 17665:16, 17668:11, 17691:10
**exist** [1] - 17626:10
**exists** [3] - 17628:1, 17628:19
**expect** [4] - 17669:25, 17670:10, 17671:1, 17671:11
**expectations** [1] - 17670:21
**experience** [5] - 17692:23, 17694:2, 17697:2, 17698:6, 17704:22
**expert** [15] - 17618:16, 17618:17, 17618:19, 17618:20, 17619:5, 17619:22, 17630:10, 17630:21, 17630:23, 17634:13, 17638:1, 17641:4, 17648:8, 17649:16, 17649:17
**expertise** [1] - 17696:19
**explain** [1] - 17649:19
**explained** [1] - 17671:4
**explanation** [1] - 17662:16
**extend** [3] - 17623:15, 17623:17, 17626:18
**extensive** [2] - 17638:12, 17704:22
**extent** [7] - 17626:8, 17627:4, 17628:14, 17629:23, 17664:5, 17696:23, 17702:5
**extra** [1] - 17661:1

## F

**facing** [1] - 17693:1
**fact** [10] - 17622:2, 17624:3, 17625:8, 17625:9, 17625:10, 17628:2, 17633:10, 17646:21, 17650:5,

17721:10
**fair** [6] - 17620:4, 17626:15, 17640:15, 17668:9, 17669:8, 17720:1
**fairly** [1] - 17711:10
**fairness** [1] - 17669:7
**false** [1] - 17662:24
**familiar** [7] - 17678:14, 17678:15, 17710:1, 17710:5, 17711:20, 17711:21, 17712:9
**far** [6] - 17622:13, 17628:16, 17630:4, 17631:12, 17647:14, 17724:7
**fault** [1] - 17639:5
**FBI** [4] - 17620:22, 17621:9, 17621:12, 17625:8
**FBI's** [1] - 17625:4
**federal** [2] - 17627:10, 17627:17
**Federal** [1] - 17626:19
**felon** [2] - 17661:6
**felony** [1] - 17661:7
**fence** [14] - 17682:17, 17686:4, 17703:22, 17703:24, 17703:25, 17704:2, 17704:4, 17704:7, 17704:9, 17704:18, 17704:23, 17715:9, 17715:16, 17722:21
**few** [5] - 17643:3, 17706:7, 17707:5, 17708:9, 17708:22
**Fifth** [3] - 17666:3, 17666:9, 17668:13
**figure** [1] - 17663:23
**figuring** [1] - 17631:12
**file** [2] - 17619:3, 17638:16
**filed** [12] - 17618:17, 17619:10, 17619:17, 17620:3, 17620:7, 17629:2, 17630:9, 17639:2, 17644:25, 17648:8, 17653:12
**filing** [1] - 17721:11
**fill** [2] - 17620:14, 17660:14
**filmed** [1] - 17677:3
**filming** [1] - 17716:23
**final** [1] - 17664:5
**fine** [8] - 17630:1, 17632:17, 17650:22, 17664:4, 17685:17, 17690:12, 17702:4,

17716:8
**finish** [2] - 17716:18, 17716:20
**Firearms** [1] - 17621:1
**firms** [1] - 17723:6
**first** [10] - 17616:20, 17620:2, 17630:8, 17636:11, 17642:13, 17651:1, 17663:15, 17672:8, 17675:9, 17716:1
**First** [3] - 17685:21, 17685:22, 17686:3
**five** [5] - 17635:4, 17679:3, 17679:6, 17706:25, 17722:3
**FL** [2] - 17614:6, 17614:9
**flash** [6] - 17664:25, 17665:2, 17666:9, 17666:13, 17669:3, 17669:9
**flat** [2] - 17620:22, 17621:8
**flip** [1] - 17617:16
**Floor** [2] - 17613:21, 17614:12
**Florida** [2] - 17621:5, 17624:9
**focus** [4] - 17692:25, 17696:20, 17697:11, 17698:6
**focused** [2] - 17696:24, 17697:2
**focusing** [1] - 17710:11
**following** [3] - 17654:2, 17661:25, 17722:17
**Following** [1] - 17660:3
**food** [3] - 17644:15, 17709:24, 17710:13
**FOR** [2] - 17613:1, 17671:17
**Forces** [1] - 17621:10
**foregoing** [1] - 17724:18
**forget** [1] - 17633:16
**forth** [1] - 17631:7
**forward** [1] - 17704:20
**foundation** [11] - 17677:9, 17677:12, 17693:2, 17693:4, 17694:5, 17694:16, 17696:21, 17698:8, 17710:17, 17710:19, 17711:23
**four** [13] - 17617:15, 17617:16, 17633:17,

17641:21, 17672:19, 17679:3, 17679:5, 17694:21, 17694:23, 17696:14, 17701:22, 17705:9, 17705:22
**four-minute** [2] - 17705:9, 17705:22
**four-year** [1] - 17672:19
**frame** [1] - 17715:19
**frankly** [3] - 17622:18, 17631:17, 17646:17
**free** [1] - 17685:17
**Fri** [1] - 17688:18
**Friday** [8] - 17616:21, 17617:4, 17617:8, 17617:11, 17669:24, 17671:1, 17671:12, 17689:25
**front** [5] - 17617:25, 17651:2, 17651:3, 17663:20, 17713:25
**fuck** [2] - 17675:20, 17720:24
**Fuck** [2] - 17676:4, 17717:10
**full** [6] - 17685:19, 17699:8, 17699:12, 17700:3, 17710:1, 17724:19
**fully** [3] - 17624:5, 17625:24, 17633:11
**fundamentally** [3] - 17622:14, 17631:20, 17639:25

## G

**general** [1] - 17668:24
**gentleman** [6] - 17650:8, 17681:7, 17682:14, 17682:19, 17683:21, 17684:13
**gentleman's** [1] - 17650:5
**gentlemen** [4] - 17661:5, 17670:19, 17672:5, 17723:15
**given** [9] - 17617:20, 17618:4, 17619:6, 17619:11, 17627:17, 17631:4, 17647:18, 17660:7, 17663:6
**glad** [1] - 17632:9
**golf** [6] - 17688:5, 17688:8, 17690:8, 17692:5, 17692:8, 17697:17
**Government** [21] - 17626:19, 17628:17,

17629:17, 17674:12, 17680:22, 17687:17, 17687:22, 17691:16, 17692:4, 17692:7, 17696:2, 17696:3, 17697:16, 17698:11, 17698:16, 17698:20, 17699:6, 17700:5, 17701:12, 17702:15, 17708:5
**government** [69] - 17616:7, 17617:9, 17619:12, 17619:17, 17620:8, 17620:11, 17620:17, 17620:24, 17621:7, 17622:12, 17622:16, 17622:22, 17623:1, 17623:5, 17623:11, 17623:22, 17625:15, 17625:18, 17626:14, 17626:16, 17627:8, 17628:3, 17628:13, 17633:16, 17634:8, 17639:17, 17640:14, 17640:18, 17646:12, 17646:17, 17649:24, 17650:6, 17650:9, 17650:21, 17664:24, 17665:18, 17665:19, 17666:4, 17666:11, 17666:12, 17667:16, 17667:23, 17668:10, 17669:3, 17669:9, 17671:6, 17674:3, 17686:13, 17686:19, 17686:24, 17688:7, 17690:20, 17691:9, 17694:24, 17695:11, 17698:12, 17699:1, 17699:3, 17699:13, 17700:1, 17700:12, 17700:16, 17711:9, 17719:10, 17719:17, 17721:5, 17721:8, 17721:11
**government's** [12] - 17618:16, 17618:19, 17618:24, 17619:8, 17621:25, 17626:21, 17630:18, 17647:20, 17666:22, 17690:13, 17701:12, 17711:3
**Government's** [5] - 17630:14, 17640:21, 17690:5, 17695:12, 17695:13
**Government-436** [1] - 17703:8
**governments** [1] - 17626:19

**governs** [1] - 17623:11
**grant** [4] - 17627:1, 17649:17, 17649:20, 17661:15
**granted** [1] - 17629:10
**great** [2] - 17716:6, 17717:7
**Greene** [1] - 17661:3
**ground** [3] - 17704:2, 17704:24
**grounds** [2] - 17623:24, 17645:22
**group** [7] - 17706:25, 17708:13, 17709:12, 17709:18, 17710:15, 17712:11, 17713:11
**groups** [1] - 17625:23
**grunt** [1] - 17716:25
**grunting** [1] - 17716:22
**guess** [10] - 17619:15, 17619:17, 17630:8, 17631:20, 17663:25, 17689:10, 17692:6, 17693:14, 17696:22, 17710:11
**guilty** [1] - 17661:4
**gun** [1] - 17661:5
**guy** [1] - 17619:18

**H**

**half** [3] - 17706:12, 17707:19, 17709:24
**hand** [4] - 17661:22, 17669:3, 17669:9, 17681:13
**handed** [1] - 17668:10
**handle** [1] - 17637:11
**happy** [2] - 17662:24, 17662:25
**harder** [1] - 17704:23
**Harley** [1] - 17684:17
**Harley-Davidson** [1] - 17684:17
**Harris** [2] - 17669:18, 17695:17
**hash** [1] - 17685:25
**Hassan** [3] - 17614:4, 17616:11, 17633:24
**HASSAN** [2] - 17614:5, 17633:23
**hat** [1] - 17681:17
**Haven** [1] - 17613:22
**head** [1] - 17718:12
**headphones** [1] - 17676:21
**hear** [38] - 17620:12, 17622:21, 17622:23,

17623:2, 17623:4, 17624:17, 17631:10, 17633:3, 17643:15, 17644:19, 17646:9, 17670:12, 17670:23, 17670:24, 17670:25, 17671:21, 17675:19, 17675:24, 17675:25, 17676:1, 17676:3, 17676:4, 17676:17, 17676:18, 17676:19, 17678:22, 17678:25, 17679:11, 17688:14, 17688:17, 17707:9, 17712:21, 17713:23, 17714:12, 17716:12, 17720:15
**heard** [12] - 17616:21, 17618:21, 17618:23, 17620:9, 17652:4, 17653:4, 17661:17, 17669:12, 17677:10, 17678:8, 17679:14, 17685:12
**hearing** [1] - 17617:10
**hearsay** [3] - 17639:21, 17640:2, 17721:17
**heart** [1] - 17624:23
**hedge** [2] - 17646:21, 17647:1
**HELD** [1] - 17613:9
**helpful** [2] - 17629:21, 17629:23
**hereby** [1] - 17724:17
**HERNANDEZ** [174] - 17632:21, 17632:24, 17633:1, 17634:21, 17638:15, 17639:4, 17639:8, 17639:14, 17648:20, 17648:22, 17649:6, 17650:2, 17650:16, 17660:19, 17662:13, 17662:18, 17663:9, 17663:18, 17664:6, 17664:23, 17665:12, 17665:23, 17666:2, 17667:14, 17668:4, 17668:8, 17668:15, 17668:18, 17669:16, 17672:3, 17672:5, 17672:7, 17673:2, 17674:3, 17674:7, 17674:9, 17674:11, 17674:13, 17674:18, 17674:19, 17675:5, 17675:8, 17675:23, 17676:10, 17676:13, 17676:15, 17676:16, 17677:12,

17677:15, 17678:18, 17678:21, 17679:5, 17679:10, 17679:23, 17680:1, 17680:22, 17680:25, 17681:3, 17681:5, 17681:6, 17681:24, 17682:2, 17682:6, 17682:9, 17682:12, 17682:13, 17682:21, 17682:25, 17683:6, 17683:10, 17683:11, 17683:13, 17683:15, 17683:23, 17684:2, 17684:4, 17684:6, 17684:10, 17684:12, 17684:24, 17685:5, 17685:9, 17686:6, 17687:1, 17687:3, 17687:6, 17687:9, 17687:14, 17687:20, 17688:7, 17688:13, 17688:17, 17688:23, 17689:1, 17689:12, 17689:22, 17690:2, 17690:19, 17690:24, 17691:18, 17691:21, 17691:24, 17692:2, 17692:10, 17693:3, 17693:6, 17694:7, 17694:9, 17694:11, 17694:17, 17695:4, 17695:8, 17695:10, 17695:14, 17696:1, 17696:7, 17696:10, 17696:11, 17696:25, 17697:16, 17697:18, 17698:3, 17698:4, 17698:10, 17699:1, 17699:4, 17699:10, 17699:17, 17700:7, 17700:10, 17701:3, 17701:11, 17701:21, 17701:24, 17702:1, 17702:3, 17702:9, 17702:11, 17702:14, 17702:18, 17702:19, 17702:23, 17702:25, 17703:7, 17706:9, 17707:4, 17707:6, 17707:11, 17707:17, 17707:21, 17707:23, 17708:18, 17708:20, 17710:2, 17710:18, 17712:13, 17713:13, 17716:17, 17717:20, 17718:24, 17719:1, 17719:5, 17719:9, 17719:16, 17721:3, 17721:5, 17721:18, 17721:21, 17721:23, 17722:2,

17722:4, 17722:8, 17723:10, 17724:8
**Hernandez** [30] - 17614:2, 17616:11, 17618:9, 17630:19, 17632:23, 17634:1, 17638:14, 17639:20, 17648:21, 17649:22, 17660:4, 17663:4, 17665:21, 17669:1, 17670:8, 17671:23, 17685:17, 17686:1, 17686:16, 17688:16, 17689:21, 17690:6, 17690:14, 17696:8, 17699:22, 17701:15, 17702:5, 17707:10, 17721:2, 17723:23
**Hernandez's** [5] - 17629:20, 17630:16, 17640:3, 17651:10, 17718:19
**Hernandez.............. 17672** [1] - 17615:3
**Hernandez............ 17722** [1] - 17615:4
**Hialeah** [1] - 17614:9
**high** [1] - 17711:10
**higher** [1] - 17619:23
**Highland** [1] - 17614:3
**himself** [1] - 17642:21
**history** [1] - 17660:21
**hmm** [4] - 17706:17, 17715:8, 17715:13, 17715:15
**Hoffman** [1] - 17619:18
**hold** [5] - 17648:16, 17651:20, 17652:13, 17653:5, 17720:7
**holding** [3] - 17681:13, 17714:25, 17715:6
**holdings** [1] - 17625:4
**Hollow** [1] - 17614:2
**Holmes** [3] - 17638:21, 17639:11, 17639:23
**Homeland** [7] - 17621:7, 17625:1, 17625:2, 17626:24, 17627:6
**homeland** [1] - 17625:2
**Honor** [81] - 17618:25, 17623:7, 17623:9, 17623:19, 17624:15, 17625:23, 17629:2, 17630:2, 17630:14, 17630:22, 17634:4,

17634:21, 17638:15, 17639:19, 17639:23, 17640:2, 17640:4, 17640:20, 17642:12, 17644:24, 17645:5, 17646:24, 17647:22, 17647:25, 17648:22, 17650:2, 17651:22, 17652:15, 17653:8, 17653:11, 17660:19, 17662:21, 17664:23, 17665:5, 17665:12, 17665:23, 17667:23, 17674:5, 17677:10, 17677:13, 17683:23, 17684:10, 17685:12, 17685:15, 17686:6, 17687:1, 17687:6, 17687:11, 17687:17, 17688:7, 17690:19, 17692:2, 17692:6, 17693:4, 17694:10, 17695:4, 17698:12, 17698:20, 17699:11, 17699:18, 17700:7, 17700:18, 17701:10, 17703:3, 17703:9, 17706:9, 17706:15, 17707:11, 17707:17, 17708:18, 17710:2, 17710:21, 17712:13, 17713:13, 17716:17, 17718:17, 17719:16, 17720:8, 17721:3, 17721:23, 17724:8
**HONORABLE** [1] - 17613:9
**Honorable** [2] - 17649:9, 17724:12
**hoodie** [2] - 17681:16, 17684:17
**hopefully** [1] - 17671:24
**horse** [1] - 17719:20
**hour** [5] - 17638:6, 17695:15, 17699:8, 17707:19, 17709:24
**hour-and-a-half** [1] - 17707:19
**hours** [9] - 17665:16, 17677:24, 17699:11, 17700:2, 17701:24, 17703:1, 17703:2, 17706:11, 17706:12
**hours'** [1] - 17668:11
**house** [2] - 17622:8, 17622:9
**House** [2] - 17714:2
**housekeeping** [1] - 17691:8

**Hull** [2] - 17613:23, 17616:10
**HULL** [3] - 17613:24, 17662:21, 17670:3
**human** [2] - 17624:15, 17625:6
**hump** [1] - 17628:16
**hundreds** [1] - 17693:15
**hung** [1] - 17690:16

**I**

**i.e** [1] - 17645:18
**idea** [1] - 17637:12
**ideal** [1] - 17660:17
**identified** [6] - 17666:5, 17667:25, 17690:6, 17690:7, 17695:13, 17695:21
**identify** [13] - 17624:21, 17625:3, 17665:16, 17677:7, 17678:12, 17681:10, 17683:12, 17683:16, 17684:16, 17686:9, 17686:13, 17691:6, 17702:20
**identifying** [1] - 17685:23
**II** [1] - 17614:11
**illustrative** [1] - 17645:5
**image** [2] - 17712:9, 17713:5
**images** [1] - 17712:24
**imagine** [1] - 17633:6
**immaterial** [1] - 17624:13
**impact** [2] - 17635:8, 17662:12
**impacted** [1] - 17665:5
**impacts** [1] - 17665:5
**impaneled** [2] - 17617:15, 17617:16
**impeachment** [1] - 17637:5
**implication** [2] - 17706:15, 17706:20
**implicitly** [1] - 17700:1
**important** [1] - 17634:4
**impression** [1] - 17619:7
**improper** [1] - 17666:18
**IN** [1] - 17613:1
**incident** [1] - 17706:19

**incidents** [1] - 17707:13
**incitement** [1] - 17622:24
**inciting** [2] - 17622:10
**inclination** [1] - 17643:16
**inclined** [1] - 17642:19
**include** [3] - 17688:22, 17696:17, 17714:11
**includes** [1] - 17673:21
**including** [3] - 17661:3, 17678:16, 17685:23
**indicated** [3] - 17646:19, 17664:25, 17665:2
**indicates** [1] - 17664:18
**indicating** [16] - 17628:24, 17631:1, 17632:21, 17637:22, 17642:10, 17644:22, 17648:20, 17681:8, 17681:19, 17684:19, 17692:12, 17697:8, 17697:21, 17702:21, 17706:24, 17721:3
**indication** [1] - 17693:3
**individual** [3] - 17624:25, 17625:6, 17641:13
**industry** [1] - 17619:24
**infer** [1] - 17680:10
**informant** [1] - 17622:6
**informants** [1] - 17620:21
**information** [18] - 17620:24, 17621:13, 17621:23, 17622:15, 17623:8, 17623:12, 17624:17, 17624:19, 17624:22, 17626:2, 17626:4, 17631:16, 17631:17, 17633:4, 17633:10, 17635:7, 17636:24
**informed** [10] - 17619:4, 17640:9, 17640:11, 17640:18, 17642:15, 17651:14, 17652:7, 17652:24, 17661:10
**initial** [2] - 17633:12,

17682:22
**inquire** [4] - 17618:10, 17641:5, 17650:24, 17724:4
**instance** [1] - 17667:22
**instances** [2] - 17706:19, 17706:25
**instruct** [3] - 17641:17, 17642:6, 17671:7
**instruction** [2] - 17643:17, 17643:20
**instructions** [5] - 17642:18, 17646:4, 17646:11, 17671:8, 17671:9
**insult** [1] - 17621:11
**insulting** [1] - 17623:5
**intellectually** [1] - 17623:5
**intelligence** [4] - 17621:12, 17623:17, 17672:22, 17672:25
**intelligent** [1] - 17666:4
**intend** [5] - 17652:17, 17664:22, 17685:18, 17685:22, 17686:21
**intended** [2] - 17640:22, 17660:10
**intends** [3] - 17651:12, 17652:5, 17652:22
**intention** [2] - 17631:7, 17641:14
**interactions** [1] - 17625:23
**interest** [2] - 17638:20, 17639:22
**interject** [1] - 17667:9
**interview** [1] - 17631:4
**interviewed** [4] - 17631:16, 17631:23, 17633:17, 17638:9
**interviews** [1] - 17633:19
**introduce** [7] - 17650:7, 17667:23, 17668:1, 17683:23, 17686:2, 17686:11, 17703:3
**introduced** [16] - 17650:6, 17650:9, 17666:20, 17674:5, 17687:18, 17688:8, 17690:20, 17694:24, 17696:2, 17698:12, 17698:21, 17701:6, 17701:8, 17719:11,

17719:18, 17719:19
**introducing** [1] - 17639:9
**investigate** [1] - 17633:11
**investigation** [3] - 17621:2, 17632:5, 17633:7
**investigations** [1] - 17625:2
**Investigations** [3] - 17621:7, 17626:25, 17627:7
**investigative** [4] - 17621:3, 17627:10, 17689:9, 17693:25
**investigator** [24] - 17630:16, 17634:14, 17637:15, 17638:15, 17639:7, 17639:9, 17641:4, 17650:4, 17650:8, 17651:11, 17652:22, 17664:13, 17672:14, 17672:16, 17673:6, 17673:16, 17688:19, 17689:5, 17689:14, 17692:24, 17693:7, 17704:23, 17723:1
**investigator's** [3] - 17669:15, 17689:17, 17689:20
**invoke** [1] - 17641:18
**involve** [3] - 17636:11, 17644:13, 17673:25
**involved** [3] - 17667:6, 17667:15, 17685:24
**involves** [1] - 17644:2
**involving** [1] - 17678:6
**ironically** [1] - 17619:23
**irrelevant** [1] - 17711:5
**issue** [14] - 17620:5, 17634:15, 17635:5, 17635:15, 17636:4, 17637:1, 17639:21, 17639:24, 17641:11, 17648:8, 17663:21, 17664:23, 17668:24, 17719:22
**issues** [5] - 17618:13, 17665:20, 17667:6, 17667:11, 17667:15
**itself** [1] - 17704:15
**IV** [1] - 17613:23

**J**

**J-O-N-E-S** [1] - 17672:10
**jammed** [2] - 17660:24, 17663:20
**January** [8] - 17621:6, 17621:22, 17622:8, 17623:21, 17624:18, 17624:19, 17627:18
**Jason** [2] - 17613:12, 17616:7
**Jauregui** [2] - 17614:8, 17616:12
**JAUREGUI** [1] - 17614:8
**Jencks** [5] - 17688:11, 17688:22, 17688:23, 17688:25, 17689:16
**Jeremy** [4] - 17621:4, 17621:5, 17624:8
**Joe** [1] - 17645:17
**John** [2] - 17613:23, 17616:10
**Johnson** [21] - 17638:18, 17681:11, 17684:14, 17684:25, 17701:5, 17702:22, 17703:17, 17705:3, 17705:12, 17705:24, 17706:3, 17706:19, 17706:21, 17709:15, 17711:18, 17712:24, 17714:6, 17715:18, 17721:6, 17721:10, 17722:14
**Johnson's** [1] - 17714:7
**join** [1] - 17633:25
**joined** [2] - 17624:3, 17624:12
**joins** [3] - 17633:22, 17648:4, 17662:21
**Joint** [1] - 17621:10
**Jones** [17] - 17672:8, 17672:10, 17677:16, 17687:21, 17692:11, 17693:7, 17696:12, 17697:1, 17702:20, 17703:10, 17703:15, 17705:24, 17709:2, 17710:5, 17712:8, 17715:11, 17722:25
**JONES** [2] - 17615:3, 17671:17
**Joseph** [1] - 17616:4
**Judge** [15] - 17624:10, 17633:25, 17634:17, 17643:6, 17644:7, 17645:1, 17645:3,

17646:2, 17647:15, 17647:17, 17648:4, 17670:2, 17704:11, 17704:25, 17710:23
**JUDGE** [1] - 17613:10
**judge** [6] - 17633:23, 17634:20, 17645:8, 17645:25, 17711:2, 17719:20
**judges** [1] - 17646:2
**July** [2] - 17624:11, 17624:12
**juror** [4] - 17616:24, 17617:3, 17617:6, 17617:9
**jurors** [2] - 17660:25, 17662:9
**Jury** [2] - 17670:15, 17723:18
**JURY** [1] - 17613:8
**jury** [38] - 17616:19, 17617:7, 17617:18, 17617:25, 17619:4, 17629:9, 17637:13, 17641:5, 17642:6, 17642:17, 17646:3, 17646:11, 17648:16, 17651:19, 17652:12, 17653:5, 17653:23, 17660:13, 17662:5, 17662:16, 17664:9, 17664:12, 17664:17, 17665:22, 17667:12, 17668:7, 17669:14, 17669:18, 17669:22, 17670:9, 17670:10, 17670:14, 17670:15, 17672:6, 17686:10, 17688:9, 17698:22, 17723:18
**jury's** [4] - 17617:19, 17629:15, 17661:10, 17664:11

## K

**keep** [4] - 17625:21, 17671:20, 17678:18, 17702:23
**Keeper** [1] - 17624:9
**Keepers** [1] - 17621:6
**KELLY** [1] - 17613:9
**KENERSON** [1] - 17636:20
**Kenerson** [7] - 17613:12, 17616:8, 17635:9, 17635:11, 17635:13, 17636:19, 17643:21
**kind** [13] - 17618:4,

17619:13, 17620:24, 17621:12, 17638:3, 17650:19, 17660:14, 17663:23, 17670:21, 17673:20, 17685:20, 17685:25, 17707:15
**kinds** [1] - 17650:13
**knowing** [4] - 17628:8, 17646:18, 17666:4, 17710:11
**knows** [4] - 17619:22, 17635:14, 17665:3, 17666:19

## L

**lack** [1] - 17622:14
**ladies** [3] - 17670:19, 17672:5, 17723:15
**laid** [3] - 17616:23, 17626:21, 17627:9
**Lake** [1] - 17614:15
**Lakes** [1] - 17614:6
**language** [2] - 17643:22, 17644:3
**large** [1] - 17706:25
**largely** [1] - 17616:24
**last** [11] - 17618:18, 17618:23, 17628:7, 17651:11, 17663:22, 17667:22, 17672:8, 17688:19, 17690:3, 17698:2, 17698:5
**late** [4] - 17622:18, 17624:1, 17631:18, 17720:23
**LAW** [3] - 17614:5, 17614:8, 17614:15
**law** [24] - 17620:23, 17623:10, 17623:13, 17623:15, 17626:14, 17626:15, 17627:2, 17627:5, 17627:9, 17627:11, 17628:12, 17628:13, 17633:6, 17642:14, 17645:7, 17645:13, 17647:8, 17647:10, 17647:14, 17647:17, 17667:11, 17671:7, 17723:6
**lawyer** [4] - 17634:24, 17651:8, 17651:17, 17651:25
**lawyers** [1] - 17653:2
**lay** [2] - 17643:2, 17649:17
**layout** [1] - 17660:7
**leading** [5] - 17621:21, 17708:6, 17709:17, 17709:19,

17714:4
**leaning** [1] - 17648:23
**learns** [2] - 17623:8
**least** [10] - 17617:7, 17617:21, 17622:2, 17626:14, 17630:7, 17631:3, 17639:18, 17664:11, 17670:25, 17691:14
**leave** [5] - 17641:15, 17664:16, 17716:6, 17716:7, 17718:10
**led** [3] - 17712:11, 17713:11, 17722:17
**leeway** [1] - 17711:17
**left** [4] - 17628:8, 17679:19, 17679:22, 17715:22
**legal** [2] - 17647:16, 17704:11
**legitimately** [1] - 17627:11
**lengthy** [1] - 17630:20
**less** [2] - 17647:15, 17663:16
**letting** [1] - 17668:6
**licensed** [2] - 17672:14, 17723:7
**light** [4] - 17623:5, 17628:2, 17628:6, 17661:19
**limited** [2] - 17630:19, 17634:9
**limiting** [1] - 17626:15
**limits** [2] - 17626:20
**line** [2] - 17661:9, 17662:10
**lined** [1] - 17618:5
**lines** [1] - 17644:16
**listen** [2] - 17676:11, 17707:12
**listened** [6] - 17676:24, 17677:6, 17677:25, 17678:5, 17678:8, 17678:10
**literally** [2] - 17635:12, 17646:8
**Livingston** [1] - 17614:16
**LLC** [1] - 17613:20
**local** [1] - 17697:4
**logistic** [1] - 17638:1
**logo** [2] - 17684:18, 17684:19
**look** [24] - 17617:11, 17625:25, 17630:9, 17638:12, 17639:16, 17640:6, 17644:7, 17644:10, 17649:16, 17649:22,

17667:7, 17668:23, 17675:1, 17679:15, 17679:22, 17683:19, 17686:15, 17688:1, 17689:5, 17693:19, 17694:2, 17706:11, 17707:13
**looked** [7] - 17620:3, 17661:16, 17661:18, 17663:2, 17674:14, 17674:22, 17689:13
**looking** [7] - 17643:21, 17644:5, 17644:7, 17679:19, 17683:20, 17687:7, 17692:23
**looks** [4] - 17704:6, 17704:10, 17704:21, 17720:25
**lost** [1] - 17691:8
**lunch** [4] - 17664:15, 17723:16, 17724:10
**Luncheon** [1] - 17724:14
**lying** [1] - 17638:10

## M

**machine** [1] - 17614:21
**Mall** [4] - 17705:25, 17706:3, 17708:14, 17722:12
**marching** [1] - 17722:10
**mark** [21] - 17675:6, 17680:17, 17683:2, 17694:9, 17698:19, 17700:12, 17705:9, 17705:22, 17708:17, 17708:25, 17709:6, 17709:21, 17710:12, 17712:6, 17713:3, 17716:7, 17716:8, 17717:6, 17718:19
**Marks** [1] - 17643:7
**marshal** [7] - 17660:15, 17661:4, 17661:25, 17662:4, 17662:6, 17662:7, 17662:8
**marshal's** [1] - 17663:12
**marshals** [1] - 17723:25
**Maryland** [1] - 17672:20
**material** [5] - 17623:12, 17624:20, 17631:17, 17666:8,

17688:22
**materials** [26] - 17624:6, 17626:8, 17626:10, 17627:14, 17664:25, 17665:3, 17665:10, 17666:7, 17666:10, 17666:14, 17666:15, 17666:18, 17666:23, 17667:4, 17667:8, 17667:17, 17667:22, 17667:23, 17668:1, 17668:5, 17668:21, 17669:10, 17673:20, 17686:12, 17688:11
**Matter** [2] - 17616:2, 17649:13
**matter** [1] - 17646:15
**matters** [3] - 17617:22, 17637:24, 17671:13
**MCCULLOUGH** [89] - 17630:14, 17639:19, 17640:20, 17647:22, 17672:23, 17675:22, 17676:6, 17677:9, 17684:7, 17685:12, 17685:15, 17688:10, 17689:19, 17690:7, 17693:2, 17694:5, 17694:16, 17695:7, 17696:21, 17698:8, 17699:7, 17700:18, 17700:20, 17701:10, 17701:15, 17703:14, 17704:13, 17704:17, 17705:2, 17705:8, 17705:11, 17705:21, 17705:23, 17706:6, 17706:15, 17706:18, 17707:5, 17708:8, 17708:11, 17708:12, 17708:16, 17708:21, 17708:24, 17709:1, 17709:5, 17709:10, 17709:11, 17709:20, 17709:22, 17710:4, 17710:21, 17711:25, 17712:4, 17712:7, 17712:16, 17712:19, 17712:20, 17713:2, 17713:4, 17713:16, 17713:20, 17713:22, 17714:16, 17714:19, 17714:21, 17715:2, 17715:5, 17716:4, 17716:11, 17716:24, 17717:5, 17717:9, 17717:17, 17717:22, 17718:1, 17718:5,

17718:8, 17718:17, 17718:23, 17719:2, 17719:6, 17719:14, 17720:4, 17720:8, 17720:11, 17720:14, 17720:17, 17720:20, 17721:1
**McCullough** [16] - 17613:12, 17616:7, 17688:21, 17689:2, 17689:4, 17689:14, 17689:16, 17689:24, 17690:5, 17701:14, 17706:14, 17711:13, 17711:17, 17718:15, 17719:13, 17719:24
**McCullough..............17703** [1] - 17615:4
**MCGUIRE** [1] - 17613:24
**MD** [1] - 17614:3
**mean** [30] - 17625:9, 17626:22, 17630:7, 17640:12, 17645:16, 17646:17, 17661:16, 17662:23, 17664:3, 17664:4, 17664:7, 17664:10, 17665:7, 17667:3, 17667:22, 17669:6, 17679:14, 17681:14, 17682:20, 17690:10, 17699:15, 17700:22, 17701:2, 17711:2, 17711:6, 17711:19, 17711:21, 17711:23, 17721:16
**meaning** [2] - 17628:13, 17678:3
**means** [1] - 17644:18
**meantime** [1] - 17639:16
**meet** [1] - 17639:11
**meeting** [1] - 17677:24
**megaphone** [11] - 17681:14, 17681:18, 17682:3, 17705:13, 17705:18, 17706:4, 17706:20, 17706:22, 17708:1, 17714:7
**Mehta** [1] - 17624:10
**member** [1] - 17624:25
**memorialize** [1] - 17693:19
**mentioned** [1] - 17649:23
**merely** [2] - 17621:22, 17645:5
**met** [4] - 17626:21,

17677:20, 17677:21, 17677:22
**metadata** [8] - 17675:14, 17677:1, 17689:3, 17689:6, 17689:8, 17692:17, 17694:20, 17695:5
**Metcalf** [4] - 17614:11, 17616:13, 17618:20, 17624:7
**METCALF** [3] - 17614:11, 17670:2
**Metro** [1] - 17631:22
**Metropolitan** [5] - 17622:1, 17623:20, 17625:10, 17625:16, 17625:20
**Miami** [1] - 17614:6
**microphone** [4] - 17651:2, 17651:3, 17671:21, 17707:7
**microphones** [1] - 17651:4
**might** [11] - 17621:1, 17621:2, 17621:12, 17626:2, 17626:3, 17635:15, 17636:4, 17643:9, 17644:12, 17646:22, 17691:10
**MILLER** [1] - 17724:17
**Miller** [3] - 17614:17, 17667:5, 17724:22
**mind** [2] - 17678:9, 17694:2
**minimize** [3] - 17662:2, 17662:12, 17663:7
**minimum** [1] - 17711:22
**Mink** [1] - 17614:2
**minute** [3] - 17686:2, 17705:9, 17705:22
**minutes** [14] - 17635:4, 17649:7, 17649:10, 17653:22, 17686:7, 17686:10, 17686:11, 17695:15, 17699:11, 17703:1, 17703:2, 17719:20, 17722:3
**misleading** [1] - 17619:7
**missed** [1] - 17619:14
**missing** [1] - 17620:2
**misstates** [2] - 17675:22, 17676:6
**mistrial** [3] - 17622:18, 17629:3, 17629:10
**modifying** [1] -

17719:17
**moment** [6] - 17619:6, 17630:11, 17634:13, 17647:25, 17715:3, 17718:12
**momentarily** [1] - 17670:17
**monitor** [2] - 17621:18, 17621:19
**monitored** [2] - 17621:20, 17621:21
**monitoring** [2] - 17621:22, 17625:12
**months** [2] - 17623:25, 17641:21
**Monument** [13] - 17697:5, 17697:13, 17697:19, 17700:22, 17703:20, 17705:4, 17705:12, 17705:16, 17706:21, 17707:1, 17710:16, 17712:1, 17713:7
**Moore** [2] - 17613:13, 17616:8
**morning** [10] - 17616:16, 17638:17, 17639:1, 17672:4, 17672:5, 17689:2, 17689:4, 17689:14, 17689:21, 17703:15
**MORNING** [1] - 17613:9
**most** [1] - 17633:18
**motion** [27] - 17618:16, 17618:17, 17618:19, 17618:24, 17620:6, 17624:24, 17626:1, 17626:6, 17626:23, 17627:1, 17627:4, 17627:21, 17627:23, 17628:18, 17628:21, 17629:2, 17629:3, 17629:10, 17629:12, 17629:13, 17629:20, 17635:15, 17635:23, 17638:25, 17644:6, 17649:17, 17649:20
**motions** [2] - 17618:6, 17618:13
**mouth** [1] - 17671:20
**move** [14] - 17636:3, 17680:21, 17681:24, 17682:6, 17682:10, 17683:23, 17686:10, 17687:9, 17687:14, 17688:9, 17688:10, 17695:4, 17702:4, 17711:25

**moved** [2] - 17687:10, 17688:21
**movements** [1] - 17625:13
**moves** [1] - 17668:25
**moving** [3] - 17699:25, 17700:1, 17715:9
**MPD** [11] - 17623:22, 17627:22, 17628:11, 17628:15, 17630:25, 17631:15, 17632:18, 17633:2, 17633:18, 17638:8, 17640:11
**MPD-related** [1] - 17630:25
**MR** [141] - 17618:25, 17619:16, 17620:17, 17623:1, 17630:14, 17631:1, 17631:3, 17631:14, 17633:22, 17633:23, 17634:17, 17634:20, 17635:4, 17635:22, 17636:1, 17636:12, 17636:16, 17636:20, 17637:3, 17637:9, 17637:18, 17637:22, 17637:24, 17638:7, 17639:19, 17640:9, 17640:20, 17641:10, 17642:10, 17642:12, 17642:23, 17644:22, 17644:24, 17646:2, 17646:6, 17646:24, 17647:22, 17648:3, 17662:21, 17670:1, 17670:2, 17670:3, 17670:17, 17672:23, 17675:22, 17676:6, 17677:9, 17684:7, 17685:12, 17685:15, 17688:10, 17689:19, 17690:7, 17693:2, 17694:5, 17694:16, 17695:7, 17696:21, 17698:8, 17699:7, 17700:18, 17700:20, 17701:10, 17701:15, 17703:14, 17704:11, 17704:13, 17704:14, 17704:17, 17704:25, 17705:2, 17705:8, 17705:11, 17705:21, 17705:23, 17706:6, 17706:15, 17706:18, 17707:5, 17708:8, 17708:11, 17708:12, 17708:16, 17708:21, 17708:24, 17709:1, 17709:5,

17709:10, 17709:11, 17709:20, 17709:22, 17710:4, 17710:17, 17710:21, 17710:23, 17711:2, 17711:9, 17711:13, 17711:25, 17712:4, 17712:7, 17712:16, 17712:19, 17712:20, 17713:2, 17713:4, 17713:16, 17713:20, 17713:22, 17714:14, 17714:16, 17714:19, 17714:21, 17715:2, 17715:5, 17716:4, 17716:11, 17716:24, 17717:5, 17717:9, 17717:14, 17717:17, 17717:22, 17717:25, 17718:1, 17718:3, 17718:5, 17718:8, 17718:17, 17718:23, 17719:2, 17719:6, 17719:14, 17719:20, 17720:4, 17720:8, 17720:11, 17720:14, 17720:17, 17720:20, 17721:1
**MS** [181] - 17623:4, 17628:24, 17629:1, 17629:16, 17629:19, 17630:2, 17632:21, 17632:24, 17633:1, 17634:3, 17634:21, 17638:15, 17639:4, 17639:8, 17639:14, 17648:20, 17648:22, 17649:6, 17650:2, 17650:16, 17660:19, 17662:13, 17662:18, 17663:9, 17663:18, 17664:6, 17664:23, 17665:12, 17665:23, 17666:2, 17667:14, 17668:4, 17668:8, 17668:15, 17668:18, 17669:16, 17672:3, 17672:5, 17672:7, 17673:2, 17674:3, 17674:7, 17674:9, 17674:11, 17674:13, 17674:18, 17674:19, 17675:5, 17675:8, 17675:23, 17676:10, 17676:13, 17676:15, 17676:16, 17677:12, 17677:15, 17678:18, 17678:21, 17679:5, 17679:10, 17679:23, 17680:1, 17680:22, 17680:25, 17681:3, 17681:5, 17681:6,

17681:24, 17682:2,
17682:6, 17682:9,
17682:12, 17682:13,
17682:21, 17682:25,
17683:6, 17683:10,
17683:11, 17683:13,
17683:15, 17683:23,
17684:2, 17684:4,
17684:6, 17684:10,
17684:12, 17684:24,
17685:5, 17685:9,
17686:6, 17687:1,
17687:3, 17687:6,
17687:9, 17687:14,
17687:20, 17688:7,
17688:13, 17688:17,
17688:23, 17689:1,
17689:12, 17689:22,
17690:2, 17690:19,
17690:24, 17691:18,
17691:21, 17691:24,
17692:2, 17692:10,
17693:3, 17693:6,
17694:7, 17694:9,
17694:11, 17694:17,
17695:4, 17695:8,
17695:10, 17695:14,
17696:1, 17696:7,
17696:10, 17696:11,
17696:25, 17697:16,
17697:18, 17698:3,
17698:4, 17698:10,
17699:1, 17699:4,
17699:10, 17699:17,
17700:7, 17700:10,
17701:3, 17701:11,
17701:21, 17701:24,
17702:1, 17702:3,
17702:9, 17702:11,
17702:14, 17702:18,
17702:19, 17702:23,
17702:25, 17703:7,
17706:9, 17707:4,
17707:6, 17707:11,
17707:17, 17707:21,
17707:23, 17708:18,
17708:20, 17710:2,
17710:18, 17712:13,
17713:13, 17716:17,
17717:20, 17718:24,
17719:1, 17719:5,
17719:9, 17719:16,
17721:3, 17721:5,
17721:18, 17721:21,
17721:23, 17722:2,
17722:4, 17722:8,
17723:10, 17724:8
**MT** [1] - 17614:16
**Mulroe** [2] - 17613:13,
17616:8
**multiple** [1] -

17667:11
**must** [3] - 17620:24,
17623:11, 17645:14

### N

**Nadia** [2] - 17613:13,
17616:8
**name** [1] - 17672:9
**National** [3] -
17621:16, 17705:25
**nature** [1] - 17666:7
**nauseam** [1] -
17618:12
**Navy** [2] - 17672:19,
17672:21
**Nayib** [3] - 17614:4,
17616:11, 17633:23
**NAYIB** [1] - 17614:5
**Nazi** [1] - 17668:2
**near** [1] - 17703:19
**nearby** [1] - 17662:5
**nearly** [1] - 17707:18
**necessarily** [1] -
17625:9
**necessary** [1] -
17641:16
**need** [33] - 17617:18,
17619:14, 17620:12,
17620:19, 17621:8,
17632:5, 17632:17,
17635:22, 17637:25,
17638:16, 17638:22,
17642:16, 17646:16,
17646:21, 17647:1,
17647:20, 17647:22,
17652:6, 17660:5,
17665:24, 17668:7,
17669:16, 17670:11,
17674:7, 17675:17,
17686:22, 17690:17,
17691:5, 17691:6,
17691:13, 17691:14,
17700:23
**needed** [1] - 17669:24
**never** [5] - 17667:3,
17667:25, 17669:11,
17669:12, 17685:18,
17685:20
**New** [3] - 17613:18,
17613:22, 17614:13
**new** [2] - 17622:19,
17647:17
**next** [9] - 17652:3,
17653:22, 17669:25,
17670:11, 17671:2,
17671:6, 17671:11,
17671:15, 17671:25
**Nicholas** [2] -
17613:16, 17616:9
**nine** [5] - 17686:2,

17686:7, 17686:10,
17686:11, 17717:6
**nine-minute** [1] -
17686:2
**nine-second** [1] -
17717:6
**NJ** [3] - 17614:17,
17724:17, 17724:22
**NJ-CCR** [3] -
17614:17, 17724:17,
17724:22
**noises** [1] - 17676:1
**none** [1] - 17625:14
**nonetheless** [2] -
17650:4, 17667:15
**Nordean** [18] -
17616:3, 17616:14,
17633:22, 17647:9,
17648:4, 17649:14,
17651:1, 17651:2,
17652:5, 17700:11,
17700:21, 17705:15,
17705:25, 17708:17,
17709:12, 17709:17,
17710:15, 17712:12
**NORDEAN** [4] -
17613:4, 17651:7,
17651:22, 17651:25
**normal** [1] - 17641:7
**Norman** [2] -
17613:20, 17616:10
**Nos** [1] - 17613:2
**note** [2] - 17689:5,
17711:10
**notes** [14] - 17687:23,
17687:24, 17688:24,
17689:1, 17689:2,
17689:9, 17689:10,
17689:12, 17689:17,
17689:18, 17689:20,
17689:22, 17689:23,
17724:19
**nothing** [4] - 17639:7,
17639:24, 17642:20,
17691:22
**notice** [5] - 17630:17,
17630:23, 17668:11,
17668:12, 17685:16
**November** [1] -
17625:14
**number** [11] -
17617:25, 17641:25,
17643:10, 17643:11,
17649:20, 17649:22,
17660:24, 17663:15,
17671:22, 17687:22,
17705:3
**number's** [1] -
17691:7
**NW** [5] - 17613:14,

17613:24, 17614:5,
17614:19, 17724:24
**NY** [2] - 17613:18,
17614:13

### O

**o'clock** [1] - 17641:6
**Oath** [2] - 17621:6,
17624:9
**object** [13] - 17641:3,
17642:20, 17660:19,
17661:15, 17665:6,
17666:17, 17669:24,
17672:23, 17677:9,
17694:16, 17696:21,
17698:8, 17721:19
**objected** [1] - 17617:8
**objecting** [1] -
17645:22
**objection** [27] -
17617:1, 17642:12,
17646:10, 17647:3,
17665:15, 17669:21,
17670:1, 17675:22,
17676:6, 17684:7,
17688:10, 17693:2,
17694:5, 17695:7,
17696:22, 17703:5,
17704:11, 17704:14,
17704:25, 17706:9,
17708:4, 17710:17,
17713:13, 17714:14,
17716:17, 17717:14,
17717:20
**objections** [2] -
17647:5, 17653:11
**objects** [1] - 17711:2
**obligation** [3] -
17617:3, 17626:17,
17628:17
**obligations** [3] -
17620:20, 17625:24,
17626:22
**observation** [2] -
17648:4, 17697:1
**observations** [1] -
17696:24
**obstructive** [1] -
17645:10
**obtained** [1] -
17645:14
**obtaining** [1] -
17645:10
**obvious** [2] -
17616:20, 17661:8
**obviously** [6] -
17626:16, 17628:11,
17629:10, 17660:10,
17669:23, 17676:1

**occasion** [1] -
17673:17
**occasions** [1] -
17644:11
**occurred** [1] - 17644:5
**OF** [7] - 17613:1,
17613:2, 17613:8,
17614:5, 17724:16
**offense** [1] - 17642:2
**offenses** [1] - 17661:4
**offer** [1] - 17631:8
**offered** [2] - 17634:5,
17646:14
**OFFICE** [1] - 17613:14
**officer** [2] - 17623:6,
17633:6
**officers** [13] -
17623:23, 17625:11,
17625:12, 17625:17,
17625:18, 17631:15,
17631:23, 17632:1,
17633:17, 17633:18,
17634:6, 17640:11
**OFFICES** [1] -
17614:5
**Official** [2] - 17614:18,
17724:22
**OFFICIAL** [1] -
17724:16
**often** [3] - 17644:2,
17644:17, 17711:4
**once** [1] - 17640:16
**one** [59] - 17616:25,
17617:21, 17618:1,
17621:9, 17622:3,
17625:7, 17630:21,
17633:1, 17634:24,
17634:25, 17635:1,
17635:6, 17635:15,
17636:14, 17638:5,
17638:7, 17639:18,
17641:25, 17643:10,
17647:17, 17648:9,
17649:21, 17651:4,
17652:21, 17653:24,
17663:1, 17663:3,
17663:15, 17669:21,
17671:22, 17675:16,
17678:9, 17679:19,
17679:22, 17683:13,
17687:10, 17687:11,
17695:15, 17696:13,
17696:15, 17698:2,
17698:5, 17699:24,
17700:13, 17703:19,
17704:24, 17705:19,
17706:12, 17707:14,
17716:1, 17716:14,
17716:25, 17719:10,
17720:23

**one-and-a-half** [1] - 17706:12
**ones** [3] - 17625:17, 17625:18, 17710:10
**open** [7] - 17643:12, 17646:16, 17646:20, 17649:1, 17660:3, 17686:19, 17724:2
**opened** [2] - 17721:5, 17721:13
**opening** [1] - 17633:13
**operate** [1] - 17643:8
**operating** [2] - 17661:13, 17661:17
**opinion** [3] - 17644:7, 17644:10, 17647:15
**opinions** [1] - 17643:24
**opportunity** [3] - 17624:5, 17631:4, 17723:24
**opposition** [1] - 17618:24
**orally** [1] - 17630:1
**Orange** [1] - 17613:21
**order** [3] - 17668:16, 17704:4, 17704:20
**ordered** [2] - 17669:11, 17669:12
**originally** [1] - 17617:15
**otherwise** [2] - 17686:4, 17721:16
**out-of-court** [1] - 17638:18
**outside** [7] - 17617:19, 17664:8, 17664:11, 17664:12, 17667:12, 17671:13, 17713:11
**outstanding** [1] - 17634:14
**overlapping** [1] - 17629:2
**overnight** [1] - 17629:4
**overrule** [2] - 17696:22, 17708:4
**overruled** [6] - 17672:24, 17710:3, 17712:14, 17713:14, 17717:15, 17718:2
**own** [8] - 17651:15, 17652:8, 17652:25, 17691:5, 17693:24, 17694:1, 17722:23

# P

**P.A** [2] - 17614:5, 17614:8
**P.C** [1] - 17614:11
**p.m** [4] - 17707:18, 17707:25, 17713:9, 17724:14
**PAGE** [1] - 17615:2
**paid** [1] - 17673:14
**painfully** [1] - 17661:8
**panel** [1] - 17670:14
**pants** [1] - 17684:18
**paper** [3] - 17620:10, 17629:24, 17649:18
**parameters** [1] - 17724:3
**Park** [3] - 17614:12, 17621:16
**part** [6] - 17617:14, 17627:21, 17700:15, 17701:6, 17711:20, 17711:22
**participated** [1] - 17633:18
**particular** [17] - 17627:7, 17627:16, 17636:10, 17639:6, 17639:9, 17639:24, 17640:14, 17644:9, 17676:3, 17681:22, 17686:9, 17687:18, 17689:15, 17692:17, 17693:20, 17698:7
**particularly** [4] - 17618:7, 17625:15, 17628:2, 17663:11
**parties** [9] - 17616:23, 17618:3, 17620:12, 17628:5, 17630:6, 17643:24, 17667:7, 17669:20, 17669:21
**parts** [1] - 17708:6
**party** [5] - 17653:20, 17665:9, 17668:20, 17668:21, 17669:24
**past** [4] - 17628:3, 17633:10, 17694:21, 17694:23
**path** [1] - 17710:5
**Pattis** [10] - 17613:20, 17616:10, 17631:2, 17635:3, 17636:22, 17640:10, 17641:8, 17652:10, 17711:1, 17711:15
**PATTIS** [29] - 17613:20, 17631:1, 17631:3, 17634:17, 17634:20, 17635:4,

17635:22, 17636:1, 17636:12, 17636:16, 17637:3, 17637:9, 17637:18, 17641:10, 17648:3, 17670:1, 17670:17, 17704:11, 17704:14, 17704:25, 17710:23, 17711:2, 17711:9, 17711:13, 17714:14, 17717:14, 17717:25, 17718:3, 17719:20
**Pattis's** [1] - 17642:8
**Paul** [9] - 17681:11, 17702:22, 17703:17, 17705:3, 17705:12, 17705:24, 17706:3, 17706:19, 17706:21
**pause** [21] - 17617:6, 17651:5, 17669:19, 17670:6, 17670:13, 17671:16, 17683:4, 17683:8, 17687:13, 17687:16, 17698:14, 17698:17, 17698:23, 17701:9, 17703:12, 17706:16, 17708:11, 17708:24, 17709:7, 17709:10, 17712:19
**paused** [1] - 17709:23
**pay** [2] - 17666:14, 17666:16
**PC** [1] - 17613:24
**Peace** [10] - 17700:21, 17703:19, 17705:4, 17705:12, 17705:16, 17706:21, 17707:1, 17710:16, 17712:1, 17713:7
**penal** [2] - 17638:20, 17639:22
**pending** [1] - 17661:5
**people** [3] - 17643:9, 17650:12, 17716:1
**per** [1] - 17625:15
**percipient** [1] - 17624:18
**perhaps** [1] - 17662:2
**period** [1] - 17719:3
**permission** [2] - 17684:9, 17696:8
**person** [20] - 17627:16, 17627:18, 17644:4, 17677:22, 17677:23, 17677:24, 17680:19, 17681:10, 17692:8, 17692:11, 17693:1, 17694:3, 17698:7, 17702:20, 17707:16, 17708:1,

17715:6, 17715:21, 17715:23
**personally** [1] - 17660:22
**perspective** [2] - 17631:4, 17636:12
**persuasive** [1] - 17645:2
**PEZZOLA** [1] - 17613:6
**Pezzola** [13] - 17616:6, 17616:15, 17618:18, 17619:1, 17620:7, 17628:9, 17631:14, 17632:3, 17640:23, 17690:20, 17692:16, 17696:17, 17719:3
**Pezzola's** [2] - 17618:17, 17690:22
**phases** [1] - 17671:4
**phone** [6] - 17653:25, 17675:12, 17680:9, 17690:25, 17692:18, 17694:19
**phones** [4] - 17634:17, 17634:22, 17674:1, 17677:10
**photo** [3] - 17692:22, 17694:23, 17696:24
**photograph** [11] - 17690:20, 17690:21, 17692:18, 17695:5, 17695:15, 17696:12, 17696:20, 17697:2, 17697:5, 17697:14, 17697:19
**photographs** [8] - 17689:15, 17689:16, 17693:11, 17693:13, 17693:17, 17693:18, 17698:5, 17698:7
**phrase** [1] - 17676:5
**physical** [3] - 17663:1, 17704:7, 17704:18
**physically** [1] - 17663:24
**pick** [1] - 17653:25
**picture** [15] - 17687:19, 17687:21, 17688:9, 17692:23, 17692:25, 17693:1, 17694:3, 17694:4, 17694:12, 17694:18, 17694:20, 17694:23, 17695:2, 17696:17, 17719:10
**pictures** [5] - 17688:18, 17693:21, 17719:6, 17719:9,

17719:10
**piece** [2] - 17666:19, 17695:18
**pin** [2] - 17630:10, 17643:19
**pivot** [2] - 17643:14, 17643:16
**pivotal** [1] - 17631:12
**place** [1] - 17616:20
**places** [2] - 17681:21, 17711:18
**plainclothes** [1] - 17625:12
**plan** [1] - 17686:9
**planning** [1] - 17648:12
**plans** [1] - 17624:17
**plate** [1] - 17616:17
**play** [27] - 17640:16, 17640:24, 17674:15, 17679:5, 17679:23, 17680:22, 17684:21, 17686:10, 17698:10, 17699:24, 17701:7, 17706:6, 17707:5, 17708:8, 17708:21, 17709:8, 17712:16, 17713:19, 17715:3, 17716:4, 17716:8, 17716:9, 17717:7, 17719:14, 17720:5, 17720:17, 17720:18
**played** [39] - 17674:17, 17675:7, 17676:14, 17678:20, 17679:7, 17679:9, 17679:25, 17680:24, 17682:1, 17681:4, 17682:1, 17682:8, 17682:11, 17683:9, 17684:11, 17684:23, 17685:4, 17685:11, 17686:6, 17686:8, 17687:5, 17687:8, 17699:2, 17700:11, 17701:12, 17702:17, 17702:24, 17706:8, 17708:10, 17708:23, 17708:24, 17709:9, 17712:18, 17713:21, 17715:4, 17716:10, 17717:8, 17720:6, 17720:19
**playing** [6] - 17678:19, 17685:20, 17700:7, 17700:12, 17700:13, 17721:6
**pleaded** [1] - 17661:3
**plenty** [1] - 17650:11
**PLLC** [1] - 17613:17

17738

**point** [36] - 17617:5, 17618:18, 17618:21, 17626:13, 17627:15, 17629:14, 17631:18, 17632:12, 17632:23, 17635:18, 17638:7, 17638:22, 17639:6, 17639:12, 17640:24, 17643:13, 17645:25, 17646:25, 17650:4, 17650:8, 17660:5, 17663:4, 17665:25, 17669:8, 17671:2, 17680:3, 17681:16, 17686:9, 17698:11, 17700:11, 17702:16, 17707:15, 17708:5, 17711:18, 17718:22
**pointed** [1] - 17645:7
**pointing** [2] - 17618:9, 17697:8
**points** [2] - 17629:25, 17669:1
**poisoned** [1] - 17622:14
**pole** [1] - 17623:23
**Police** [7] - 17621:16, 17622:1, 17623:20, 17625:10, 17625:16, 17625:20, 17631:22
**police** [4] - 17622:5, 17633:17, 17633:18, 17673:22
**pop** [1] - 17707:9
**portion** [1] - 17700:21
**portions** [3] - 17630:7, 17701:1, 17701:2
**position** [9] - 17622:24, 17622:25, 17624:16, 17640:3, 17646:18, 17647:13, 17667:1, 17672:21, 17724:1
**positioned** [3] - 17627:18, 17662:4
**positions** [1] - 17616:23
**possession** [2] - 17623:25, 17661:6
**possible** [2] - 17617:25, 17638:1
**potential** [3] - 17624:17, 17631:6, 17641:4
**potentially** [1] - 17624:20
**power** [1] - 17662:13
**practical** [1] - 17669:7
**practice** [1] - 17666:22

**pre** [1] - 17662:4
**pre-positioned** [1] - 17662:4
**precisely** [3] - 17646:18, 17646:25, 17690:16
**preferred** [1] - 17617:10
**prejudiced** [1] - 17632:7
**prejudices** [1] - 17633:11
**preliminary** [1] - 17618:2
**prep** [1] - 17633:7
**preparation** [1] - 17624:20
**prepare** [1] - 17622:17
**prepared** [3] - 17630:6, 17635:17, 17648:9
**presence** [4] - 17617:19, 17664:8, 17667:12, 17671:13
**present** [14] - 17616:7, 17616:8, 17616:9, 17616:10, 17616:11, 17616:12, 17616:13, 17630:6, 17636:1, 17640:1, 17665:9, 17708:6, 17711:18, 17724:7
**presented** [1] - 17711:11
**presents** [2] - 17623:7, 17661:11
**preserve** [1] - 17629:8
**press** [1] - 17674:7
**pretty** [3] - 17619:3, 17632:13, 17663:19
**previous** [2] - 17667:24, 17701:18
**previously** [9] - 17637:5, 17667:25, 17676:19, 17687:18, 17688:8, 17688:12, 17699:9, 17710:10, 17719:11
**principle** [2] - 17645:7, 17645:24
**priors** [1] - 17661:7
**private** [3] - 17672:14, 17723:6, 17723:7
**problem** [1] - 17699:23
**procedure** [8] - 17642:13, 17645:18, 17661:13, 17661:15, 17661:18, 17662:20, 17665:6, 17666:11

**procedures** [4] - 17661:21, 17662:12, 17663:3, 17663:6
**proceed** [6] - 17617:23, 17669:13, 17704:20, 17720:2, 17720:13, 17723:20
**Proceedings** [1] - 17614:21
**proceedings** [5] - 17617:7, 17635:4, 17654:2, 17660:3, 17724:20
**Process** [1] - 17647:5
**process** [4] - 17631:19, 17660:17, 17660:20, 17671:11
**procurement** [1] - 17644:13
**procuring** [2] - 17644:3
**produce** [4] - 17633:16, 17665:16, 17666:9, 17667:16
**produced** [7] - 17614:21, 17626:4, 17633:4, 17667:25, 17686:12, 17689:11, 17689:12
**producing** [1] - 17667:19
**production** [1] - 17688:11
**productions** [1] - 17628:7
**productive** [1] - 17643:4
**productively** [1] - 17617:22
**profession** [1] - 17672:18
**proffer** [2] - 17619:18, 17665:16
**progress** [1] - 17704:4
**projects** [1] - 17671:21
**promptly** [1] - 17634:7
**propose** [1] - 17653:22
**proposing** [1] - 17666:11
**prosecution** [3] - 17623:13, 17623:15, 17625:5
**prosecutor** [2] - 17626:12, 17722:9
**prosecutors** [1] - 17631:25
**Proud** [24] - 17621:20, 17622:11, 17624:14,

17624:17, 17624:19, 17624:25, 17625:13, 17625:21, 17685:23, 17706:3, 17708:13, 17709:2, 17709:12, 17709:18, 17709:23, 17710:15, 17712:11, 17713:11, 17721:7, 17721:8, 17722:9, 17722:14, 17722:17, 17722:18
**provide** [6] - 17620:24, 17621:8, 17629:4, 17651:4, 17664:25, 17668:21
**provided** [6] - 17622:12, 17625:18, 17631:24, 17636:24, 17666:13, 17667:8
**proximity** [1] - 17680:8
**publish** [6] - 17684:9, 17688:9, 17695:8, 17696:7, 17696:9, 17698:22
**published** [1] - 17690:15
**pull** [3] - 17698:15, 17705:9, 17712:4
**pulled** [1] - 17695:21
**purpose** [3] - 17641:1, 17693:17, 17693:18
**purposes** [1] - 17641:2
**push** [1] - 17704:23
**pushed** [1] - 17704:4
**pushing** [6] - 17682:18, 17685:1, 17703:22, 17703:24, 17703:25, 17722:21
**put** [20] - 17620:9, 17632:22, 17633:2, 17633:8, 17633:15, 17635:14, 17635:20, 17635:21, 17635:23, 17636:9, 17636:10, 17641:1, 17641:20, 17643:19, 17646:17, 17661:20, 17665:24, 17669:2, 17699:8, 17701:17
**putting** [9] - 17630:10, 17632:13, 17634:13, 17646:12, 17646:13, 17663:16, 17685:20, 17701:18

**Q**

**quantity** [1] - 17667:4

**questions** [11] - 17620:18, 17642:1, 17666:14, 17666:17, 17703:9, 17714:17, 17720:1, 17721:1, 17721:24, 17723:11
**quick** [2] - 17629:4, 17707:2
**quickly** [6] - 17620:13, 17632:13, 17639:20, 17643:4, 17703:16, 17706:23
**quite** [2] - 17638:12, 17688:17

**R**

**raise** [1] - 17653:21
**raised** [2] - 17660:5, 17665:20
**Rayburn** [1] - 17619:20
**re** [1] - 17644:5
**re-looking** [1] - 17644:5
**read** [2] - 17618:19, 17639:20
**reading** [2] - 17644:5, 17671:8
**really** [10] - 17625:11, 17626:9, 17627:1, 17627:2, 17627:14, 17628:8, 17639:24, 17643:4, 17686:21, 17714:7
**reason** [14] - 17617:13, 17621:14, 17621:15, 17632:8, 17636:9, 17663:7, 17663:10, 17667:18, 17670:7, 17680:5, 17680:6, 17690:10, 17691:11
**reasoned** [1] - 17645:2
**reasoning** [1] - 17649:18
**reasons** [5] - 17616:25, 17617:15, 17632:16, 17638:1, 17649:20
**rebut** [1] - 17707:15
**rebuttal** [1] - 17671:6
**rebutting** [1] - 17706:23
**receive** [2] - 17671:1, 17671:10
**received** [1] - 17630:17
**recently** [1] -

17619:17
**recess** [9] - 17649:10,
17649:11, 17660:12,
17663:25, 17664:14,
17667:4, 17667:16,
17724:13, 17724:14
**recognize** [8] -
17674:20, 17677:2,
17683:16, 17710:12,
17713:5, 17716:14,
17717:23, 17718:6
**recognized** [2] -
17678:24, 17680:13
**recognizes** [1] -
17719:15
**recollection** [2] -
17688:2, 17689:9
**record** [14] - 17617:2,
17617:5, 17634:5,
17635:15, 17636:21,
17649:12, 17665:25,
17668:6, 17668:7,
17674:11, 17690:17,
17701:17, 17702:8,
17708:25
**record's** [2] - 17637:1,
17648:3
**recorded** [1] -
17614:21
**recording** [1] -
17680:8
**recordings** [1] -
17673:25
**recruited** [2] -
17621:5, 17624:12
**redefine** [1] -
17643:14
**Redirect** [1] - 17615:4
**REDIRECT** [1] -
17722:7
**refer** [1] - 17623:5
**referenced** [1] -
17630:22
**references** [1] -
17627:22
**referred** [1] - 17688:24
**referring** [1] -
17689:20
**reflected** [2] -
17647:14, 17647:15
**reflection** [1] -
17624:3
**refresh** [2] - 17688:2,
17689:9
**regard** [6] - 17626:6,
17627:21, 17632:3,
17637:25, 17638:3,
17638:8
**regarding** [2] -
17640:10, 17660:9

**regardless** [1] -
17641:24
**Rehl** [30] - 17616:4,
17616:14, 17640:22,
17651:12, 17661:7,
17661:11, 17671:14,
17673:9, 17675:11,
17677:19, 17678:6,
17678:25, 17680:6,
17680:12, 17683:24,
17685:6, 17691:15,
17695:6, 17703:3,
17705:15, 17705:25,
17709:17, 17712:12,
17714:23, 17714:25,
17716:14, 17716:25,
17717:1, 17720:15,
17720:21
**REHL** [2] - 17613:5,
17671:17
**Rehl's** [9] - 17652:22,
17678:16, 17690:25,
17692:18, 17694:19,
17717:24, 17718:6,
17719:15, 17720:23
**Rehl-66** [1] -
17695:22, 17696:6
**related** [3] - 17617:3,
17626:4, 17630:25
**relationship** [2] -
17625:8, 17707:25
**relatively** [2] -
17630:19, 17700:22
**relevance** [3] -
17672:23, 17708:2,
17708:18
**relevant** [6] - 17626:3,
17626:10, 17626:11,
17627:20, 17639:12,
17708:2
**relevant/admissible**
[1] - 17628:10
**rely** [1] - 17691:16
**relying** [2] - 17619:9,
17619:13
**remain** [2] - 17641:12,
17641:18
**remaining** [1] -
17641:2
**remark** [1] - 17642:9
**remember** [2] -
17671:3, 17713:17
**renewed** [1] - 17694:5
**replacements** [1] -
17619:19
**replacing** [1] -
17619:22
**reply** [1] - 17619:16
**Reporter** [3] -
17614:17, 17614:18,

17724:22
**REPORTER** [1] -
17724:16
**reporter** [1] - 17672:9
**reports** [1] - 17673:22
**representation** [6] -
17632:19, 17634:8,
17666:16, 17683:19,
17694:13, 17695:1
**representations** [1] -
17623:18
**representing** [1] -
17647:9
**request** [7] - 17629:9,
17641:17, 17642:13,
17642:17, 17661:14,
17675:1, 17693:22
**requested** [1] -
17625:17
**require** [4] - 17620:20,
17632:4, 17635:9,
17635:16
**required** [7] - 17645:4,
17665:8, 17665:13,
17665:14, 17666:25,
17667:19, 17668:20
**requirements** [1] -
17639:11
**requires** [3] -
17622:18, 17622:19,
17638:24
**resident** [1] - 17697:4
**resolve** [2] - 17636:4,
17668:25
**respect** [8] - 17623:7,
17623:10, 17623:20,
17624:8, 17624:15,
17624:22, 17641:20,
17666:21
**respectfully** [1] -
17640:3
**respond** [5] -
17629:19, 17629:23,
17636:19, 17639:18,
17646:15
**responded** [2] -
17620:8, 17620:17
**responding** [2] -
17629:25
**response** [5] -
17622:21, 17623:2,
17629:4, 17648:1,
17686:20
**responsible** [1] -
17707:16
**rest** [9] - 17617:23,
17647:24, 17651:12,
17652:5, 17652:23,
17669:23, 17691:7,
17710:8, 17711:24

**rests** [2] - 17632:14,
17671:5
**result** [2] - 17625:22,
17628:4
**Return** [7] - 17637:20,
17687:4, 17692:1,
17702:13, 17708:7,
17712:3, 17720:3
**return** [1] - 17722:6,
17724:13
**returned** [2] -
17670:15, 17723:18
**reveal** [1] - 17620:21
**review** [9] - 17624:5,
17666:15, 17666:18,
17667:20, 17673:17,
17673:20, 17682:19,
17694:12
**reviewed** [4] -
17676:19, 17678:1,
17710:8, 17710:20
**reviewing** [1] -
17710:7
**revisiting** [1] -
17639:21
**Rhode** [1] - 17718:8
**rights** [1] - 17666:9
**rise** [2] - 17649:9,
17724:12
**risk** [2] - 17617:12,
17661:11
**risk-benefit** [1] -
17617:12
**risks** [1] - 17617:14
**risky** [1] - 17633:9
**Road** [1] - 17614:2
**road** [2] - 17637:7,
17637:9
**Roger** [4] - 17614:14,
17616:13, 17618:25,
17631:14
**ROGER** [1] - 17614:15
**Rohde** [29] -
17680:23, 17681:25,
17692:4, 17697:17,
17698:15, 17702:14,
17705:8, 17705:10,
17705:21, 17705:22,
17706:6, 17707:5,
17708:8, 17708:16,
17708:21, 17709:5,
17709:20, 17712:4,
17712:6, 17712:17,
17713:2, 17713:20,
17714:19, 17715:2,
17716:4, 17716:8,
17717:6, 17718:9,
17720:4
**Rohde's** [2] - 17674:9,
17699:2

**role** [1] - 17621:3
**room** [2] - 17636:2,
17723:18
**Room** [2] - 17614:18,
17724:23
**Roots** [19] - 17614:14,
17616:13, 17618:20,
17618:25, 17620:7,
17620:9, 17620:16,
17622:23, 17623:4,
17624:3, 17626:7,
17629:2, 17630:9,
17631:14, 17633:3,
17634:1, 17637:23,
17640:8, 17648:8
**ROOTS** [10] -
17614:15, 17618:25,
17619:16, 17620:17,
17623:1, 17631:14,
17637:22, 17637:24,
17638:7, 17640:9
**Roots's** [3] -
17623:18, 17624:24,
17634:8
**rose** [1] - 17661:24
**rough** [1] - 17619:3
**roving** [1] - 17623:23
**RPR** [3] - 17614:17,
17724:17, 17724:22
**rule** [12] - 17620:4,
17620:13, 17638:2,
17638:6, 17639:21,
17642:24, 17643:1,
17645:12, 17647:8,
17647:10, 17647:14,
17648:9
**Rule** [1] - 17643:7
**ruled** [4] - 17639:23,
17640:4, 17650:18,
17708:19
**Rules** [2] - 17640:2,
17721:16
**rules** [1] - 17640:1
**ruling** [8] - 17629:6,
17630:10, 17635:23,
17637:25, 17642:13,
17642:17, 17649:24,
17650:4
**rulings** [1] - 17650:13,
17667:24
**run** [1] - 17650:18
**running** [2] -
17671:19, 17699:23
**rushes** [1] - 17715:23
**Russell** [3] -
17619:20, 17681:11,
17702:22
**résumé** [1] - 17619:21

# S

**Sabino** [2] - 17614:8, 17616:12
**satisfactory** [1] - 17662:3
**satisfied** [1] - 17721:19
**save** [1] - 17641:8
**saw** [3] - 17638:25, 17675:9, 17682:23
**scene** [7] - 17682:20, 17682:22, 17684:14, 17693:19, 17693:25, 17694:14, 17695:2
**scenes** [1] - 17682:20
**schedule** [3] - 17669:22, 17670:10, 17670:20
**scope** [13] - 17630:19, 17666:5, 17685:19, 17701:20, 17706:10, 17708:20, 17710:2, 17710:18, 17710:19, 17711:5, 17711:10, 17712:13, 17713:13
**screen** [4] - 17687:22, 17701:5, 17712:8, 17714:10
**scrupulously** [1] - 17623:9
**se** [1] - 17625:15
**seal** [1] - 17654:2
**sealed** [1] - 17637:25
**search** [4] - 17625:4, 17626:17, 17627:12, 17628:17
**seat** [2] - 17661:24, 17662:8
**seated** [5] - 17652:19, 17653:19, 17663:12, 17670:16, 17723:19
**seats** [1] - 17661:1
**second** [3] - 17648:14, 17717:6, 17718:22
**seconds** [21] - 17679:3, 17679:6, 17690:21, 17692:19, 17694:21, 17694:23, 17695:5, 17695:16, 17696:13, 17696:14, 17699:11, 17701:4, 17702:1, 17702:3, 17703:2, 17703:3, 17706:7, 17708:9, 17708:22
**Secret** [1] - 17621:15
**security** [1] - 17667:6
**Security** [6] - 17621:7,

17625:1, 17625:2, 17626:25, 17627:6
**see** [32] - 17628:5, 17628:17, 17637:16, 17639:6, 17639:19, 17651:6, 17663:6, 17663:19, 17671:5, 17679:16, 17679:17, 17681:7, 17681:21, 17682:3, 17682:14, 17682:16, 17684:13, 17684:25, 17685:6, 17687:21, 17688:24, 17697:4, 17697:19, 17697:23, 17701:5, 17704:15, 17712:24, 17722:14, 17722:17, 17722:20, 17723:16, 17724:11
**seek** [2] - 17635:20, 17635:23
**segment** [2] - 17698:10, 17703:7
**selected** [1] - 17631:24
**send** [1] - 17664:14
**sense** [5] - 17642:23, 17649:3, 17666:6, 17668:18, 17670:4
**sent** [5] - 17689:2, 17689:3, 17689:13, 17689:15, 17689:21
**separate** [2] - 17633:17, 17638:19
**series** [1] - 17631:5
**serious** [1] - 17661:4
**Service** [2] - 17621:15, 17621:16
**SESSION** [1] - 17613:9
**set** [2] - 17624:10, 17670:21
**several** [2] - 17674:25, 17701:22
**severed** [1] - 17624:11
**shape** [1] - 17681:18
**shield** [1] - 17719:4
**short** [1] - 17648:6
**shorthand** [1] - 17614:21
**show** [7] - 17674:2, 17683:5, 17683:6, 17685:8, 17692:22, 17693:19, 17694:8
**showed** [5] - 17703:22, 17707:18, 17710:10, 17719:7, 17722:9
**showing** [5] - 17626:8, 17626:12,

17627:7, 17627:8, 17686:2
**shown** [5] - 17703:16, 17705:3, 17705:6, 17708:3, 17720:10
**shows** [1] - 17679:20
**sic** [4] - 17620:12, 17651:20, 17666:13, 17702:1
**side** [6] - 17617:16, 17630:12, 17653:21, 17666:20, 17723:17
**sidebar** [4] - 17653:25, 17699:20, 17710:23, 17718:11
**sides** [1] - 17643:17
**sight** [1] - 17662:10
**sign** [1] - 17641:20
**silent** [2] - 17641:12, 17641:18
**similar** [2] - 17629:14, 17676:9
**simply** [7] - 17624:2, 17624:3, 17626:18, 17637:7, 17642:3, 17662:6
**single** [1] - 17661:21
**sit** [6] - 17660:16, 17661:4, 17662:6, 17670:24, 17670:25, 17671:12
**sitting** [4] - 17635:12, 17660:25, 17662:7, 17679:17
**situation** [5] - 17619:4, 17633:9, 17661:23, 17668:10, 17668:20
**six** [2] - 17679:6, 17699:8
**six-hour** [1] - 17699:8
**Sixth** [7] - 17639:25, 17647:3, 17647:6, 17665:15, 17665:24, 17666:9, 17668:13
**slightly** [1] - 17646:22
**small** [1] - 17679:18
**Smith** [8] - 17613:16, 17616:9, 17642:11, 17644:23, 17646:5, 17700:20, 17701:8, 17701:11
**SMITH** [12] - 17613:17, 17613:20, 17633:22, 17642:10, 17642:12, 17642:23, 17644:22, 17644:24, 17646:2, 17646:6, 17646:24, 17710:17
**solicit** [1] - 17643:24

**solution** [1] - 17663:1
**someone** [4] - 17625:8, 17633:8, 17644:4, 17651:3
**sometimes** [4] - 17665:4, 17673:22, 17693:21, 17693:24
**somewhere** [2] - 17627:16, 17662:5
**soon** [2] - 17638:1, 17649:18
**sorry** [18] - 17635:12, 17646:7, 17679:8, 17680:25, 17682:10, 17683:13, 17685:9, 17687:6, 17688:6, 17692:3, 17692:19, 17698:15, 17699:4, 17702:16, 17705:21, 17707:4, 17707:8, 17723:21
**sort** [12] - 17618:3, 17619:7, 17620:14, 17626:23, 17644:8, 17644:13, 17660:6, 17660:15, 17662:4, 17662:16, 17671:3, 17724:6
**sound** [10] - 17630:20, 17676:2, 17680:7, 17715:3, 17716:5, 17716:7, 17716:9, 17716:12, 17716:22, 17718:14
**sounds** [14] - 17631:12, 17632:12, 17636:8, 17636:9, 17637:10, 17650:19, 17678:14, 17678:15, 17680:7, 17699:14, 17716:15, 17717:2, 17717:18
**source** [4] - 17625:7, 17625:8, 17680:8, 17680:14
**sources** [2] - 17624:15, 17624:16
**South** [3] - 17638:21, 17639:23, 17649:23
**speaking** [3] - 17636:24, 17707:7, 17707:9
**speaks** [1] - 17704:15
**specific** [3] - 17626:9, 17627:23, 17628:18
**specifically** [1] - 17627:5
**spell** [1] - 17672:9
**spend** [1] - 17643:1
**spent** [1] - 17626:1

**spirit** [1] - 17629:8
**spoken** [1] - 17677:18
**spot** [1] - 17716:16
**squad** [1] - 17622:2
**stand** [10] - 17633:8, 17633:15, 17660:15, 17661:24, 17662:1, 17665:17, 17666:3, 17668:16, 17668:22, 17688:20
**standard** [4] - 17623:10, 17646:3, 17661:13, 17661:17
**stands** [4] - 17624:9, 17649:10, 17667:18, 17724:13
**start** [7] - 17616:20, 17651:1, 17675:5, 17680:23, 17681:1, 17682:10, 17699:23
**started** [2] - 17701:21, 17710:7
**starting** [3] - 17699:17, 17701:3, 17702:15
**state** [4] - 17626:19, 17640:16, 17640:24, 17672:8
**State** [1] - 17621:14
**statement** [6] - 17638:17, 17638:18, 17638:19, 17639:22, 17650:7, 17680:18
**statements** [2] - 17634:1, 17676:3
**STATES** [3] - 17613:1, 17613:2, 17613:10
**States** [6] - 17613:12, 17616:3, 17623:16, 17649:13, 17661:22, 17724:23
**steal** [1] - 17622:9
**stellar** [1] - 17619:21
**stenographic** [1] - 17724:19
**step** [1] - 17723:12
**steps** [1] - 17723:14
**Steven** [2] - 17614:11, 17616:12
**sticker** [2] - 17691:4, 17691:6
**still** [6] - 17646:16, 17649:1, 17667:2, 17667:25, 17695:25, 17719:9
**stipulation** [1] - 17628:4
**stipulations** [3] - 17630:5, 17631:6, 17631:8

**stolen** [2] - 17645:19, 17719:3
**Stop** [1] - 17622:9
**stop** [9] - 17676:15, 17681:5, 17682:9, 17682:12, 17682:23, 17683:10, 17683:14, 17702:18, 17702:25
**storm** [2] - 17675:20, 17717:10
**Storming** [1] - 17676:4
**storming** [2] - 17677:8, 17678:12
**straightforward** [1] - 17700:23
**strategy** [1] - 17633:13
**Street** [9] - 17613:14, 17613:17, 17613:21, 17613:24, 17614:5, 17614:9, 17685:21, 17685:22, 17686:3
**streets** [2] - 17712:21
**stuff** [2] - 17668:2, 17689:24
**subject** [4] - 17651:7, 17651:25, 17666:21, 17701:18
**subjects** [1] - 17686:5
**submit** [2] - 17619:2, 17621:10
**submitted** [1] - 17619:2
**subset** [1] - 17699:15
**substantial** [1] - 17666:21
**substantive** [1] - 17691:22
**suggest** [2] - 17707:24, 17721:8
**suggesting** [1] - 17697:10
**suggestions** [1] - 17724:2
**Suite** [2] - 17613:18, 17614:6
**summary** [2] - 17619:3, 17634:13
**Sunday** [1] - 17640:21
**supervised** [1] - 17619:19
**supervisory** [1] - 17665:13
**support** [1] - 17647:18
**supporting** [1] - 17627:9
**supports** [1] - 17621:24
**suppose** [2] -

17628:14, 17690:12
**supposed** [2] - 17661:10, 17666:10
**supposedly** [1] - 17668:1
**Supreme** [1] - 17638:21
**surprised** [2] - 17622:22, 17624:23
**surrounding** [1] - 17639:22
**surveillance** [2] - 17622:2, 17623:21
**suspended** [1] - 17721:16
**sustained** [7] - 17694:6, 17698:9, 17704:16, 17705:1, 17710:19, 17714:15, 17717:21
**SWORN** [1] - 17671:17
**system** [3] - 17676:22, 17678:11

## T

**table** [2] - 17629:9, 17629:13
**tailor** [1] - 17686:25
**tarnished** [1] - 17622:14
**TARRIO** [5] - 17613:6, 17653:8, 17653:10, 17653:15, 17653:17
**Tarrio** [5] - 17616:5, 17616:15, 17633:23, 17652:20, 17652:21
**Task** [1] - 17621:10
**team** [5] - 17623:13, 17623:15, 17624:4, 17625:5, 17639:17
**teed** [4] - 17618:6, 17630:11, 17630:15, 17664:24
**telephone** [1] - 17678:5
**temporal** [3] - 17708:2, 17711:22
**temporally** [2] - 17686:18, 17719:25
**terabyte** [1] - 17666:6
**term** [1] - 17628:20
**terms** [8] - 17618:20, 17636:23, 17639:21, 17640:4, 17669:7, 17679:14, 17706:10, 17721:17
**terribly** [1] - 17643:5
**Terrorism** [1] -

17621:10
**testified** [3] - 17647:9, 17661:3, 17714:22
**testifies** [2] - 17635:24, 17660:7
**testify** [34] - 17618:11, 17618:15, 17619:5, 17619:24, 17632:14, 17634:16, 17635:7, 17635:20, 17636:14, 17640:22, 17641:15, 17642:5, 17642:15, 17645:23, 17647:4, 17647:7, 17647:8, 17647:21, 17647:23, 17648:14, 17648:15, 17648:19, 17650:25, 17651:14, 17651:19, 17652:7, 17652:12, 17652:25, 17653:5, 17660:10, 17662:19, 17664:9, 17688:19, 17724:5
**testifying** [10] - 17640:19, 17642:17, 17648:13, 17648:23, 17651:8, 17652:1, 17653:13, 17665:10, 17666:12, 17710:22
**testim** [1] - 17639:8
**testimony** [18] - 17617:10, 17619:11, 17628:4, 17630:20, 17642:18, 17645:21, 17647:2, 17648:22, 17650:11, 17669:15, 17690:12, 17706:20, 17718:20, 17719:2, 17719:23, 17723:8, 17723:13, 17724:7
**THE** [213] - 17613:1, 17613:1, 17613:9, 17616:2, 17616:16, 17619:9, 17620:1, 17622:21, 17623:2, 17625:25, 17628:25, 17629:7, 17629:18, 17629:21, 17630:3, 17630:24, 17631:2, 17631:10, 17632:9, 17632:22, 17632:25, 17633:21, 17634:2, 17634:11, 17634:18, 17634:23, 17635:19, 17635:25, 17636:6, 17636:15, 17636:17, 17637:8, 17637:10, 17637:19, 17637:21, 17637:23, 17638:4, 17638:14, 17639:2,

17639:5, 17639:13, 17639:15, 17640:6, 17640:12, 17640:25, 17641:23, 17642:11, 17642:22, 17642:24, 17644:23, 17646:1, 17646:5, 17646:7, 17647:12, 17648:2, 17648:5, 17648:21, 17648:25, 17649:7, 17649:9, 17649:12, 17649:15, 17650:11, 17650:19, 17651:9, 17651:23, 17652:2, 17652:16, 17652:18, 17653:9, 17653:14, 17653:16, 17653:18, 17660:4, 17661:16, 17662:17, 17662:23, 17663:14, 17664:3, 17664:7, 17664:18, 17664:19, 17665:7, 17665:21, 17666:1, 17667:9, 17668:3, 17668:6, 17668:14, 17668:17, 17668:19, 17669:17, 17670:4, 17670:14, 17670:16, 17670:18, 17671:18, 17672:1, 17672:24, 17672:25, 17674:6, 17674:8, 17674:10, 17676:7, 17676:9, 17677:11, 17677:14, 17679:8, 17682:22, 17684:1, 17684:3, 17684:5, 17684:8, 17686:15, 17687:2, 17687:12, 17688:14, 17688:16, 17688:21, 17688:24, 17689:7, 17690:1, 17690:4, 17690:9, 17690:23, 17691:1, 17691:19, 17691:22, 17691:25, 17693:5, 17694:6, 17695:9, 17695:12, 17695:17, 17695:20, 17695:23, 17695:24, 17696:3, 17696:5, 17696:8, 17696:22, 17698:9, 17698:24, 17699:3, 17699:5, 17699:12, 17699:19, 17699:22, 17700:9, 17700:15, 17700:19, 17701:1, 17701:14, 17701:23, 17701:25, 17702:2, 17702:4, 17702:10, 17702:12, 17703:5, 17703:11,

17704:16, 17705:1, 17706:14, 17706:17, 17707:8, 17707:12, 17707:20, 17707:22, 17708:4, 17708:19, 17710:3, 17710:19, 17710:24, 17711:1, 17711:8, 17711:12, 17711:15, 17712:2, 17712:14, 17712:15, 17713:14, 17713:15, 17714:15, 17716:19, 17716:21, 17717:15, 17717:16, 17717:21, 17718:2, 17718:4, 17718:11, 17718:14, 17718:21, 17718:25, 17719:8, 17719:12, 17719:22, 17720:7, 17720:9, 17720:12, 17721:2, 17721:15, 17721:20, 17721:22, 17721:25, 17722:3, 17722:5, 17723:12, 17723:19, 17724:9, 17724:12
**theirs** [2] - 17648:15, 17700:4
**theme** [1] - 17671:19
**themselves** [4] - 17634:15, 17647:3, 17665:1, 17724:1
**theory** [3] - 17618:6, 17624:14, 17663:4
**therefore** [1] - 17706:22
**they've** [5] - 17626:21, 17641:6, 17661:17, 17699:14, 17721:13
**thinking** [1] - 17630:5
**thinks** [6] - 17627:24, 17627:25, 17628:9, 17628:19
**thoughts** [3] - 17643:3, 17644:20, 17646:14
**thousands** [2] - 17693:15, 17693:16
**three** [12] - 17623:25, 17631:15, 17631:22, 17631:23, 17633:16, 17638:8, 17640:11, 17641:2, 17642:1, 17648:12, 17649:3, 17701:24
**throat** [1] - 17678:25
**Thursday** [15] - 17616:21, 17617:3, 17617:7, 17617:11, 17629:15, 17629:20,

17630:1, 17643:4,
17643:23, 17644:21,
17647:24, 17669:24,
17670:25, 17671:12,
17690:2
**tick** [1] - 17616:17
**tight** [1] - 17663:11
**timestamps** [2] -
17689:24, 17701:17
**Timothy** [1] -
17614:17
**TIMOTHY** [2] -
17613:9, 17724:17
**Tobacco** [1] - 17621:1
**today** [11] - 17617:24,
17618:5, 17620:14,
17629:23, 17632:11,
17635:5, 17644:19,
17670:24, 17671:12,
17674:22, 17723:8
**tomorrow** [6] -
17617:24, 17618:5,
17620:15, 17629:23,
17670:24, 17671:12
**took** [9] - 17623:24,
17636:23, 17667:5,
17667:7, 17667:15,
17675:9, 17675:11,
17689:10, 17710:6
**top** [1] - 17706:11
**topic** [1] - 17687:15
**towards** [6] -
17648:23, 17678:22,
17704:5, 17715:6,
17715:9, 17715:14
**tower** [1] - 17697:24
**TRANSCRIPT** [1] -
17613:8
**transcript** [3] -
17614:21, 17724:19,
17724:20
**transcription** [1] -
17614:21
**traveled** [1] -
17706:24
**trial** [14] - 17622:13,
17622:19, 17624:4,
17624:10, 17624:12,
17631:19, 17632:11,
17633:12, 17633:20,
17636:25, 17669:1,
17671:4, 17671:19
**TRIAL** [1] - 17613:8
**tried** [4] - 17650:21,
17667:16, 17667:23,
17668:1
**troubled** [2] - 17623:4,
17623:18
**trucks** [2] - 17709:24,
17710:13

**true** [4] - 17619:21,
17624:6, 17724:18,
17724:19
**Trump** [1] - 17645:15
**try** [5] - 17616:17,
17624:21, 17679:22,
17711:14, 17718:12
**trying** [9] - 17629:8,
17649:19, 17694:4,
17699:17, 17701:7,
17702:11, 17707:15,
17707:23, 17721:8
**Tuesday** [1] - 17613:6
**turn** [6] - 17618:3,
17618:8, 17620:14,
17649:5, 17652:3,
17671:14
**two** [22] - 17618:2,
17618:5, 17618:13,
17620:11, 17625:7,
17625:23, 17640:22,
17643:11, 17646:2,
17649:1, 17649:22,
17653:4, 17677:24,
17678:9, 17679:18,
17689:15, 17689:16,
17698:5, 17698:6,
17706:11, 17719:6
**typical** [1] - 17643:20

## U

**U.S** [3] - 17613:14,
17614:18, 17672:19
**ultimately** [3] -
17651:17, 17652:10,
17653:3
**umbrella** [1] - 17621:2
**unconstitutionally** [1]
- 17646:6
**under** [5] - 17620:20,
17640:5, 17647:5,
17654:2, 17666:2
**undercover** [4] -
17620:21, 17622:1,
17625:11, 17673:24
**undercovers** [2] -
17621:17, 17621:18
**understood** [3] -
17637:8, 17650:16,
17700:15
**underway** [1] -
17669:15
**uniform** [2] -
17616:25, 17617:1
**uniformly** [1] -
17625:19
**unit** [2] - 17623:21,
17625:2
**UNITED** [3] - 17613:1,

17613:2, 17613:10
**United** [6] - 17613:12,
17616:3, 17623:16,
17649:13, 17661:21,
17724:23
**units** [1] - 17622:1
**University** [1] -
17672:20
**unlawful** [6] -
17644:14, 17645:4,
17645:11, 17645:16,
17645:18
**unless** [3] - 17629:5,
17653:20, 17653:21
**unrelated** [2] -
17711:13, 17721:7
**up** [38] - 17618:5,
17618:6, 17621:21,
17621:22, 17622:6,
17630:12, 17630:15,
17636:7, 17637:5,
17641:20, 17647:24,
17653:25, 17664:24,
17668:24, 17669:6,
17671:11, 17682:22,
17686:19, 17690:14,
17690:16, 17691:3,
17691:9, 17692:4,
17692:7, 17695:21,
17697:16, 17698:15,
17698:18, 17699:23,
17700:2, 17700:5,
17705:9, 17708:6,
17712:4, 17712:8,
17714:20, 17715:16,
17718:20
**USA** [1] - 17676:1
**USAfx** [2] - 17667:17,
17667:18

## V

**vague** [1] - 17646:6
**variation** [1] -
17643:22
**variety** [1] - 17649:20
**various** [7] - 17626:3,
17626:5, 17626:19,
17644:12, 17650:20,
17650:21
**version** [1] - 17643:25
**versus** [1] - 17638:21
**Video** [32] - 17674:17,
17675:7, 17676:14,
17678:20, 17679:7,
17679:9, 17679:25,
17680:24, 17681:2,
17681:4, 17682:1,
17682:8, 17682:11,
17683:9, 17684:11,

17684:23, 17685:4,
17685:11, 17687:5,
17687:8, 17702:17,
17702:24, 17706:8,
17708:10, 17708:23,
17709:9, 17712:18,
17713:21, 17715:4,
17716:10, 17717:8,
17720:19
**video** [40] - 17622:4,
17639:9, 17674:14,
17674:20, 17675:9,
17675:11, 17675:15,
17675:19, 17676:24,
17677:2, 17678:10,
17678:23, 17680:15,
17680:19, 17681:22,
17683:5, 17683:17,
17683:24, 17685:6,
17686:2, 17686:20,
17687:18, 17698:24,
17699:8, 17699:12,
17699:15, 17700:2,
17700:11, 17703:16,
17710:20, 17710:22,
17711:21, 17714:10,
17714:22, 17715:11,
17718:10, 17720:18,
17721:6, 17721:11,
17721:14
**videos** [19] -
17623:22, 17632:5,
17650:9, 17673:23,
17673:24, 17678:3,
17678:8, 17682:19,
17683:20, 17685:16,
17685:19, 17687:10,
17703:17, 17703:19,
17705:3, 17707:17,
17722:9, 17722:15,
17722:20
**view** [3] - 17643:12,
17644:9, 17647:20
**violates** [1] - 17666:8
**violation** [1] - 17637:6
**violence** [4] -
17625:22, 17660:21,
17660:23, 17661:7
**violent** [2] - 17704:9,
17704:13
**vis-à-vis** [1] -
17627:18
**voice** [18] - 17677:7,
17678:8, 17678:12,
17678:14, 17678:15,
17678:16, 17678:23,
17680:4, 17680:7,
17680:13, 17680:14,
17717:12, 17717:18,
17717:23, 17718:6,

17719:15, 17719:23,
17720:1
**vote** [2] - 17645:16,
17645:17

## W

**wait** [3] - 17670:9,
17671:22, 17671:24
**waiting** [4] - 17635:13,
17668:7, 17686:7,
17686:8
**waive** [1] - 17661:13
**waiver** [1] - 17666:4
**waiving** [1] - 17668:15
**walk** [1] - 17707:6
**Walker** [2] - 17645:3,
17647:17
**Walker's** [4] -
17643:6, 17644:7,
17645:1, 17647:15
**wants** [9] - 17627:24,
17627:25, 17628:12,
17639:18, 17653:21,
17664:4, 17685:17,
17686:19, 17711:9
**Washington** [8] -
17613:5, 17613:15,
17613:25, 17614:19,
17697:5, 17697:13,
17697:19, 17724:24
**waste** [1] - 17711:6
**ways** [5] - 17626:2,
17626:3, 17626:5,
17644:12, 17650:21
**weaker** [1] - 17617:20
**wearing** [4] -
17681:12, 17681:14,
17681:15, 17684:17
**week** [16] - 17617:23,
17618:18, 17618:23,
17628:3, 17628:7,
17667:22, 17669:23,
17669:25, 17670:11,
17670:20, 17671:1,
17671:2, 17671:11
**weeks** [2] - 17622:16,
17631:21
**welcome** [3] -
17629:24, 17670:19,
17701:15
**well-reasoned** [1] -
17645:2
**West** [1] - 17614:9
**whatnot** [1] - 17724:2
**whole** [8] - 17673:11,
17685:21, 17685:22,
17686:7, 17686:10,
17686:11, 17686:23,

17743

17719:18
**wholly** [1] - 17643:16
**willing** [1] - 17647:23
**window** [2] -
  17619:19, 17638:1
**windows** [1] -
  17619:22
**wire** [1] - 17673:24
**wiretaps** [2] -
  17673:24, 17673:25
**wish** [1] - 17646:15
**Witness** [1] -
  17723:14
**WITNESS** [11] -
  17615:2, 17671:17,
  17672:1, 17672:25,
  17676:9, 17679:8,
  17682:22, 17712:15,
  17713:15, 17716:21,
  17717:16
**witness** [33] -
  17630:15, 17634:12,
  17634:14, 17635:10,
  17635:17, 17635:19,
  17636:1, 17640:5,
  17650:15, 17651:11,
  17660:12, 17661:2,
  17661:24, 17663:22,
  17665:10, 17666:24,
  17667:1, 17668:22,
  17670:9, 17670:11,
  17671:15, 17676:7,
  17683:7, 17685:10,
  17686:8, 17686:18,
  17689:8, 17694:10,
  17696:23, 17710:20,
  17710:21, 17711:14,
  17720:10
**witnesses** [20] -
  17618:4, 17620:6,
  17622:16, 17624:18,
  17630:5, 17630:24,
  17630:25, 17631:5,
  17631:8, 17632:10,
  17632:15, 17632:19,
  17633:2, 17633:12,
  17633:15, 17633:17,
  17634:9, 17634:10,
  17665:16, 17665:17
**witnesses'** [1] -
  17668:11
**Woodland** [1] -
  17684:18
**word** [4] - 17644:12,
  17644:18, 17646:19,
  17679:1
**words** [2] - 17675:21,
  17677:7
**work-related** [1] -
  17617:3

**works** [1] - 17663:23
**worried** [1] - 17625:22
**worry** [1] - 17629:15
**worth** [1] - 17629:11
**wrap** [1] - 17671:11

## Y

**year** [3] - 17623:25,
  17672:19, 17677:17
**years** [2] - 17693:8,
  17723:1
**yelling** [1] - 17708:1
**yesterday** [2] -
  17620:8, 17629:2
**yield** [1] - 17635:15
**York** [2] - 17613:18,
  17614:13

## Z

**Zachary** [1] - 17616:4
**zero** [2] - 17675:5,
  17675:19