UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA      :

     : CASE NO. 21-cr-00175-TJK-1

     v.      :

     :

NORDEAN et al,      :

     :

     Defendant.      :

## DEFENDANT PEZZOLA'S MOTION TO LIFT PROTECTIVE ORDER

COMES NOW the Defendant Dominic Pezzola with this Motion to lift the protective order in this case (Document 92 Filed 06/02/21), for reasons described below.

### Introduction.

Since the beginning of January 6 investigations, the DOJ has defined and framed the narrative of January 6 as a violent "attack" on the Capitol, the Congress, on law enforcement, or even on democracy itself. In every January 6 case (including this case), the government filed motions for protective orders before any defendant was able to view case discovery. In every January 6 case which

1

came close to proceeding to trial, the government filed further motions in limine which precluded defendants from introducing any evidence which (1) showed misconduct by law enforcement, (2) supported any argument of entrapment, (3) supported any argument by a J6 defendant of self-defense, and (4) supported the application of the 1st amendment.

It is analogous to a case where desegregation demonstrators who performed sit-ins at Woolworth lunch counters in the 1960s were accused of "attacking" the lunch counters or Woolworth staff while being precluded from asserting the 1st amendment or showing evidence of actual events.

Pezzola and other defendants, and journalists and researchers and the public as a whole, have a right to examine and publish this footage, evidence and discovery. The vast majority—perhaps almost the entirety—of camera footage, film and photos collected in these discovery databases do not concern any top secret national security secrets or expose locations of the Capitol which are off-limits to the public.  Indeed millions of tourists have seen and been in the hallways and areas where the Defendants in this case visited on January 6.

**Legal standard.**

The public and press have a presumptive First Amendment right of access to judicial proceedings in criminal cases, finding that "a presumption of openness inheres in the very nature of a criminal trial under our system of justice." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980) (plurality opinion). The U.S. Supreme Court has repeatedly held that the public's right to open court proceedings is protected by the First Amendment. *See id.; Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982); *Press Enterprise Co. v. Superior Court*, 478 U.S. 1, 9, 10 (1986). See also Jackson Nat'l Life Ins. Co., 944 F. Supp. 488 (S.D. Miss. 1995), aff'd sub nom., Deramus v. Jackson Nat'l Life Ins. Co., 92 F.3d 274 (5th Cir. 1996) (referring to a constitutionally-embedded presumption of openness in judicial proceedings).

There is also a constitutional right of access to court records, because "the public and press have a [F]irst [A]mendment right of access to pretrial documents in general." *Associated Press v. District Court*, 705 F.2d 1143, 1145 (9th Cir. 1983).

The public's right to access judicial proceedings and records originated in English common law. Gannett Co. v. DePasquale, 443

4

U.S. 368, 414 (1979)) (stating that this right has had "seemingly universal recognition in this country since the earliest times"). The U.S. Supreme Court has recognized a common law right of access to "judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).

**The public's right to democratic accountability and openness.**

The roots of public access to court proceedings and records lie in "democratic values of accountability and openness." *In re Globe Newspaper*, 920 F.2d 88, 98 (1st Cir. 1990) ("[T]he prospect of criminal justice being routinely meted out by unknown persons does not comport with democratic values of accountability and openness."). The public has a right to a "full understanding" of criminal proceedings, thereby placing the populace in a position "to serve as an effective check on the system." *In re Providence Journal Co.,* 293 F.3d 1, 10 (1st Cir. 2002). "[P]ublic monitoring of the judicial system fosters the important values of quality, honesty and respect for our legal system.'" *Id. at* 9; *see also Siedle v. Putnam Inv., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998) (same).

5

**"The appropriateness of making court files accessible is accentuated in cases where the government is a party**: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987); *Lugosch,* 435 F.3d at 119 (2nd Cir.).

Few cases could be more crucial for publication of all court files and records than Pezzola's case, and January 6 cases in general. January 6 cases are famously political, and President Trump has called the prosecutions a "grave national injustice." Accordingly, the public's interest is even more accentuated than in other types of cases.

The "policy of openness in judicial proceedings" "promotes public confidence in the courts." *Applications of Nat'l Broad. Co.,* 828 F.2d 340, 343, 347 (6th Cir. 1987) (citing *Brown & Williamson Tobacco Corp. v. FTC,* 710 F.2d 1165, 1176–81 (6th Cir. 1983)).

**The DC Circuit originated the right of access to court-related records.**

The roots of the rights of access has been traced back to the 19th Century when the D.C. Circuit explained that "[a]ny attempt to maintain secrecy, as to the records of this court, would seem to be inconsistent with the common understanding of what belongs to a public court of record, to which all persons have the right of access." *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, (6th Cir. 1983) (quoting *Ex Parte Drawbaugh*, 2 App. D.C. 404, 407 (1894)).

**Recent Developments Call out for Public Disclosure of Jan. 6 Discovery and Evidence.**

This interest in transparency is now accentuated.  A number of developments since the original imposition of the protective orders in this case cry out for the public release of J6 discovery, records and evidence:

1) The Jan. 20, 2025 pardon proclamation of President Donald Trump has recognized that the J6 prosecutions were a "grave national injustice."

2) The interest of the national news media regarding the J6 prosecutions has continued to the present day.

3) Recent revelations that there were 274 plainclothes FBI agents amid the crowds on Jan. 6 require a fundamental

reanalysis of the evidence and claims regarding Jan. 6 and this case.

4) Recent revelations regarding the government's "pipe bomber" story, including revelations that FBI agents sat on the investigation for years without explanation and revelations that members of the Capitol Police may have been involved cry out for public disclosure of Jan. 6 materials.

5) This interest is gradually becoming an interest of *historians*, who are entitled to research the issues, evidence, and claims involved in this case.

6) There is growing awareness that the public has a right to be aware of the full contours of the evidence regarding January 6.

7) There is a danger that the Justice Department or the custodians of the discovery databases in this case will delete, hide, or bury the evidence.

WHEREFORE, defendant requests that this Court:

1. Lift its protective order, and
2. Order that the government's discovery databases Evidence.com and Relativity.com be maintained and all footage on Evidence.com made available to the public, for

present and future research and transparency.

Date: June 26, 2026

Respectfully Submitted,

*/s/ Roger I. Roots*
Roger I. Roots
The Ticktin Law Group
270 SW Natura Ave,
Deerfield Beach, FL 33441
Tel: (954) 570-6757
Email:rroots@legalbrains.com
Attorney for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I, Roger I. Roots, hereby certify that on this day, June 26, 2026, I caused a copy of the foregoing document to be served on all counsel through the Court's CM/ECF case filing system.

<u>*/s/ Roger I. Roots*</u>
Roger I. Roots